USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 10/2/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANNAMARIE TROMBETTA,

                Plaintiff,

v.

NORB NOVOCIN, MARIE NOVOCIN, ESTATE AUCTIONS, INC.,

                Defendant.

No. 18-CV-993 (RA)

MEMORANDUM OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

    Plaintiff Annamarie Trombetta, appearing *pro se*, commenced this action against Defendants Norb Novocin, Marie Novocin, and Estate Auctions, Inc., (together, "Defendants"), asserting claims under the Lanham Act, the Copyright Act, and the Visual Artist Rights Act, as well as state law claims under the New York Civil Rights Law and the New York's Artist's Authorship Rights Act. In a nutshell, Trombetta seeks damages from Defendants for purportedly selling a low-quality painting online, that they falsely advertised as having been created by Trombetta, and which allegedly caused her to lose sales of her own artwork, in addition to pain and suffering. Before the Court is Defendants' motion to dismiss. For the following reasons, it is granted in part and denied in part.

# BACKGROUND[1]

Trombetta is an artist who exhibits her works, which include paintings, in New York City. In August 2015, Trombetta discovered on the website Worthpoint.com, which catalogs advertisements and sales of art, that Defendant Estate Auctions, Inc. ("Estate") had advertised and sold an oil painting on eBay entitled "Man with a Red Umbrella" ("the painting"). Estate's eBay advertisement, as re-posted on Worthpoint.com, described the painting as "shabby chic" and noted that the canvas had a tear 5/8 inches long. Compl. ¶ 4. The advertisement further asserted that the painting was "signed on the bottom but on the back it has written in red on the stretcher, Annamarie Trombetta 'Gifted' 1977, Painted 1972." *Id.* The advertisement also included a copy of Trombetta's biography from her personal website. Worthpoint.com indicated that the painting was sold on December 1, 2012, for $181.50.

According to Trombetta, in 1972, she "was nine years old and was not painting at all." *Id.* ¶ 3. In fact, she "did not paint in oil until 1981." *Id.* ¶ 4. She thus alleges that Estate, which is owned and operated by the individual defendants, falsely attributed her as the creator of the painting, and that she "never gave" Estate "the right to use [her] name nor to use the content of [her] biography." *Id.* ¶ 8.

Upon her discovery of the Worthpoint.com post, Trombetta informed an employee of Worthpoint.com that she was not the artist that created the painting. Another Worthpoint.com employee subsequently gave Trombetta a "removal ticket" and the website post eventually

---

[1] The facts in this section are drawn from Plaintiff's Complaint and are assumed to be true for the purposes of this motion. *See Roth v. Jennings*, 489 F.3d 499, 509–510 (2d Cir. 2007). In light of Plaintiff's *pro se* status, the Court also considers factual allegations made in Plaintiff's opposition to Defendant's motion to dismiss. *See Washington v. Westchester County Dep't of Corr.*, No. 13 Civ. 5322(KPF), 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (citing cases).

disappeared. *Id.* ¶ 16. In December 2016, however, the post re-appeared on the website. This time, Trombetta contacted Estate, and left a voicemail with Defendant Marie Novocin ("Ms. Novocin"). When Defendant Norb Novocin ("Mr. Novocin") returned her call, Trombetta told him that she did not create the painting. Trombetta alleges that Mr. Novocin responded that if she wanted to hire an attorney she should "GO FOR IT." *Id.* ¶ 17. In January 2017, Trombetta contacted the CEO of Worthpoint.com to have the second posting removed from the website.

Trombetta then arranged for an attorney to send Defendants a letter for settlement purposes in August or September of 2017. Ms. Novocin acknowledged receipt of the letter but did not respond to it. In October 2017, Trombetta sent a complaint to the Delaware Better Business Bureau about her experiences with Defendants. Trombetta alleges that Ms. Novocin responded to the complaint by letter, stating that Defendants' attorney had "assured [them] that [they] did nothing wrong," that they should "not . . . respond to the demand letter," and that Trombetta's "contention that we used information from her website is incorrect." *Id.* ¶ 20.

On February 5, 2018, Trombetta filed a Complaint against Defendants asserting federal claims under the Lanham Act, the Copyright Act, and the Visual Artist Rights Act, as well as state law claims under the New York Civil Rights Law and the New York Artist's Authorship Rights Act. She also seeks a declaration that she did not create the painting and that the "photo signature is NOT by [her] hand." *Id.* at 16. Trombetta asserts that the purportedly false attribution contained in Estate's advertisement—that she was the author of the painting—injured her economically; indeed, she proclaims to know "for certain" that the "Estate Auction Inc. posting . . . cost [her] one definite sale" valued at $8,000. *Id.* at 15-16. She states that the process of figuring out "who posted this listing" caused her "[m]onths of [s]tress," "[l]oss of [i]ncome and [t]ime," and that her "[d]isappointment and [f]rustration" required her to return to an orthopedic specialist, and to seek

3

physical therapy from "[t]he end of 2015 and [for] most of 2016." *Id.* She demands $76,000 in damages against Defendants.

On May 22, 2018, Defendants filed the instant motion to dismiss. On January 17, 2019, Trombetta filed a letter attaching a certificate of registration of her website from the U.S. Copyright Office. The Court thereafter held a status conference after which it stayed the case pending the parties' settlement efforts. A settlement conference was held on April 25, 2019, which was unsuccessful. Prior to the settlement conference, Trombetta filed a supplemental letter in further opposition to Defendants' motion to dismiss to which Defendants did not respond.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.* (citing *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009)).

## DISCUSSION

As an initial matter, Defendants contend that Trombetta has not alleged that they had any control or influence over the listings on Worthpoint.com. But Trombetta's claims are premised on Defendants' alleged conduct in creating the eBay advertisement that she discovered in its re-

4

posting on Worthpoint.com. *See* Complaint at 6–8. Thus, even if the Court concluded that Defendants had no control or influence over Worthpoint.com, this would not dispose of her claims.

## A. Trademark Infringement

Trombetta argues that Defendants' use of her name in connection with the painting states a claim for false designation of origin under the Section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A). The Court disagrees.

To prevail on a claim under Section 43(a) of the Lanham Act, "a plaintiff must show that[] (1) it has a valid trademark or trade name entitled to protection, and (2) the defendant's use of a similar name is likely to cause confusion among consumers as to the origin of the goods or services." *Morgans Grp. LLC v. John Doe Co.*, No. 10 CV 5225 KMW HBP, 2012 WL 1098276, at *4 (S.D.N.Y. Mar. 31, 2012) (citing *Malletier v. Dooney & Burke, Inc.*, 454 F.3d 108, 115 (2d Cir.2005)).[2] Here, Trombetta fails to demonstrate that her name is a valid trademark or is otherwise entitled to trademark protection.

A trademark is protectable with respect to a § 43 claim if it is "either validly registered or a qualifying unregistered trademark." *Prof'l Sound Servs., Inc. v. Guzzi*, 349 F. Supp. 2d 722, 730 (S.D.N.Y. 2004), *aff'd*, 159 F. App'x 270 (2d Cir. 2005). Because Trombetta does not allege that her name is a registered trademark, she must plausibly allege that her name qualifies as an unregistered trademark. An unregistered mark is protectable if it would qualify for protection as

---

[2] Section 43(a) of the Lanham Act provides that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device . . . or any false designation of origin, which . . . is likely to cause confusion . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act ." 15 U.S.C. § 1125(a)(1)(A). A trademark is statutorily defined as "any word, name, symbol, or device . . . used by a person . . . to identify and distinguish his or her goods . . . from those manufactured or sold by others and to indicate the source of those goods, even if that source is unknown." 15 U.S.C. § 1127.

5

a registered trademark under § 2 of the Lanham Act, 15 U.S.C. § 1052(b). *See Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301–302 (E.D.N.Y. 2014). To determine whether a putative mark qualifies as such, courts will first classify the mark as generic, descriptive, suggestive, arbitrary, or fanciful. *See Lane Capital Mgt., Inc. v. Lange Capital Mgt, Inc.*, 192 F. 3d 337, 346 (2d Cir. 1999). As Trombetta's purported trademark is a personal name, the Court considers it to be a descriptive mark. *See Yarmouth-Dion, Inc .v. D'ion Furs, Inc.*, 835 F.2d 990, 993 (2d Cir. 1987) ("a personal name[] is a descriptive mark") (citing cases). And a descriptive mark is protectable only "when it [has] acquire[d] secondary meaning," which refers to "the power of a name . . . to symbolize a particular business, product, or company." *Patrizzi v. Bourne In Time, Inc.*, No. 11 Civ. 2386(PAE), 2013 WL 3975948, at *4 (S.D.N.Y. Aug. 5, 2013). The party seeking to establish secondary meaning of a descriptive mark must show that "an ordinary buyer associates the mark in question with a single source, though that source may be anonymous." *Rockland Exposition, Inc. v. Alliance of Automotive Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 315 (S.D.N.Y. 2012). The following six factors are relevant to this analysis: "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." *Id.*

Although "determining whether a descriptive mark has acquired secondary meaning is a fact-intensive inquiry," and should thus not generally be decided on a motion to dismiss, *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 213 (S.D.N.Y. 2015), the Complaint here does not state any of the necessary facts to plausibly allege that Trombetta's name has acquired secondary meaning. Trombetta has, accordingly, failed to demonstrate that her name is entitled to trademark protection, and her claim for false designation of origin is, therefore, dismissed. *See Einhorn v. Mergatroyd Produs.*, 426 F. Supp. 2d 189, 195 (S.D.N.Y. 2006)

(dismissing trademark infringement claim where plaintiff failed to allege that his personal name had acquired secondary meaning).

## B. Copyright Infringement

The Court also dismisses Trombetta's claim for copyright infringement based on Defendants' alleged copying of her website biography. "A properly pleaded copyright infringement claim must allege [i] which specific original works are the subject of the copyright claim, [ii] that plaintiff owns the copyrights in those works, [iii] that the copyrights have been registered in accordance with the statute, and [iv] by what acts during what time the defendant infringed the copyright." *Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC*, 23 F. Supp. 3d 344, 352 (S.D.N.Y. 2014) (alterations in original).

As an initial matter, Defendants' contention that Trombetta "has not alleged ownership of any specific original works that have been infringed" is incorrect. Def's Mem. Opp. at 5. To the contrary, Trombetta alleges that she owns a copyright in the contents of an original website, such as the text comprising her personal biography, and that Defendants infringed the purported copyright by copying her personal biography onto Estate's advertisement of the painting, which she includes in the Complaint. Trombetta has thus pled three of the four required elements of her copyright claim. *See Lefkowitz*, 23 F. Supp. 3d at 352–353 (finding plaintiff adequately alleged that they owned a copyright in certain images and that defendants infringed plaintiff's copyrights by including a list of the images in the complaint and identifying some of defendants' publications in which the images appeared).

Defendants are correct, however, that Trombetta's Complaint fails to plead the fourth element: she does not allege that the content of her website was registered in accordance with the Copyright Act. Section 411(a) of the Copyright Act provides that "no civil action for infringement

7

of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made . . . ." Section 411(a) thus "imposes a bar to copyright infringement claims where a plaintiff has not either received or been denied a copyright registration at the time such a claim is interposed." *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, No. 09 CV 2669(LAP), 2012 WL 1021535, at *5 (S.D.N.Y. Mar. 26, 2012). Courts in this district have also held that a pending application for registration at the time a copyright infringement claim is filed does not suffice to meet the registration requirement. *See, e.g.*, *Mills v. Alphabet Inc.*, No. 16-CV-4669 (VSB), 2018 WL 1569838, at *5 (S.D.N.Y. Mar. 28, 2018); *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 353 (S.D.N.Y. 2014). When Trombetta filed the Complaint she had not applied for a copyright registration of her website contents, though she did apply by the time she filed her opposition to Defendants' motion to dismiss. *See* Pl's Mem. Opp. at 5 (Dkt. 9) (alleging that Trombetta had applied for a copyright registration of her website with the Copyright Office). Thereafter, Trombetta filed a certificate of registration from the Copyright Office, with an effective date of June 18, 2018. But because Trombetta did not even file an application for a registration prior to commencing this action, she has not met the registration requirement. *See Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d Cir. 2014) (recognizing that, although some Circuits are split over whether an application pending at the time of suit fulfills the registration requirement, the plaintiff's failure to apply for registration prior to suit does not satisfy "the plain terms of the statute"). Trombetta has therefore failed to state a claim for copyright infringement.[3]

---

[3] In *Psihoyos*, the Second Circuit implied that a district court could grant a plaintiff leave to amend a copyright claim after a copyright registration has been obtained. 748 F.3d at 125 (noting that district court had discretion to deny the plaintiff leave to amend to assert his copyright claims after he had applied for copyright registrations of the photos at issue). Accordingly, as noted in Section G below, the Court dismisses Trombetta's

8

## C. Visual Artists Rights Act

Trombetta's claim under the Visual Artists Right Act ("VARA"), 17 U.S.C. § 106A, by contrast, suffices to withstand Defendants' motion to dismiss.

VARA was enacted as an amendment to the Copyright Act "in 1990 . . . to provide for the protection of the so-called 'moral rights' of certain artists." *Pollara v. Seymour*, 344 F.3d 265, 269 (2d Cir. 2003). Section 106A(a) provides, in pertinent part, that "the author of a work of visual art[] shall have the right[] (A) to claim authorship of that work, and (B) to prevent the use of his or her name as the author of any work of visual art which he or she did not create." The Act defines a "work of visual art" as "a painting ... existing in a single copy" or "in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author," subject to several exceptions not relevant here. 17 U.S.C. § 101.

Trombetta's allegations that Defendants have attributed her name as the artist who painted the painting at issue are plausible. She has attached to her Complaint an advertisement, seemingly authored by Estate, which proclaims that she is the author of the single painting at issue and which includes a copy of her biography from her personal website. The Court rejects Defendants' contention that Trombetta has not alleged that the painting existed in a single copy, because she asserts that her name was falsely attributed to a single painting. Drawing all reasonable inferences in her favor, Trombetta has adequately pled that Defendants have falsely attributed her as the author of a visual work of art under VARA. Defendants' motion to dismiss Trombetta's VARA claim is denied.

---

copyright claim without prejudice.

## D. New York Artist's Authorship Rights Act

Trombetta, however, cannot state a claim for damages for the "unauthorized use of her name" pursuant to New York's Artist's Authorship Rights Act, Arts and Cultural Affairs Law ("AARA"), § 14.03, because the statute does not cover Defendants' alleged conduct.

Relevant here, section 14.03 provides:

> [N]o person other than . . . a person acting with the artist's consent shall knowingly display in a place accessible to the public . . . a work of fine art . . . *by that artist* or a reproduction thereof in an altered, defaced, mutilated or modified form if the work is displayed, published or reproduced as being the work of the artist . . . and damage to the artist's reputation is reasonably likely to result therefrom.

AARA, § 14.03(1) (emphasis added).

The statute further provides that "the artist shall retain at all times the right to claim authorship, or . . . to disclaim authorship *of such work*," § 14.03(2), and grants "[a]n artist aggrieved under [the foregoing provisions] . . . a cause of action for legal and injunctive relief."

Here, however, Trombetta does not allege that Defendants "altered, defaced, mutilated or modified" her work. But the statute plainly gives a right of action to artists only with respect to damage caused by others to *the artist's* work. The Court thus holds that the statute, as a matter of law, does not cover the conduct at issue in this case. Trombetta's AARA claim is thus dismissed.[4]

## E. New York Civil Rights Law

Trombetta's claim that Defendants violated her right of publicity under New York Civil Rights Law ("NYCRL") §§ 50–51, must be dismissed because it is time-barred. A claim under NYCRL § 51, which provides a private right of action to enforce NYCRL § 50, must be brought

---

[4] Because the Court finds that Section 14.03 does not apply to Defendants' alleged conduct, the Court need not address Defendants' argument that Trombetta's AARA claim is preempted by VARA. *See* Def's Mem. at 6; *see also Mills*, 2018 WL 1569838, at *8 n.8 (declining to consider whether VARA preempted plaintiff's claim under § 14.03 of AARA since § 14.03 was deemed irrelevant to the facts of the case).

within one year from the date "the publishing event giving rise to plaintiff's right of privacy claims first occurred[.]" *Nussenzweig v. diCorcia*, 9 N.Y.3d 184, 188 (2007). Trombetta alleges that the advertisement of the painting containing her name and personal biography was published in December 2012. Given that Trombetta commenced this action in 2018, her right of publicity claim is dismissed.[5]

## F. Declaratory Relief

Finally, Trombetta requests that the Court declare that she did not create the painting and that she did not sign it. To the extent Trombetta seeks to assert an independent cause of action for a declaratory judgment, it is dismissed because "[a] declaratory judgment is a remedy, not a cause of action." *Trodale Holdings LLC v. Bristol Healthcare Investors, L.P.*, No. 16 Civ. 4254 (KPF), 2017 WL 5905574, at *11 (S.D.N.Y. Nov. 29, 2017) (citing *In re Joint Eastern & Southern Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993)). The Court will consider Trombetta's request for declaratory relief if she is ultimately successful on any claims.

## G. Leave to Amend

"Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that [s]he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). Nevertheless, "leave to amend is not warranted where it would be futile." *Boone v. Codispoti & Assocs. P.C.*, No. 15-CV-1391 (LGS), 2015 WL 5853843, at *5 (S.D.N.Y. Oct. 7, 2015). Amendment is futile when

---

[5] In her supplemental letter, Trombetta argues that the Court should apply the discovery rule to her NYCRL claim. Following Judge Cote's reasoning in *Brooks ex. Rel Estate of Bell v. The Topps Co., Inc.*, however, there is "no basis to find that New York courts would adopt a discovery rule to extend the statute of limitations for a right of publicity cause of action[.]" No. 06 CIV. 2359(DLC), 2007 WL 4547585, at *4 (S.D.N.Y. Dec. 21, 2007). In any event, were the Court to adopt the discovery rule, Trombetta's NYCRL claim would still be time-barred because she alleges that she discovered the advertisement containing the purportedly false attribution in 2015.

11

"[t]he problem with [a plaintiff's] causes of action is substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Such is the case for Trombetta's claims under the NYCRL and AARA—better pleading cannot cure the fact that the asserted provision of AARA does not cover Defendants' alleged conduct and that the NYCRL claims are time-barred. Nor, for the reasons discussed above, will better pleading save Plaintiff's claim for trademark infringement. All of these claims are thus dismissed with prejudice.

The Court will, however, permit Trombetta to file a motion seeking leave to amend her complaint, which must include a proposed amended complaint, in order to replead her copyright infringement claim. Trombetta is advised that she should reference her certificate of copyright registration in the allegations of her proposed Amended Complaint and that she should attach it thereto.

## CONCLUSION

For the foregoing reasons, Trombetta's state law claims under Sections 50–51 of the New York Civil Rights Law and Section 14.03 of the New York Artist's Authorship Rights Act, and her trademark infringement claim are DISMISSED with prejudice; her copyright infringement claim is DISMISSED without prejudice; and her VARA claim will proceed. If Trombetta chooses to file a motion for leave to amend and a proposed amended complaint, in order to replead her copyright claim, she must do so by November 4, 2019; otherwise, her copyright claim will be dismissed with prejudice.

The Clerk of Court is respectfully directed to lift the stay of this case, to terminate the motion pending at Dkt. 3, and to mail a copy of this order to Trombetta.

SO ORDERED.

Dated: October 2, 2019
New York, New York

Ronnie Abrams
United States District Judge