IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

Annamarie Trombetta,　　　　　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　　　　Plaintiff,　　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　）　　Civil Action No: 18-cv-00993 (RA) (SLC)
　　　　　　v.　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　）
Norb Novocin, <u>et al</u>.,　　　　　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　　　　　　　　　　　　　）
　　　　　　　　　Defendants.　　　　）
_____）

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS WORTHPOINT CORPORATION AND SEIPPEL'S SECOND MOTION TO DISMISS</u>

## TABLE OF CONTENTS

FACTUAL BACKGROUND……………………………………………………………..1

PROCEDURAL BACKGROUND………………………………………………………..4

ARGUMENT…………………………………………………………………………...5

    I.   Plaintiff's Claims Against Defendant Seippel Must be Dismissed Under FRCP 12(b)(2)………………………………………………………………………...5

    II.   Plaintiff's Claims Against Defendants WorthPoint and Seippel Must Be Dismissed Under FRCP 12(b)(6)…………………………………………………………8

        A.  Plaintiff Has Failed to Assert a *Prima Facie* Claim of Contributory Infringement Against Defendants …………………………………………..8

        B.  Even If Plaintiff Could Assert a *Prima Facie* Claim of Contributory Infringement Against Defendants, Her Claim Would Be Barred by the Copyright Act's Statute of Limitations……………………………………12

        C.  Plaintiff's DMCA Claims Against Defendants Must Be Dismissed Because She Has Failed to Assert *Prima Facie* Claims Under Either 17 U.S.C. §§ 1202(a) or (b)…………………………………………………………15

            a.  Plaintiff's Claim Under 17 U.S.C. § 1202(a) Must Be Dismissed Because She Has Failed to Adequately Allege That Defendants Provided or Distributed False Copyright Management Information or That They Did So Knowingly and With An Intent to Facilitate Infringement of the Biography……………………………………16

            b.  Plaintiff's Claim Under 17 U.S.C. § 1202(b) Must Be Dismissed Because She Has Failed to Adequately Allege That Copyright Management Information Was Removed from The Biography or That Defendants Distributed The Biography With Knowledge That Its CMI Was Removed…………………………………………20

        D.  Even If Plaintiff Could Assert a *Prima Facie* DMCA Claim Against Defendants, Her Claim Would Be Barred by the Copyright Act's Statute of Limitations…………………………………………………………...23

CONCLUSION…………………………………………………………………………..25

## <u>TABLE OF AUTHORITIES</u>

### Federal Cases

*Agence Fr. Presse v. Morel*,
  2014 U.S. Dist. LEXIS 112436 (S.D.N.Y. Aug. 13, 2014)……………………………...20

*Arista Records LLC v. Lime Group LLC*,
  784 F. Supp.2d 398 (S.D.N.Y. 2011)……………………………………………………..9

*Arma v. Buyseasons, Inc.*,
  591 F. Supp. 2d 637 (S.D.N.Y. 2008)………………………………………………6, 7

*Arc Music, Inc. v. Henderson*,
  2010 U.S. Dist. LEXIS 153186 (C.D. Cal., March 22, 2010)………………………13, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)………………………………………………………………....8

*A. Stucki Co. v. Buckeye Steel Castings Co.*,
  963 F.2d 360 (Fed. Cir. 1992)………………………………………………...13, 14

*Barron Partners, LP v. Lab123, Inc.*,
  2008 U.S. Dist. LEXIS 56899 (S.D.N.Y. July 25, 2008)…………………………………7

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*,
  371 F.3d 883 (6th Cir. 2004)………………………………………………………13

*Brought to Life Music, Inc. v. MCA Records, Inc.*,
  2003 U.S. Dist. LEXIS 1967 (S.D.N.Y., Feb. 14, 2003)…………………………….....9

*BWP Media USA Inc. v. Polyvore, Inc.*,
  2016 U.S. Dist. LEXIS 92121 (S.D.N.Y. 2016)………………………………………11

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)………………………………………………………8

*Craig v. UMG Recordings, Inc.*,
  380 F. Supp. 3d 324 (S.D.N.Y. 2019)……………………………………………20, 21

*Dawes-Ordonez v. Realtor Ass'n of Greater Fort Lauderdale, Inc.*,
  2010 U.S. Dist. LEXIS 44160 (S.D. Fla., May 5, 2010)……………………………….....9

*DiFolco v. MSNBC Cable L.L.C.*,
  622 F.3d 104 (2d Cir. 2010)………………………………………………………....8

*Faulkner Press, L.L.C. v. Class Notes, L.L.C.,*
　　756 F. Supp. 2d 1352 (N.D. Fla. 2010)…………………………………………………18

*Field v. Google Inc.,*
　　412 F. Supp. 2d 1106 (D. Nev. 2006)………………………………………………3, 11

*Goldberg v. Cameron,*
　　2009 U.S. Dist. LEXIS 59633 (N.D. Cal., July 10, 2009)………………………13, 15, 24

*Hirsch v. Rehs Galleries, Inc.,*
　　2020 U.S. Dist. LEXIS 32926 (S.D.N.Y., Feb. 26, 2020)………………………………24

*Jeehoon Park v. Skidmore, Owings & Merril LLP,*
　　2019 U.S. Dist. LEXIS 171566 (S.D.N.Y., Sept. 30, 2019)…………………………..8, 18

*Karabu Corp. v. Gitner,*
　　16 F. Supp. 2d 319 (S.D.N.Y. 1998)…………………………………………………...6, 7

*Kelly v. Arriba Soft Corp.,*
　　77 F. Supp. 2d 1116 (C.D. Cal. 1999)………………………………………………...21

*Krechmer v. Tantaros,*
　　747 F. App'x 6 (2d Cir. 2018)…………………………………………………………16

*Kregos v. AP,*
　　3 F.3d 656 (2d Cir. 1993)……………………………………………………………...13

*Laser Kitten, LLC v. Marc Jacobs Int'l, LLC,*
　　2018 U.S. Dist. LEXIS 171962 (S.D.N.Y. Oct. 4, 2018)………………………………16

*Live Face on Web, LLC v. Control Grp. Media Co.,*
　　150 F. Supp. 3d 489 (E.D. Pa. 2015)…………………………………………………...9

*Matthew Bender & Co. v. W. Pub. Co.,*
　　158 F.3d 693 (2d Cir. 1998)…………………………………………………………8, 9

*Media Rights Techs., Inc. v. Microsoft Corp.,*
　　922 F.3d 1014 (9th Cir. 2019)………………………………………………………...24

*Ontel Products, Inc. v. Project Strategies Corp.,*
　　899 F. Supp. 1144 (S.D.N.Y. 1995)……………………………………………………6

*Palmer/Kane LLC v. Benchmark Educ. Co. LLC,*
　　2020 U.S. Dist. LEXIS 4077 (S.D.N.Y., Jan. 6, 2020)………………………………..10

iv

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
 609 F.3d 30 (2d Cir. 2010)………………………………………………………...6

*Perfect 10, Inc. v. Amazon.com, Inc.*,
 508 F.3d 1146 (9th Cir. 2007)……………………………………………………9

*Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*,
 975 F. Supp. 2d 920 (N.D. Ill. 2013)…………………………………………..*passim*

*Petrella v. MGM*,
 572 U.S. 663 (2014)……………………………………………………………...13

*Pilates, Inc. v. Current Concepts Kenneth Endelman*,
 1996 U.S. Dist. LEXIS 15415, 1996 WL 599654 (S.D.N.Y. Oct. 18, 1996)…………..6, 7

*Psihoyos v. John Wiley & Sons, Inc.*,
 748 F.3d 120 (2d Cir. 2014)…………………………………………………....13

*Rella v. N. Atl. Marine, Ltd.*, No. 02-CV-8573 (GEL),
 2004 U.S. Dist. LEXIS 11567, 2004 WL 1418021 (S.D.N.Y. June 23, 2004)…………..7

*Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*,
 No. 03-4962, 2004 U.S. Dist. LEXIS 23052 (E.D. Pa., Nov. 12, 2004)………………...20

*SellPoolSuppliesOnline.com LLC v. Ugly Pools Ariz., Inc.*,
 344 F. Supp. 3d 1075 (D. Ariz. 2018)……………………………………………17, 18

*Staehr v. Hartford Fin. Servs. Group*,
 547 F.3d 406, 426 (2d Cir. 2008)……………………………………………….....8

*Stevens v. Corelogic, Inc.*,
 194 F. Supp. 3d 1046 (S.D. Cal. 2016)…………………………………………17, 20

*Yash Raj Films (USA) Inc. v Kumar*,
 2009 U.S. Dist. LEXIS 87230 (E.D.N.Y., Sept. 18, 2009)…………………………...10

**Federal Statutes**

17 U.S.C. § 507(b)……………………………………………………………...13, 24

17 U.S.C. § 1202(a)……………………………………………………….........*passim*

17 U.S.C. § 1202(b)…………………………………………………………..*passim*

17 U.S.C. § 1202(c)…………………………………………………………..*passim*

**Federal Rules**

Fed. R. Civ. P. 8…………………………………………………………………………………8

Fed. R. Civ. P.12(b)………………………………………………………………………*passim*

**New York Civil Practice Law and Rules**

CPLR §301 and §302……………………………………………………………………………6

Defendants WorthPoint Corporation ("WorthPoint") and William H. Seippel ("Seippel") (collectively "Defendants"), by and through the undersigned counsel, respectfully submit this Memorandum of Law in support of their concurrently-filed Second Motion to Dismiss.  For the reasons set forth more fully below, Defendants respectfully request that Plaintiff Annamarie Trombetta's claims against Defendant Seippel in his individual capacity be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and that Plaintiff's contributory infringement and DMCA claims against Defendants be dismissed under Fed. R. Civ. P. 12(b) for failure to state a plausible claim for relief.

## FACTUAL BACKGROUND

Defendant WorthPoint is an online resource for researching and valuing antiques, art, and other collectables.  *See* Doc. 61-1 at ¶ 3.  Exhibit A (attached hereto).  WorthPoint's primary offering, the Worthopedia, is a searchable online database that provides subscribing users with historical pricing data from actual auction and retail sales.  *See* Doc. 61-1 at ¶ 3-4.  The Worthopedia is accessible to users from www.worthpoint.com, and it currently provides subscribers with access to more than 525 million historical auction listings, including historical listings from the online auction website www.ebay.com.  *Id.*

In August of 2015, Plaintiff claims to have discovered a Worthopedia entry for an oil painting entitled "Man With a Red Umbrella" (hereinafter, the "Painting") that inaccurately attributed the Painting to her.  *See* Doc. 36 at 2-3, 27, 40; Doc. 40 at 2.  The Worthopedia entry reproduced an eBay auction listing for the Painting (hereinafter, the "Auction Listing") that was authored by Defendant Estate Auctions, Inc. in connection with its sale of the Painting in 2012. *See* Doc. 36 at 2-3, 5-6, 12, 35, 40.  And it included an excerpt from https://www.askart.com/ that reproduced the biography section of Plaintiff's personal website (the "Biography").  *Id.; see*

1

*also* Doc. 56 at 1-2.  After discovering the Auction Listing in December of 2015, Plaintiff

Trombetta purports to have contacted WorthPoint employee "Anita B." to inform WorthPoint

that the Auction Listing misattributed the Painting to her.  *See* Doc. 36 at 4.  And, in January of

2016, Plaintiff Trombetta emailed WorthPoint "with a series of questions…as to who posted the

[Auction Listing]."  *See* Doc. 33 at 17, 23, 25.  She also submitted a request to remove the

Auction Listing.  *See* Doc. 36 at 31.

The following day, on February 3, 2016, Plaintiff alleges that she spoke with

WorthPoint's "Website Master" Gregory Watkins to reiterate her concerns about the inaccurate

Auction Listing and WorthPoint's use of the copyright notice "Copyrighted work licensed by

Worthpoint" in connection with a photograph contained in the Auction Listing (hereinafter, the

"Copyright License Notice").  *See* Doc. 36 at 4-6.  During this call, Mr. Watkins is alleged to

have informed Plaintiff Trombetta that the WorthPoint Copyright License Notice was affixed to

the Auction Listing's photograph because it was purchased from eBay pursuant to a licensing

agreement and that he would "take down" the Auction Listing.  *Id.*

The following day, on February 4, 2016, WorthPoint ***permanently*** removed the

Worthopedia entry for the Auction Listing.  *See* Doc. 61-1 at ¶ 5-6 ("on or around February 4,

2016, I [William F. Seippel] caused the Allegedly Infringing Auction Listing, which was

displayed at https://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-4892417, to be

permanently deleted from WorthPoint's website."); Doc. 33 at 30-33 ("The item was removed at

your request.").[1]  Nevertheless, on February 20, 2016, Plaintiff sent WorthPoint's Chief

Executive Officer, William F. Seippel, an email in which she stated that a reference to the title of

the Auction Listing remained visible when she conducted a "google search for the painting '1972

---

[1] The Worthopedia entry for the Auction Listing was never reposted to the Worthopedia.  *See* Doc. 61-1 at ¶ 5.

Original Oil Painting Man with Red Umbrella signed Annamarie Trombetta…" *See* Doc. 36 at 33-34.

On March 1, 2016, Defendant Seippel responded to Plaintiff's February 20, 2016 email and informed her that "we have taken down any pages that you have asked to have taken down as a courtesy to you" and that any reference to the allegedly infringing Auction Listing in her Google search "reflected the past" and was the result "of that search engine's memory."[2]  Doc. 33 at 18, 30-34.  Defendant Seippel also responded as follows:

> I do not see anything on these pages you are referring to.  Yes you show up in that specific search on google and you are likely to for some time but no content relating to you is any longer on the pages that are presented.  It will take some time for that to disappear out of Google's memory…
>
> Doc. 33 at 33.

To further address Plaintiff's concerns, Defendant Seippel instructed WorthPoint employee Jason Packer to submit a removal request to Google on March 3, 2016.  *See* Doc. 36 at 46.

Notwithstanding WorthPoint's removal request to Google, "in the fall of 2016," Plaintiff alleges that references to the Auction Listing reappeared "on the internet."  Doc. 36 at 4, 15, 25.  And, on January 4, 2017, Plaintiff once again contacted WorthPoint and complained that "in a Google search for Annamarie Trombetta Artist your company is listed under my name."  *See* Doc. 36 at 7, 32; Doc. 33 at 18, 38-42. Tellingly, none of the complained of Google results attached to Plaintiff's January 4, 2017 email actually reference Plaintiff or indicate that the Auction Listing or Biography continued to be displayed on WorthPoint.  *See* Doc. 36 at 32; Doc. 33 at 38-42.  Indeed, the only listing in Plaintiff's January 2017 Google search from

---

[2] Google's search engine uses an automated program to crawl the Internet and catalogue all of the accessible web pages on the Internet.  *See Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1111-1112 (D. Nev. 2006); https://support.google.com/websearch/answer/1687222?hl=en (last accessed 6/22/2020).  As a part of this process, Google's web-crawling program makes a copy of each web page that it finds, and stores the HTML code from those web pages in a repository called a cache.  *Id.*  When Google displays its search results in response to a search, it typically also displays a "cached" link to the webpage that is a historical snapshot of the page.  *Id.*  Google's cached links remain visible on Google for some time after a website is deleted or removed from its original location and is accessible by clicking on the upside-down arrow to the right of the website's URL.  *Id.*

WorthPoint's website is an auction result for "Marilyn Monroe…Chanel Perfume" that is **entirely unrelated** to Plaintiff and does not contain Plaintiff's Biography. *See* Doc 93 at 12, 93-33, 93-34.

Plaintiff never again contacted Defendants, but on May 9, 2017, Plaintiff contends that she conducted yet another Google search for "1972 ORIGINAL OIL PAINTING MAN WITH RED UMBRELLA SIGNED ANNAMARIE TROMBETTA" and that her search returned multiple results which referenced the Auction Listing. *See* Doc. 36 at 42; Doc. 22 at 31; *see also* Doc. 36 at 7, 20, 22. The May 9, 2017 Google search result for the Auction Listing does not indicate that Plaintiff actually accessed the underlying web page or that the Auction Listing or Biography continued to reside on WorthPoint's server. *See* Doc. 36 at 42; Doc. 22 at 31 ("Last visit 12/30/15"). In fact, the upside-down triangle icon next to the URL in Plaintiff's Google search for the Auction Listing supports the fact that the URL for the complained of search result was a historical copy of the underlying webpage that was stored in Google's cache (and not on WorthPoint's server). *See* https://support.google.com/websearch/answer/1687222?hl=en.

## PROCEDURAL BACKGROUND

On February 5, 2018, Plaintiff filed a complaint against Estate Auctions, Inc. and Norb and Marie Novocin (collectively, the "Estate Auctions Defendants"), asserting federal claims under the Lanham Act, the Copyright Act, and the Visual Artists Rights Act, as well as various state law claims. *See* Doc. 1; Doc. 36 at 8-9. Neither WorthPoint nor Mr. Seippel were named in the Complaint; however, Plaintiff filed a Motion to Amend the Complaint on December 3, 2019 and sought leave to add WorthPoint and Mr. Seippel as Defendants. *See* Doc. 29. On December 16, 2019, the Court issued an order instructing Plaintiff to file a proposed amended complaint asserting "the basis, if any, for adding William Seipp[el] and WorthPoint Corporation as

4

defendants." Doc. 32. And, on January 17, 2020, Plaintiff filed a "Proposed Amended

Complaint" that purported to add WorthPoint and Mr. Seippel as defendants in this matter

(collectively, the "WorthPoint Defendants"). *See* Doc. 33. While the Court found that Plaintiff's

"Proposed Amended Complaint" was defective, it interpreted Plaintiff's subsequently-filed

February 21, 2020 Opposition Response (Doc. 36) to be the "operative" amended complaint

(hereinafter, the "Amended Complaint") and allowed Plaintiff's claims for contributory

copyright infringement and DMCA violations to go forward against the Defendants. *See* Doc. 40

at n. 2, 6, 14. The Court also directed Plaintiff to serve Doc. 36 on the WorthPoint Defendants

by May 21, 2020. *Id.*

On June 29, 2020, the WorthPoint Defendants filed a motion to dismiss, seeking

dismissal of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(2), 12(b)(4),

12(b)(5), and 12(b)(6). *See* Doc. 61. That motion to dismiss was denied by the Court without

prejudice, and Defendants were invited to refile its motion to dismiss "if and when service of

process has been properly executed." *See* Doc. 123. Defendant WorthPoint was served by its

agent, CT Corporation, on December 11, 2020, and Defendant Seippel was served by mail prior

to January 21, 2021. This Second Motion to Dismiss renews the Defendants contention that

Plaintiff has failed to state a claim upon which relief can be granted and seeks dismissal of

Plaintiff's claims against Defendant Seippel under Rule 12(b)(2).

## ARGUMENT

**I.    Plaintiff's Claims Against Mr. Seippel Must be Dismissed Under FRCP 12(b)(2).**

Because Plaintiff's claims arise under federal statutes that do not contain their own

jurisdictional provisions, "federal courts are to apply the personal jurisdiction rules of the forum

state," *to wit*, New York, "provided that those rules are consistent with the requirements of Due

Process." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010).  Here, Plaintiff fails to allege personal jurisdiction over Mr. Seippel under either of New York's Civil Practice Law and Rules ("CPLR") §301 or §302.

"Under New York's general jurisdiction statute, §301, personal jurisdiction is proper if the defendant is 'doing business' in New York so as to establish a presence in the State." *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 322 (S.D.N.Y. 1998).  To obtain general jurisdiction pursuant to CPLR §301 over an individual, he or she must be doing business in New York in his or her personal capacity, not merely as an officer of a corporation that does business in New York.  *Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 n.5 (S.D.N.Y. 1995).  "If jurisdiction cannot be obtained under the general jurisdiction statute, it may nevertheless be found pursuant to New York's long-arm statute, §302(a), which permits specific jurisdiction over a defendant when the plaintiff's claim relates directly to the defendant's New York contacts, however limited." *Karabu Corp.*, 16 F. Supp. 2d at 322.

Here, Plaintiff does not contend that Mr. Seippel "personally engaged in any business in New York sufficient to confer jurisdiction" over him in his individual capacity.  *Karabu Corp.*, 16 F. Supp. 2d at 323.  Plaintiff purports to sue Mr. Seippel solely by virtue of his role as an officer of WorthPoint.  However, it is well-established that such a general allegation that an officer controls a corporation is not sufficient to establish personal jurisdiction.[3]  Thus, Plaintiff's argument "necessarily relies on New York's agency theory of personal jurisdiction," *i.e.* that WorthPoint was acting as an agent of Mr. Seippel when engaging in the allegedly wrongful acts that gave rise to the litigation.  *See Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 647 (S.D.N.Y. 2008).

---

[3] *See e.g. Pilates, Inc. v. Current Concepts Kenneth Endelman*, 1996 U.S. Dist. LEXIS 15415, 1996 WL 599654, at *3 (S.D.N.Y. Oct. 18, 1996).

Under that theory, in order to attribute a corporation's New York contacts to an

individual, New York law requires a plaintiff to demonstrate not only that the corporate officer

"exercised some control over [the corporation] in the matter," but also that he or she was a

"'primary actor in the transaction in New York that gave rise to the litigation, and not merely

'some corporate employee.'" *Karabu Corp.*, 16 F. Supp. 2d at 323.   When a plaintiff relies solely

on vague and conclusory allegations that the corporate officer exercised control over the

corporation by virtue of his title or derived some benefit from the corporation's activities, courts

in this District routinely grant motions to dismiss.  *See e.g. Barron Partners, LP v. Lab123, Inc.*,

2008 U.S. Dist. LEXIS 56899, at *10 (S.D.N.Y. July 25, 2008); *Arma*, 591 F. Supp. 2d at 648;

*Pilates, Inc.*, 1996 U.S. Dist. LEXIS 15415, 1996 WL 599654, at *3.

While Plaintiff fails to even allege such control, Plaintiff also fails to plausibly assert that

Mr. Seippel had any direct involvement in the allegedly improper actions giving rise to this

litigation.  Indeed, once Mr. Seippel was informed about any purported improper acts, he took

reasonable steps to immediately rectify them and did not engage in any other conduct.  *See* Doc.

33 at 30-33; Doc. 61-1 at ¶ 5-6.  Accordingly, Plaintiff has failed to establish a *prima facie* case

for personal jurisdiction over Mr. Seippel.

Even if the Court could exercise personal jurisdiction over Mr. Seippel, Plaintiff's

complaint would fail for reasons beyond those set forth in Section II, because it is well-

established that "absent bad faith or fraud, corporate officers and directors acting within the

scope of their employment cannot be held personally liable for breaches of contract or tortious

acts committed by their corporations." *Rella v. N. Atl. Marine, Ltd.*, No. 02-CV-8573 (GEL),

2004 U.S. Dist. LEXIS 11567, 2004 WL 1418021, at *9 (S.D.N.Y. June 23, 2004).  Plaintiff has

not pled any facts to demonstrate that Mr. Seippel himself acted in bad faith or committed fraud.

## II.      Plaintiff's Claims Against Defendants Must Be Dismissed Under FRCP 12(b)(6).

For a complaint to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead

enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678-79 (2009).  Although a court considering a motion to dismiss must accept as true all

facts alleged in the complaint, it must dismiss a complaint that merely contains "'naked

assertion[s]' devoid of 'further factual enhancement.'"  *Id*.

In considering a motion to dismiss under Rule 12(b)(6), a district court "may consider the

facts alleged in the complaint, documents attached to the complaint as exhibits, and documents

incorporated by reference in the complaint." *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d

104, 111 (2d Cir. 2010).  In addition, "a court may consider…matters of which judicial notice

may be taken, [and] documents either in plaintiff['s] possession or of which plaintiff[] had

knowledge and relied on."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Normally, affirmative defenses must be plead and proved by a defendant.  *See* Fed. R.

Civ. P. 8(c)(1).  However, a defendant may raise an affirmative defense, such as the statute of

limitations, in a pre-answer motion to dismiss where it is clear from the face of the complaint and

its exhibits, or those matters of which judicial notice may be taken, that the plaintiff's claims are

barred.[4]

### A.  *Plaintiff Has Failed to Assert a Prima Facie Claim of Contributory Infringement Against Defendants.*

To state a claim for contributory copyright infringement, a plaintiff must allege: (1) direct

copyright infringement by a third party; (2) knowledge of the infringing activity; and (3) material

contribution to the infringement.  *See Matthew Bender & Co. v. W. Pub. Co.*, 158 F.3d 693, 706

---

[4] *See Staehr v. Hartford Fin. Servs. Group*, 547 F.3d 406, 426 (2d Cir. 2008); *Jeehoon Park v. Skidmore, Owings & Merril LLP*, 2019 U.S. Dist. LEXIS 171566, at *9 (S.D.N.Y., Sept. 30, 2019).

(2d Cir. 1998).  To plead facts sufficient to show that a defendant materially contributed to the alleged infringement, a plaintiff must allege not only that a defendant "encouraged or assisted others' infringement," but also that such participation was "substantial."  *See Arista Records LLC v. Lime Group LLC*, 784 F. Supp.2d 398, 423 (S.D.N.Y. 2011); *Brought to Life Music, Inc. v. MCA Records, Inc.*, 2003 U.S. Dist. LEXIS 1967, at *4-5 (S.D.N.Y., Feb. 14, 2003).  An allegation that the contributory infringer "provid[ed] the means to accomplish an infringing activity'" is insufficient to establish "material contribution."  *Brought to Life Music*, 2003 U.S. Dist. LEXIS, at *4-5.  Rather, the plaintiff must allege that the contributory infringer "act[ed] in concert with the infringer."  *Id.*

In the online context, some courts have also found that contributory liability can be imposed where a plaintiff alleges plausible facts which support that: (1) the contributory defendant has *actual* knowledge that *specific* infringing material is available using its system; (2) the contributory defendant can take "simple measures" to prevent further damage to copyrighted works; and (3) the contributory defendant continues to provide access to infringing works.  *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007).  But contributory infringement is not appropriate where a website operator is notified of an alleged infringement and takes reasonable steps to remove an allegedly infringing work.  *See Dawes-Ordonez v. Realtor Ass'n of Greater Fort Lauderdale, Inc.*, 2010 U.S. Dist. LEXIS 44160, at *12 (S.D. Fla., May 5, 2010).  Further, a claim for contributory infringement in the internet context should be dismissed where the element of volition is missing and the plaintiff's claim is based entirely on automatic processes (such as temporary storage or data transmittal).  *See Live Face on Web, LLC v. Control Grp. Media Co.*, 150 F. Supp. 3d 489, 499-500 (E.D. Pa. 2015).

Here, the Amended Complaint alleges that Estate Auctions Defendants directly infringed Plaintiff's copyright rights in the Biography by copying, displaying, and distributing the Biography in connection with their sale of the Painting on eBay.  *See* Doc. 36 at 3, 5, 11-12.  In addition, the Amended Complaint avers that a cached link referring to the Auction Listing reappeared in a Google search after WorthPoint deleted the Auction Listing from its website in response to a takedown notice from Plaintiff Trombetta.  *See* Doc. 36 at 2, 6, 7, 13, 32-33, 42, 46.  However, the Amended Complaint does not identify with specificity whether Plaintiff's contributory infringement claim is predicated on a direct infringement by Estate Auctions, Google, or some other third-party.  Nor does the Amended Complaint contain any factual assertions describing how Defendants encouraged, assisted, or facilitated the putative direct infringement by Estate Auctions or Google.  Without such information, Plaintiff's allegations are insufficient to put Defendants on notice of the nature of her contributory claim and must be dismissed as insufficiently pleaded.  *See Palmer/Kane LLC v. Benchmark Educ. Co. LLC*, 2020 U.S. Dist. LEXIS 4077, at *27-29 (S.D.N.Y., Jan. 6, 2020) (collecting cases where a contributory infringement claim is dismissed for failing to adequately identify the direct infringer or describe how the defendants acted in concert with the direct infringer).

But even if the Amended Complaint could be construed to assert that Defendants contributed to a direct infringement by either Google or the Estate Auctions Defendants, Plaintiff's claim of contributory infringement would fail.  A claim that Defendants contributed to a direct infringement by Google fails because a plaintiff must first allege a valid claim of direct infringement to establish contributory infringement,[5] and ***Plaintiff cannot establish that***

---

[5] *See e.g. Yash Raj Films (USA) Inc. v Kumar*, 2009 U.S. Dist. LEXIS 87230, at *2-3 (E.D.N.Y., Sept. 18, 2009) (finding that contributory copyright infringement is predicated upon the existence of a valid direct infringement and that a plaintiff must first establish direct infringement to establish contributory infringement).

***Google's caching of the website link to the Worthopedia entry containing the Auction Listing is an infringement by Google.*** *See Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006) (holding that Google does not engage in the volitional conduct necessary to establish direct infringement when it creates and disseminates a "cached" link to a web page containing the allegedly infringed work);[6] *see also BWP Media USA Inc. v. Polyvore, Inc.*, 2016 U.S. Dist. LEXIS 92121, at *15-16 (S.D.N.Y. 2016) (J. Abrams) ("courts in this district have dismissed direct infringement claims when plaintiffs can show only that the defendants created and housed automated systems through which plaintiffs' works were copied").

A contributory infringement claim based on Google's conduct also fails because the Amended Complaint does not allege that the WorthPoint Defendants "materially contributed" to an infringement by Google or neglected to take "simple measures" to prevent further infringement by Google.  It is undisputed that Defendants sent Google a removal request asking it to delete Google's cached links to the allegedly infringing Worthopedia entry shortly after learning of Plaintiff's infringement claim.  *See* Doc. 36 at 46.  And, while Plaintiff alleges that she was able to view Google's *cached links* to the allegedly infringing Worthopedia entry after notifying WorthPoint of her copyright claim, nothing in the Amended Complaint suggests that Defendants encouraged Google to preserve the cached Worthopedia links or that WorthPoint failed to promptly remove the allegedly infringing Worthopedia entry from its own website.  *See* Doc. 36 at 46; Doc. 33 at 30, 32-33 ("We have taken down any pages that you have asked to have taken down as a courtesy to you.  If you were to go into our site and do a search you would

---

[6] Interestingly, *Field* also makes clear that—when Plaintiff Trombetta conducted her Google search—it was Ms. Trombetta, not Google, who created and downloaded a copy of the cached website link to the Worthopedia entry containing the Auction Listing.  *See Field*, 412 F. Supp.2d at 1115 ("[W]hen a user requests a Web page contained in the Google cache by clicking on a "Cached" link, it is the user, not Google, who creates and downloads a copy of the cached Web page.  Google is passive in this process.").

see that.  If you are searching on Google…it is reflecting the past…but the page no longer exists on our site for Google or other's to link to"); *see also* Doc. 61-1 at ¶ 5 (stating that the allegedly infringing Worthopedia entry was "permanently" deleted from WorthPoint's website on or about February 4, 2016 and not reposted).  Accordingly, there is no factual or legal basis to for the Court to conclude that the WorthPoint Defendants contributed to an infringement by Google.

The same is true for a purported contributory infringement claim based on the alleged infringement by Estate Auctions.  The putative infringement by the Estate Auctions Defendants is alleged to have occurred in 2012 when the Estate Auctions Defendants created an eBay auction listing that contained an excerpt from Ms. Trombetta's Biography.  *See* Doc. 36 at 40. But no infringing conduct by the Estate Auctions Defendants is alleged to have occurred after the Painting was sold on eBay in December of 2012, and the Amended Complaint does not even aver that WorthPoint or Mr. Seippel had actual or constructive knowledge of Plaintiff's infringement claim when the Estate Auctions Defendants reproduced the Biography in 2012.  *See id.*  Therefore, Plaintiff cannot establish that Defendants WorthPoint and Seippel ***knowingly*** contributed to the Estate Auctions Defendants' direct infringement (which ceased approximately three years before WorthPoint was contacted by Plaintiff).  Nor can Plaintiff meet the material contribution prong in a contributory infringement claim based on an alleged direct infringement by Estate Auctions.  ***Indeed, the Amended Complaint is entirely devoid of any allegation that Defendants "act[ed] in concert with" the Estate Auctions Defendants.***  *See* Doc. 36 at 6 ("Plaintiff was NOT aware if Estate Auctions Inc and Worthpoint.com who both have connections to ebay worked in concert with one another").

B.  *Even If Plaintiff Could Assert a Prima Facie Claim of Contributory Infringement Against Defendants, Her Claim Would Be Barred by the Copyright Act's Statute of Limitations.*

Section 507(b) of the Copyright Act states that a copyright claim is barred by the statute of limitations if the plaintiff fails to assert the claim within three years of the date the claim "accrue[s]." *See* 17 U.S.C. § 507(b). Generally, a claim "accrues" for statute of limitations purposes when the plaintiff "has a complete and present cause of action." *See Petrella v. MGM*, 572 U.S. 663, 670 (2014). In the Second Circuit, the statute of limitations for direct copyright infringement claims accrues when "the copyright holder discovers, or with due diligence should have discovered" a complete claim for copyright infringement. *Psihoyos v. John Wiley & Sons. Inc.*, 748 F.3d 120, 125 (2d Cir. 2014). And it continues to run until the defendant is actually named in the complaint. *See Kregos v. AP*, 3 F.3d 656, 666 (2d Cir. 1993).

Accrual of a claim for contributory copyright infringement, like a claim for direct infringement, commences upon discovery of a complete cause of action. *See Goldberg v. Cameron*, 2009 U.S. Dist. LEXIS 59633, at *15-16 (N.D. Cal., July 10, 2009). In other words, the statute of limitations period in a contributory claim begins to run when there has been *both* (1) an act of direct infringement, and (2) a material contribution to that act. *Id.* But, because an act of direct infringement is not sufficient to establish a new claim for contributory infringement, the statute of limitations ***does not restart each time there is a separate and distinct direct infringement***. *See id.* at 15-16, 22-24 ("additional direct infringements do not result in additional contributory infringements arising from an earlier contributory act and the start of additional limitations periods in which to file suit"); *see also Arc Music, Inc. v. Henderson*, 2010 U.S. Dist. LEXIS 153186, at *7-9 (C.D. Cal., March 22, 2010); *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 890-91 (6th Cir. 2004); *A. Stucki Co. v. Buckeye Steel*

*Castings Co.*, 963 F.2d 360, 363 (Fed. Cir. 1992).[7]  Therefore, if an action for contributory infringement is based on the same acts of contribution, the plaintiff has only three years from the date that those acts are discovered to file suit.  *Id.*

**Here, Plaintiff's contributory infringement claim clearly accrued more than three years ago and, therefore, is barred by the Copyright Act's statute of limitations.**  In order for Plaintiff's contributory infringement claim to fall within the statutory period, Plaintiff must establish that she did not discover (or have reason to discover) the ***first*** direct infringement that Defendants are alleged to have contributed to before February 21, 2017 (i.e. three years prior to the date that they were named in the Amended Complaint).  *See* Doc. 36.  **By Plaintiff's own allegations in the Amended Complaint, she unambiguously states that she was aware of Defendants' alleged contributions to the *first* direct infringements by Google and the Estate Auctions Defendants in 2015, well before February 21, 2017.**

In the Amended Complaint, Plaintiff alleges that the Auction Listing was created by the Estate Auctions Defendants in December of 2012 and that she discovered that listing on WorthPoint's website in 2015.  *See* Doc. 36 at 2; Doc. 40 at 2 (finding same).  The Amended Complaint also alleges that in "Dec, 2015/Feb 2016 [Plaintiff] contacted Worthpoint.com by phone and wrote [an] e-mail requesting a take down notice."  Doc. 36 at 2, 31.  Further, it states that a number of links referencing the allegedly infringing Worthopedia entry reappeared in Google "[i]n the fall of 2016."  Doc. 36 at 4, 6, 13, 32-33.

In short, as pled, any claim that WorthPoint contributed to Google's putative direct infringement by failing to take "simple measures" to remove the links stored in Google's cache

---

[7] The *Goldberg* Court's holding is also supported by policy considerations.  Indeed, the statute of limitations for contributory infringement would be eviscerated if each new direct infringement resulted in the start of a new limitations period.

would have accrued "[i]n the fall of 2016"[8] when Plaintiff first discovered that Google continued

to display cached links referencing the Auction Listing and that WorthPoint's March 2016

removal request did not adequately address her concerns about the cached Google links.[9]  *See*

Doc. 36 at 4, 6, 13, 32-33.   Correspondingly, any claim that Plaintiff had based on The Estate

Auctions Defendants' alleged direct infringement would have accrued in 2015 when Plaintiff

first learned that the Auction Listing was reproduced in WorthPoint's Worthopedia.  *See* Doc. 36

at 2.  Accordingly, because it is clear on the face of the Amended Complaint that Plaintiff

Trombetta did not bring her contributory infringement claim until more than three years after

learning of the Auction Listing and Google's cached references to the Auction Listing, Plaintiff's

claim is time-barred and must be dismissed.

C. *Plaintiff's DMCA Claims Against Defendants Must Be Dismissed Because She Has Failed to Assert Prima Facie Claims Under Either 17 U.S.C. §§ 1202(a) or (b).*

Section 1202 of the DMCA was enacted to hamper copyright infringement in the digital

age by proscribing the falsification, removal, and alteration of "copyright management

information" ("CMI").  *See* 17 U.S.C. §§ 1202(a)-(b).  For purposes of Section 1202, CMI is

defined, in relevant part, as "any of the following information conveyed in connection with

copies of a work…(1) [t]he title and other information identifying the work…; (2) [t]he name of,

and other identifying information about, the author of a work, [and] (3) [t]he name of and other

identifying information about, the copyright owner of the work."  *See* 17 U.S.C. § 1202(c).

As with Plaintiff's putative copyright infringement claim, the nature of Plaintiff's DMCA

claims are not clearly set forth in the Amended Complaint.  But her DMCA claims appear to boil

---

[8] Arguably, Plaintiff's claim that Defendants contributed to Google's infringement accrued as early as March of 2016 when she alleges WorthPoint submitted an inadequate removal request to Google.  *See* Doc. 36 at 46.
[9] That Plaintiff alleges that Google continued to display the cached links referring to the Auction Listing until May 9, 2017 (*see* Doc. 36 at 7, 42) is immaterial because additional direct infringements do not result in a new claim for contributory infringement that would restart the statute of limitations.  *See Goldberg, supra* at 13.

down to two allegations: (1) that the WorthPoint Defendants violated Section 1202(a) of the DMCA by affixing "a copyright symbol c in a circle and the statement 'Copyrighted work licensed by WorthPoint'" to the photograph accompanying the Auction Listing; and (2) that the Defendants violated Section 1202(b) by distributing the Auction Listing with knowledge that the Estate Auctions Defendants had stripped the Biography of the notice "© Annamarie Trombetta. All rights reserved." *See* Doc. 36 at 5-6, 7-8, 14-17.  Both of Plaintiff's DMCA claims fail to plausibly allege a violation of the DMCA or to surmount the *Iqbal* pleading threshold.[10]

    a.  <u>Plaintiff's Claim Under 17 U.S.C. § 1202(a) Must Be Dismissed Because She Has Failed to Adequately Allege That Defendants Provided or Distributed False Copyright Management Information or That They Did So Knowingly and With An Intent to Facilitate Infringement of the Biography.</u>

In order to plead a violation of Section 1202(a) of the DMCA, a plaintiff must plausibly allege: (1) that the defendant knowingly provided or distributed false CMI; and (2) that defendant did so with the intent to induce, enable, facilitate, or conceal an infringement. *Krechmer v. Tantaros*, 747 F. App'x 6, 9-10 (2d Cir. 2018).  The first task in assessing a claim under Section 1202(a) is to determine whether "false CMI" was affixed to the work being assessed.  *Laser Kitten, LLC v. Marc Jacobs Int'l, LLC*, 2018 U.S. Dist. LEXIS 171962, at *5-7 (S.D.N.Y. Oct. 4, 2018).

In this District, courts that have considered this question have applied a two-pronged analysis "in which they determine (1) whether information defendant provided in connection with the allegedly infringing work is CMI under §1202(c)'s definition, and, if it is CMI, (2) whether that information was false."  *Id.*  To be CMI, information must be the type of information detailed in §1202(c) and be "conveyed in connection with" copies of the *work at issue*.  *Id.*  Where alleged CMI relates to a work in which the plaintiff does not own a copyright

---

[10] Like the contributory infringement claim, the DMCA claims are barred by 17 U.S.C. §507(b).  *See infra* at 23-25.

interest, it cannot serve as the foundation for his or her Section 1202(a) claim.  *See*

*SellPoolSuppliesOnline.com LLC v. Ugly Pools Ariz., Inc.*, 344 F. Supp. 3d 1075, 1080-83 (D.

Ariz. 2018) (finding that a copyright notice on the footer of defendant's website was not CMI

because the copyrighted work at issue for plaintiff's Section 1202(a) claim was a collection of

photographs and not the website at large); *Stevens v. Corelogic, Inc.*, 194 F. Supp. 3d 1046 (S.D.

Cal. 2016) (finding same).

      Here, Plaintiff's claim under Section 1202(a) must be dismissed because she has not

adequately alleged that any CMI was affixed to a work in which she owns a copyright interest.

To be sure, the Amended Complaint avers that Defendant WorthPoint added the notice "©

Copyrighted work licensed by WorthPoint" to a third-party authored photograph (the "Copyright

License Notice").  *See* Doc. 36 at 5-6, 15, 33, 40-41.  But that allegation is insufficient to satisfy

the subject matter and proximity requirements for CMI that are set forth in Section 1202(c).  The

Copyright License Notice fails the subject matter requirement of Section 1202(a) because it

relates to the ***licensing history of a work obtained from eBay*** and does not convey anything

about the categories of information, such as "title," "author," or "copyright *owner*," that qualify

as CMI under Section 1202(c).  *See* 17 U.S.C. § 1202(c).  Likewise, the Copyright License

Notice fails the proximity requirement of Section 1202(c) because it simply was not "conveyed

in connection with" a work in which Plaintiff asserts a copyright interest.  *See* Doc. 36 at 40-41

(screen shot of the allegedly false CMI); *see also* Doc. 36 at 2, 47-48.  In fact, the Amended

Complaint appears to concede that the Copyright License Notice was not affixed near the

*Biography* in which Plaintiff asserts a copyright interest[11] and that it only appeared directly

---

[11] *See e.g.* Doc. 36 at 2 (stating that Plaintiff's infringement claim is based on the "literary composition that the Plaintiff wrote" and not the Auction Listing or accompanying Photograph); Doc. 36 at 47-48 (copyright registration indicating that Plaintiff's claim relates to her website biography).

underneath the Auction Listing *photograph* (in which she asserts no copyright rights).  *See id.; see also* Doc. 36 at 5-6, 15, 33 ("Worthpoint.com added to the *photograph* of the…canvas…a copyright symbol c in a circle and the statement 'Copyrighted work licensed by Worthpoint.'") (emphasis added).  That is insufficient to assert a claim that the Copyright License Notice is CMI with respect to the *relevant work* and warrants dismissal of Plaintiff's Section 1202(a) claim.  *See e.g. SellPoolSuppliesOnline.com LLC*, 344 F. Supp. 3d at 1080-83.

Plaintiff's Section 1202(a) claim must also be dismissed because she has not alleged that the Copyright License Notice is false.  Where, as here, the alleged CMI is intended to relate to a compilation, derivative, or collective work at large[12] and not an individual work that is incorporated therein, courts have held that the CMI for the compilation, derivative, or collective work is not rendered false simply because the larger work is alleged to contain an infringing component.[13]  But, even if that were not the case, Plaintiff's claim would fail Section 1202(a)'s falsification requirement because **the Copyright License Notice was duly affixed by WorthPoint to communicate true information**.  The Auction Listing and accompanying photograph were in fact "licensed by WorthPoint," and Plaintiff's Amended Complaint not only fails to allege otherwise, but also repeatedly acknowledges that the Auction Listing was obtained by WorthPoint through a license agreement with the eBay affiliate Terapeak.[14]  Accordingly, by Plaintiff's own admission, there is nothing untrue about the statement "© Copyrighted work licensed by WorthPoint" and no basis for her Section 1202(a) claim.

---

[12] As stated above, the Copyright License Statement says nothing about the Biography and is intended to convey true information regarding the source of the auction data that WorthPoint has compiled in its Worthopedia database.

[13] *See e.g. Jeehoon Park*, 2019 U.S. Dist. LEXIS 171566, at *34-35 (holding that a defendant did not violate Section 1202(a) by applying its own CMI to a derivative work that was alleged to have incorporated and infringed plaintiff's work); *see also Faulkner Press, L.L.C. v. Class Notes, L.L.C.*, 756 F. Supp. 2d 1352, 1359-60 (N.D. Fla. 2010).

[14] *See e.g.* Doc. 36 at 5 ("Worthpoint.com 'Bought' the information of the sale of this artwork"); Doc. 93 at 7 ("What is duly documented is that WorthPoint bought the false data from Terapeak").

Although a court need not consider the scienter element of Section 1202(a) where a plaintiff fails to adequately allege the presence of "false CMI," Plaintiff's claim cannot satisfy that prong of Section 1202(a) either.  In view of information alleged and submitted, there is no possible finding other than the Defendants were unaware of Plaintiff's copyright and DMCA claims prior to being contacted by Plaintiff and that they caused the Auction Listing and Copyright License Notice to be permanently deleted from WorthPoint's website shortly after they became aware of Plaintiff's claim.  *See* Doc. 61-1 at ¶ 5.  Moreover, Plaintiff has failed to allege that she actually viewed the purportedly false Copyright License Notice on *WorthPoint's website* after it was permanently deleted from its website on February 4, 2016.  *See* Doc. 36 at 15-16; Doc. 93 at 13, 20.  In fact, while Plaintiff contends that the Auction Listing was "reposted…on the internet" and viewable in *Google's* search results[15] (*see* Doc. 36 at 15, 25, 32-34), *Plaintiff has explicitly acknowledged that the Auction Listing photograph and accompanying Copyright License Notice were not viewable on WorthPoint's website after Defendants became aware of her copyright claims*.  *See* Doc. 93 at 6, 93-5 ("Plaintiff submits a new EXHIBIT that proves that the WorthPoint Corporation listed the post however ***there was a "NO IMAGE AVAILABLE" notice right next to the full title 1972 Original Oil Painting which was a hyperlinked title***" [Emphasis supplied]).  And she has submitted exhibits which demonstrate that the Defendants genuinely believed that the Auction Listing and allegedly false CMI were permanently removed from WorthPoint's website in 2016.  *See* Doc. 33 at 30-33 ("We have taken down any pages that you have asked…If you were to go into our site and do a search you would see that…I do not see anything on these pages you are referring to…I did a search myself.").  In short, Plaintiff's own filings support Defendants' sworn testimony and

---

[15] Of course, Google's distribution of a cached website link would not be relevant to a claim that the *WorthPoint Defendants* "provide[d]" or "distribute[d]" false CMI.  17 U.S.C. § 1202(a).

demonstrate that there is no plausible basis for finding that the Defendants "knowingly" distributed or provided false CMI with an "intent to induce, enable, facilitate, or conceal [an] infringement."

   b.  Plaintiff's Claim Under 17 U.S.C. § 1202(b) Must Be Dismissed Because She Has Failed to Adequately Allege That Copyright Management Information Was Removed from The Biography or That Defendants Distributed The Biography With Knowledge That Its CMI Was Removed.

To establish a DMCA violation under Section 1202(b)(1), a plaintiff must establish: "(1) the existence of CMI on the [infringed work]; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." *See Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 337-38 (S.D.N.Y. 2019). Alternatively, a plaintiff may assert a claim under Section 1202(b) by alleging that the defendant has "distribut[ed a copyrighted work]…knowing that copyright management information has been removed or altered." *Id.* Under the express wording of Section 1202(b), a plaintiff asserting claims under Section 1202(b)(1), (b)(2), or (b)(3) must prove that any missing CMI was removed or altered "without the authority of the copyright owner" and that some affirmative action was taken with respect to pre-existing CMI.[16]

As with falsification claims under Section 1202(a), a claim under Section 1202(b) must allege that the relevant CMI was "conveyed in connection with" the copyrighted work in question. *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp. 2d 920, 928-29 (N.D. Ill. 2013) ("a defendant must remove the CMI from the 'body' or the 'area around' the work to violate the DMCA").[17] In fact, a number of courts have held that a generic website

---

[16] *See* 17 U.S.C. § 1202(c); *Stevens*, 194 F. Supp. 3d at 1053, n. 5; *see also Agence Fr. Presse v. Morel*, 2014 U.S. Dist. LEXIS 112436, at *24-25 (S.D.N.Y. Aug. 13, 2014) (finding that the dictionary definitions of "removal" and "alteration" require the defendant to manipulate the original CMI in some manner).

[17] *See also Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, No. 03-4962, 2004 U.S. Dist. LEXIS 23052, at *14 (E.D. Pa., Nov. 12, 2004) (holding that "to be actionable under §1202(b), a defendant must remove…[CMI] from the 'body' of, or area around, plaintiff's work itself").

footer is not CMI with respect to discrete works on a website and cannot form the basis of a Section 1202(b) removal claim. *See Id.* at 928-29; *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999).

In *Personal Keepsakes*, the Court found on a ***motion to dismiss*** that a copyright notice that was placed at the bottom of every page of a plaintiff's website in a generic footer was not "conveyed in connection with" discrete poems that were displayed on plaintiff's website and, therefore, not removed or altered when defendant copied the poems. Similarly, in *Kelly*, the District Court for the Central District of California found that CMI was not removed from a series of photographs found on a website when the only CMI available appeared on the website in the surrounding text but not on or near the photographs themselves.

Here, Plaintiff does not indicate whether she is seeking to hold the Defendants liable under Section 1202(b)(1), (b)(2), or (b)(3). But her claim under Section 1202(b) appears to be rooted in Section 1202(b)(2) or (b)(3) and based on the Defendants' alleged distribution of an auction listing which contained a biography that was purged of the notice "© Annamarie Trombetta. All rights reserved" by the Estate Auctions Defendants.[18] Plaintiff's distribution claim against the WorthPoint Defendants does not state a plausible claim for relief.

As a threshold matter, Plaintiff's claim under Section 1202(b) fails because she has failed to allege necessary actions, knowledge or concealment by Defendants or plausibly that CMI was removed from her Biography "without the authority of the copyright owner." Plaintiff has acknowledged that she gave the website https://www.askart.com/ ("askArt") permission to display the Biography on its website without CMI. *See* Doc. 29 at 13 ("For the record AskArt

---

[18] Although Defendants do not construe the Amended Complaint as seeking relief under Section 1202(b)(1), such a claim would also fail because Plaintiff does not contend that the Defendants engaged in an affirmative act of removal or alteration. *See e.g. Craig*, 380 F. Supp. 3d at 337-38.

received my permission for my biography").  Moreover, numerous documents, including the Auction Listing itself, make clear that the Estate Auctions Defendants obtained the Biography excerpt from askArt's website and not Plaintiff Trombetta's personal website.  *See e.g.* Doc. 36 at 40 ("For those not familiar with Trombetta, here is information about her *from off AskArt as they got it from her*") (emphasis added); *see also* Doc. 56. at 1-2 ("I used biographical information about Plaintiff that I found on AskArt.com…[a]ll of the information about Plaintiff that I included in the eBay listing was gleaned from AskArt.com").  Accordingly, the Defendants submit that Plaintiff's Section 1202(b) claim is premised on an act of removal by askArt that was expressly or impliedly authorized by Plaintiff and cannot satisfy the gateway element of the DMCA.

But, even if that were not the case, Plaintiff's Section 1202(b) claim would fail because the generic website footer that Plaintiff contends was removed is simply not CMI ***with respect to the Biography***.  In the Amended Complaint, Plaintiff does not assert that her website was copied as a whole.  Nor does she assert that the alleged CMI was uniquely tied to the Biography.  *See* Doc. 36 at 7-8, 14-17, 36-39; Doc. 33 at 45-46 ("Plaintiff's website has always had *on each page of her website* the copyright symbol and the statement 'all works on this site are © Annamarie Trombetta. All rights reserved'") (emphasis supplied).  Instead, Plaintiff contends that a copyright notice buried at the bottom of every page of her website should be construed as CMI with respect to her Biography and all other works subsiding on her website.[19]  However, just as

---

[19] *See* Doc. 36 at 7-8, 14-17 (asserting a DMCA claim based on the removal and distribution of the generic footer on Plaintiff's website); Doc 36. at 36-39 (screen shot of the Biography in which Plaintiff Trombetta acknowledges that her DMCA removal claim is based on her website's footer and the contact page of her website).

in *Personal Keepsakes*, Plaintiff's attempt to piggyback her removal claim on nondescript CMI for the website as a whole must be rejected and dismissed as a matter of law.[20]

Dismissal of Plaintiff's Section 1202(b) claim is also warranted under Section 1202(b)'s scienter requirement.  Defendants promptly and permanently deleted the Biography from the Worthopedia after receiving Plaintiff's demand letter, and Plaintiff's vague allegations of post-cease-and-desist conduct relate only to the distribution of a *link* to the Auction Listing by *Google* (not WorthPoint).[21]  *See* Doc. 61-1 at ¶ 5; Doc. 33 at 18-19, 26-29, 30-35, 38-39; Doc. 36 at 32-34.  As noted previously in the context of Section 1202(a), such allegations cannot be reasonably construed as supporting a claim that the WorthPoint Defendants knowingly distributed a copyrighted work in violation of the DMCA and do not pass *Iqbal's* plausibility threshold.  But one need not wade through Plaintiff's tortuous filings and contradictory statements to determine that she has not plausibly pleaded her Section 1202(b) claim.  Plaintiff's various demand letters to WorthPoint relate to WorthPoint's allegedly false Copyright License Notice (i.e. her claim under Section 1202(a)) and make no mention of Estate Auctions' alleged removal of the notice "© Annamarie Trombetta. All rights reserved."  *See* Doc. 36 at 32-34; Doc. 33 at 36-37.  Accordingly, Defendants submit that they had no reason to know about her DMCA *removal* claim until the filing of this litigation and that Plaintiff's claim under Section 1202(b) would fail the scienter element even if she could point to a post-cease-and-desist distribution of the Biography by WorthPoint.

---

[20] Indeed, to hold otherwise would be to create a "gotcha" cause of action under the DMCA any time any text or image was copied on a website and embolden opportunistic copyright plaintiffs.  *See Personal Keepsakes*, 975 F. Supp. 2d 920 at 929 (finding that a "rule" is necessary to "prevent…a 'gotcha' system where a picture or piece of text has no CMI near it but the plaintiff relies on a general copyright notice buried elsewhere on the website.")

[21] Although Plaintiff arguably also contends that she viewed *hyperlinks* to the Auction Listing on the Worthopedia, she never alleges that she was able to view the *Biography* on the Worthopedia after it was permanently removed on February 4, 2016.  And she appears to concede that the links to the Auction Listing were deactivated and that the underlying page containing the Biography was removed.  *See* Doc. 93 at 6, 93-5.

   D. *Even If Plaintiff Could Assert a Prima Facie DMCA Claim Against Defendants, Her*
      *Claim Would Be Barred by the Copyright Act's Statute of Limitations.*

   Plaintiff's DMCA claims arise under Title 17 of the United States Code and are,

therefore, subject to the same, three-year statute of limitations as her contributory infringement

claims.  *See* 17 U.S.C. §§ 507(b), 1202(a), (b); *see also Hirsch v. Rehs Galleries, Inc.*, 2020 U.S.

Dist. LEXIS 32926, at *8-9 (S.D.N.Y., Feb. 26, 2020).  As with a claim for direct or contributory

infringement, the statute of limitations in a claim under Section 1202(a) or (b) of the DMCA

begins to run when the plaintiff learned, or reasonably should have learned, of the alleged

violation.  *See Hirsch*, 2020 U.S. Dist. LEXIS 32926, at *8-9 (finding that the discovery rule

applies not only to infringement claims but to claims under 17 U.S.C. § 1202).  However, "there

is no parallel separate-accrual rule that applies to…DMCA claim[s]" and additional acts of direct

copyright infringement related to the DMCA violation do not restart the Copyright Act's three-

year statute of limitations.  *See Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014,

1025-26 (9th Cir. 2019); *see also Goldberg*, 2009 U.S. Dist. LEXIS 59633, at*18-26.

   Here, Plaintiff alleges that copyright management information was removed from the

Biography in 2012 and that Defendants provided false copyright management information

shortly thereafter by adding the Copyright License Notice to the photograph accompanying the

Auction Listing.  *See* Doc. 36 at 2-3, 5-6, 7-8, 14-16, 33.  Plaintiff also avers that Defendants

began knowingly distributing improper CMI when it ignored her February 20, 2016 email

regarding the Copyright License Notice (hereinafter, the "February 20th Demand").[22]  *See* Doc.

36 at 4, 6, 8, 13-16, 31, 33-34.  Of course, for the reasons set forth above, Plaintiff fails to

---

[22] The February 20th Demand states, *inter alia*, "[t]here is a photo of a signature A. Trombetta with the eBay logo and Copyright symbol written 'Copyrighted work licensed by WorthPoint' with your company logo in yellow next to it.  This is not my signature."  Doc. 36 at 33.

plausibly assert a violation of either Section 1202(a) or 1202 (b) of the DMCA. But Plaintiff's DMCA claims against Defendants WorthPoint and Seippel also fail because they are untimely.

Under Plaintiff's own theory of the case, her claim under Section 1202(a) of the DMCA would have accrued either when she discovered that Defendants affixed the Copyright License Notice to the Auction Listing photograph, i.e. in 2015 (*see* 17 U.S.C. § 1202(a)(1)), or when she claims to have discovered that the Defendants ignored the allegations of "false CMI" set forth in the February 20th Demand, i.e. "[i]n the fall of 2016" (*see* 17 U.S.C. § 1202(a)(2)). *See* Doc. 36 at 2, 4-6, 8, 14-16, 32-34 ("In the fall of 2016…this same false listing was reposted on the internet"). Similarly, Plaintiff's claim under Section 1202(b) would have accrued against the Defendants upon her discovery of the first post-cease-and-desist distribution of the allegedly altered Biography.[23] *See id.* That accrual date would have also been "[i]n the fall of 2016" (had it occurred). *Id.* **Accordingly, on the face of the Amended Complaint, there is simply no basis to find that a DMCA claim accrued within three years of the filing of the Amended Complaint.** In fact, because WorthPoint *permanently deleted* all CMI relating to the Auction Listing and Biography from its website in February of 2016 (*see* Doc. 61-1 at ¶ 5; Doc. 33 at 30), it would have been impossible for Defendants to commit any act proscribed by the DMCA within the last three years.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' Second Motion to Dismiss, find no personal jurisdiction over Seippel and dismiss Plaintiff's claims against the Defendants with prejudice.

---

[23] To the extent that Plaintiff asserts a claim under Section 1202(b)(1), her claim would have accrued in 2012 upon the Estate Auctions Defendants' removal of the notice "© Annamarie Trombetta. All rights reserved" from her Biography. *See* Doc. 36 at 2, 7-8, 40. Such conduct is not relevant to any claim against Defendants but regardless it also occurred more than three years prior to the filing of the Amended Complaint.

Dated: January 29, 2021                              Respectfully Submitted,


                                                    _____/S/_____
                                                    Arnold P. Lutzker (Admitted *Pro Hac Vice*)
                                                    LUTZKER & LUTZKER LLP
                                                    1233 20th St. NW, Suite 703
                                                    Washington, DC 20036
                                                    202.408.7600
                                                    202.408.7677 Facsimile
                                                    arnie@lutzker.com

                                                    *Attorney for Defendants WorthPoint*
                                                    *Corporation and Seippel*

## CERTIFICATE OF SERVICE

I, Arnold P. Lutzker, hereby certify that on January 29, 2021, I electronically filed a true copy of the foregoing Memorandum in Support of Defendants WorthPoint and Seippel's Second Motion to Dismiss with the Clerk of the Court by using the CM/ECF system.  I also certify that the foregoing document is being served this day upon Plaintiff Trombetta at the following address:

> Annamarie Trombetta
> 175 East 96th Street (Apt. 12 R)
> New York, NY 10128

I made such service by personally enclosing the aforementioned document in a properly addressed, prepaid box and delivering it to an official depository under the custody of the United States Postal Service within the District of Columbia.

_____/S/_____
Arnold P. Lutzker
