UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 12/20/21

ANNAMARIE TROMBETTA,

          Plaintiff,

       v.

NORB NOVOCIN, MARIE NOVOCIN,
ESTATE AUCTIONS, INC., WILLIAM
SEIPPEL, WORTHPOINT CORPORATION,

         Defendants.

18-CV-993 (RA)

<u>OPINION & ORDER</u>

RONNIE ABRAMS, United States District Judge:

Having previously denied Defendants William Seippel and WorthPoint Corporation's (collectively, "the Worthpoint Defendants") motion to dismiss for improper process and service of process, the Court now considers their motion to dismiss for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. For the reasons below, the motion is granted in part and denied in part. In short, Plaintiff's claims for direct copyright infringement, under the Digital Millennium Copyright Act ("DMCA"), and under the Visual Artists Rights Act ("VARA") survive against WorthPoint, but all others are dismissed.

## BACKGROUND[1]

The history of this litigation is described more fully in the Court's earlier decisions. *See Trombetta v. Novocin*, 414 F. Supp. 3d 625 (S.D.N.Y. 2019); *see also Trombetta v. Novocin*, No. 18-CV-993 (RA) (SLC), 2020 WL 1304120 (S.D.N.Y. Mar. 19, 2020), *Trombetta v. Novocin*, No. 18-CV-

---

[1] The facts discussed in this Opinion are drawn from the operative complaint, Dkt. 36 ("Compl."), and Plaintiff's opposition to the instant motion to dismiss, Dkt. 152 ("Pl.'s Opp."). *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."). These facts are assumed to be true for purposes of resolving the motion. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Additionally, some facts are drawn from the Declaration of William Seippel, dated June 24, 2020. Dkt. 143 Ex. 2 ("Seippel Decl."). Those facts are only relied upon in connection with the jurisdictional questions. *See USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 11 F. Supp. 3d 244, 253 n.2 (E.D.N.Y. 2014).

993 (RA), 2020 WL 7053301 (S.D.N.Y. Nov. 24, 2020).  Only the facts relevant to the instant motion are recounted herein.

Plaintiff Annamarie Trombetta, who is representing herself *pro se*, is an artist who has owned and operated her own business for nearly thirty years.  *See* Dkt. 152 at 1 ("Pl.'s Opp.").  Defendant WorthPoint Corporation ("Worthpoint") operates the website worthpoint.com, "a searchable online database that provides subscribing users with historical pricing data from actual auction and retail sales" of artwork.  Seippel Decl. ¶ 2.  Trombetta alleges that Worthpoint is incorporated in Georgia. *See* Dkt. 33 at 5.[2]  Defendant Seippel is the founder and Chief Executive Officer of Worthpoint. Seippel Decl. ¶ 2.  He is a resident of Georgia.  Seippel Decl. ¶ 1.  Defendants Marie and Norb Novocin are the operators of Defendant Estate Auctions Inc. ("EAI"), which sells art and other collectibles via eBay.  *See* Compl. at 2, 3; *see also* Pl.'s Opp. at 2.  Other than the fact that they "both have connections to ebay," Trombetta does not allege that EAI and Worthpoint are connected in any way.  *See* Compl. at 6.

In August 2015, Trombetta discovered on worthpoint.com a page containing an eBay listing for a 1972 oil painting entitled "Man with Red Umbrella."  *See* Compl. at 2–3; Pl.'s Opp. at 3; (the "2015 post").  The post stated that the painting had been sold by EAI at auction on eBay for $181.50.  *See* Compl. at 3, 34.  According to the 2015 post, the "Man with Red Umbrella" painting had been painted by Trombetta.  *See id.*; Pl.'s Opp. at 3.  The 2015 post included a detailed biography of Trombetta, which she had authored and posted to her own website, as well as a photograph of her purported signature on the painting.  *See* Compl. at 3, 34–37, 41; Pl.'s Opp. at 21.

According to Trombetta, none of this was true: she did not paint "Man with Red Umbrella," the signature shown on the 2015 post was not hers, and although the biography was hers, she alleges it was

---

[2] Although its principal place of business is in Georgia, it appears the company is incorporated in Delaware.  *See* Georgia Corporations Division, Online Business Search, available at: https://ecorp.sos.ga.gov/BusinessSearch/BusinessInformation?businessId=1384829&businessType=Foreign%20Profit%20Corporation&fromSearch=True.

taken without permission from her copyrighted website. *See* Compl. at 2–3; Pl.'s Opp. at 21.

Trombetta asserts that the 2015 post's description of the painting as "shabby chic," as well as the

relatively low price at which the painting sold, caused her harm by "interfer[ing] with her bonafide

credentials." Compl. at 3. Following the publication of the 2015 post, Trombetta claims that "all sales

and prospects for [her] artwork came to a grinding halt," and she "lost the sale of a painting to a

potential collector in the amount of $ 8500 dollar." Pl.'s Opp. at 4. Trombetta thus sought to have the

2015 post taken down to prevent it from further damaging her reputation. Compl. at 2–3.

Trombetta claims to have spent from August through November of 2015 researching how to

take the 2015 post down, including by speaking with eBay staff about the matter. Pl.'s Opp. at 6. In

December 2015, Trombetta spoke with a Worthpoint employee about removing the 2015 post. Compl.

at 4. But in February 2016, it remained active. Pl.'s Opp. at 9. On February 3, 2016, she again spoke

with a Worthpoint employee about the 2015 post, and on February 20, 2016, she communicated with

this same employee, as well as Seippel, about the post. Compl. at 4. Trombetta contends that shortly

after this, on March 3, 2016, Seippel instructed an employee to file a temporary removal request with

Google to have the 2015 post taken down. Pl.'s Opp. at 6. In the fall of 2016, however, she alleges

that the 2015 post reappeared. Compl. at 4. Despite her numerous attempts to have the post removed,

it "was on the internet until the spring of 2017." Compl. at 7. Specifically, she alleges that on May 9,

2017, she searched on Google "1972 original oil painting Man with Red Umbrella signed Annam[arie

Trombetta]," and there were five results that populated in response to that search from

Worthpoint.com, the first of which appears to be a link to another web post similar to the 2015 post.

*See* Compl. at 42 ("Exhibit 5") (the "2017 post").

On February 5, 2018, Trombetta filed this action against Norb Novocin, Marie Novocin, and

EAI (collectively, "the EAI Defendants"). Dkt. 1. On December 3, 2019, Trombetta filed a motion for

leave to amend her complaint to add claims against the Worthpoint Defendants. Dkt 29. On

January 17, 2020, she filed a proposed amended complaint which included claims against both the EAI Defendants and the Worthpoint Defendants. Dkt. 33. One month later, in response to a motion to dismiss filed by the EAI Defendants, Trombetta filed a document entitled "Plaintiff's Response in Opposition to the Motion to Dismiss," Dkt. 36, which has since been deemed the operative complaint, *see* Dkt. 40 at 2 n.2.

## LEGAL STANDARD

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).[3] For a motion to dismiss under Rule 12(b)(2), the Court may rely on materials outside the pleadings. *See USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 11 F. Supp. 3d 244, 253 n.2 (E.D.N.Y. 2014) (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)). "Where a court relies on pleadings and affidavits, rather than conducting a full-blown evidentiary hearing, the plaintiff need only make a *prima facie* showing that the court possesses personal jurisdiction over the defendant." *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). "All pleadings and affidavits are to be construed in the light most favorable to the plaintiff," *id*., but "the plaintiff cannot rely merely on conclusory statements or allegations; rather, the *prima facie* showing must be factually supported," *Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co.*, No. 00-CV-5663 (MBM), 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001).

In evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "accept as true the factual allegations of the complaint, and construe all reasonable inferences that can be drawn from the complaint in the light most favorable to the plaintiff." *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009). While a court need not credit "threadbare recitals of the elements of a

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

cause of action, supported by mere conclusory statements," where "there are well-pleaded factual allegations, a court should assume their veracity." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "Where, as here, the complaint was filed *pro se*, it must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a *pro se* complaint must state a plausible claim for relief." *Id.*

In evaluating a motion to dismiss under Rule 12(b)(6), a court may consider documents incorporated into the complaint, including "any written instrument attached to [the complaint] as an exhibit, materials incorporated in [the complaint] by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). Further, "in deciding a motion to dismiss a *pro se* complaint, it is appropriate to consider materials outside the complaint to the extent that they are consistent with the allegations in the complaint, including documents that a *pro se* litigant attaches to her opposition papers." *Pearson v. Walden Univ.*, 144 F. Supp. 3d 503, 508 (S.D.N.Y. 2015); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (stating that "a district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion").

## DISCUSSION

### I. Defendant Seippel

The Worthpoint Defendants first move to dismiss Trombetta's claims against Seippel for lack of personal jurisdiction. Dkt. 143 at 5 ("Defs.' Mem."). "In litigation arising under federal statutes that do not contain their own jurisdictional provisions, such as the Copyright Act … federal courts are to apply the personal jurisdiction rules of the forum state, provided that those rules are consistent with the requirements of Due Process." *Penguin Group (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir.

2010) (internal citations omitted).  New York's personal jurisdiction rules allow for the exercise of

personal jurisdiction over a non-domiciliary if:

> 1. [the defendant] transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state . . . ; or
> 3. commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

N.Y. C.P.L.R. § 302(a).  Personal jurisdiction over a non-domiciliary is limited, however, to causes of

action "arising from" the enumerated acts.  *See Joint Stock Co. Channel One Russia Worldwide v.*

*Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2017 WL 825482, at *7 (S.D.N.Y. Mar. 2, 2017).

Trombetta seemingly asserts that personal jurisdiction exists under all three sub-sections of

§ 302.  *See* Pl.'s Opp. at 16–20.  The Court will address each in turn.

### A.  N.Y. C.P.L.R. § 302(a)(1)

Under § 302(a)(1), a court may exercise personal jurisdiction over a non-domiciliary defendant

if that defendant "transacts any business within the state or contracts anywhere to supply goods or

services in the state."  N.Y. C.P.L.R. § 302(a)(1).  To demonstrate that an individual "transacted

business" within the meaning of the statute, "there must have been some 'purposeful activities' within

the State that would justify bringing the nondomiciliary defendant before the New York courts."

*McGowan v. Smith*, 52 N.Y.2d 268, 271–72 (N.Y. 1981) (collecting cases).  "Purposeful activities are

those with which a defendant, through volitional acts, avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws." *Fischbarg v.*

*Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007).  Furthermore, there must be a sufficient nexus between the

transaction and the cause of action.  *Copterline Oy v. Sikorsky Aircraft Corp.*, 649 F. Supp. 2d 5, 12

(E.D.N.Y. 2007) (citing *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 764 (2d Cir.1983)); *see also*

*McGowan*, 52 N.Y.2d 268, 272–73.  As the Worthpoint Defendants rightly note, Trombetta has not alleged that Seippel engaged in any conduct within the state.  Defs.' Mem. at 6.  Trombetta's argument that Seippel transacted business in New York seems to be based on two emails, neither of which can support this conclusion.  *See* Pl.'s Opp. at 8–9, 17.

The first email is a generic email sent to customers.  Trombetta has not alleged that Seippel was personally involved in the circulation of this email.  *See* Pl.'s Opp. at 12 ("The WorthPoint Corporation consistently and simultaneously kept emailing investment solicitation to the Plaintiff.").  An example of such an email is attached to her opposition brief.  The email, which is allegedly "from" William Seippel, was sent after Trombetta paid $19.99 for a Worthpoint monthly membership.  Dkt. 152-6 at 2.  Despite being signed "Sincerely, William Seippel, CEO and Founder of WorthPoint.com," it is apparent that the email is merely an automatic response sent by "support@worthpoint.com" to any new subscriber, not an email sent by Seippel himself.  In similar circumstances, this Court has held that "jurisdiction will lie only if the posting is intended to target or focus on internet users in the state where the cause of action is filed."  *See Metamorfoza, D.O.O. v. Big Funny LLC*, No. 19-CV-11743 (RA), 2021 WL 735243, at *4 (S.D.N.Y. Feb. 25, 2021) (finding there was no *prima facie* allegation under § 302(a)(1) based on a nonspecific solicitation email) (quoting *Seldon v. Direct Response Techs*., No. 03-CV-5381 (SAS), 2004 WL 691222, at *4 (S.D.N.Y. Mar. 31, 2004)); *see also Sino Clean Energy Inc. v. Little*, 953 N.Y.S.2d 553, 2012 WL 1849658, at *7 (Sup. Ct. N.Y. Cnty. May 21, 2012), *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 414 (S.D.N.Y. 2021).  This generic email thus does not satisfy § 302(a)(1).

The second email contains responses alleged to have been written by Seippel to Trombetta. Pl.'s Opp. 8–9.  Even accepting that Seippel himself authored these responses, Seippel's email merely responds to Trombetta's questions regarding the listing.  It is not an attempt to solicit business or a volitional act that would implicate the laws of New York in any fashion.  The email thus cannot form

the basis for a conclusion that Seippel "transacted" business in New York.  *See McGowan*, 52 N.Y.2d 268, 271–73.

Accordingly, the Court concludes that the complaint is insufficient to support a finding of personal jurisdiction under C.P.L.R. § 302(a)(1).

### B.  N.Y. C.P.L.R. § 302(a)(2)

Section 302(a)(2) applies only if a defendant "commits a tortious act within the state."  As noted above, neither the operative complaint nor any of Trombetta's other filings allege that Seippel engaged in any conduct within the state.  Trombetta argues that § 302(a)(2) is satisfied because she lost the sale of an $8,500 painting to a New York based customer due to the web posts.  Pl.'s Opp. at 4, 18–19.  But this assertion misconstrues § 302(a)(2), which concerns the location of the *defendant* at the time of the tort, not the location of the harm.  *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 27–29 (2d Cir. 1997) (collecting cases and concluding, "to subject non-residents to New York jurisdiction under § 302(a)(2) the defendant must commit the tort while he or she is physically in New York State").  The question is whether Seippel allegedly committed tortious conduct while present in New York State, not where the harm was suffered.  Because there are no allegations that Seippel ever personally engaged in conduct while physically present in New York, there is no jurisdiction under § 302(a)(2).

### C.  N.Y. C.P.L.R. § 302(a)(3)

Finally, under § 302(a)(3), a court may exercise specific jurisdiction over a non-domiciliary defendant if that defendant "commits a tortious act without the state causing injury to person or property within the state," so long as the defendant either (i) "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state," or (ii) "expects or should reasonably expect the act to

have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3).

There is no allegation that Seippel engaged in a persistent course of conduct or derives revenue from the New York market as an individual and § 302(a)(3)(i) is thus not satisfied here.

"Jurisdiction pursuant to § 302(a)(3)(ii) is predicated on five elements: '(1) [t]he defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce.'" *Gucci Am., Inc. v. Frontline Proc. Corp.*, 721 F. Supp. 2d 228, 241 (S.D.N.Y. 2010) (quoting *Sole Resort, S.A. de C.V v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006)) (alterations in original). Trombetta's complaint does not satisfy these elements. She makes no allegations, either in her operative complaint or in her subsequent filings, that Seippel "expected or should reasonably have expected [his actions] to have consequences in the state," or that he "derives substantial revenue from interstate or international commerce." The closest allegations come from Seippel's email responses to Trombetta in February 2016, which are relevant to her DMCA claims. *See* Pl.'s Opp. at 33, 38. These emails, concerning the improper content and removal of the listing, arguably satisfy the first, second, and third prongs required for personal jurisdiction. The emails, however, do not allege any information to support a finding that Seippel had a reasonable expectation of consequences in New York, or that any revenue was derived from the emails. Indeed, as pled, the emails constitute an effort to resolve Trombetta's complaint, but do not allege any acts by Seippel that contributed to the alleged harms. The complaint thus fails to make a *prima facie* showing that this Court has personal jurisdiction over Seippel under § 302(a)(3).

### D. Agency

The final possible basis for jurisdiction is premised on an agency theory.  Under § 302(a), a corporation's New York contacts are attributable to an individual defendant where the corporate officer supervised and controlled the infringing activity.  *See Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010) (citing *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (N.Y. 1988)).  A plaintiff cannot meet this requirement with conclusory allegations that an officer "controlled" the company, and instead must plead some personal conduct by the officer related to the transaction or tort which forms the basis of her claim.  *See Pilates, Inc. v. Current Concepts Kenneth Endelman*, No. 96-CV-0043 (MGC), 1996 WL 599654, at *3 (S.D.N.Y. Oct. 18, 1996) (collecting cases).  New York law requires that a plaintiff demonstrate the company "engaged in purposeful activities in this State in relation to [that plaintiff's] transaction for the benefit of and with the knowledge and consent of the [individual defendant] and that the [individual defendant] exercised some control over the [the company] in the matter."  *Aviles v. S&P Glob., Inc.*, 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019) (quoting *Kreutter*, 71 N.Y.2d at 467)).

Here, there is no dispute that Worthpoint's business contacts confer personal jurisdiction over the corporation.  Trombetta's complaint does not connect the allegations to Seippel or his interests, and certainly does not allege that any of the "transactions" were for his benefit or at his direction.  As stated above, Seippel cannot be said to have controlled the company's actions with respect to the Worthpoint posts based on the emails between Trombetta and Seippel because these emails do not form the "basis of her claim."  Worthpoint's corporate contacts thus cannot be imputed to Seippel.

Accordingly, the motion to dismiss the claims against Seippel for lack of personal jurisdiction is granted.

## II.  Defendant Worthpoint

Having dismissed the claims against Seippel, the remainder of this Opinion will consider

Trombetta's claims against Worthpoint alone.

In its October 2, 2019 decision granting in part the EAI Defendants' motion to dismiss, the

Court dismissed with prejudice Trombetta's claims under the Lanham Act, the New York Civil Rights

Law, and the New York Artists' Authorship Rights Act, and granted leave to amend on her copyright

infringement claim.  *Trombetta*, 414 F. Supp. 3d at 634.  The Court permitted claims under the DMCA

and the VARA to go forward.  *Id.*  On March 19, 2020, Magistrate Judge Cave issued an opinion and

order granting in part and denying in part Trombetta's request to amend her complaint based on this

Court's October 11, 2019 decision.  Dkt. 40.  Judge Cave's opinion concluded by clarifying which

claims remained and which were dismissed:

> (1) the claims under (a) Sections 50-51 of the New York Civil Rights Law, (b) Section
> 14.03 of the New York Artists' Authorship Rights Act, and (c) the Lanham Act, having
> previously been dismissed in the MTD Order, are stricken with prejudice;
>
> (2) the claim for defamation is DISMISSED with prejudice;
>
> (3) the claims (a) under the VARA against the EAI Defendants, (b) for direct copyright
> infringement against the EAI Defendants, (c) for contributory copyright infringement
> against the Worthpoint Defendants, and (d) under the DMCA § 1202(a) and § 1202(b)
> against the EAI Defendant and Worthpoint Defendants will proceed in this action.

*Id.* at 13.  Despite Judge Cave's enumerated list of claims that were permissible under the

Court's order, Trombetta has realleged each of the claims stated above.  The Court will now

address each in turn.

### A.  Claims under the Lanham Act, the New York Civil Rights Law, and the New York Artists' Authorship Rights Act

Trombetta's operative complaint and opposition brief re-allege the previously dismissed claims

under the Lanham Act, the New York Civil Rights Law, and the New York Artists' Authorship Rights

Act.  These claims were previously dismissed with prejudice for the reasons outlined in the Court's

prior opinion, *see Trombetta*, 414 F. Supp. 3d at 634, and the Court will not now reconsider them.

## B.  Defamation Claim Against Worthpoint

Judge Cave also denied Trombetta's motion to amend her complaint to include a claim for

defamation, and dismissed that claim with prejudice.  Dkt. 40 at 13.  "While the proper classification

as dispositive or non-dispositive of a motion for leave to file an amended complaint is not settled

within the Second Circuit, the weight of authority within this Circuit classifies a motion to amend a

pleading as non-dispositive."  *Rita Patrick v. Local 51, American Postal Workers Union, et al.*, No. 19-

CV-10715 (NSR), 2021 WL 5106638, at *2 n.2 (S.D.N.Y. Nov. 3, 2021) (internal quotations and

citations omitted); *see also Shukla v. Deloitte Consulting LLP*, No. 19-CV-10578 (AJN) (SDA), 2020

WL 8512852, at *6 n.9 (S.D.N.Y. Nov. 17, 2020), report and recommendation adopted, No. 19-CV-

10578 (AJN), 2021 WL 1131507 (S.D.N.Y. Mar. 24, 2021) (collecting cases); *MPI Tech A/S v. Int'l

Bus. Machines Corp.*, No. 15-CV-4891 (LGS) (DCF), 2017 WL 481444, at *3 (S.D.N.Y. Feb. 6, 2017)

(collecting cases).

Even treating Trombetta's subsequent arguments as timely objections to the March 19, 2020

opinion and order in light of her *pro se* status, *see Massie v. Metro. Museum of Art*, 651 F.Supp.2d 88,

93 (S.D.N.Y. 2009), and reviewing the opinion either *de novo* or for clear error, the outcome would be

the same.  Namely, her defamation claims are time barred, whether or not the Court considers her

motion to amend to be dispositive.

Under New York law, a claim for defamation must be brought within one year of the

publication of the libelous material.  N.Y. C.P.L.R. § 215(3); *see Tucker v. Wyckoff Heights Med. Ctr.*,

52 F. Supp. 3d 583, 596–97 (S.D.N.Y. 2014).  New York follows the single publication rule, such that

the statute of limitations period runs from the first publication of the defamatory material.  *Martin v.

Daily News L.P.*, 121 A.D.3d 90, 103, 990 N.Y.S.2d 473, 483 (2014) (citing *Gregoire v. Putnam's

*Sons*, 298 N.Y. 119, 123, 81 N.E.2d 45 (1948)).  This rule is designed to prevent "endless retriggering

of the statute of limitations, multiplicity of suits and harassment of defendants."  *Firth v. State*, 98

N.Y.2d 365, 370, 775 N.E.2d 463, 466 (2002).  A republication can restart the limitations period where

there is a separate "aggregate publication from the original, on a different occasion, which is not

merely a delayed circulation of the original edition," and it is intended to reach a new audience. *Id.* at

371.  "Under New York's single publication rule, it is irrelevant, for statute of limitation purposes, that

a story remains online after its publication." *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 267 (S.D.N.Y.

2013), aff'd, 807 F.3d 541 (2d Cir. 2015); *see also Martin*, 121 A.D.3d at 103–104.

Here, Trombetta first filed her claim for defamation against Worthpoint in 2020.  Even if the

2017 post qualified as a separate "republication," and thus restarted the statute of limitations period,

Trombetta's defamation claim would still be untimely because more than a year lapsed between the

publication of the 2017 post and the filing of her defamation claim in 2020.  Accordingly, Trombetta's

defamation claim is dismissed.

## C. Contributory Copyright Infringement and Digital Millennium Copyright Act Claims Against Worthpoint

Trombetta was granted leave to amend with respect to her contributory copyright infringement

claims and DMCA claims against Worthpoint, and did so.  Worthpoint argues both claims should

again be dismissed because they were filed outside the applicable statute of limitations periods and/or

have substantive defects.  The Court agrees with respect to her contributory copyright claims but not

with respect to her DMCA claims.

### 1. Contributory Copyright Infringement

#### a. Statute of Limitations

As a threshold matter, the Court will address Worthpoint's argument that Trombetta's

contributory infringement claims are untimely.  The Copyright Act mandates that "no civil action shall

be maintained under the provisions of this title unless it is commenced within three years after the

claim accrued." 17 U.S.C. § 507(b).[4]  Such claims "do not accrue until actual or constructive

discovery of the relevant infringement." *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 125 (2d

Cir. 2014).[5]  Moreover,

> it is widely recognized that the separate-accrual rule attends the copyright statute of
> limitations. Under that rule, when a defendant commits successive violations, the statute
> of limitations runs separately from each violation.  Each time an infringing work is
> reproduced or distributed, the infringer commits a new wrong. Each wrong gives rise to a
> discrete "claim" that "accrues" at the time the wrong occurs. In short, each infringing act
> starts a new limitations period.

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 671 (2014)

Trombetta filed her complaint against Worthpoint on February 21, 2020.  Compl. at 26.

Therefore, to be timely, any complained of copyright infringement must have accrued after February

21, 2017.  Trombetta alleges that she first discovered the 2015 post on worthpoint.com some time in

2015.  Compl. at 2–3.  Her claim as it relates to this post is thus untimely.

Trombetta also alleges that a post similar to the 2015 post was on the internet when she

searched for it in May of 2017.  Compl. at 7, 42.  It is unclear whether Trombetta is alleging that the

2015 post was in existence in 2017 (1) because Worthpoint never deleted it or (2) because Worthpoint

reposted it after deleting it in 2015 or 2016.  If the former is true, then Trombetta's copyright claim

against Worthpoint accrued in 2015 when she first saw the post, and the claim is untimely.  If the latter

is true, by contrast, then the reposting constitutes a new copyright violation, one that accrued within

the limitations period.

---

[4] When a party was not included in the initial complaint but was later added, the limitations period continues to run with respect to the new party until that party is named in the action.  *See Kregos v. AP*, 3 F.3d 656, 666 (2d Cir. 1993).

[5] The Supreme Court subsequently cast doubt on the discovery rule in *Petrella v. MGM*, in which it stated, "a copyright claim . . . arises or 'accrue[s]' when an infringing act occurs."  572 U.S. 663, 670 (2014) (alteration in original).  *Petrella*, however, specifically declined to overrule the discovery rule.  *Id.* at 670 n. 4.  The Second Circuit has recently clarified that continued application of the discovery rule is thus still required in this Circuit.  *Sohm v. Scholastic Inc.*, 959 F.3d 39, 51 (2d Cir. 2020) ("It would contravene settled principles of *stare decisis* for this Court to depart from its prior holding in *Psihoyos* on the basis of *Petrella*.").

Throughout the operative complaint, as well as her opposition to the instant motion to dismiss, Trombetta uses inconsistent language on this subject.  For example, in her operative complaint, she alleges that "the posting was on the internet until the spring of 2017."  Compl. at 7.  This statement suggests that Worthpoint never took down the original web post and it remained on the internet from 2015 through 2017.  Elsewhere in her complaint, however, Trombetta asserts that "[d]espite [her] efforts to prevent further reposting it happened again after Defendants were informed of [its] falsity."  Compl. at 2; *see also* Compl. at 32 ("I found yet again a listing from Worthpoint.com under my name.").  These statements imply that Worthpoint took down the 2015 post at some point and then reposted it prior to May 2017.  Trombetta alternatively refers to the 2017 post, which she saw in May of 2017, as a "reposting" and a "resurfacing."  Worthpoint, for its part, asserts that Trombetta's evidence—namely, a screen-grab of a Google search showing reference to her name and the misattributed painting on worthpoint.com—does not establish that the offending web post existed at all in 2017.  *See* Defs.' Mem. at 13 (asserting that remnants of a since-deleted website may continue to exist in the Google cache).

For a defendant to raise a statute of limitations defense in a pre-answer motion to dismiss, the defense must be "clear from the face of the complaint."  *See Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015); *see also Jeehoon Park v. Skidmore, Owings & Merrill LLP*, No. 17-CV-4473 (RJS), 2019 WL 9228987, *7 (S.D.N.Y. Sept. 30, 2019).  Here, for the reasons stated above, it is not apparent on the face of the complaint that Trombetta's contributory copyright claims against Worthpoint are untimely.  Worthpoint may ultimately prove that it permanently removed the 2015 post and never reposted it, but such a finding is inappropriate at this point.  Accordingly, although Worthpoint "may at some point be able to prevail on this affirmative defense," the Court cannot conclude that dismissal is warranted on limitations grounds.  *See Jeehoon Park*, 2019 WL 9228987, at *7.

**b.  Merits**

The Court will thus assess this claim on the merits.  In so doing, the Court finds that Trombetta has failed to plausibly plead a claim for contributory copyright infringement with respect to her biography.

"A defendant may be held liable for contributory copyright infringement if, 'with knowledge of the infringing activity,' it 'materially contributes to the infringing conduct of another.'" *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011) (quoting *Matthew Bender & Co., Inc. v. W. Publ'g Co.*, 158 F.3d 693, 706 (2d Cir. 1998)).  "The knowledge standard is an objective one; contributory infringement liability is imposed on persons who 'know or have reason to know' of the direct infringement." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (emphasis omitted).  Additionally, to be found liable, a "contributory infringer must have acted in concert with the direct infringer." *Livnat v. Lavi*, No. 96-CV-4967 (RWS), 1998 WL 43221, at *3 (S.D.N.Y. Feb. 2, 1998) (citing 3 Melville B. Nimmer, David Nimmer, *Nimmer on Copyright* § 12.04[A][2][a] at 12–75 (1996)); *see also Rams v. Def Jam Recordings*, *Inc.*, 202 F. Supp. 3d 376, 384 (S.D.N.Y. 2016) ("the contributory infringer must have acted in concert with the direct infringer.").

Although she alleges that EAI reproduced her protected biography without permission, Trombetta has not pled that Worthpoint acted in concert with EAI, or otherwise knew or should have known of the infringement.  Trombetta's only allegation connecting Worthpoint and EAI is that "both have connections to ebay and worked in concert with one another."  Compl. at 6–7; *see also* Pl.'s Opp. at 2–3 ("Both Defendants have business ties to eBay.").  The fact that both companies "have connections to ebay," and a conclusory allegation they worked in concert, is insufficient to plead that Worthpoint facilitated the infringement.  *See Wu v. John Wiley & Sons, Inc.*, No. 14-CV-103488 (AKH) (AJP), 2015 WL 5254885, at *14 (S.D.N.Y. Sept. 10, 2015) (finding that an alleged direct infringer did not work in concert with an alleged contributory infringer when the plaintiff "presented

no evidence that [the former] provided [the latter] with [the infringing material], much less that it authorized or assisted them"). Accordingly, the motion to dismiss Trombetta's contributory copyright infringement claim against Worthpoint is granted.

### 2.  Digital Millennium Copyright Act

#### a.  Statute of Limitations

Worthpoint next argues that like her infringement claims, Trombetta's DMCA claims are time barred. A statute of limitations defense at the pleading stage is only appropriate where it is "clear from the face of the complaint…that the plaintiff's claims are barred as a matter of law." *See Sewell*, 795 F.3d at 339.

Here, Trombetta has plausibly alleged conduct by Worthpoint within the three-year statutory period that violates the DMCA. As discussed more substantively below, she plausibly alleges not just that Worthpoint reposted the listing in 2017, but that it did so after she repeatedly informed Worthpoint that the post reproduced her biography without attribution and infringed her registered work. Due to the factual ambiguities with respect to the 2017 post, including the extent to which it relates to the 2015 post, it is not clear at this stage whether Worthpoint did in fact engage in a separate violation of the DMCA in 2017, but it is, nonetheless, a plausible reading of the complaint. It is thus not "clear" from the face of the complaint that Trombetta's DMCA claims are time-barred as a matter of law. *See Sewell*, 795 F.3d at 339; *see also Fischer v. Forrest*, No. 14-CV-1304 (PAE) (AJP), 2017 WL 128705, at *7 (S.D.N.Y. Jan. 13, 2017), report and recommendation adopted, 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017). [6] Accordingly, the Court will turn to the merits of her DMCA claims.

---

[6] Relying on a 2019 case from the Ninth Circuit, *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1026 (9th Cir. 2019), Worthpoint argues that DMCA claims are not governed by the separate-accrual rule, and that Trombetta's DMCA claims are thus untimely under any reading of the complaint. In *Media Rights*, the Ninth Circuit held that "there is no parallel separate-accrual rule that applies to [Plaintiff's] DMCA claim." *Media Rights*, 922 F.3d at 1026. Unlike this case, however, the DMCA claim in *Media Rights* was based on circumvention of copyright protection systems under 17 U.S.C. § 1201. Here, the DMCA claims relate to 17 U.S.C. § 1202, which prohibits alteration or removal of copyright management information ("CMI") and distribution of altered CMI with the intent to facilitate infringement. The Ninth Circuit's determination that the separate-accrual rule does not apply to a § 1201 claim does not shed much light on whether the separate-

### b.  Merits

Trombetta alleges that Worthpoint violated 17 U.S.C. § 1202(a) and § 1202(b), which prohibit removing copyright information or distributing false or altered copyright information.

As a preliminary matter, a claim under either provision requires there be an underlying copyrighted work and Trombetta has not alleged that any aspect of the post, other than her biography, was a registered work.  *See* 17 U.S.C § 1202(c); *see also Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020). The Court will therefore only consider the DMCA claims with respect to the biography.

### i.   Section 1202(a)

Section 1202(a) of the DMCA provides that "no person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement—(1) provide copyright management information that is false, or (2) distribute or import for distribution copyright management information that is false." 17 U.S.C. § 1202(a).  "Copyright management information" (CMI) is a defined term and includes, as relevant here, "the name of, and other identifying information about, the author of a work" and "the name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright."  17 U.S.C. § 1202(c)(2)–(3).  "In order to plead a violation of § 1202(a), a plaintiff thus must plausibly allege that [the] defendant knowingly provided

---

accrual rule should apply to § 1202 claims.  Worthpoint does not cite, and this Court has not found, any court that has held that the separate-accrual rule endorsed by the Supreme Court in *Petrella* does *not* apply to DMCA claims under § 1202.  In fact, the Supreme Court's discussion of the separate-accrual rule—"each infringing act starts a new limitations period"— suggests that successive violations of § 1202 would trigger new limitations periods.  *Petrella*, 572 U.S. at 671.  At least two courts, one in this district, have assumed, without directly addressing the question, that the separate-accrual rule applied to DMCA claims under § 1202.  *See Fischer v. Forrest*, No. 14-CV-1304 (PAE) (AJP), 2017 WL 128705, at *7, *7 n.7 (S.D.N.Y. Jan. 13, 2017), report and recommendation adopted, 2017 WL 1063464 (S.D.N.Y. Mar. 21, 2017); *Free Speech Sys., LLC v. Menzel*, 390 F. Supp. 3d 1162, 1170, 1175 (N.D. Cal. 2019) (citing *Media Rights* for its holding that the separate-accrual rule applies to successive acts of infringement and, separately, deciding the DMCA claims under § 1202 on the merits).  Due to the factual ambiguities as to whether the 2017 post was, in fact, a repost, and the sparse description of exactly how the 2017 post was reposted, it is not clear whether Trombetta's claim based on the 2017 post would constitute a separate accrual relating to the initial post in 2015, or a separate claim altogether.  At this stage, because the Court cannot definitively find that her DMCA claim was a new claim or was a separate accrual of the initial claim, the separate-accrual question is not dispositive.  As such, the Court need not decide this issue.

false copyright information *and* that the defendant did so with the intent to induce, enable, facilitate, or conceal an infringement." *Krechmer v. Tantaros*, 747 F. App'x. 6, 9 (2d. Cir. 2018).

Trombetta's complaint alleges that Worthpoint's affixation of its own copyright notice to the images and description constitutes false CMI. *See* Compl. at 5–6 (Worthpoint "added a photograph of the signature in oil on canvas 'A. Trombetta' a copyright symbol…and the statement 'copyright work licensed by Worthpoint.'"). Trombetta also states that the use of her biography was unauthorized and that she contacted Worthpoint to inform the company of the "false posting." *Id.* at 6. In other words, her biography was not "licensed by Worthpoint" as the webpage claimed.

At this stage, Trombetta's allegations with respect to the falsity of the CMI are sufficient to state a claim. They are sufficient to allege *scienter* as well . The Second Circuit has cautioned that courts should be lenient in assessing *scienter* at the motion to dismiss stage, "because such issues are appropriate for resolution by the trier of fact." *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 693 (2d Cir. 2009). "Special solitude" is also afforded to the complaints of *pro se* litigants, which should be dismissed due to insufficient pleading "only in the most unsustainable of cases." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015).

In the DMCA context, notice to a defendant can support an inference that the defendant's violation was knowing and its distribution done with intent to facilitate infringement. *See Wood v. Observer Holdings, LLC*, No. 20-CV-7878 (LLS), 2021 WL 2874100, at *7 (S.D.N.Y. July 8, 2021); *see also Michael Grecco Prods., Inc. v. Alamy, Inc.*, 372 F. Supp. 3d 131, 139 (E.D.N.Y. 2019). Trombetta repeatedly alleges that she notified Worthpoint that the posts contained inaccurate and infringing information. *See* Compl. 2 ("Despite Plaintiff's efforts to prevent further reposting, it happened again after Defendants were informed of its falsity contained in the internet description."); *id.* at 3 ("Plaintiff prior to filing this lawsuit reached out to [] both Defendants…to inform these parties that the Plaintiff was not the artist and did not create the painting advertised and sold on eBay."); *id.* at

7 ("The new Defendant [Worthpoint] had been duly informed the information was false, that the Plaintiff was not the artist and that this posting should not be listed under Plaintiff's name etc."). In her 2017 emails to Worthpoint, which Trombetta characterizes as "requesting a take down notice," *id.* at 4, she informed Worthpoint that she had found "a MISATTRIBUTION of a painting that I did NOT create on your website...specific personal content from my personal artists website was copied transplanted and posted on your site," and that the "**listing is not authentic and has NO RIGHT TO BE LISTED UNDER MY NAME**," *id.* at 32 (emphasis in original). She further urged Worthpoint to "remove this IMMEDIATELY from the internet...I do NOT WISH TO BE ASSOCIATED with your company---in ANY WAY. The numerous times that I have had to contact you regarding this issue is an outrage." Dkt. 33 at 39. Trombetta also alleges that she spoke with multiple Worthpoint employees on the phone regarding her "take down request." *See id.* at 4. These allegations, which the Court accepts as true, support an inference that Worthpoint had knowledge that the 2017 post contained infringing material, that Worthpoint's affixation of its own copyright notice thus constituted false CMI, and that the false CMI was included to conceal the underlying infringement. *See Wood v. Observer Holdings, LLC*, No. 20-CV-7878 (LLS), 2021 WL 2874100, at *7 (S.D.N.Y. July 8, 2021); *Mango v. BuzzFeed, Inc.*, 356 F. Supp. 3d 368, 378 (S.D.N.Y. 2019), aff'd, 970 F.3d 167 (2d Cir. 2020). Accordingly, Trombetta will be permitted to proceed with her claim under § 1202(a).

### ii.   Section 1202(b)

Section 1202(b) prohibits three different kinds of acts in its three subsections: (1) the removal or alteration of CMI; (2) the distribution of CMI with missing or altered information; or (3) distribution of works with missing or altered CMI. *See* 17 U.S.C § 1202(b); *see also Mango*, 356 F. Supp. 3d at

376.  Interpreting the complaint to raise "the strongest argument that [it] suggests," Trombetta's

complaint plausibly alleges a § 1202(b)(3) claim. *Fowlkes*, 790 F.3d at 387.[7]

To allege a violation of § 1202(b)(3), a plaintiff must demonstrate: "(1) the existence of CMI in

connection with a copyrighted work; and (2) that a defendant distributed works or copies of works; (3)

while knowing that CMI has been removed or altered without authority of the copyright owner or the

law; and (4) while knowing, or having reasonable grounds to know that such distribution will induce,

enable, facilitate, or conceal an infringement." *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir.

2020).  The complaint plainly alleges the first two elements—that CMI existed on Trombetta's website

in connection with her copyrighted work (the biography), and that Worthpoint distributed the

biography without that CMI.  Again, due to the standards governing *scienter* allegations at the motion

to dismiss stage and *pro se* pleadings generally, Trombetta's allegations, cited above in connection

with her § 1202(a) claim, are sufficient to allege *scienter* with respect to her § 1202(b) claim.

Accordingly, the motion to dismiss Trombetta's DMCA claims is denied, and both her § 1202(a) and §

1202(b) claims will proceed.

### D.  Direct Copyright Infringement and VARA Claims Against Worthpoint

It is not entirely clear from the operative complaint whether Trombetta seeks to bring direct

copyright infringement and VARA claims against the new Worthpoint Defendants.  As a result, Judge

Cave's March 19, 2020 opinion explicitly stated that claims for direct copyright infringement and

under the VARA would proceed against the EAI Defendants but did not assess whether those claims

could continue against Worthpoint.  It is apparent from Trombetta's opposition brief to Worthpoint's

motion to dismiss, however, that she intended to plead those claims against Worthpoint as well as EAI.

*See* Pl.'s Opp. at 21–26 (VARA), 27–28 (direct infringement).

---

[7] The complaint clarifies that EAI, not Worthpoint, initially removed the original copyright information, and therefore does not plead a § 1202(b)(1) claim against Worthpoint.  *See* Compl. at 15 ("The Individual Defendants intentionally removed Plaintiff's copyright notice (EA Inc., Novicins), provided false attribution (Worthpoint, Will Seippel).").

It is well-established that a party may not raise new claims in its opposition brief.  *See* Fed. R.

Civ. P. 8(a); *see also Terry v. Corp. for Nat'l & Cmty. Serv.*, No. 15-CV-09660 (RA)(SN), 2017 WL

9538861, at *6 (S.D.N.Y. Mar. 21, 2017), report and recommendation adopted, No. 15-CV-9660 (RA),

2017 WL 3448015 (S.D.N.Y. Aug. 11, 2017).  Because Trombetta is proceeding *pro se*, however, the

Court may still consider claims raised in her opposition papers, provided that the claims "could have

been asserted based on the facts alleged in the complaint," and are not "entirely new" causes of action.

*Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (quoting *Vlad-Berindan v. MTA New York*

*City Transit*, No. 14-CV-675, 2014 WL 6982929, at *5 (S.D.N.Y. 2014)).  Here, the operative

complaint pleads facts that support both a direct infringement claim and a VARA claim against

Worthpoint—claims Trombetta could have alleged in her operative complaint.[8]

While the operative complaint could have more clearly identified which claims were asserted

against which Defendants, the Court declines to dismiss Trombetta's claims due to her imperfect

pleading.  The Court will thus consider Trombetta's direct copyright claims and VARA claims against

Worthpoint.

### 1.  Direct Copyright Infringement

"A properly plead[ed] copyright infringement claim must allege 1) which specific original

works are the subject of the copyright claim, 2) that plaintiff owns the copyrights in those works, 3)

---

[8] For instance, under "Direct Copyright Infringement," the complaint alleges that, "based on Exhibit 6 …[the] description created by Estate Auction Inc and posted via the internet on Worthpoint.com website, the plaintiff has plausibly pled that defendants' work contains a literal or nearly literal copy of the identified portion of the plaintiff's work."  Compl. at 11. Trombetta also asserts that Worthpoint "presented [the painting and signature] with the unauthorized use of my personal identifying information from my website biography."  *Id.* at 6.  The Worthpoint Defendants were added "due to the willful and intentional reposting of a 'false' internet posting at the end of 2016," and because Worthpoint was "responsible for the repostings."  *Id.* at 6–7.  This reading is also supported by Trombetta's assertions that this "intentional fraud [] infringes upon Copyright laws and the rights of the Plaintiff," *id.* at 7, and her statement at the conclusion of the "Direct Copyright Infringement" section that the "new defendant violated [Plaintiff's rights]," *see id.* at 12.  Under the heading for "VARA CLAIM," there are no facts specifically related to Worthpoint.  *See* Compl. at 23.  There are, however, allegations elsewhere that support a VARA claim.  For example, Trombetta alleges that "associat[ing] my name with a damage[d] painting damages my reputation and the work purchased by my collectors."  Compl. at 3.  Indeed, the misattribution of the "shabby chic" painting and alleged damage to her reputation is, as the Court sees it, the crux of Trombetta's grievances with Defendants.  *See, e.g.*, Compl. at 3 (alleging that Trombetta repeatedly informed Worthpoint (and EAI) that she "was not the artist and did not create the painting advertised and sold on eBay").

that the copyrights have been registered in accordance with the statute, and 4) by what acts during what time the defendant infringed the copyright." *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992); *see also Hartmann v. Amazon.com, Inc.*, No. 20-CV-4928 (PAE), 2021 WL 3683510, at *3 (S.D.N.Y. Aug. 19, 2021).

Here, Trombetta has alleged that she owns a registered copyright for her biography as posted on her website, Compl. at 47–48, and the Copyright Act confers exclusive rights in distributing and displaying the copyrighted work to the copyright owner, *see* 17 U.S.C §§ 106(a)(3), 106(a)(5), 501(a).

The more difficult determination is whether Trombetta has pled that Worthpoint's post—or re-post—"infringed the copyright." Unauthorized distribution or display of copyrighted works raises unique challenges in the context of the internet. The Second Circuit has not squarely addressed the question of under what circumstances internet re-postings infringe display or distribution rights, and courts in this district have been hesitant to adopt a bright-line rule. *See Nicklen v. Sinclair Broad. Grp., Inc.*, — F.Supp.3d —, No. 20-CV-10300 (JSR), 2021 WL 3239510, at *4 (S.D.N.Y. July 30, 2021) (declining to adopt the Ninth Circuit "server rule" and finding Plaintiff's display right was violated by embedded images); *see also Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 596 (S.D.N.Y. 2018) (summarizing the holdings of four district courts which analyzed distribution and/or display rights relating to internet-based infringement).

This legal ambiguity is complicated by the limited factual record at this stage; Trombetta has not pled in detail the method by which the biography was reposted on Worthpoint's website, merely stating that it was "reposted" or "posted via the internet." Compl. at 2; *see also id.* at 11 (the infringing description "created by Estate Auction Inc and posted via the internet on Worthpoint.com website"). Nonetheless, the display right is "broad" and is generally violated when a defendant displays the work without authorization. *Nicklen*, 2021 WL 3239510, at *4. The allegation that Worthpoint

affirmatively reposted the biography on its own website is thus sufficient to state a plausible claim that the 2017 post infringed Trombetta's copyright where the other elements are met.

Worthpoint did not address the merits of the direct infringement claim in its reply brief, stating only that it was untimely for the same reasons as the contributory infringement claim.  Dkt. 156 at 13 n.11 ("Defs.' Reply").  As explained above, at this stage Court finds that the statute of limitations does not bar Trombetta's copyright claims.  Accordingly, the motion to dismiss the direct copyright claim is denied.

### 2.  Visual Artists Rights Act

The VARA establishes two "moral rights" of artists, those of attribution and integrity. 17 U.S.C. § 106A.  At issue in this case is the right of *mis*attribution, an artist's right to "prevent the use of his or her name as the author of any work of visual art which he or she did not create." *Id.* § (a)(1)(B).  These protections only apply to artists who have produced "works of visual art," and even then, only under certain circumstances.  *See id.*; *see also Pollara v. Seymour*, 344 F.3d 265, 269 (2d Cir. 2003).  Trombetta has pled that the piece in question is a work of visual art, that she is a creator of works of visual art, and that Defendants associated her name and her biography with a work of visual art that she did not create.  *See, e.g.*, Compl. at 3 ("Estate Auction Inc.'s misattribution and as well as its unauthorized use of my name, website text, constitute violations of my legal rights…My price for this size painting far exceeds [the amount in the listing] and undervalues the financial credibility and worth.").  As discussed above, Trombetta's complaint is, in fact, replete with factual allegations related to misattribution and she has thus stated a claim under the VARA.

Worthpoint only addresses the VARA claim in two footnotes in its reply brief, asserting that because Trombetta's copyright claim is untimely, so too is her VARA claim.  Defs.' Reply at 8 n.4, 13 n.11.  Worthpoint makes no argument about the merits of this claim.  For the reasons stated above with respect to the Copyright Act statute of limitations, the Court finds that Worthpoint does not prevail on

a statute of limitations defense to Trombetta's VARA claim at this stage.  *See* 17 U.S.C. § 507(b); *see also Hunter v. Squirrel Hill Assoc's.*, 413 F.Supp.2d 517, 520–521 (E.D. Pa. 2005).

Accordingly, the motion to dismiss these claims is denied.

## III.    Motion to Strike Sur-replies

Finally, as she did in response to Worthpoint's prior motion to dismiss, Trombetta has filed an un-authorized sur-reply to the instant motion to dismiss.  *See* Dkt. 161.  Plaintiffs "do[] not have a right to file a sur-reply," rather, "[t]he decision to grant a requested sur-reply is left to the 'sound discretion of the court.'"  *Haskins v. Ponte*, 16-CV-8525 (RA), 2018 U.S. Dist. LEXIS 58484, at *2 (S.D.N.Y. Apr. 3, 2018) (quoting *Moreno-Godoy v. Gallet Dreyer & Berkey, LLP*, 14-CV-7082 (PAE), 2015 WL 5737565, at *10 (S.D.N.Y. Sept. 30, 2015)).  Sur-replies filed without the court's permission are generally considered improper.  *See Anthropologie, Inc. v. Forever 21, Inc.*, No. 07-CV-7873 (RJS) (MHD), 2009 WL 690239, at *5 n.2 (S.D.N.Y. Mar. 11, 2009).

Because Trombetta neither sought nor received permission to file this sur-reply, the Court will now strike docket entry 161.[9]  Trombetta is reminded that moving forward, she must seek the Court's permission before filing documents she does not otherwise have permission to file under the Federal Rules, S.D.N.Y.'s local rules, or this Court's individual rules.

## CONCLUSION

For the foregoing reasons, the Worthpoint Defendants' motion to dismiss is granted in part and denied in part.  Trombetta's claims against Defendant William Seippel are dismissed for lack of personal jurisdiction.  Trombetta's claims against the Worthpoint Corporation under the Lanham Act, the New York Civil Rights Law, and the New York Artists' Authorship Rights Act are dismissed with prejudice, as are her claims for defamation, and contributory copyright infringement.  This means that Trombetta

---

[9] Because Plaintiff's unauthorized sur-reply has been struck, the Worthpoint Defendants' motion for leave to file a response to the sur-reply is denied as moot.  *See* Dkt. 162.

may not reallege these claims.  Trombetta's claims against Worthpoint for direct copyright infringement, under the DMCA, and under the VARA, survive.

Finally, the Worthpoint Defendants' motion to strike Trombetta's sur-reply is granted.

The Clerk of Court is respectfully directed to terminate the motions pending at docket entries 143 and 162, and to strike from the record docket entry 161.

The Clerk of Court is respectfully directed to mail a copy of this order and opinion to Plaintiff Trombetta.

SO ORDERED.


Dated:     December 20, 2021
           New York, New York

                                        _____
                                        RONNIE ABRAMS
                                        United States District Judge