IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| Annamarie Trombetta, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action No: 18-cv-00993 (RA) (SLC) |
| v. | ) | |
| | ) | |
| Norb Novocin, et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## DEFENDANT WORTHPOINT CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS OMNIBUS MOTION *IN LIMINE* CONCERNING EXPERTS


**Respectfully Submitted,**

Wilson Elser Moskowitz Edelman & Dicker LLP
150 E. 42nd Street
New York, New York 10017-5639
(212) 490-3000

*Attorneys for Defendant WorthPoint*


Of Counsel:   Adam R. Bialek
              Jana S. Farmer
              John Cahill

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................................. 1

ARGUMENT ............................................................................................................................ 15

    I.      Governing Law and Procedure ................................................................... 15

    II.     Plaintiff's Proposed Expert O'Leary Cannot Meet the Daubert Standard for the Specific Topics on which He Opines ................................................. 18

    III.    The Court Must Exclude Plaintiff's Late-Disclosed Experts and Any Future Proffer of Documents Not Adduced During Discovery ...................................... 20

CONCLUSION ........................................................................................................................ 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*,
  301 F.R.D. 47 (S.D.N.Y. 2014) ....................................................................................5, 21

*In re Air Disaster at Lockerbie Scot.*,
  37 F.3d 804 (2d Cir. 1994)...........................................................................................19

*Antilles Shipping Co. v. Texaco, Inc.*,
  321 F. Supp 166 (S.D.N.Y. 1970) ...............................................................................18

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
  263 F. Supp. 3d 446 (S.D.N.Y. 2017).........................................................................5, 21

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)...........................................................6, 9, 16, 17, 18, 20, 21, 22

*Fujifilm N. Am. Corp. v. Big Value, Inc.*,
  2018 U.S. Dist. LEXIS 150204 (E.D.N.Y. Sept. 4, 2018)..............................................17, 20

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)......................................................................................................18

*Jackson v. City of White Plains*,
  2016 U.S. Dist. LEXIS 6469 (S.D.N.Y. Jan. 19, 2016).................................................15

*Jean-Laurent v. Hennessy*,
  840 F. Supp. 2d 529 (E.D.N.Y. 2011) .........................................................................15

*Kam Hing Enterps., Inc. v. Wal-Mart Stores, Inc.*,
  359 Fed. Appx. 235 (2d Cir. 2010)..............................................................................22

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999)..................................................................................................16, 18

*Lamela v. City of New York*,
  560 F. Supp.2d 214 (E.D.N.Y. 2008) ..........................................................................16

*Luce v. U.S.*,
  469 U.S. 38, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984)..................................................15

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
  542 F.3d 290 (2d Cir. 2008).........................................................................................19

281764138v.2

*Palmieri v. Defaria*,
    88 F.3d 136 (2d Cir. 1996) .................................................................................15

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp.2d 531 (S.D.N.Y. 2004) ............................................................16, 17

*U.S. v. Bermudez*,
    529 F.3d 158 (2d Cir. 2008) .................................................................................15

*U.S. v. Litvak*,
    808 F.3d 160 (2d Cir. 2015) .................................................................................15

*United States v. Dukagiini*,
    326 F.3d 45 (2d Cir. 2002) ...................................................................................17

**Rules**

Fed. R. Evid. 402 ...........................................................................................................15

Fed. R. Evid. 403 ...........................................................................................................15

Fed. R. Evid. 702 ......................................................................................................16, 18

Fed. R. Evid. 702(a) .......................................................................................................18

FRCP 26 ...............................................................................................................3, 4, 20

FRCP 26(a) ................................................................................................................17, 20

FRCP 26(a)(2) ...............................................................................................................4, 6

FRCP 26(a)(2)(D) ...........................................................................................................5, 6

FRCP 37 ..................................................................................................................17, 20

FRCP 37(c) ..............................................................................................................17, 20

281764138v.2

## PRELIMINARY STATEMENT

Defendant, WorthPoint Corporation (hereinafter ("WorthPoint), by and through the undersigned counsel, pursuant to the Federal Rules of Evidence and this Court's Special Rules & Practices in Civil *Pro Se* Cases, respectfully submits this Memorandum of Law in support of its Omnibus Motion *in Limine* to preclude Plaintiff's "experts" from providing any testimony or offering any evidence in this matter.

Other than Plaintiff's proposed expert Patrick O'Leary, the remaining experts Plaintiff proffers, Dr. Joseph Scelsa and Gayle M. Skluzacek, were not timely disclosed despite multiple extensions of time, and Mr. O'Leary either offers nothing relevant to the case or he is proffered to offer testimony beyond his qualifications.  Mr. O'Leary himself had admitted that he has no knowledge or experience in the only relevant areas of inquiry, and thus he must be precluded. Specifically, WorthPoint respectfully requests that this Court preclude, on summary judgment and at trial: (1) the testimony and report of Plaintiff-designated experts Dr. Joseph Scelsa and Ms. Gayle M. Skluzacek; and (2) the testimony and affidavit, as well as the unfounded inferences and conclusions on liability and damages from Mr. O'Leary, as well as any testimony on issues not contained within his disclosure; (3) any documentary evidence that Plaintiff attempts to introduce that she had not disclosed during discovery; and (4) for such other, different and further relief as the Court in its discretion may deem just and proper.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter emanates from a claim that a painting that was sold by the co-defendants on eBay in 2012 was wrongfully attributed to Plaintiff, as well as WorthPoint's subsequent publication of the reported sales information on its platform, which gives subscribers access to

1

historical prices for the sale of art and collectibles.  As against WorthPoint, Plaintiff claims that the 2015 report of the sale of a painting she claims she did not paint, with the biographical information that was attached, damaged her.[1]

This matter has been pending since February 3, 2018. (ECF No. 1)  Since then, there have been close to 400 ECF entries, most of which have involved filings by Plaintiff seeking the Court's instructions, advice and extensions on discovery.  The Court has been extremely patient with Plaintiff and has gone to great lengths to explain to Plaintiff the steps she needed to follow, along with advising her on timing.  Plaintiff has been repeatedly advised of the need to timely submit her expert disclosures and of the contents thereof. Between July and September 2022, WorthPoint's counsel repeatedly followed up with Plaintiff concerning the need for expert disclosures for Plaintiff's proposed experts Dr. Scelsa, Ms. Skluzacek and Mr. O'Leary. (*See* **Exhibit "A"** hereto).  As Plaintiff initially advised that she did not understand the distinction between fact and expert witnesses, Defendants and Magistrate Judge Sarah Cave during conferences and filings repeatedly advised Plaintiff of the FRCP requirements for expert disclosures and the Court's deadlines for the same.

With respect to the discovery deadlines, the Court has repeatedly accommodated Ms. Trombetta by extending the deadlines for Plaintiff's expert disclosure from August 17, 2022 to, ultimately, December 19, 2022.  Plaintiff has disregarded multiple Court orders setting expert disclosure deadlines. The following is a timeline of relevant orders from the Court and Plaintiff's activity in regard to her experts:

(1)  **ECF No.:  195** - The February 1, 2022 Case Management Plan set the expert report deadline for August 17, 2022 after these and other proposed deadlines were discussed with all parties at length during the February 1, 2022 conference with Judge Cave;

---

[1] Plaintiff's claims against WorthPoint are untimely and are otherwise not meritorious.  WorthPoint will separately be moving for summary judgment.

(2) **ECF No.:   234** – June 13, 2022 Order extending Expert Report Deadline to September 23, 2022, following a compliance conference with Judge Cave. This conference was preceded by a series of submissions by Plaintiff posing various discovery-related inquiries to the Court (ECF Nos. 228, 230, 232), which the Court addressed during the compliance conference;

(3) **ECF No.:   291** – October 7, 2022 Order on Plaintiff's motion (ECF No. 289) to extend discovery, resetting the deadline for expert disclosures for  November 4, 2022 for Plaintiff and December 2, 2022 for Defendants;

(4) **ECF No.:  308** – November 2, 2022 Order extending deadlines for expert disclosures to December 12, 2022 for Plaintiff and Thursday, January 12, 2023 for Defendants, following WorthPoint's submission (ECF No. 306) advising the Court of the continuing deficiencies in Plaintiff's discovery production;

(5) **ECF No. 328** – Transcript of November 23, 2022 conference with Judge Cave. Ms. Trombetta was made aware of the impending expert disclosure deadline during the November 23, 2022 conference with the Court, during which Ms. Trombetta represented that she was planning to rely on the testimony of three expert witnesses - the same expert witnesses that Plaintiff knew she was going to rely on at least since June 2022. Ms. Trombetta was reminded during that conference that she still had not complied with her obligation to make  proper Rule 26 expert disclosures:

> MS. HAIMSON: Thank you, Your Honor. First I just want to clarify, during today's call plaintiff has made reference to a computer expert, **I just want to make sure she's aware and maybe you can confirm same that, you know, to the extent that she retains any experts, any computer experts, that she is required to disclose those in accordance with the most recent discovery order that you've set forth**. This is the first that we're hearing that she's retained any such type of expert. [Emphasis added].

> THE COURT: If she's going to use them in the  -- **yes, if they're going to offer a report and they're  going to appear in the case then, yes,** but if she's consulting with somebody about how to open emails and that kind of thing, then, no, she doesn't.  [Emphasis added].

> THE PLAINTIFF: Your Honor --

> MS. HAIMSON: Thank you for the clarification, Your Honor.

> THE COURT: Go ahead, Ms. Trombetta.

> THE PLAINTIFF: Yes, I have three fact witnesses and to date **I have three expert witnesses who are waiting in the wings.** So that's who I'm referring to as the computer experts. So they have been named.  [Emphasis added].

3

THE COURT: Okay, well **expert disclosures are due on December 12th, that's when you have to provide to the defendants all the information about the expert that the rules require.** [Emphasis added].

THE PLAINTIFF: I've already sent the resumes for the expert witnesses a few months ago.

THE COURT: **All right, well you need to look at Rule 26 which talks about expert disclosures, and that tells you the information about the experts that needs to be disclosed. You need to comply with those requirements even though you're a pro se plaintiff. Just forwarding their resumes is not sufficient.** [Emphasis added].

THE PLAINTIFF: **Understood.** [Emphasis added].

(6)    **ECF No.: 333** – December 12, 2022 Order extending expert disclosure deadlines to December 19, 2022 for Plaintiff and January 19, 2023 for Defendants following Plaintiff's applications (ECF Nos. 330-331) specifically requesting extensions of time to submit Plaintiff's expert disclosures.

(7)    **ECF No. 337** – December 16, 2022 Order reminding Plaintiff that her expert disclosures are due December 19, 2022;

(8)    **ECF No. 340** – December 19, 2022 Order denying Plaintiff's request for yet another, last minute request for an extension of her expert discovery deadlines. In this regard, Judge Cave noted:

On December 12, 2022, the Court advised Ms. Trombetta that "[n]o further extensions of the deadlines in this Order[,]" including the expert discovery deadlines, "shall be granted absent extraordinary circumstances." (ECF No. 333 at 2). Ms. Trombetta now, on the eve of her deadline to serve expert disclosures pursuant to Rule 26(a)(2), requests an extension to the discovery deadline. The Court shall not grant such a request because Ms. Trombetta has failed to articulate extraordinary circumstances that warrant the requested relief. **Ms. Trombetta has been made aware that expert discovery shall follow fact discovery (see e.g., ECF Nos. 195; 234; 291; 308; 333), and advised by the Court what her responsibilities are. (ECF No. 328 at 41–42). If Ms. Trombetta remains interested in pursuing expert discovery, she must comply with the Court's deadline, as outlined in ECF No. 333.** [Emphasis added].

(9)    By December 19, 2022, Plaintiff had not submitted any expert disclosures, except for the December 5, 2022 affidavit of Patrick O'Leary (*see* **Exhibit "B"**), which only addresses an isolated discovery issue concerning an email from eBay, and does not otherwise amount to an expert disclosure on any relevant issue;

4

(10) On January 19, 2023, WorthPoint timely served its expert disclosure and report of its expert, Jessie Stricchiola;

(11) **ECF No.: 361** – January 24, 2023 Order setting forth a deadline for rebuttal expert disclosures for February 7, 2023, issued after Plaintiff applied for leave to submit a response to WorthPoint's timely-served January 19, 2023 expert disclosure;

(12) **ECF No. 364** – February 1, 2023 Order on Plaintiff's motion (ECF No. 363) to clarify the January 24, 2023 Order (ECF No. 361), again noting that the parties' deadlines to exchange rebuttal expert reports is February 7, 2023;

(13) **ECF No. 367** – February 3, 2022 Order on Plaintiff's further motion seeking clarification (ECF No. 365) confirming that Plaintiff's initial expert disclosures were due December 19, 2022 and the deadline for rebuttal reports is February 7, 2023. Judge Cave also specifically noted:

> Defendants may have meritorious objections to Ms. Trombetta's experts, which they will lodge at the appropriate time. In the meantime, however, the parties must follow the schedule the Court has set, (see ECF Nos. 221; 236; 238; 244; 271; 286; 297; 302; 321; 333; 340; 364), which supersedes the default deadlines in FRCP 26(a)(2)(D). See Fed. R. Civ. P. 26(a)(2)(D) ("A party must make these disclosures at the times and in the sequence that the court orders.").

(14) Despite three separate Orders granting her leave to submit rebuttal reports by February 7, 2023 and cautioning Plaintiff to follow the schedule the Court has set, by February 7, 2023, Plaintiff had not served any rebuttal expert disclosures. Instead, she attempted to serve initial expert disclosures for Dr. Scelsa on February 16, 2023 and for Ms. Skluzacek on February 21, 2023, nearly two months after Plaintiff's deadline to serve the initial expert disclosures had expired and even after the repeatedly-stated deadline to serve rebuttal expert reports had expired;

(15) **ECF No. 374** – On February 22, 2023, WorthPoint submitted a letter request for a pre-motion conference with the court in connection with Plaintiff's untimely expert disclosures;

(16) **ECF No. 375** – February 23, 2023 Order clarifying that:

> The deadline for initial expert reports was Monday, December 19, 2022, (see ECF Nos. 333; 340 at 2), and the deadline for rebuttal reports was Tuesday, February 7, 2023. (ECF Nos. 361; 367). **To the extent that any party served their experts' reports after these deadlines, they failed to comply with the Court's Orders (ECF Nos. 361; 367), and their experts' reports are subject to being stricken.** See In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig., 263 F. Supp. 3d 446, 452 (S.D.N.Y. 2017) (collecting cases); see also Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc., 301 F.R.D. 47, 52 (S.D.N.Y. 2014). [Emphasis added.]

5

[…]

As the Court has previously explained, the parties must follow the deadlines the Court has set, (see ECF Nos. 221; 236; 238; 244; 271; 286; 297; 302; 321; 333; 340; 364; 367), which supersede the default deadlines in Federal Rule of Civil Procedure 26(a)(2)(D). See Fed. R. Civ. P. 26(a)(2)(D) ("A party must make these disclosures at the times and in the sequence that the court orders.").

(17) **ECF No. 384** – March 7, 2023 Opinion & Order denying Plaintiff's motion (ECF No. 377) to reopen discovery, which sets forth the procedural history of the applicable expert disclosure deadlines, including that "The Court required Ms. Trombetta to serve her expert disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2) by December 19, 2022, Defendants to serve their expert disclosures by January 19, 2023." The Court deemed all discovery, fact and expert, closed and directed the parties to submit <u>Daubert</u> motions to strike untimely expert disclosures.

As evidenced by the above timeline, Plaintiff was repeatedly and clearly advised by the Defendants and by the Court that the deadline for Plaintiff's expert disclosures, which was adjourned multiple times at Plaintiff's various requests, was definitively set for December 19, 2022. Despite Ms. Trombetta knowing, for at least six (6) months, which experts she intended to use, despite being advised by the Court during the November 23, 2022 conference that her expert disclosures were not sufficient, and despite having had months to comply, Ms. Trombetta requested yet another extension of her time to serve expert disclosures three days before the December 19, 2022 deadline. The Court denied her request, stating that Plaintiff had failed to articulate extraordinary circumstances that warranted the requested relief, that Plaintiff had been made aware that expert discovery shall follow fact discovery (see e.g., ECF Nos. 195; 234; 291; 308; 333), and Plaintiff was advised by the Court as to her responsibilities. (ECF No. 328 at 41-42).

Plaintiff ignored all of these orders and did nothing until after January 19, 2023, when WorthPoint timely disclosed their expert. Then, despite being granted leave to submit rebuttal expert reports (but not initial expert reports) by February 7, 2023 (ECF Nos. 361, 364, and 367),

6

Plaintiff again did nothing for several more weeks. Under these facts, even a *pro se* Plaintiff cannot claim ignorance. Plaintiff's conduct is nothing more than a pattern of consistent, repeated disregard for nearly a dozen of the Court's Orders that gave her every opportunity to comply with her disclosure obligations for months!

Dr. Joseph Scelsa

Within Plaintiff's proffered expert disclosure for Dr. Scelsa of February 16, 2023 (*see* **Exhibit "C"**), either he or Plaintiff herself attempts to provide the following justification for the untimely disclosure:

> I will give testimony and will be based upon, but not limited to Ms. Trombetta's post Conference Call phone call to me in early December 2022. Ms. Trombetta informed me of the lack of interest by Defendants to settle her case. Upon hearing this, Dr. Scelsa will attest he suggested another trial attorney. Additionally I will attest that he was unable to submit an expert report on or before December 19, 2022 due to prior commitments and holiday plans.

Dr. Scelsa's or Plaintiff's submission of this statement did not change the fact that Plaintiff had ample time to comply with the Court's Orders and failed to do so.

Dr. Scelsa's February 16, 2023 report reveals that he had been retained as an expert consultant as he is a "Mental Health Counselor" and he has "experience and knowledge regarding the Italian and Italian American History." *See*, **Ex. "C"**, pg. 9, ¶1. He asserts that he would provide opinions on Plaintiff's "emotional injuries," and the loss of Plaintiff's opportunities and sales of artwork. *Id.* Yet. Dr. Scelsa had only one "in person meet up with Ms. Trombetta in September 2022," and distant non-professional interactions, and no records of any examination or treatment were produced. *Id*. Ms. Trombetta had been advised that if she was going to claim emotional distress, she would need to provide a medical report showing causation, medical records and an authorization to obtain the treating provider's file. *See*, Exhibit "D" at pp. 56-58. She failed to do so, and she cannot advance this claim. As such, Dr. Scelsa's opinions would be irrelevant anyway.

7

While Dr. Scelsa claims to be a licensed Mental Health Counselor, he offers no education or training credentials in art valuation, art authentication, handwriting authentication, or a basis for his opinion that the Plaintiff lost opportunities and sales of artwork.  Apart from misunderstanding the facts in this case, Dr. Scelsa makes a bald conclusory claim that "the confusion and chaos the false 1972 eBay sale caused was immediate and long standing."  *See*, **Ex. "C"** at pg. 11, ¶8. Without having performed any consumer survey, or an independent investigation, Dr. Scelsa claims that the claim that co-defendant made about the author of the painting "was and still is a public embarrassment in every sense, one that has brought great hardship and loss, professionally, financially and in the amount of years this has consumed her professional time." **Ex. "C"** at pg. 13, ¶1.  Yet the materials he reviewed and the actions he took do not support his findings.  He issues opinions on the impact of artwork he has never seen and signatures he has never seen. Moreover, he concedes that he advised Plaintiff to seek counseling on a "legal and mental" basis. *Id*. at pg. 17, ¶15.  His report is full of evidentiary issues (e.g. discussion of settlement), factually inaccurate assumptions and self-interest (his concern that a museum in which he is involved was mentioned).

While Dr. Scelsa's expert opinions would be objectionable under the evidentiary standards even if it were allowed to be admitted, the untimely disclosure, after the Court advised the Plaintiff that such a disclosure would be untimely, is cause for preclusion.  Due to the late disclosure, the Defendants have been severely prejudiced as there was not time to serve an expert rebuttal as the time to do so had passed, and the Defendants were unable to take Dr. Scelsa's deposition. Accordingly, the Defendants would be prejudiced if Dr. Scelsa was allowed to testify.

Gayle Skluzacek

Similar to the late expert disclosure of Dr. Scelsa, Plaintiff's disclosure of purported expert Ms. Skluzacek (*see* **Exhibit "E"**) attempts to justify why this disclosure was made more than two months late. Specifically, Ms. Skluzacek provided the following excuse for her two-month delay:

> Annamarie Trombetta had asked me to provide an expert witness report to support her case. Unfortunately, I was not able to provide this document until the New Year due to my obligations to other clients. I had a medical emergency in my immediate family last week which further delayed the completion of my report for Ms. Trombetta. This sequence of events should not reflect upon nor be considered neglect on the part of Ms. Trombetta.

Notably, in Ms. Skluzacek's February 21, 2023 report, Ms. Skluzacek concedes that she has been in touch with Ms. Trombetta since April 6, 2022. There was no reason why her report could not have been timely disclosed. Nevertheless, the Court considered the circumstances raised by the Plaintiff and likewise found that there was no reason to allow the attempted late disclosure.

An examination of Ms. Skluzacek's late disclosed expert report also reveals a myriad of issues as to the admissibility of any opinions that would be rendered. Ms. Skluzacek offers opinions on artwork she has never seen, values such artwork without taking into account its damaged status, and incorporates hearsay evidence and inadmissible material to fashion her opinions. She offers legal opinions without a law degree, has failed to set forth any education about copyright law, and otherwise adopts Plaintiff's statements without any independent verification. All of these issues would lead to a finding under <u>Daubert</u> that her opinions should be precluded.

In the end, however, Ms. Skluzacek's late disclosed report prejudiced the Defendants. Ms. Skluzacek's report (which is an initial report and not a rebuttal to WorthPoint's expert in any way) was served two weeks AFTER the deadline to serve a *rebuttal* report and two months after Plaintiff's deadline to serve the initial report. The Defendants had no time to procure a rebuttal expert or serve a rebuttal report. Moreover, the Defendants could not depose Ms. Skluzacek before

9

the deadline for expert discovery. We presume it was for these reasons that the Court previously indicated that the disclosure was untimely and subject to being stricken. To allow such disclosure would be prejudicial and must be rejected.

Patrick O'Leary

On December 5, 2022, Plaintiff submitted an "affidavit" of Patrick O'Leary (*see* **Exhibit "B"**). While this disclosure was made before the December 19, 2022 deadline, the substance of Mr. O'Leary's testimony would need to be limited to his disclosure. Mr. O'Leary's affidavit, however, only addressed a discovery issue which has been resolved by the Court (s*ee*, ECF No.:333) and other topics on which he is unqualified to render an opinion.

First, Mr. O'Leary spent considerable time addressing the manner in which co-defendants Estate Auctions, Inc. ("EAI") and the Novocins produced a document which evidenced a sale of a painting on eBay. There was considerable debate on whether the subject confirmation of sale was properly produced, and the Court ultimately accepted that the defendants made a sufficient disclosure. *See*, *Id.* ". As such, this part of Mr. O'Leary's affidavit is no longer relevant and there is no basis to allow any testimony on this subject. The remainder of Mr. O'Leary's 22-page disclosure leaves a half page of unsupported conclusions.

As to these other claimed "substantive opinions" of Mr. O'Leary, the Plaintiff and Mr. O'Leary have failed to produce any substantive support for his opinions, and Mr. O'Leary is not competent to testify on the subjects he merely alludes to in his affidavit. Mr. O'Leary classifies himself as an "Internet subject matter expert." *See* **Ex. "B"**, pg. 5. Importantly, Mr. O' Leary's affidavit states he has experience in internet business areas of:

> Planning, Strategy, Analysis, Operations Research, Sales, Marketing, Branding, Finances, Budgeting, Human Resources, Real Estate(Data Centers), Acquisitions, Mergers, Due Diligence, Risk Management, Sale of Company, Venture Capital,

Investment Bankers, Social Media, Intellectual Property, Patents, Prior Art and Trademarks.

He also attests to having experience in the Internet technical areas of:

Planning, Strategy, Analysis, Operations Research, Sales, Marketing, Branding, Finances, Budgeting, Human Resources, Real Estate(Data Centers), Acquisitions, Mergers, Due Diligence, Risk Management, Sale of Company, Venture Capital, Investment Bankers, Social Media, Intellectual Property, Patents, Prior Art and Trademarks.

Mr. O'Leary's affidavit states that this experience derives from, "thirty five plus years of post-college hands-on industry experience, from sitting in a cubicle programming and developing software to being the Chief Technology Officer (CTO) and Chief Executive Officer (CEO)."

Absent from any of Mr. O'Leary's experiences is any experience with art, the art industry, or the art market. Despite his utter lack of familiarity with the art market or art industry, Mr. O'Leary, without support, states the following in his Affidavit:

Regarding damages, while eBay in 2022, may be far more acceptable in the business mainstream, we need to consider that this unauthorized fraudulent transaction happened ten years ago in 2012 when such acceptance by the Art industry did not exist. Hence, further supporting Ms. Trombetta's claims for liability and damages against the Defendants.

He further states, "such undermining on the part of the Defendants would certainly impede Ms. Trombetta to market herself a top-tier artist (and her work) in New York City and in other markets around the world." Mr. O'Leary was not competent to make such statements as an expert. Mr. O'Leary lacks the credentials or expertise to provide any expert testimony on this issue.

Mr. O'Leary was deposed on March 1, 2023 (*see* **Exhibit "F"**). During his deposition, Mr. O'Leary was questioned on the basis for his statements related to art and the art industry. Specifically, he was asked and answered as follows:

Q.      So do you have any training in art?

11

A.      I've taken graphics classes over the last 35 years.  I've taken, you know, online, I would learn how to do things, you know, with CSS, so I could build web pages.  I took classes and training classes on cascaded style sheets, how to use Photoshop, if I'm going to build an image or something like that, I did training on that.  I did training on HTML, you know, HTML documents, how to build webpages.  I've done things with JavaScript that's used within web pages.  JavaScript can be used to manipulate the art on a page.  I would do -- I've done things like that.  Built the logos, built images, built web pages, did HTML. I'm not an artist like Ms. Trombetta, you know, as she would call herself, but I can do graphic design, which is in the field of art.

Q.   Just to confirm, do you have any training in painting?

A.   No, not painting.  No.

Q.   How about experience; have you ever painted yourself?

A.   I painted a lot of houses.

Q.   You never painted any visual artworks?

A.   Nothing deliberately.

Q.   Do you have any training in the art industry?

A.   Define "training."

Q.   Have you taken any courses or courses of study in the art industry?

A.   Okay.  Are we talking about college courses?

Q.   Let's start with college courses. Have you taken any college courses pertaining to the art industry?

A.   No, I don't have any college credits in the art industry.

Q.   How about certificates; do you have any certificates in anything related to the art industry?

A.   No.

Q.   Have you taken any courses in painting?

MS. TROMBETTA:  Asked and answered.

A.   No.

12

Q.   Have you taken any course in art history?

A.   I don't know why we're going down this path.  Ms. Trombetta did not engage me for the purpose of painting a canvass; she engaged me for dealing with technology and business issues as it pertains to this case regarding the liability and the damages in this case.

Q.   That's all I'm trying to establish.  I'm trying to confirm that this is what you are being retained for, let's say, as an expert, Mr. O'Leary. So as far as art history, do you have any courses in art history or training?

A.   No.  That's not relevant to my role in this engagement.

Q.   How about art appraisal or evaluation; any experience or background in that?

A.   No.  That's not –

Q.   Okay.  Just to confirm.  This is why I'm asking you. Have you yourself ever been involved in any art transactions; buying, selling, loaning art, anything like that?

A.   I don't have any recollection at this time.

Q.   Have you ever sold any paintings on eBay?

A.   I don't recall.

*See* **Ex. "F"** at pp. 113-116.

In addition, during his deposition, Mr. O'Leary was questioned on the basis of the following statement contained in his expert report: "[r]egarding damages, while eBay in 2022, may be far more acceptable in the business mainstream, we need to consider that this unauthorized fraudulent transaction happened ten years ago in 2012 when such acceptance by the Art industry did not exist. Hence, further supporting Ms. Trombetta's claims for liability and damages against the Defendants." Mr. O'Leary conceded that the basis of the statement did not derive from any art knowledge and instead:

"[a]s an internet expert, as a business expert, as someone with an electrical engineering degree, a computer science degree, and an MBA, and someone who's working on their

13

JD, and someone that's been an expert witness for 22 years, and someone owns that expertwitness.com, someone that built the largest dating portal. I'm able to make that statement."

*See* **Ex. "F"** at pp. 158-159.

Based on the expert qualification standards, Mr. O'Leary's anticipated testimony as to any art market practices or the impact of any transactions or occurrences at issue in this matter on Plaintiff's standing as an artist, her business opportunities or the value of her art, must be precluded.

It is also telling that Mr. O'Leary spends the first 16 pages of his 22-page report discussing the discovery issue that has been resolved, before turning to his one page of "Conclusions." In his "Conclusions", he makes unsupported statements that "it is clear that Ms. Trombetta did **NOT** create this painting as she would have only been **9** years old in **1972**." Yet, Mr. O'Leary never inspected the painting and does not know if it was actually painted in 1972. He has no credentials to even evaluate whether the painting was made in 1972 or to evaluate whether the Plaintiff painted it. Rather, he is repeating what Plaintiff told him to try to establish it as a fact.

Mr. O'Leary claims that the discovery dispute shows "something nefarious has undoubtedly taken place in this dispute that support Ms. Trombetta's liability and damages claim." *See* **Ex. "B"** at pg. 18. Yet he has no basis upon which to make such statements, especially since the Court has already ruled that the Defendants complied and did nothing "nefarious."

Mr. O'Leary attempts to then offer an opinion that the Defendants' conduct "impede[d] Ms. Trombetta to market herself as a top-tier artist (and her work) in New York City and in other markets around the world." However, Mr. O'Leary has no credentials to make such a determination, and even if he had, there is no evidence cited to support such a claim. He did not claim to have reviewed Ms. Trombetta's art sales, other art sales, the impact of eBay or other third-

14

party sales, the impact that damage to a painting has to its value (in this case, the painting allegedly was significantly damaged), or any other background that would have allowed him to form an opinion, even if he was an art expert, which he is not.

Mr. O'Leary is clearly not qualified to offer any opinions other than on the discovery issue that has been fully resolved and is not pertinent to the issues in this matter.   Insofar as Mr. O'Leary's opinions on discovery are moot, and his opinions on Plaintiff's damages' claim are unqualified, that leaves nothing left about which Mr. O'Leary can testify, and therefore he should be precluded from testifying.

## ARGUMENT

### I.      Governing Law and Procedure

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of anticipated evidence.  *See Luce v. U.S.*, 469 U.S. 38, 40 n. 2, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) ("[t]he purpose of an *in limine* motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial'").  Provisions of the Federal Rules of Civil Procedure (the "Procedural Rules") and the Federal Rules of Evidence (the "Evidence Rules") are relevant to an *in limine* determination.

First, under the Evidence Rules, grounds for exclusion lie where the evidence in question is irrelevant.  "The scope of admissible evidence is governed first by the claims in the case and then by the concept of relevancy.  *See U.S. v. Litvak*, 808 F.3d 160, 179-180 (2d Cir. 2015); *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011).  "Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  Second, even relevant evidence may still be excluded by the

Court "'if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Jackson v. City of White Plains*, 2016 U.S. Dist. LEXIS 6469, at *3 (S.D.N.Y. Jan. 19, 2016) (quoting Fed. R. Evid. 403). The district court has "broad discretion to balance probative value against possible prejudice" under Rule 403. *U.S. v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008).

Third, the Evidence Rules also provide grounds to exclude expert testimony and conclusions that are not properly founded. Evidence Rule 702 provides that, if specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, then a witness qualified as an expert may testify in the form of an opinion, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 592-94 (1993). All testimony, not just scientific testimony, must be reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).

In *Daubert*, the United States Supreme Court explained that, under Evidence Rule 702, district courts must act as "gatekeepers" when presented with proposed expert testimony by "ensuring that an expert's testimony both rests on a *reliable* foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 597. The Supreme Court has likened this role to that of a "gatekeeper," explaining that federal trial courts must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592-93. A party offering expert testimony bears the burden of establishing the admissibility of the testimony and

must show that (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. *See, e.g.*, *Lamela v. City of New York*, 560 F. Supp.2d 214, 224 (E.D.N.Y. 2008). It is inappropriate for experts to become a vehicle for advancing a factual narrative. *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp.2d 531, 551 (S.D.N.Y. 2004). Acting as a narrator of the facts does not convey opinions based on knowledge and expertise, and is not traceable to a reliable methodology. *Id.* "Under *Daubert* and [Fed. R. Evid.] 702, expert testimony should be excluded if the witness is not actually applying expert methodology." *United States v. Dukagiini*, 326 F.3d 45, 54 (2d Cir. 2002).

The Supreme Court in *Daubert* established a non-exhaustive list of factors for federal trial courts to use when evaluating expert testimony for admissibility. The factors that have been enumerated are whether the expert's theory or technique:

(1)     can be or has been tested;

(2)     has been subjected to peer review and publication;

(3)     has a known or potential rate of error or standards controlling its operation; and

(4)     is generally accepted in the relevant scientific community.

Fourth, the Procedural Rules also provide grounds to exclude testimony and evidence. Under Procedural Rule 37(c), if a party fails to provide information or identify a witness as required by Rule 26(a) or (e) , the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." *Fujifilm N. Am. Corp. v. Big Value, Inc.*, 2018 U.S. Dist. LEXIS 150204, * 8 (E.D.N.Y. Sept. 4, 2018) (*quoting Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006)). Bad faith is not required in order to exclude evidence pursuant to Procedural Rule 37. *Id.* WorthPoint respectfully submits

17

that the same should also be true as to not permitting late-disclosed experts to offer surprise evidence in support of any motion for summary judgment, which acts as a procedural equivalent of trial.

## II.   Plaintiff's Proposed Expert O'Leary Cannot Meet the *Daubert* Standard for the Specific Topics on which He Opines

Mr. O'Leary's conclusions are not only bald, but they are not even valid conclusions. Oxford Learner's Dictionary (last visited April 7, 2022, see https://www.oxfordlearnersdictionaries.com/us/definition/english/conclusion?q=conclusion) defines "conclusion" as "something that you decide when you have thought about all the information connected with the situation." Here, in forming his "conclusions," Mr. O'Leary has failed to consider any external information about the situation, let alone "all the information connected with the situation." He did not set forth his analysis, and therefore his theory cannot be tested. His lack of such an analysis can also not be peer reviewed or evaluated for potential errors. His conclusion lacks all scientific analysis and therefore cannot meet the *Daubert* standard.

Mr. O'Leary offers no opinion on how WorthPoint could be legally liable, but rather merely provides statements on how she has been damaged. He seems to believe that if he determines that the Plaintiff did not paint the subject painting, she proves liability. That is far from the case here. Mr. O'Leary makes the unfounded statement that "it seems the Defendants are not being truthful, thus any reasonable person would likely conclude that they are concealing something." This does not support a liability finding. He opines that "something nefarious has undoubtedly taken place in this dispute that support Ms. Trombetta's liability and damages claim." He does not say what this is or how it supports her claim. And, there is no basis for him to make such a claim. Accordingly, the only opinion in his Affidavit to be evaluated is his view that the

"undermining on the part of the Defendants" by associating the eBay-sold painting with the Plaintiff "impede[d] Ms. Trombetta to market herself as a top-tier artist."  However, Mr. O'Leary has no training, background or credentials to allow him to make such a claim.  And, he offers no basis for his "conclusion."

Plaintiff has the burden of demonstrating that she sustained damages. *See Antilles Shipping Co. v. Texaco, Inc*., 321 F. Supp 166, 167 (S.D.N.Y. 1970).  This burden includes establishing how Plaintiff's standing in the art market was impacted and the nature of the damages arising from this allegedly-tarnished standing.  *Id*. at 171.

Federal trial courts have been cautioned not to admit expert "opinion evidence which is connected to existing data only by the *ipse dixit* [a dogmatic and unproven statement] of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered. *Id.*  The "overarching goal" of *Daubert* and Evidence Rule 702:

> is to ensure the reliability and relevancy of expert testimony. It is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.

*Kumho Tire*, 527 U.S. at 152. The expert's self-proclaimed accuracy and reliability is never sufficient.  *Id.*  Notwithstanding O'Leary's qualifications as an Internet expert, his own *ipse dixit* is insufficient to tie his broad extrapolations to the facts of this case.  The subject of an expert's testimony must be "scientific . . . knowledge." Fed. R. Evid. 702(a).

Here, Mr. O'Leary lacks knowledge, let alone scientific knowledge, of art-related matters. Specifically, he lacks the requisite training, education, or experience to opine on any art-related issues, including but not limited to: painting; art appreciation; art valuation; art history; the art

industry; artistic signatures; art transactions; or Plaintiff's body of work in particular. Rather, he essentially alleges that he is qualified to opine on art related matters through his limited graphic design experience, C-Suite experience and his mantle of an "Internet expert".

Furthermore, Mr. O'Leary's own testimony confirms that he has no business speaking on art matters. "'Expert testimony should be excluded if it is speculative or conjectural' . . . 'the admission of expert testimony based on speculative assumptions is an abuse of discretion.'" *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (quoting *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21-22 (2d Cir. 1996)), *see also In re Air Disaster at Lockerbie Scot.*, 37 F.3d 804, 824 (2d Cir. 1994) (holding that expert testimony regarding potential alternative causes that lacked any supporting evidence was merely speculative and inadmissible) (implied overruling on other, unrelated grounds recognized by *Brink's Ltd. South African Airways*, 93 F.3d 1022, 1029 (2d Cir. 1996)).

While Mr. O'Leary might be qualified on matters related to the Internet, he has no "expert" qualifications when it comes to offering opinions on the causation of any damages related to art or Plaintiff's standing in the art market. The only "knowledge" Mr. O'Leary may have had was on the issue of an email from eBay to WorthPoint's co-defendant, a discovery issue concerning EAI Defendants' production that has long been deemed resolved by the Court (see, ECF No.:333) Therefore, WorthPoint respectfully requests that Mr. O'Leary's testimony and his affidavit be precluded from trial in this matter in its entirety.

## III.    The Court Must Exclude Plaintiff's Late-Disclosed Experts and Any Future Proffer of Documents Not Adduced During Discovery

The testimony and opinions of Plaintiff's untimely-disclosed purported experts, Dr. Joseph Scelsa and Gayle M. Skluzacek, must also be precluded. Despite the Court's countless warnings regarding the expert discovery deadlines in over a dozen Orders, Plaintiff disclosed Dr. Scelsa on

February 16, 2023 and disclosed Gayle Skluzacek on February 21, 2023 – months after the deadline of which she was repeatedly reminded by the Court. The Court has already determined that Ms. Trombetta failed to demonstrate extraordinary circumstances for her failure adhere to the Court's expert discovery deadlines that the late-disclosed experts are subject to being precluded, and invited Defendants to make Daubert motions in that regard.

As stated above, under Procedural Rule 37(c), if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." *Fujifilm N. Am. Corp. v. Big Value, Inc.*, 2018 U.S. Dist. LEXIS 150204, * 8 (E.D.N.Y. Sept. 4, 2018) (*quoting Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006)).  Bad faith is not required in order to exclude evidence pursuant to Procedural Rule 37.  *Id.*

Here, there is no justification for the failure to disclose two experts until two months after the close of expert discovery or for Plaintiff's purported expert O'Leary to fail to submit a rebuttal to WorthPoint's expert's report. Plaintiff was advised by the Court via multiple Court Orders of the initial and rebuttal expert discovery deadlines. Moreover, during a conference in November, Plaintiff represented to the Court that she "understood" that  merely disclosing an expert resume was insufficient under Rule 26 and that she needed to comply with the additional requirements, such as disclosure of the substance of the testimony that the expert witnesses were anticipated to give, or of their reports. Rather than doing so, on the eve of the deadline she requested an extension, which was denied to her failure to show extraordinary circumstances justifying such an extension. Notably, not one of Plaintiff's experts proffers a reasonable excuse for the extensive delay of the disclosures, especially since each expert had been working with Plaintiff for many months prior to the deadline. (See **Ex. "C"** at p.17, ¶19; **Ex. "E"**. at p. 9). Dr. Scelsa and Ms. Skluzacek only state

21

that the delay was due to other engagements. "Other engagements" fail to account for the two-month gap between the deadline and the respective submission and for the many months prior the deadline.

Moreover, Plaintiff's failure to timely disclose her experts is not harmless. Plaintiff disclosed her experts two weeks after the deadline for a rebuttal expert disclosure and days prior to the deadline for expert depositions. As stated in WorthPoint's letter to the Court, the reports were submitted after rebuttal expert deadlines had passed and left Defendants without an opportunity to sufficiently review and prepare any rebuttals, or to even timely notice the expert depositions that required at least fourteen (14) days' notice. The Court clearly agreed with Worth Point's position and stated in its Order that Plaintiff's untimely reports are subject to being stricken. (*See* ECF No. 375); s*ee In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 263 F. Supp. 3d 446, 452 (S.D.N.Y. 2017) (collecting cases); *see also Advanced Analytics, Inc. v. Citigroup Glob. Markets, Inc.*, 301 F.R.D. 47, 52 (S.D.N.Y. 2014).

As discussed above, Plaintiff's purported experts, Dr. Joseph Scelsa and Gayle M. Skluzacek, would have also failed the Daubert standard substantively. While Dr. Scelsa claims to be a licensed Mental Health Counselor, he concedes that he only saw plaintiff once and referred her for "legal and mental" counseling elsewhere. *See* **Ex. "C"**, pg. 17, ¶15.  He offers no education or training credentials in art valuation, art authentication, handwriting authentication, or a basis for his opinion that the Plaintiff lost opportunities and sales of artwork; and yet, he makes a bald conclusory claim that "the confusion and chaos the false 1972 eBay sale caused was immediate and long standing."  *Id*., pg. 13 at ¶8 Without having performed any survey, or an independent investigation, Dr. Scelsa claims that the claim that co-defendant made about the author of the painting "was and still is a public embarrassment in every sense, one that has brought great

22

hardship and loss, professionally, financially and in the amount of years this has consumed her professional time." *Id.* Again, the materials he reviewed and the actions he took do not support his findings. He issues opinions on the impact of artwork he has never seen and signatures he has never seen. Finally, his report includes discussions of impermissible evidentiary issues (e.g. discussion of settlement), unsupported factual assumptions and self-interest (his concern that a museum in which he is involved was mentioned).

Similarly, Ms. Skluzacek offers opinions on artwork she has never seen, values such artwork without taking into account its damaged status, and incorporates hearsay evidence and inadmissible material to fashion her opinions. She offers legal opinions without a law degree, has failed to set forth any education about copyright law, and otherwise adopts Plaintiff's statements without any independent verification. All of these issues would lead to a finding under <u>Daubert</u> that her opinions should be precluded.

Additionally, given Plaintiff has made attempts to introduce new expert witnesses after discovery closed and had unsuccessfully sought leave to reopen discovery so she can produce more records to address WorthPoint's expert disclosure, WorthPoint must also request that the Court bar Plaintiff from introducing new documentary evidence not previously produced in discovery. *Kam Hing Enterps., Inc. v. Wal-Mart Stores, Inc.*, 359 Fed. Appx. 235, 238 (2d Cir. 2010) (summary order, affirming district court grant of motion *in limine* to preclude evidence not produced to opponent).

## CONCLUSION

For the foregoing reasons, Defendant WorthPoint respectfully requests that this Court grant its Omnibus *Motion in Limine Regarding Experts* and exclude at trial and on motions for summary judgment the introduction of: (1) the testimony and report of Plaintiff-designated experts Dr.

23

Joseph Scelsa and Ms. Gayle M. Skluzacek; and (2) the testimony and affidavit, as well as the unfounded inferences and conclusions on liability and damages from Mr. O'Leary, as well as any testimony on issues not contained within his disclosure; (3) any documentary evidence that Plaintiff attempts to introduce that she had not disclosed during discovery; and (4) for such other, different and further relief as the Court in its discretion may deem just and proper.

Date: April 7, 2023

Respectfully submitted,

WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP

*Jana S. Farmer*

Jana S. Farmer, Esq.

24