IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____

| | | |
|---|---|---|
| Annamarie Trombetta, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No: |
| | ) | 18-cv-00993 (LTS) (SLC) |
| v. | ) | |
| | ) | |
| Norb Novocin, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____)

## DEFENDANT WORTHPOINT CORPORATION'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ
EDELMAN & DICKER LLP
150 E. 42nd Street
New York, New York 10017-5639
(212) 490-3000

*Attorneys for Defendant WorthPoint Corporation*

Of Counsel:   Adam R. Bialek
              Jana Slavina Farmer
              John Cahill

284370023v.2

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 4

POINT I.  PRO SE PLAINTIFF IS NOT EXEMPT FROM MEETING THE
LEGAL BURDEN ON A MOTION FOR SUMMARY
JUDGMENT .................................................................................... 4

POINT II.  PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS ARE
TIME-BARRED ................................................................................ 6

POINT III.  PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS ARE
BARRED BY THE DMCA §512(c) SAFE HARBOR DEFENSE .......... 9

POINT IV.  PLAINTIFF'S CLAIMS OF COPYRIGHT INFRINGEMENT OF
HER BIOGRAPHY ARE BARRED BY THE DOCTRINE OF
FAIR USE ...................................................................................... 11

POINT V.  PLAINTIFF'S CLAIMS UNDER VARA ARE TIME-BARRED .......... 13

POINT VI.  EVEN IF VARA CLAIMS WERE NOT TIME-BARRED,
WORTHPOINT DID NOT ATTRIBUTE THE PAINTING TO
PLAINTIFF AND NO MONETARY DAMAGES ARE
AVAILABLE TO PLAINTIFF UNDER THE VARA
MISATTRIBUTION CLAIM ............................................................ 14

POINT VII.  PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL
DISTRESS CLAIM MUST BE DISMISSED ...................................... 14

POINT VIII.  PLAINTIFF'S DMCA CLAIMS ARE TIME-BARRED AND
FAIL AS A MATTER OF LAW ........................................................ 16

POINT IX  PLAINTIFF'S FRAUD CLAIM MUST BE DISMISSED ................... 17

POINT X  PLAINTIFF IS NOT ENTITLED TO A PERMANENT
INJUNCTION ................................................................................ 18

CONCLUSION .................................................................................................... 19

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
   143 S. Ct. 1258 (2023) ........................................................................................ 11

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U. S. 569 (1994) .......................................................................................... 11

*Capitol Records, Inc. v. Naxos of America, Inc.*,
   372 F.3d 471 (2d Cir. 2005) ............................................................................... 17

*Dos Santos v. Assurant, Inc.*,
   2022 U.S. Dist. LEXIS 158484 (S.D.N.Y. Sep. 1, 2022) .................................. 13

*Feuer v. Cornerstone Hotels Corp.*,
   2017 U.S. Dist. LEXIS 124433 (E.D.N.Y. 2017) ............................................... 5

*Giddings v. Vision House Prod., Inc.*,
   No. CV 05-2963-PHX-MHM, 2007 U.S. Dist. LEXIS 58438, 2007 WL 2274800 (D.
   Ariz. Aug. 7, 2007) ............................................................................................ 14

*Haas v. Delaware & Hudson Ry. Co.*,
   282 Fed.App'x 84 (2d Cir. 2008) ........................................................................ 5

*Hawkins v. New York State Office of Mental Health*,
   2019 U.S. Dist. LEXIS 160252 (S.D.N.Y. 2019) .............................................. 4

*HC2, Inc. v. Delaney*,
   510 F. Supp. 3d 86 (S.D.N.Y. 2020) ................................................................. 15

*Mass. Museum of Contemporary Art Found., Inc. v. Buchel*,
   593 F.3d 38 (1st Cir. 2010) ................................................................................ 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) .................................. 4

*New Era Publs. Int'l, ApS v. Carol Publ. Group*,
   904 F.2d 152 (2nd Cir. 1990) .......................................................................... 12

*Psihoyos v. John Wiley & Sons*,
   748 F.3d 120 (2nd Cir. 2014) ....................................................................... 7, 8

*Rainey v Wayne State Univ.*,
   26 F. Supp. 2d 963 (E.D. Mich. 1998) .............................................................. 15

*Rosen v. Terapeak*,
 2015 U.S. Dist. LEXIS 183542 (U.S.D.C. C.D.C. 2015) ........................................................ 18

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
 742 F.3d 17 (2d Cir. 2014) ........................................................................................................ 12

**Statutes**

17 U.S.C. 1202(a) ............................................................................................................................ 1

17 U.S.C. 1202(b) ............................................................................................................................ 1

17 U.S.C. 1202(c) .......................................................................................................................... 16

17 U.S.C. 507(b) ............................................................................................................................ 13

17 U.S.C. 512(c)(A) ...................................................................................................................... 10

**Rules**

CPLR 213(2) .................................................................................................................................... 1

Fed. R. Civ. P. 56(a) ...................................................................................................................... 18

Fed. R. Civ. P. 56(e) ........................................................................................................................ 4

**Other Authorities**

3 Nimmer on Copyright, at § 8D.06[B][1] .................................................................................... 14

284370023v.2

## PRELIMINARY STATEMENT

Plaintiff's Opposition[1] fails to address WorthPoint's bases for summary judgment, instead opting to raise irrelevant issues and anecdotes,[2] cite to unsupported and inaccurate "facts" and discuss claims that are not in issue.  Plaintiff asserts in her Opposition to WorthPoint's motion for summary judgment that the "crux of Plaintiff's response" is to "set forth conclusive proof of Defendants' WorthPoint Corp.'s liability for violations of Copyright infringement […], The Visual Artists Rights Act […], for violation of the DMCA 17 U.S.C. 1202(a) removing or altering copyright management information under 17 U.S.C. 1202(b) falsifying copyright management information, Fraud (Rule 9), Intentional Infliction of Emotional Distress, Tort[3], CPLR 213(2) and the request for Declaratory and Permanent Injunctive Relief, as well as finding Defendants' conduct was willful." Docket Entry (or "DE") 496 at 4.  As discussed herein, not only does Plaintiff fail to present a triable issue of fact (let alone "conclusive proof") of WorthPoint's liability for Plaintiff's claims, she also fails to address the defenses WorthPoint has raised that bar her recovery in its entirety. As such, WorthPoint's motion must be granted.

Plaintiff spends the first 22 pages of her Memorandum in Opposition ("Opposition") on an "introduction" and "summary", raising various extraneous issues that have nothing to do with the claims asserted or defenses raised. For example, Plaintiff discusses that her childhood signature is different from the one that appears on the oil painting titled "Man with Red Umbrella" (the "Painting"), which co-defendant Novocin attributed to Plaintiff. This is despite WorthPoint

---

[1] Plaintiff titles her Opposition as a "Response" (hereinafter "Opposition") perhaps because she fails to sufficiently address Defendant's defenses that bar recovery, instead opting to once again try to tell her story, i.e. that the painting sold by the EAI/Novocins Defendants was not painted by her and should not have been attributed to her in the ad posted on eBay by EAI/Novocins.  WorthPoint has never had knowledge as to who painted the subject painting, and was not responsible for making such a claim.  WorthPoint merely reported the auction result as posted on eBay.
[2] For example, Plaintiff continues to address the Defendants' comments on Plaintiff's February 2022 settlement 20+ page demand letter, that Defendants could not interpret.  This is irrelevant and not appropriate to be raised here.
[3] The "tort" claim is not actually addressed in the Opposition. Nor was it plead in the Second Amended Complaint, except as an alternative name to Plaintiff's Intentional Infliction of Emotional Distress claim. ECF 348-1.

284370023v.2

specifically noting in its opening motions papers that it takes no position on whether Plaintiff created the Painting. Plaintiff discusses the misspelling of her name on the Painting she claims is not hers and that WorthPoint has never seen. She complains that none of the Defendants ever bothered to discover who created the Painting. But, none of that is relevant to this motion.

WorthPoint did not sell the Painting or attribute it to Plaintiff. WorthPoint has never seen the Painting, never had possession of it, and had no role in advertising it for sale. WorthPoint is an online research resource for valuing art and other collectables, and its Price Guide features over 720 million items and over a billion photographs from historical records dating back to 2006. In 2012, co-defendant Novocin, owner of Estate Auctions, Inc. ("EAI"), sold the Panting on eBay. Mr. Novocin admits that he, alone, composed the Painting's eBay listing (hereinafter, "Auction Listing"). Mr. Novocin attributed the Painting to Plaintiff based on his research of artists with the name "Trombetta" on the Ask Art website and copied her biography from Ask Art (hereinafter, "Biography") to include in his Auction Listing.

Between 2012 and 2015, eBay made the Auction Listing, among millions of others, available to WorthPoint for automatic download and publishing in its Worthopedia as a report of an auction sale. (WorthPoint's post of the historic Auction Listing is hereinafter referred to as the "WP Report"). On February 4, 2016, after Plaintiff asked WorthPoint in early 2016 to remove the WP Report from the database, WorthPoint complied. The WP Report was never reposted, as evidenced by the server code and Google Analytics records that WorthPoint produced, and as supported by the findings of WorthPoint's expert Stricchiola.

Plaintiff's Opposition also spends a considerable time discussing what she believes are Defendant's insufficient discovery responses. In particular, Plaintiff is challenging some of the objections that WorthPoint raised in discovery and is again bringing up the issue of a supposedly-

inauthentic eBay confirmation of sale that the Novocin Defendants produced (this in fact has nothing to do with WorthPoint as it did not participate in the eBay sale). However, this is a red herring. All discovery issues have long been resolved by the Court, and discussion of the merits of the objections or whether WorthPoint should have produced documents it expressly stated it did not have is irrelevant at this stage.  DE 340, 361, 364, 367, 375, 384, 387 and 509

Plaintiff furthermore continues to accuse WorthPoint and its counsel, as well as any attorney who ever appeared in this case, of impropriety, intimidation, deception and fraud. With over 500 docket filings in this matter, this is not the first time Plaintiff is bringing up these unsubstantiated allegations either. However, during the course of the three years since WorthPoint has been brought into this litigation, not once has either Judge Abrams or Magistrate Judge Cave found any impropriety on the part of WorthPoint or its counsel, despite Plaintiff's constant accusations and personal attacks. All such conduct is denied, and is irrelevant to the claims here.

None of these issues in the first 22 pages of the Opposition are dispositive of WorthPoint's pending motion. What is dispositive is that Plaintiff admits that she first discovered the WorthPoint Report in August 2015 and she has no competent proof that this report was ever reposted. Plaintiff's Amended Complaint impleaded WorthPoint for the first time on February 21, 2020. As such, Plaintiff's claims sounding in copyright infringement (for her Biography), Digital Millennium Copyright Act violations (again, with respect to her Biography), and Visual Artists Rights Act misattribution (with respect to the Painting) are all long since time-barred. Plaintiff's Opposition does not offer any evidence to the Contrary, and none exists.

Plaintiff furthermore attempted to reassert in her Second Amended Complaint the claims that were previously dismissed by the court and for which she did not receive leave to replead. This Court previously dismissed *with prejudice* Plaintiff's claims for violations of the Lanham

3

Act, New York Artist's Authorship Rights Act, New York Civil Rights Act, and Declaratory Relief. *See* DE 23. In her Opposition, Plaintiff is quiet about these meritless claims, apparently abandoning them. These claims must therefore be dismissed again.

Plaintiff inappropriately attempts to expand what is considered the operative Second Amended Complaint ("SAC"), citing DE 348 as if that document was the SAC. However, while Plaintiff has filed multiple motions to amend and multiple versions of the proposed Second Amended Complaint, the Court deemed **DE 348-1** "the governing pleading of this action." *See* DE 366. WorthPoint has relied on DE 366 and has confined its motion solely to the SAC (DE 348-1). The SAC cannot be a moving target and Plaintiff should not be permitted to reference one of her 80-page motions to amend as supposedly being part of the SAC.

With respect to the remaining causes of action sounding in fraud, intentional infliction of emotional distress, "tort", declaratory and permanent injunctive relief, the Opposition still fails to either particularize these claims or to assert a *prima facie* case, let alone present a supportable claim for such relief. In sum, the SAC against WorthPoint must be dismissed in its entirety.

## ARGUMENT

### POINT I. *PRO SE* PLAINTIFF IS NOT EXEMPT FROM MEETING THE LEGAL BURDEN ON A MOTION FOR SUMMARY JUDGMENT

Every nonmoving party opposing a motion for summary judgment must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis omitted) (citing Fed. R. Civ. P. 56(e)). "[P]ro se plaintiffs cannot overcome a motion for summary judgment by simply making 'bald' assertions that are unsupported by the evidence." *Hawkins v. New York State Office of Mental Health*, 2019 U.S. Dist. LEXIS 160252, *18 (S.D.N.Y. 2019). "Instead, the pro se litigant must point to specific evidence in the record to carry its burden on

summary judgment." *Feuer v. Cornerstone Hotels Corp*., 2017 U.S. Dist. LEXIS 124433, *23 (E.D.N.Y. 2017).

Plaintiff's Opposition to WorthPoint's motion is replete with unsubstantiated bald assertions and unrelated matter that has no bearing on the claims or defenses. For example, Plaintiff relies on statements from Alex Raspa, a witness that Plaintiff withdrew after WorthPoint sought to conduct his deposition. See accompanying Declaration of Jana Farmer and Exhibit A thereto. Any purported statements from an undisclosed witness must be stricken. *See, e.g., Haas v. Delaware & Hudson Ry. Co*., 282 Fed.App'x 84, 86 (2d Cir. 2008) (affirming striking of affidavit in opposition to motion for summary judgment from previously undisclosed witness). Furthermore, to the extent that Plaintiff is attempting to rely on the untimely-disclosed testimony of her purported experts, WorthPoint notes that Judge Sarah Cave has already precluded the untimely and insufficient disclosures of Plaintiff's purported experts, Dr. Sclesa and Ms. Skluzacek. *See* DE 509.  As such, Plaintiff may not introduce this evidence either at trial nor on summary judgment.

In addition, while Plaintiff had disclosed an "expert" Affidavit of Patrick O'Leary prior to the expert disclosure deadline, she has since tried to submit additional, untimely disclosures of his opinions, also in contravention of Magistrate Judge Cave's orders. A *motion in limine* to exclude untimely and extraneous O'Leary testimony is pending before the Court. DE 403-405. WorthPoint respectfully submits that Plaintiff should not be permitted to rely on any of Mr. O'Leary's untimely disclosed opinions on this motion, because none of Mr. O'Leary's opinions as against WorthPoint were timely disclosed. WorthPoint adopts and incorporates by reference its arguments in the

284370023v.2

pending *motion in limine* as they pertain to Mr. O'Leary's testimony being offered in opposition to this motion.

Otherwise, Plaintiff has failed to produce any competent evidence to rebut any of WorthPoint's positions, and dismissal is warranted based on the lack of any evidentiary support. Plaintiff herein fails in her burden to raise any issues of material fact to defeat WorthPoint's motion. As such, her Complaint must be dismissed in its entirety as against WorthPoint.

### POINT II. PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS ARE TIME-BARRED

WorthPoint demonstrated Plaintiff was aware of the WP Report as early as August 2015. Plaintiff does not dispute this fact. *See* Opposition at 4-6. Yet, Plaintiff did not bring a claim against WorthPoint until February 21, 2020, four and a half years later.

In her Opposition, Plaintiff attempts to change the allegations in her SAC. In her SAC, she alleged that the same WP Report continuously remained on WorthPoint's website. *See* DE 348-1, P. 12, ¶ 10 ("the false post was still under my name"), *Id*. at P.13, ¶ 14 ("around December 2016 I found that the same 1972, entitled "Man with a Red Umbrella" and related posted were on the internet under my name"). *Id*. at P.18, ¶ 2 under "SUMMARY" ("THE POSTING WAS UP SINCE DECEMBER 2012- UNTIL DECEMBER 2016."). The Opposition now argues, without support, that WorthPoint removed and then reposted the WP Report, making a conclusory assertion in order to avoid the statute of limitations defense and the consequences of her delay in bringing the claim. Any attempts to amend the allegations of the Complaint after two amendments were granted and after Plaintiff's multiple motions to amend were denied, are not appropriate to allow Plaintiff to amend her allegations in an opposition to a motion for summary judgment.

284370023v.2

Moreover, Plaintiff offers no evidence that WP Report was reposted as opposed to the same post remaining on WorthPoint's website[4]. Plaintiff's only evidence of reposting are her printouts from Google and a copy of the WP Report (Plaintiff's Exhibit 26) with printer dates in March-May 2017. However, neither Plaintiff nor any of her witnesses can definitively confirm that the post was removed and reposted, and the printer date does not prove that a post was removed or posted again.

Plaintiff herself cannot verify that the post remained live after it was removed. When questioned at her deposition, Plaintiff merely alleged that, on March 15, 2017, she searched on Google for *1972 Original Oil Painting Man with Red Umbrella Signed* and a search result reported this title in connection with a link pointing to WorthPoint's website. *See* DE 425-1, pp. 269-270. Plaintiff could not recall whether she clicked through to access WorthPoint's website on that day and does not know what the page would have contained. *Id.* Rather, she responded, "I cannot respond with certainty". *Id.* Plaintiff therefore has no evidence, not even self-serving testimony, on which she can rely to establish that the Biography that was in the EAI eBay ad was visible. Even if Plaintiff claimed she saw the posting, such claim would not verify that the WP Report was on WorthPoint's site after it had been removed. Google caches results, so if Plaintiff had seen the WP Report (which she conceded she cannot verify), the post could have been a remnant in Google's cache, not from WorthPoint's site.

As explained in the report of Jessie Stricchiola, submitted with WorthPoint's initial moving papers, the printer date on a printout of the page does not necessarily mean that this page appeared on WorthPoint's website at that time. *See* DE 425-5, Stricchiola Report, p. 13, at ¶23. Without

---

[4] WorthPoint maintains that the WP Report was removed on February 4, 2016 and never reposted, and has produced significant irrefutable evidence to support this claim.

additional evidence, which Plaintiff has failed to produce, the timestamp is not a reliable indicator because it can be incorrect and/or manipulated. *Id*.

Plaintiff cites *Psihoyos v. John Wiley & Sons*, 748 F.3d 120, 125 (2nd Cir. 2014), apparently in support of her statute of limitations argument. However, in *Psihoyos*, the Court determined that the applicable three-year statute of limitations barred none of Psihoyos's infringement claims because Psihoyos, exercising reasonable diligence, did not discover the infringements until fewer than three years prior to bringing suit; the Second Ciruit affirmed. By contrast, here, Plaintiff admits that she was aware of WorthPoint's Report back in August 2015 (Opposition at 4-6), and the discovery rule is not applicable to revive her late-filed claims.

Plaintiff also cites *Psihoyos* for the proposition that statutory damages for copyright infringement may be awarded even when, as here, plaintiff's copyright registration occurs after the alleged infringement. *See* Opposition at p. 23.  While this is outside the scope of WorthPoint's motion and statute of limitations argument, Plaintiff is misinterpreting *Psihoyos* on this issue as well. Psihoyos involved eight photographs and "Psihoyos had failed to register the two Narcoleptic Dog photos and the Dinamation photo with the Copyright Office prior to filing suit." *Psihoyos*, 748 F.3d at 123. To the extent damages for willful infringement were awarded, they were for the different "Oviraptor and Triceratops photos" (*see id*.).  In fact, the Second Circuit affirmed the District Court's grant of summary judgment dismissing Psihoyos's claims relating to the Narcoleptic Dog and Dinamation photos. *Psihoyos*, 748 F.3d at 126. Thus, this decision would not support Plaintiff's argument that statutory damages may be awarded if a registration post-dates the alleged infringement. Again, this is a misdirection and refers to irrelevant claims.

In summary, the statute of limitations on Plaintiff's copyright claims expired in August of 2018.  Even if the statute of limitations was measured from the date the post last appeared online

(which is not the standard), Plaintiff's claims would have been barred by more than one year by the time she commenced the action against WorthPoint.  As such, WorthPoint is entitled to dismissal as Plaintiff failed to file her Complaint within the applicable statute of limitations period.

**POINT III.  PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIMS ARE BARRED BY THE DMCA §512(c) SAFE HARBOR DEFENSE**

Even if the statute of limitations did not bar Plaintiff's claims, her claims would be substantively barred by the DMCA.  Plaintiff argues in her Opposition that WorthPoint does not qualify for a DMCA Safe Harbor defense because WorthPoint had actual knowledge that the WP Report infringed Plaintiff's copyright or in the alternative, was aware of the circumstances from which it was apparent that the post was infringing. *See* Opposition at 24. In support of her argument, Plaintiff cites to her Exhibit 9 (Plaintiff's November 26, 2015 email inquiry to eBay); Exhibit 11 (a copy of an Item Review Request dated January 14, 2016, which Plaintiff claims she submitted to WorthPoint); and her Exhibit 26 (containing a mélange of Plaintiff's printouts of several emails, Google search results printed out in the same minute and of what appears to be a cached version of the WP Report, printed out on different dates in 2017). Each of these Exhibits post-date Plaintiff's admitted date of discovery of the WP Report in August 2015. Plaintiff's argument, in short, is that WorthPoint knew of the Plaintiff's copyright claim as to her biography *after* Plaintiff contacted WorthPoint. That does *not* negate the DMCA defense.

Plaintiff essentially concedes that prior to her contacting WorthPoint, WorthPoint was not aware that Plaintiff was asserting a copyright claim in her biography and that she maintained that the WP Report was infringing.  In the opening motion papers, WorthPoint demonstrated that it automatically downloaded the eBay Action listing at the direction of its licensing partner together with millions of other records of completed eBay sales. *See* DE 427, Opening Memorandum, at 20; DE 425-7, Declaration of William Seippel, at 13-14. The WP Report was automatically

9

generated without any manual review. After Plaintiff discovered the WorthPoint report, she admits that what she communicated to WorthPoint was that she did not do the Painting, that she inquired into who bought and who sold the Painting, and was then directed to eBay for the information about the buyer as WorthPoint did not have that information. *See* Opposition at 12. This is consistent with the Declaration of William Seippel, noting that initially Plaintiff only requested information about the Painting. *See* DE 425-7, Declaration of William Seippel, at 15.

Plaintiff claims that on January 14, 2016, she first submitted an Item Review Request, claiming that the Painting infringed on her Copyright. *See* Plaintiff's Exhibit 11 to the Opposition and Opposition at page 13. Although it is arguable whether Plaintiff even properly complied with the takedown policy, WorthPoint promptly removed the WP Report from the website on February 4, 2016 and never reposted it. *See* DE 425-7, Declaration of William Seippel, at 16-17.

In sum, WorthPoint demonstrated that it did not know of Plaintiff's *claim* of copyright infringement until January 14, 2016 (prior inquiries about the buyer's identity did not indicate any copyright infringement); and once WorthPoint learned of the claim, the WP Report was promptly taken down. As such, WorthPoint satisfied the knowledge requirements of the DMCA Safe Harbor under 17 U.S.C. §512(c)(A).

Plaintiff also argues, without support, that WorthPoint was a "paid Member ship [sic] to view pricing records and receive financial benefit directly attributable to infringing activity" and as such, it does not qualify for the DMCA Safe Harbor. *See* Opposition at 24. Plaintiff fails to dispute, however, that WorthPoint did not derive any financial benefit from the alleged infringement, as access to the WP Report was available without payment.[5] *See* DE 425-1,

---

[5] The aspect of the post that was behind a paywall was the price that had been paid, not the alleged infringing biography. Nevertheless, even that fact was obtainable without paying WorthPoint, as Plaintiff obtained such information and never paid WorthPoint.

Plaintiff's Deposition, at pp. 87, 205, 215. Specifically, Plaintiff testified that she was able to access the WP Report with her biography without having to pay anything; she subsequently sought to gain WorthPoint's membership benefits to see pricing information, but she does not and cannot maintain copyright in prices paid by others. *See also*, Opposition at 25, admitting again that Plaintiff accessed the entire WP Report for free. William Seippel confirms that WorthPoint does not derive profit directly from any specific entry in WorthPoint's Price Guide. *See* DE 425-7, at 7.

As such, WorthPoint successfully demonstrated that it has met all of the conditions of the DMCA §512(c) safe harbor, and thus all of Plaintiff's claims against WorthPoint arising out of the Copyright Act would fail even if the statute of limitations had not expired.

## POINT IV. PLAINTIFF'S CLAIMS OF COPYRIGHT INFRINGEMENT OF HER BIOGRAPHY ARE BARRED BY THE DOCTRINE OF FAIR USE

Plaintiff argues that WorthPoint's use of her biography in the WP Report cannot be fair use because WorthPoint is a for profit organization and because Plaintiff's biography is a "creative, original literary form of self expression." *See* Opposition at 25. Plaintiff incorrectly maintains that only nonprofit organizations may benefit from the fair use doctrine. As the Supreme Court explained in the recent decision in *Warhol v. Goldsmith*, it is the nature of the particular use that is dispositive. "This factor [of the fair use analysis] considers the reasons for, and nature of, the copier's use of an original work." *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 143 S. Ct. 1258, 1274 (2023). Here, WorthPoint did not commercially license or derive profit from displaying the text on a historic eBay listing. Rather, WorthPoint supplied this historic sale information for art research free of charge, including in this instance an excerpt from the Biography because it was part of the original Auction Listing.

The Supreme Court also noted that even "[t]he commercial nature of the use is not dispositive". *Warhol, supra*, 143 S. Ct. at 1276. Commercial nature of the use it is to be weighed

against the degree to which the use has a further purpose or different character. *Id. , citing Campbell v. Acuff-Rose Music, Inc*.,  510 U. S. 569, 579 (1994) ("[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use").

Here, WorthPoint's use transformed the use from commercial purpose (by Novocin, and even Plaintiff) to non-commercial. The character of the use was transformed as well: whereas Plaintiff and Mr. Novocin supplied the Biography to give information about the artist, and Mr. Novocin – in order to sell the Painting, the WP Report simply included it because it was part of the "Item Description" in the Auction Listing. Had the Biography not been part of the Auction Listing, WorthPoint would not have used it, as it does not manually edit auction listings which it reports.

Plaintiff furthermore conjoins WorthPoint with the other Defendants when she notes that Norb Novocin admitted to using her biography because he wanted to increase his chances of selling the Painting. *Id.* WorthPoint was not selling the Painting and only licensed and reported the record of a completed eBay sale by Mr. Novocin. None of the items on WorthPoint's Price Guide database are for sale, they are historic records of completed sales. *See* DE 425-7, Seippel Declaration, at 4.

To the extent that Plaintiff puts forth that literary works are not subject to the fair use defense, this is also wrong. The Second Circuit held that "[o]ur cases establish that biographies in general, and critical biographies in particular, fit "comfortably within" these statutory categories "of uses illustrative of uses that can be fair." *New Era Publs. Int'l, ApS v. Carol Publ. Group*, 904 F.2d 152, 156 (2nd Cir. 1990) (holding that all four fair use factors favored the defendant). Clearly, literary works and biographies may be subject to fair use defense.

Plaintiff also fails to address the argument that the WP Report could be considered akin to news reporting, as the posting of the Auction Listing and the information in the Auction Listing was needed to accurately report what had occurred (even if the original information provided by the Novocin was arguably false. *See Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.,* 742 F.3d 17, 28 (2d Cir. 2014)("Bloomberg's overriding purpose here was not to "scoop" Swatch or "supplant the copyright holder's commercially valuable right of first publication," but rather simply to deliver newsworthy financial information to American investors and analysts. That kind of activity, whose protection lies at the core of the First Amendment, would be crippled if the news media and similar organizations were limited to authorized sources of information.")

In sum, Plaintiff is incorrect that only non-profits or only non-literary works may be subject to the fair use defense. Plaintiff further fails to address the remainder of WorthPoint's fair use arguments and as such, her Opposition is legally insufficient to defeat WorthPoint's fair use defense as a matter of law.

## POINT V. PLAINTIFF'S CLAIMS UNDER VARA ARE TIME-BARRED

In her Opposition to WorthPoint's argument that her claims under the Visual Artists Rights Act (VARA) are time-barred, Plaintiff simply repeats her unsupported allegations that WorthPoint "reposted" the WP Report after it was originally removed. For the reasons set forth above in POINT II, Plaintiff's VARA claims are time barred by the same three-year statute of limitations as set forth in the Copyright Act. 17 U.S.C. §507(b); *Dos Santos v. Assurant, Inc*., 2022 U.S. Dist. LEXIS 158484, at *19 (S.D.N.Y. Sep. 1, 2022).

## POINT VI. EVEN IF VARA CLAIMS WERE NOT TIME-BARRED, WORTHPOINT DID NOT ATTRIBUTE THE PAINTING TO PLAINTIFF AND NO MONETARY DAMAGES ARE AVAILABLE TO PLAINTIFF UNDER THE VARA MISATTRIBUTION CLAIM

Plaintiff's Opposition fails to address WorthPoint's argument that given that WorthPoint did not misattribute the Painting to Plaintiff but only passively displayed a report of the attribution by Mr. Novocin, WorthPoint cannot be liable for misattribution under VARA. As such, WorthPoint's position has been conceded.

Plaintiff also does not address the argument that VARA does not entitle plaintiff to monetary damages for a violation of the right to attribution. *Mass. Museum of Contemporary Art Found., Inc. v. Buchel*, 593 F.3d 38, 55 (1st Cir. 2010)("VARA does not provide a damages remedy for an attribution violation.") *See also*, 3 Nimmer on Copyright, at § 8D.06[B][1] ("The [VARA] statute does not make any provision to redress violation of any of the foregoing three attribution rights."). Again, WorthPoint's position has been conceded.

Instead, bizarrely, Plaintiff argues that "Plaintiff is Not Entitled to Attorneys' Fees Under VARA." *See* Opposition at 27. With that, WorthPoint agrees: first, as stated, no damages are recoverable for an attribution violation (even if WorthPoint committed a violation, which it did not); and second, Plaintiff is *pro se*, and she has no attorney's fees to recover as she does not have an attorney representing her.

In fact, as set forth in WorthPoint's opening motion papers, this Court previously dismissed Plaintiff's VARA claims against WorthPoint, allowing them to proceed against the EAI Defendants only. *See* DE 40. Plaintiff's reassertion of the-previously dismissed claims is improper and the earlier dismissal should stand.

## POINT VII.  PLAINTIFF'S INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM MUST BE DISMISSED

WorthPoint has clearly pointed out that to the extent Plaintiff's claims for intentional infliction of emotional distress arise from the alleged copyright infringement, these claims are

preempted. *See, e.g., Giddings v. Vision House Prod., Inc.*, No. CV 05-2963-PHX-MHM, 2007 U.S. Dist. LEXIS 58438, 2007 WL 2274800, at *2 (D. Ariz. Aug. 7, 2007) (finding emotional distress claim preempted because the extreme and outrageous conduct plaintiff relied upon to establish her claim was rooted in defendants' unauthorized reproduction and distribution of plaintiff's work); *Rainey v Wayne State Univ.*, 26 F. Supp. 2d 963, 969 (E.D. Mich. 1998) (finding emotional distress claim preempted because "the extreme and outrageous conduct which plaintiff relies upon to prove her claim is the unauthorized reproduction of her artwork," which "is exactly what copyright law protects").

To the extent that Plaintiff's emotional distress claim is tied to the alleged conduct of WorthPoint during this litigation, "[t]he mere commencement of litigation, even if alleged for the purpose of harassment and intimidation, is insufficient to support a claim for intentional infliction of emotional distress." *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 105 (S.D.N.Y. 2020). Here, there is no evidence that WorthPoint did anything improper, and Plaintiff has failed to introduce anything to the contrary. Even had she, this claim would still be dismissible.

While WorthPoint rejected Plaintiff's claim for intentional infliction of emotional distress, it tried to conduct discovery on this claim, and sought information as to its basis. Plaintiff failed to particularize her claim, failed to produce treating health care provider records or authorizations, and failed to produce a report that would show a causal connection to any viable claim. Judge Cave has already found that Plaintiff failed to participate in discovery on this issue. Plaintiff failed to produce any medical reports or provide authorizations and, as such, an independent medical evaluation could not be conducted. Judge Cave warned Plaintiff that she had not produced the necessary information and Plaintiff still refused to produce such documentation. DE. 328, pp. 55-57. As stated by Hon. Cave in her March 7, 2023 Opinion & Order, Plaintiff "had a fully reasonable

15

opportunity" to produce any relevant information about her emotional distress damages and refused to do so. DE 384, p. 9. Therefore, since Plaintiff has failed to produce evidence of her emotional distress medical treatment in discovery, she should also be precluded from pursuing this claim. *See* DE No. 384, p. 9.

Plaintiff's Opposition with respect to this claim does nothing more than repeat Plaintiff's allegations, which have already been addressed in WorthPoint's opening motion papers. As such, this claim should be dismissed.

## POINT VIII. PLAINTIFF'S DMCA CLAIMS ARE TIME-BARRED AND FAIL AS A MATTER OF LAW

Plaintiffs fails to address WorthPoint's argument that Plaintiff's DMCA claims are subject to a three-year statute of limitations and are untimely, for the same reasons as the Copyright and VARA claims are untimely. The entirety of Plaintiff's Opposition to this portion of WorthPoint's motion focuses solely on repeating Plaintiff's allegations that her Biography was subject to copyright and that WorthPoint's statement "Copyrighted Work Licensed by WorthPoint" ("Copyright License Notice") on a photograph of a portion of the Painting that Plaintiff did not create (Plaintiff did not create the Photograph either), and featuring a signature that is not her own, is somehow conveying incorrect copyright information regarding Plaintiff's Biography. However, in its opening motion papers WorthPoint has already addressed that: (1) there is no claim that the photograph of the Painting was created by Plaintiff; and (2) no CMI was affixed to a work in which Plaintiff owns a copyright interest, i.e. the Biography. Furthermore, the Copyright License Notice does not convey anything about the categories of information, such as "title," "author," or "copyright owner," that qualify as CMI under Section 1202(c). *See* 17 U.S.C. §1202(c). Likewise, the Copyright License Notice fails the proximity requirement of Section 1202(c) because it simply was not "conveyed in connection with" a work in which Plaintiff asserts a copyright interest.

16

WorthPoint also pointed out that the Copyright License Notice is not, in fact, false. It relates to the licensing history of the text of the Auction Listing obtained from eBay; and represents that the photograph displayed is a work to whom somebody else holds a copyright and that the use of this image was licensed by WorthPoint. Both of these statements are true.

Plaintiff utterly fails to address any of the arguments raised by WorthPoint as to insufficiency of her DMCA claims. As such, WorthPoint respectfully refers the Court to its opening motions papers and submits that DMCA claims should likewise be dismissed.

## POINT IX - PLAINTIFF'S FRAUD CLAIM MUST BE DISMISSED

In her Opposition, Plaintiff seemingly attempts to recast or conflate her fraud claim with a "tangible conversion" claim, arising out of the alleged unauthorized use of her copyrighted Biography. Aside from attempts to replead the SAC in an opposition for summary judgment being impermissible as discussed above, federal copyright law preempts state-law claims arising out of alleged copyright infringement. *Capitol Records, Inc. v. Naxos of America, Inc*., 372 F.3d 471, 477 n.2 (2d Cir. 2005) ("The 1976 Copyright Act ended common law copyright protection for all works that are the subject of federal preemption.")

To the extent that Plaintiff still maintains her fraud claim, the Opposition does nothing to even address the critical deficiencies of this claim as plead in the SAC: Plaintiff does not allege that Plaintiff herself justifiably relied on WP Listing or that WorthPoint's post was made with an intent to induce reliance by the Plaintiff (insofar as WorthPoint did not even know about the automatically downloaded listing without any manual editing prior to the commencement of this claim, no intent could be shown). Furthermore, the SAC does not satisfy the particularity requirements as Plaintiff does not identify the statements WorthPoint made with knowledge of their falsity prior to Plaintiff alerting WorthPoint of her claim, does not identify the speaker, or

explain why the statements were fraudulent (i.e., what reliance did they seek to induce in the Plaintiff). As such, Plaintiff's claim does not even meet the pleading standards, let alone have any support to avoid summary judgment.

## POINT X - PLAINTIFF IS NOT ENTITLED TO A PERMANENT INJUNCTION

In its opening papers, WorthPoint set forth that Plaintiff is not entitled to a permanent injunction against WorthPoint, because Plaintiff cannot demonstrate the likelihood of success on the merits and all of her claims must be dismissed. In Opposition, Plaintiff merely repeats her allegations, alleging in a conclusory fashion that her injuries are irreparable. Plaintiff fails to address that she sat on her hands for almost five years before bringing her claims against WorthPoint. Considering that the WP Report was removed on February 4, 2016, over seven (7) years ago, there is no likelihood that Plaintiff will suffer any harm if a permanent injunction is not granted. After seven years, reporting on an eBay sale over 10 years ago, that issue is simply moot.

However, to the extent Plaintiff seeks to permanently ban Defendants from ever mentioning her name again, as she has noted in passing, such will be an impermissible prior restraint on free speech. Plaintiff furthermore fails to address WorthPoint's discussion of the balance of hardships, which clearly favors WorthPoint.

To the extent that Plaintiff argues that "WorthPoint Corporation is a repeat infringer and in need of deterrence," citing *Rosen v. Terapeak*, 2015 U.S. Dist. LEXIS 183542 (U.S.D.C. C.D.C. 2015), there was no finding in that case against WorthPoint, as it was dismissed from that case for lack of personal jurisdiction. *Rosen*, 2015 U.S. Dist. LEXIS 183542, *3.

## CONCLUSION

18

Plaintiff failed to particularize and prove any claim against WorthPoint. To the extent that any question would still be open (which WorthPoint claims are none), the Plaintiff's claims are all dismissible as a matter of law based on the statute of limitations and the other defenses as set forth herein. For the foregoing reasons, there is no genuine triable issue of fact on any claim, and WorthPoint is therefore entitled to summary judgment pursuant to Fed. R. Civ. P. 56(a), dismissing Plaintiff's Second Amended Complaint in its entirety, and for such other, further and different relief this Court deems just and proper.

Date: June 28, 2023                    Respectfully submitted,

                                       WILSON ELSER MOSKOWITZ EDELMAN
                                       & DICKER LLP

                                       *s/ Jana S. Farmer*
                                       Adam R. Bialek, Esq.
                                       Jana S. Farmer, Esq.
                                       John Cahill, Esq.
                                       150 E. 42nd Street
                                       New York, New York 10017-5639
                                       (212) 490-3000
                                       Fax (212) 490-3038
                                       Adam.Bialek@wilsonelser.com
                                       Jana.Farmer@wilsonelser.com
                                       John.Cahill@wilsonelser.com

284370023v.2