UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNAMARIE TROMBETTA,

                Plaintiff,

      -against-

NORB NOVOCIN, MARIE NOVOCIN,
ESTATE AUCTIONS, INC., AND
WORTHPOINT CORPORATION,

                Defendants

18-CV-0993-LTS-SLC

MEMORANDUM OPINION AND ORDER

Plaintiff Annamarie Trombetta ("Plaintiff") brings this action pro se against Norb Novocin, Marie Novocin, Estate Auctions, Inc. (collectively, "EAI Defendants"), and WorthPoint Corporation ("Defendant WorthPoint"),[1] asserting claims arising under the Digital Millennium Copyright Act, 17 U.S.C. §§ 1201 et seq. ("DMCA"), the Visual Artists Rights Act, Pub. L. No. 101-650 (tit. VI), 104 Stat. 5089, 5128-33 (1990) ("VARA"), the New York Artists' Authorship Rights Act, N.Y. Arts & Cult. Aff. L. § 14.3 ("NYAARA"), as well as claims for copyright infringement, 17 U.S.C. § 501, identity theft, 18 U.S.C. § 1028, and intentional infliction of emotional distress. (Docket entry no. 348-1 ("Second Amended Complaint" or "SAC").)[2] The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. sections 1331 and 1367.

---

[1] On December 20, 2021, Judge Abrams dismissed all claims against William Seippel, the founder and Chief Executive Officer of WorthPoint, for lack of personal jurisdiction. (Docket entry no. 187.)

[2] Plaintiff attempts to assert additional claims for fraud and negligence in her motion for summary judgment. (See docket entry no. 432 ("Pl. MSJ") at 29-35, 37-38.) Because these claims were not included in the operative Complaint (see SAC) and Plaintiff was warned repeatedly that the deadline to amend her Complaint to assert new claims expired on December 19, 2022 (see, e.g., docket entry nos. 333, 370), the Court does not consider those claims, and they are deemed waived.

Plaintiff (docket entry no. 432 ("Pl. MSJ")), the EAI Defendants (docket entry no. 418 ("EAI MSJ")), and Defendant WorthPoint (docket entry no. 423 ("WorthPoint MSJ")) have all moved for summary judgment.  In connection with their respective motions for summary judgment, the parties have filed three motions in limine regarding various expert testimony proffers and related evidence.  (See docket entry nos. 400 ("EAI MIL"), 403 ("WorthPoint MIL") (together, the "Daubert Motions"), 408 ("WorthPoint Stricchiola Proffer"), 437 ("Pl. O'Leary Proffer"), 439 ("Pl. MIL").)

The Court has carefully considered the parties' submissions.  For the following reasons, Defendants' Daubert Motions are granted with respect to the testimony of Patrick O'Leary, Plaintiff's motion in limine is denied in its entirety, WorthPoint's motion for summary judgment is granted in its entirety, EAI's motion for summary judgment is granted in part and denied in part, and Plaintiff's motion for summary judgment against EAI is granted in part and denied in part.

BACKGROUND

Familiarity with the general context and procedural history of this case is assumed for the purposes of this Memorandum Opinion and Order.  Here, the Court will provide an overview of the facts relevant to the instant motion practice.  Unless otherwise indicated, the following facts are undisputed.

Plaintiff is sixty-year-old artist professionally known as a "realist artist," who has sold her work in her personal catalog on her business website since 2003.  (Docket entry no. 519 ("Pl. Corrected 56.1") ¶ 1.)  Defendants Norb and Marie Novocin own a small business, Estate Auctions, Inc., through which they engage in reselling items found in consignment or estate sales on platforms such as eBay.  (Docket entry no. 421 ("EAI 56.1") ¶¶ 2-3.)  Around December 1,

2012, EAI Defendants sold a painting titled "Man with a Red Umbrella" (the "Painting") on eBay for $181.50.  (EAI 56.1 ¶¶ 8, 10-11; <u>see also</u> docket entry no. 488-1 at Ex. 1A.)  Based on a scribbled signature on the Painting itself and writing on the wooden frame of the Painting, which appeared to say "Anna maria Trombetta, Painted 1972," Norb Novocin identified Plaintiff as the artist who created the Painting.  (EAI 56.1 ¶¶ 11-13.)  In the eBay post, Mr. Novocin included the Plaintiff's biography, which was originally published on her professional website in 2003.  (EAI 56.1 ¶¶ 19-20.)  Although Plaintiff represents that she had a copyright notice on her website "at all times" following its creation, the copyright registration for the content of Plaintiff's website reflects an effective date of June 18, 2018.  (Docket entry nos. 420-4 ("Pl. Copyright Registration"), 447 ("Trombetta Decl.") ¶ 8.)  EAI Defendants represent, and Plaintiff disputes without offering any relevant evidence, that Norb Novocin found all information regarding the Painting and Plaintiff's biography on a website called askArt, a paid subscription service that provides a database of information about works of art, biographies of artists, and other related information.  (EAI 56.1 ¶¶ 5, 16.)  Norb Novocin represents that, as a paid subscriber for askArt, he believed he was free to obtain content regarding artists' biographies from the website and that he "always tried to attribute such biographies to their sources."  (Docket entry no. 422 ("EAI Mem.") at 8; EAI 56.1 ¶¶ 6, 7.)

        In August 2015, Plaintiff discovered the 2012 sale of the Painting when she saw the sale listed on WorthPoint.com, an online catalog of art sales and advertisements.  (SAC ¶¶ 1, 8.)  The WorthPoint post (hereafter, "the Listing") showed the eBay sale of the Painting, listed Plaintiff's name as the painter, included her biography from her professional website, and contained the statement "copyrighted work licensed by WorthPoint."  (EAI 56.1 ¶ 15; docket entry no. 434 ("WorthPoint 56.1") ¶ 16.)  Plaintiff asserts that the Defendants infringed her

copyrighted work by reposting her biography.  (SAC ¶ 1.)  She further asserts that the posting of the low-priced eBay sale of the painting devalues her work and her reputation as an artist.  (Id. ¶ 5.)

        After she discovered the Listing, Plaintiff contacted WorthPoint several times, and she submitted an official request to remove the report in January 2016.  (WorthPoint 56.1 ¶¶ 35-37.)  In February 2016, Plaintiff spoke with representatives of WorthPoint, and the Listing was removed from WorthPoint's website on February 4, 2016.  (Id. ¶ 41; SAC ¶ 16.)  In December 2016, Plaintiff ran a Google search and saw a snippet of the WorthPoint post still visible on the Google search results page.  (SAC ¶ 17.)  Plaintiff asserts, and WorthPoint disputes, that the Listing was accessible via Google search as recently as March 2017.  (Docket entry 443-2 at Ex. 2.)  Plaintiff does not recall whether she was able to view the live page on WorthPoint's website after February 2016.  (Docket entry no. 425-1 ("Trombetta Dep.") at 270:6-9; WorthPoint 56.1 ¶¶ 56-61.)  After December 2016, Plaintiff contacted the original seller, EAI, to ask them to take down the information from the WorthPoint post.  (Id. ¶ 17; see also docket entry no. 443-2 at Ex. 2B.)  In January 2017, Plaintiff called EAI Defendants multiple times to obtain information regarding the Painting's buyer and to request that the WorthPoint Listing be taken down.  (SAC ¶ 17; EAI 56.1 ¶¶ 27-33.)  The exact details of these phone calls are disputed and are ultimately immaterial, but it is clear that the parties were unable to conclude the matter in a manner satisfactory to the Plaintiff at that time.  (Id.)

        Plaintiff initiated this action on February 5, 2018, seeking damages and an injunction against further misattribution of her work by EAI Defendants.  (Docket entry no. 1.)  On February 21, 2020, Plaintiff amended her complaint to add WorthPoint and its principal, William Seippel, as defendants.  (Docket entry no. 36 ("FAC").)  Judge Abrams dismissed all

claims against Seippel for lack of personal jurisdiction, but Plaintiff's claims against WorthPoint

Corporation remain.  (Docket entry no. 187.)  After the close of discovery on December 27,

2022, Plaintiff filed the now-operative complaint, asserting three new causes of action against

both Defendants: violation of the NYAARA, identity theft, and intentional infliction of emotional

distress ("IIED").  (SAC.)  Defendants agreed to withhold their objections to the newly asserted

claims until this motion practice is resolved.  (Docket entry nos. 360, 362.)


<u>DISCUSSION</u>


<u>Evidentiary Motions</u>

WorthPoint and Plaintiff have proffered reports and declarations of individuals

purporting to express opinions based on expertise.  Plaintiff moves to preclude consideration of

the report of Jessie Stricchiola, who is tendered as an expert witness, and the declaration of Jason

Packer, whom WorthPoint seeks to offer as a fact witness.  Defendants move to preclude

consideration of the affidavit of Patrick O'Leary, who Plaintiff proffers as an expert witness.

Federal Rule of Evidence 702 provides that "[a] witness who is qualified as an

expert by knowledge, skill, experience, training, or education may testify in the form of an

opinion or otherwise if the proponent demonstrates to the court that it is more likely than not

that: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of

fact to understand the evidence or determine a fact in issue, (b) the testimony is based on

sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of

the case."  Pursuant to Rule 702, the district court performs a "'gatekeeping' function" and is

responsible for "ensuring that an expert's testimony both rests on a reliable foundation and is

relevant to the task at hand." In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig. (No. II), 982 F.3d 113, 122-23 (2d Cir. 2020) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993)). "[E]xpert testimony is not admissible under Federal Rule of Evidence 702 if it 'usurp[s] . . . the role of the jury in applying th[e] law to the facts before it,' as such testimony 'undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's.'" Callahan v. Wilson, 863 F.3d 144, 153 (2d Cir. 2017) (quoting Nimely v. City of New York, 414 F.3d 381, 397 (2d Cir. 2005)). District courts have "broad discretion" to carry out their gatekeeping function with respect to expert testimony. Id.; see also McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1042 (2d Cir. 1995) ("The decision to admit expert testimony . . . will be overturned only when manifestly erroneous."). The December 1, 2023, amendment to this Rule clarified that "expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

### _Plaintiff's Motions in Limine_

In connection with its motion for summary judgment, Defendant WorthPoint has proffered the report and testimony of its proposed expert witness, Jessie Stricchiola. (Docket entry no. 408 ("WorthPoint Stricchiola Proffer").) Plaintiff moves for orders excluding the testimony of Stricchiola, and of WorthPoint's fact witness, Jason Packer. (Docket entry no. 439 ("Pl. MIL").) For the following reasons, Plaintiff's motion is denied in its entirety. Packer's testimony is admissible as that of a fact witness, and WorthPoint has carried its burden of demonstrating by a preponderance of the evidence that Stricchiola's testimony meets the Rule 702 standard.

*Jason Packer*

Defendant WorthPoint timely served Plaintiff with notice that Jason Packer, as the lead technical architect for WorthPoint Corporation, would serve as a fact witness in this case based on his personal knowledge of relevant events.[3]  (See docket entry nos. 480 ("Farmer Decl."), 480-2 ("Packer Decl."); see also Fed. R. Evid. 602.)  Plaintiff's motion in limine, which she styles as a Daubert challenge, seeks to preclude the testimony of WorthPoint's fact witness, Jason Packer, on the grounds that it is "inaccurate and misleading."  (See Pl. MIL at 12.)  Packer, who works with WorthPoint as a lead technical architect in the areas of data, search engine optimization, and analytics, proffers in his declaration that he removed the Listing from Worthpoint on February 4, 2016, that the Listing neither appeared on nor was accessed on WorthPoint after that date, that the Listing had limited viewership during its time on WorthPoint's website, that only two subscribers ever inquired into the Painting's sale price — one of whom was apparently the Plaintiff herself — , and provides data metrics to corroborate those contentions.  (Packer Decl. ¶¶ 7, 8, 13, 25.)  Plaintiff asserts that Packer's testimony is false and inconsistent with certain elements of the documentary record and accuses Packer or WorthPoint of altering documents used in support of the declaration.  (Pl. MIL.)

---

[3]    The Court notes that certain elements of Packer's declaration seem to suggest that he may be qualified to offer expert testimony.  (See, e.g., Packer Decl. ¶ 2 (explaining Packer's expertise in Google Analytics and educational background).)  WorthPoint has not proffered Packer's testimony as an expert witness in this action, nor has it complied with the applicable expert disclosure requirements with respect to Packer.  However, WorthPoint has proffered its February 25, 2022 Rule 26 disclosure statement, which lists Jason Packer as a fact witness "likely to have discoverable information," according to Federal Rule of Civil Procedure 26(a)(1)(A)(i).  (Docket entry no. 480-1.)  Therefore, the Court is satisfied that Packer's testimony was offered for, and it will only be admissible so far as, his capacity as a fact witness.

Plaintiff's argument is misdirected.  Credibility of a fact witness is not a legitimate basis to preclude the consideration of the witness's evidence in the summary judgment context, or at trial if summary judgment is denied.  Cf. Jeffreys v. City of New York, 426 F.3d 549, 551 (2d Cir. 2005) ("[T]he general rule [is] that district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage[.]").  Plaintiff also contends that Packer's declaration is inadmissible hearsay.  This position, too, is unfounded.  Packer's sworn declaration was made based on his personal knowledge of the underlying events; accordingly, his declaration complies with all the requirements of the Federal Rules and can properly be considered for the purposes of this motion practice.  See Fed. R. Civ. P. 56(c)(4).  Therefore, Plaintiff's motion to preclude the testimony of Jason Packer is denied.

*Jessie Stricchiola*

Plaintiff raises a Daubert challenge to WorthPoint's proffer of Jessie Stricchiola's expert testimony.  (Docket entry no. 443 ("Pl. Stricchiola Opp.").)  Stricchiola represents that she has relevant education and 24 years of experience in the fields of web analytics and website traffic analysis, search engine optimization, digital marketing and online advertising, and website design and development.  (Docket entry no. 425-5 ("Stricchiola Rpt.") ¶ 5.)  WorthPoint proffers Stricchiola's testimony opining on, inter alia, whether and when the Listing was removed from WorthPoint's website, whether the Listing was ever re-published, and why it might still appear in Google search results after being taken down.  (Id. ¶ 2.)  Stricchiola's report states that she drew her conclusions from an examination of the pleadings, discovery exchanges, deposition testimony, WorthPoint's Google analytics account, interviews with Packer, Packer's declaration, and Plaintiff's expert report from Patrick O'Leary.  (Id. ¶¶ 2, 3.)  From this information, the Court is satisfied that WorthPoint has carried its burden of demonstrating by a preponderance of

evidence that Stricchiola has the specialized technical knowledge to determine the stated facts in issue, that her testimony is based on sufficient facts and data to satisfy the requirements of Rule 702, and that her analysis will help the Court determine a material fact, namely, the accessibility of the Listing after February 4, 2016.  See Fed. R. Evid. 702; Daubert, 509 U.S. at 597.

Plaintiff alleges that Stricchiola's report was based on inaccurate information (namely, the information obtained from Jason Packer), used unreliable methods, and, as a result, had an "undue tendency to suggest decisions on an improper basis."  (Pl. Stricchiola Opp. at 11.) Plaintiff disputes the factual accuracy of Stricchiola's report because of alleged "inaccuracies" in Packer's declaration, upon which Stricchiola partially relied during her review of the factual record.  (See id. at 14-15.)  In particular, Plaintiff disputes whether the email address Jason Packer identified as one of two users who looked up the price of the Painting on WorthPoint's website — annamarie@trombettaart.com — was truly Plaintiff's preferred email address.  (See Packer Decl. ¶ 19; Pl. Stricchiola Opp. at 11.)  This factual dispute is ancillary to any material disputes in this action and, in any event, was not relevant to any of Stricchiola's conclusions. (See Stricchiola Rpt. ¶ 2.)  Therefore, Trombetta's argument to preclude Stricchiola's report on this basis is unpersuasive.

Plaintiff also makes various arguments that Stricchiola's report is misleading because it failed to "integrate, review, and include" various pieces of evidence and arguments that the Plaintiff has offered in her case for summary judgment.  (Id. at 11, 14-15, 17.)  Plaintiff argues that Stricchiola did not discuss the January 4, 2017, email exchange between Trombetta and WorthPoint, and, more generally, that her "[d]iscovery contain[ed] over one thousand documents produced to Worthpoint . . . and all [were] omitted."  (Pl. Stricchiola Opp. at 20-21; see also docket entry no. 443-2 at Ex. 4A.)  First, "[w]hile an expert should address evidence that

contradicts [her] conclusions," Rule 702 does not require that Stricchiola "exclude each and every possible alternative." U.S. Info. Sys., Inc. v. Int'l Bhd. Of Elec. Workers Loc. Union No. 3, AFL-CIO, 313 F. Supp. 2d 213, 235-36 (S.D.N.Y. 2004). Plaintiff had the opportunity to depose Stricchiola to elicit her testimony regarding Trombetta's allegedly contradictory evidence, and she failed to do so. (See docket entry no. 333.) In any event, the email exchanges Plaintiff argues were omitted from Stricchiola's report seem to provide further support for Stricchiola's conclusions. (Docket entry no. 443-2 at Ex. A.) The January 2017 emails show WorthPoint's agents discussing how to de-index the Listing from future Google searches because there was reportedly "no information" about Trombetta on WorthPoint's website at that time, "just this link that Google keeps recognizing." (Id.) Therefore, Plaintiff's arguments that Stricchiola's report should be precluded because it omits relevant information are unpersuasive.

Next, Plaintiff argues that Stricchiola offers unproven, conclusory statements that have no ""analytical basis in objective fact."" (Id. at 19-20 (quoting Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 157 (1999).) Specifically, Plaintiff asserts that Stricchiola's 24 years of experience in the fields of web analytics and search engine optimization do not qualify her to make statements regarding the technological processes underlying search engines such as Google. Plaintiff's purported incredulity at Stricchiola's well-supported conclusions does not frame a legitimate Daubert challenge to the witness's expert qualifications. Stricchiola reported that her review of WorthPoint's web traffic analysis supports a conclusion that the Listing was removed from the website on February 4, 2016. (Stricchiola Rpt. ¶ 17.) Stricchiola opined that the link displayed during Plaintiff's Google searches after that date because Google's web crawler caches URL information even after it is no longer live. (Id. ¶¶ 21-22.) Stricchiola cites her own lengthy professional experience in relevant fields, as well as publicly available

information regarding Google's indexing procedures.  (Id. ¶ 21.)  The Court finds that Stricchiola's conclusions were properly founded in her demonstrated expertise, and that those findings are the product of a methodology consistent with the general practices of the field. Daubert, 509 U.S. at 597.

Finally, Plaintiff challenges the factual basis underlying Stricchiola's assertion that Plaintiff's screenshots of her December 2016 and March 2017 Google searches cannot be authenticated.  (Pl. Stricchiola Opp. at 22.)  Specifically, Stricchiola opined that the dates on the screenshots Plaintiff offers as evidence could have been manipulated.  (Stricchiola Rpt. ¶ 23.) Plaintiff poses two counterarguments: first, she denies that she manipulated the printouts; and second, she claims Stricchiola's report did not explain how Trombetta could have manipulated the time stamps on her computer.  (Pl. Stricchiola Opp. at 13-14, 22.)  Neither of these arguments provides a proper basis for precluding Stricchiola's testimony.  First, Trombetta's assertion that she did not manipulate the dates on the screenshots does not contradict Stricchiola's conclusion that such manipulation is possible, and that the dates on the screenshots therefore provide "unreliable indicators" of the webpage's availability on those days "without additional evidence."  (Stricchiola Rpt. ¶ 23.)  Second, Plaintiff's assertions to the contrary notwithstanding, Stricchiola does adequately explain that the manipulation of computer timestamps could have occurred at either the "desktop/laptop mobile level" or "directly in a given printer's time settings."  (Id.)  The Court finds this explanation sufficient because no further expert testimony was necessary to explain the exact procedure for modifying time settings on a computer or printer.  See Wyers v. Master Lock Co., 616 F.3d 1231, 1240 (2d Cir. 2010) (finding that no expert testimony is needed when technology is "easily understandable").

Therefore, WorthPoint's proffer of Stricchiola's testimony for the purposes of summary judgment is accepted, and Plaintiff's motion in limine is denied in its entirety.

### *Defendants' Daubert Motions*

Plaintiff has proffered the testimony of three expert witnesses in connection with this motion practice.  (See docket entry nos. 429 ("Skluzacek Proffer"), 437 ("O'Leary Proffer"), 444 ("Scelsa Proffer").)  On February 8, 2024, this Court affirmed Judge Cave's order precluding Plaintiff from relying on the Skluzacek and Scelsa testimony because Plaintiff failed to comply with the Rule 26(a) expert disclosure requirements and deadlines set by the Court, and accordingly denied Plaintiff's motion proffering both experts.  (See docket entry no. 537.)  Therefore, the Plaintiff's sole remaining proffer is the expert testimony and report of Patrick O'Leary, whom Defendants move to preclude pursuant to Rule 702 and Daubert.  (O'Leary Proffer; EAI MIL; WorthPoint MIL.)  For the following reasons, Plaintiff's proffer is refused, and Defendants' motions are granted.

Plaintiff presents Patrick O'Leary as an expert on "internet activities."  (See docket entry no. 438-2 ("O'Leary Rpt.").)  Mr. O'Leary proffers three opinions: (1) that Defendants "nefariously" engaged in discovery misconduct, (2) that Plaintiff did not, in fact, create the Painting — a fact that no Defendant disputes, and (3) that Plaintiff suffered extensive financial damages due to the misattributed eBay sale and its impact on her reputation in the art industry.  (O'Leary Rpt. at 18.)  Mr. O'Leary's thoughts on long-concluded discovery disputes are not material or even relevant to the current motion practice and his first opinion is therefore excluded.  (See docket entry nos. 333, 340, 509.)  Mr. O'Leary's second and third proffered opinions, regarding whether Plaintiff created the painting in question and any damages that

Plaintiff may have suffered by reason of the misattributed eBay sale, are on subjects outside of his claimed area of expertise.  His CV reveals no expertise or experience in the art industry.  (See docket entry no. 438-1 ("O'Leary Resume").)  Mr. O'Leary also admitted during his deposition that he had no such qualifications or expertise.  (Docket entry no. 425-9 ("O'Leary Dep.") at 113-16.)  Plaintiff has failed to carry her burden of demonstrating that Mr. O'Leary is qualified to offer the challenged opinions.  Therefore, the Court grants in their entirety the Defendants' motions to preclude the consideration of the O'Leary Report in connection with the summary judgment motion practice.

### Cross Summary Judgment Motions

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is considered material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts and they may not rely on conclusory allegations or unsubstantiated speculation."  Caladora v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (citation omitted).  The nonmoving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."  Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (citation omitted).  However, in a

motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," <u>Nieblas-Love v. N.Y.C. Hous. Auth.</u>, 165 F. Supp. 3d 51, 64 (S.D.N.Y. 2016) (citation omitted), and the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," <u>Terry v. Ashcroft</u>, 336 F.3d 128, 137 (2d Cir. 2003) (citation and quotation marks omitted).  Where the party opposing summary judgment "fails to properly address [the moving] party's assertion of fact . . . the Court may . . . consider the fact undisputed for purposes of the motion."  Fed. R. Civ. P. 56(e)(2).

      The same legal standards apply when analyzing cross-motions for summary judgment.  <u>Schultz v. Stoner</u>, 308 F. Supp. 2d 289, 298 (S.D.N.Y. 2004).  "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration."  <u>Morales v. Quintel Ent., Inc.</u>, 249 F.3d 115, 121 (2d Cir. 2001) (citation omitted).

<u>*NYAARA, Identity Theft, and IIED Claims*</u>

      At the outset, the Court finds that both Defendants are entitled as a matter of law to summary judgment dismissing Plaintiff's NYAARA, identity theft, and IIED claims, which were added to this action via Plaintiff's December 27, 2022 Second Amended Complaint and which lack merit.  (<u>See</u> SAC; <u>see</u> <u>also</u> docket entry no. 384 (denying Plaintiff's request to reopen discovery due to her new claims because, <u>inter alia</u>, the claims lacked merit).)

      Judge Abrams dismissed Plaintiff's NYAARA claim against EAI with prejudice because NYAARA "gives a right of action to artists only with respect to damage caused by others to *the artist's* work."  (<u>See</u> docket entry no. 23 at 10 (emphasis in original); <u>see</u> <u>also</u> N.Y. Arts & Cult. Aff. L. § 14.3.)  Nothing in the factual record suggests that an actual artistic work of

art by Trombetta was "altered, defaced, mutilated or modified."  N.Y. Arts & Cult. Aff. L. § 14.3.

Accordingly, this Court grants both Defendants' motions for summary judgment dismissing the

NYAARA claim.

Plaintiff also attempts to assert a civil cause of action for identity theft under a

federal criminal statute, which is not a cognizable claim for relief.  See Garay v. U.S. Bancorp,

303 F. Supp. 2d 299, 302 (E.D.N.Y. 2004) (finding plaintiff's identity theft claim under 18

U.S.C. section 1028 "without merit because the statute is criminal in nature and provides no

private right of action").  Plaintiff cannot initiate the prosecution of federal charges against an

individual in this Court because "the decision to prosecute is solely within the discretion of the

prosecutor."  Leeke v. Timmerman, 454 U.S. 83, 87 (1981).  Plaintiff also cannot obtain an order

directing prosecuting attorneys to initiate a criminal proceeding against Defendants because

prosecutors possess discretionary authority to bring criminal actions, and they are "immune from

control or interference by citizen or court."  Conn. Action Now, Inc. v. Roberts Plating Co., 457

F.2d 81, 87 (2d Cir. 1972).  Therefore, Defendants are also entitled to summary judgment on

Plaintiff's identity theft claim.

Finally, both Defendants are entitled to summary judgment dismissing Plaintiff's

IIED claims because she has failed to establish a triable issue of fact regarding her prima facie

case.  To prevail, Trombetta would have to show (1) Defendants engaged such conduct, (2) they

did so with either the intent to cause, or with disregard of a substantial probability of causing,

severe emotional distress, (3) a causal connection between the reprehensible conduct and

Plaintiff's injury, and (4) severe emotional distress.  Bender v. City of New York, 78 F.3d 787,

790 (2d Cir. 1996).

"In analyzing an intentional infliction of emotional distress claim, courts look to the first element — whether the conduct was extreme or outrageous." Sepulveda v. City of New York, No. 01-CV-3054-DC, 2003 WL 21673626 (S.D.N.Y. July 17, 2003) (citing Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)).  "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Howell v. New York Post Co., 81 N.Y.2d 115, 122 (1993) (internal quotations and citation omitted).

Trombetta argues that Defendants engaged in liable conduct because — in her estimation — EAI proposed a low settlement offer, and WorthPoint conducted their defense in this action by filing a motion to dismiss, deposing Plaintiff for several hours, and filing a countersuit in Georgia.  (Pl. Mem. at 35-36.)  None of these arguments provides a sufficient or appropriate basis to sustain an IIED claim.  The Court does not doubt that this litigation has been stressful for Ms. Trombetta, who is a pro se litigant, but the Defendants' actions taken in the course of adversarial litigation cannot provide grounds for an IIED claim.  Kaye v. Trump, 58 A.D.3d 579, 580 (1st Dep't 2009) ("[The] statements and actions occurred in the context of adversarial litigation and therefore cannot provide a foundation for the [intentional infliction of emotional distress] claim."); Franco v. Diaz, 51 F. Supp. 3d 235, 243 (E.D.N.Y. 2014) ("[I]t is well established that under New York law, the commencement of litigation, whether civil or criminal, cannot form the basis for an IIED claim.").  Therefore, both Defendants are entitled to summary judgment on this issue.

Plaintiff asserts three remaining claims against both EAI and WorthPoint, alleging violations of VARA, the DMCA, and 17 U.S.C section 501.  (SAC; see also docket entry no. 187

at 25-26 (Opinion and Order enumerating Plaintiff's remaining claims after WorthPoint's motion to dismiss the SAC was granted in part).)  All parties have moved for summary judgment on each claim.  (See Pl. MSJ; EAI MSJ; WorthPoint MSJ.)

### *Remaining Claims against WorthPoint*

Actions brought under the Copyright Act must be brought "within three years after the claim accrued."  17 U.S.C. § 507(b).  This statute of limitations also applies to claims arising under amendments to the Copyright Act, such as the DMCA and VARA.  See Ward v. Compound Ent. LLC, No. 18-CV-7628-PGG-BCM, 2020 WL 6136293, at *5 n.7 (S.D.N.Y. Apr. 27, 2020); Dos Santos v. Assurant, Inc., 625 F. Supp. 3d 121, 131 (S.D.N.Y. 2022).  The three-year limitation period begins to run when a plaintiff discovered or "with due diligence should have discovered" the infringement.  Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 124 (2d Cir. 2014).  According to the Plaintiff's pleadings, she discovered the WorthPoint Listing in "mid-August 2015" and first contacted WorthPoint about the misattributed painting in 2016.  (SAC ¶ 14.)  Plaintiff did not seek to add WorthPoint as a Defendant in this action, however, until her First Amended Complaint on February 21, 2020, well after the three-year limitation period had expired.  (Docket entry no. 36.)  No circumstances prevented Plaintiff from identifying and naming WorthPoint as a Defendant in this action in a timely manner.  Cf. Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007) ("[T]he doctrines of equitable tolling or equitable estoppel may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations, or deception to refrain from filing a timely action." (internal quotations and citation omitted)).  And although her initial Complaint, which named other defendants, was filed within the statute of limitations, the Plaintiff has offered no basis from which this Court can conclude that her February 2020 amendment naming WorthPoint as a

Defendant "relates back" to the date of the initial Complaint.  <u>See</u> Fed. R. Civ. P. 15(c)

(describing the circumstances in which an amendment to a pleading relates back to the date of

the original pleading).

     Therefore, Plaintiff's copyright claims against WorthPoint are timely only if she

can establish that WorthPoint engaged in a "renewed act" of infringement after February 21,

2017.  <u>Petrella v. Metro-Goldwyn-Mayer, Inc.</u>, 572 U.S. 663, 671 (2014) ("Each time an

infringing work is reproduced or distributed . . . gives rise to a discrete 'claim' that 'accrues' at

the time the wrong occurs.").  Plaintiff alleges — inconsistently throughout her many

submissions to this Court — that WorthPoint either refused to take down the original Listing or

reposted it after taking it down on February 4, 2016.  (SAC ¶¶ 16-18.)  Plaintiff asserts that her

screenshot of Google search results from March 2017 shows that the webpage was still

accessible on WorthPoint's site within three years of her First Amended Complaint.  (<u>Id.</u>; <u>see also</u>

docket entry no. 443-2 at Ex. 2.)  In response, WorthPoint proffers expert testimony explaining

that Google searches could have returned a result for the Listing that would not actually have

opened a live page on WorthPoint's website after the listing was removed on February 4, 2016,

because Google's search engine "caches" data from outdated webpages.  (Stricchiola Rpt. ¶¶ 21-

22, 24-25.)  In other words, even if WorthPoint had removed the listing in February 2016,

Google could still display snippets of the deactivated webpage from its saved data.  (<u>Id.</u> ¶ 21.)

WorthPoint's evidence includes testimony, accompanied by screen shots of data, demonstrating

that the WorthPoint page was not available or accessed after February 4, 2016.  (Packer Decl.

¶¶ 10-15.)  Plaintiff does not provide any evidence to contradict WorthPoint's factual proffer and

expert's analysis.  Nor do the testimony or documents on which Plaintiff relies frame any

genuine issue of fact as to whether the Listing was maintained, much less reposted, by

WorthPoint within three years of her initiating these claims against WorthPoint, i.e., after February 21, 2017.  During her deposition, Trombetta could not recall whether she had clicked on the link displayed in the Google search results in March 2017, and she proffers no evidence from any other witness who claims to have done so or to have seen her biographical information on WorthPoint's site after that time.  (See docket entry no. 425-1 ("Trombetta Dep.") at 269-70.)

Therefore, the only evidence the Plaintiff provides to substantiate her claim that WorthPoint reposted the listing is a March 15, 2017, screenshot of the link on a list of Google search results, which Stricchiola's uncontroverted proffer establishes does not prove anything about when the Listing was accessible on WorthPoint's website.  WorthPoint, on the other hand, has provided substantial evidence from witness testimony and its web traffic history to establish that the page was taken down on February 4, 2016, and was not accessible at any point after that date.  (See Packer Decl. ¶¶ 11, 13, 25.)  The Court finds, viewing the evidence in the light most favorable to Trombetta, that Trombetta has failed to establish a triable issue of fact regarding WorthPoint's alleged "renewed act," and the Defendant is entitled to summary judgment on this issue.

For these reasons, the Court grants WorthPoint's motion for summary judgment in its entirety and denies Plaintiff's cross motion for summary judgment against WorthPoint in its entirety.

### *Remaining Claims against EAI*

Trombetta and EAI have cross-moved for summary judgment on the three remaining claims against EAI, which assert violations of VARA and the DMCA, and direct copyright infringement.

1.  *VARA*

The Visual Artists' Rights Act grants the author of "a work of visual art" rights of "attribution and integrity" "to prevent the use of his or her name as the author of any work of visual art which he or she did not create."  17 U.S.C.A. § 106A (Westlaw through P.L. 118-30). The Act defines a "work of visual art," in relevant part, as a "painting . . . existing in single copy."  17 U.S.C.A. § 101 (Westlaw through P.L. 118-30).  EAI does not contest that the Painting qualifies as a "work of visual art" and that Norb Novocin attributed the Painting to Annamarie Trombetta in the 2012 eBay sale.  (Docket entry no. 422 ("EAI Mem.") at 20.)  Nor does EAI dispute that Plaintiff did not create the Painting.  (Id.)  This establishes Trombetta's prima facie case for a violation of VARA.

EAI advances two unavailing defenses.  First, EAI's assertion that the claim is time-barred fails because Trombetta initiated this action against EAI within three years of her discovery of the violation.  Psihoyos, 748 F.3d at 125.  Second, EAI erroneously argues that Plaintiff's VARA claim is futile, citing the First Circuit's holding that "VARA does not provide a damages remedy for an attribution violation," and arguing that Trombetta is only entitled to injunctive relief, which would be unavailable under the circumstances of this case.  (EAI Mem. at 16 (citing Mass. Museum of Contemp. Art Found., Inc. v. Buchel, 593 F.3d 38, 48 (1st Cir. 2010)).)  The Second Circuit, whose decisions are controlling in this case, has held, however, that a misattribution claim is covered by the same damages structure as any other Copyright Act violation.  See Castillo v. G&M Realty, L.P., 950 F.3d 155, 166 (2d Cir. 2020) cert denied 141 S. Ct. 363 (2020) ("Damages for violations of VARA's rights of attribution and integrity are governed by general copyright law and include both actual and statutory damages.").  Therefore,

Plaintiff is entitled as a matter of law to summary judgment on her VARA claim, and the Court next turns to the question of damages.

*Actual Damages*

Trombetta has described her request for damages in relation to her claims inconsistently.  Plaintiff refused to answer questions during her deposition regarding her past income as an artist.  (Trombetta Dep. at 244:12-16.)  Nor has she proffered any admissible evidence establishing that she suffered any general reputational damages in the art industry.  (See supra at 12-13 (finding Mr. O'Leary's proffered expert testimony inadmissible).)  During a status conference, Trombetta contested certain discovery requests relevant to her income and actual damages because, she said, she was only seeking statutory damages, but Trombetta also stated at that time that she also sought to recover actual damages for the "loss of the sale for $8,500." (Docket entry no. 328 at 54-55.)  Plaintiff neglects to advance any argument for this calculation of actual damages in this motion practice.  The only evidence of record that is relevant to this claim is a March 4, 2019, letter that Plaintiff produced in discovery.  (Docket entry no. 420-5.) The letter, written by a Professor Susan Goldstein, discusses a third-party's alleged decision not to purchase a painting Ms. Trombetta was offering for $8,500 due to the Listing.  (Id.)  This evidence is insufficient to satisfy Trombetta's burden of proving actual damages.  At the summary judgment stage, a plaintiff cannot rely on inadmissible hearsay to satisfy her evidentiary burden of proving damages.  Sarno v. Douglas Elliman-Gibbons & Ives, Inc., 183 F.3d 155, 160 (2d Cir. 1999).  Ms. Trombetta did not proffer Professor Goldstein as a fact witness in support of her motion for summary judgment or submit a sworn declaration.  Nor does Trombetta offer any statement at all from the alleged potential buyer herself.  In sum, the only admissible evidence Plaintiff offers to show actual damages is her own conclusory assertion that

she lost business because of the Listing, which cannot establish a triable issue of fact.  (See Pl.

Second Mem. at 29-30; see also Jeffreys, 426 F.3d at 554.)

Because Trombetta has failed to present admissible evidence of actual damages,

EAI is entitled to summary judgment dismissing her claim insofar as she seeks actual damages.

Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Ed. Holdings LLC, 399 F. Supp. 3d 120, 131

(S.D.N.Y. 2019) ("A defendant does not have to introduce evidence that would negate the

possibility of damages [for summary judgment] . . . [w]hen the burden of proof at trial would fall

on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to

go to the trier of fact on an essential element of the nonmovant's claim." (internal quotations and

citations omitted)).

*Statutory Damages*

Under the Copyright Act, a copyright owner "may elect, at any time before final

judgment is rendered, to recover, instead of actual damages and profits, an award of statutory

damages for all infringements involved."  17 U.S.C.A. § 504(b) (Westlaw through P.L. 118-30).

District courts are afforded "wide discretion" under the Act to determine an award of statutory

damages.  Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co., 807 F.2d 1110, 1116 (2d Cir. 1986).

Statutory damages may range from $750 to $30,000 per work "as the court considers just,"

Castillo, 950 F.3d at 166 (citing 17 U.S.C § 504(c)(1)), and are "particularly appropriate 'when

no actual damages are proven, or they are difficult to calculate.'"  Cohen v. G&M Realty L.P.,

320 F. Supp. 3d 421, 443 (E.D.N.Y. 2018) (quoting Warner Bros. Inc. v. Dae Rim Trading, Inc.,

877 F.2d 1120, 1126 (2d Cir. 1989)); see also Psihoyos, 748 F.3d at 127 ("There need not be a

correlation between statutory damages and actual damages.").  If the Court finds that a violation

was committed when the infringer "had no reason to believe that his or her acts constituted an

infringement," the court may reduce the award of statutory damages to a sum of not less than $200.  17 U.S.C.A. § 504(c)(2) (Westlaw through P.L. 118-30).  However, if the Court finds that a violation was committed willfully, "the Court in its discretion may increase the award of statutory damages to a sum of not more than $150,000 per work."  <u>Cohen</u>, 320 F. Supp. 3d at 443 (citing 17 U.S.C. § 504(c)(2)).

First, the Court grants EAI summary judgment on the question of willfulness because the record does not frame a triable issue of fact regarding whether Norb Novocin willfully misattributed the Painting to Ms. Trombetta.  To prove that an infringement was "willful" under the Copyright Act, Plaintiff must show that EAI "had knowledge that its conduct represented an infringement or . . . recklessly disregarded the possibility."  <u>Bryant v. Media Right Prods., Inc.</u>, 603 F.3d 135, 143 (2d Cir. 2010).  The uncontroverted evidence of record establishes that Mr. Novocin attributed the Painting to Plaintiff on the basis of (1) the "garbled" signature on the front of the painting, which appeared to read, "A. Trombetta," and (2) writing on the back frame that read, "Anna maria Trombetta, Painted 1972."  (Docket entry no. 420-1 ("Norb Novocin Dep.") at 37-38; <u>see also</u> docket entry no. 488-1 at Ex. 4A, Ex. 4B, Ex. 5.)  Mr. Novocin testified that he searched the name "Trombetta" on askArt.com and mistakenly believed the result identifying Plaintiff, "Annamarie Trombetta," matched the writing on the wooden frame.  (Norb Novocin Dep. at 53:18-54:19.)  Mr. Novocin did not believe any further research into the creator of the Painting or Ms. Trombetta's artwork was necessary due to the similarity of the names.  (<u>Id.</u> at 58:3-10.)  Mr. Novocin testified that he never visited Plaintiff's website and was not previously familiar with her work.  (<u>Id.</u> at 58:24-25, 60:9-12.)  In fact, Mr. Novocin testified that, in drafting the eBay sale description, he compared the Painting to the works of other artists, in part, because he thought Ms. Trombetta was relatively unknown and he wanted

buyers "to be able to associate somebody of value" to the painting — which cuts against a finding that Mr. Novocin misattributed the Painting deliberately to increase its value. (Id. at 54:8-12, 62:17-24.)

Plaintiff argues that Mr. Novocin should have noticed the misspelling of her name on the back of the Painting, should have realized that the date of the Painting did not line up with Trombetta's biography and career timeline, and should have conducted further research to find the Painting's true creator — as was his usual habit. (Docket entry no. 488 ("Pl. Second Mem.") at 8-10; see also Norb Novocin Dep. at 58:11-14, 65:11-16.) While Plaintiff may be correct on these points, even when viewing the evidence in the light most favorable to her, Mr. Novocin's failure to act with prudent care at best establishes that he misattributed the Painting negligently. Plaintiff's evidence is therefore insufficient to frame a genuine issue of fact as to whether Mr. Novocin made the incorrect attribution willfully, and Plaintiff's claim against EAI is dismissed to the extent Plaintiff seeks an award of statutory damages for willful conduct.

Absent a finding of willfulness, courts must consider six factors to determine the appropriate award of statutory damages: (1) the infringer's state of mind, (2) the expenses saved, and profits earned, by the infringer, (3) the infringer's cooperation in providing evidence concerning the value of the infringing material, (4) the revenue lost by the copyright holder, (5) the conduct and attitude of the parties, and (6) the deterrent effect on the infringer and third parties. Bryant, 603 F.3d at 144.

The first five factors weigh in favor of a modest award of statutory damages. First, as previously discussed, Mr. Novocin's commission of the infringement was neither willful nor wholly innocent — the record shows Mr. Novocin could reasonably have discovered that the Painting was not Ms. Trombetta's work if he had exercised due care before creating the post.

Second, by negligently failing to research Trombetta's work, however, Mr. Novocin did not appear to save himself any expenses and he was ultimately able to sell the Painting for only a relatively small price — $181.50; it is unclear from the factual record how much of that price constituted a net profit.  (EAI 56.1 ¶ 22.)  Third, EAI has been cooperative in providing the appropriate receipts and evidence to establish the value of the infringing material.  Fourth, despite her conclusory allegations of reputational damages, it is not clear from the facts in the record that the Plaintiff lost <u>any</u> revenue because of the infringement.  Ms. Trombetta refused to provide discovery evidence regarding her usual income from art sales, and she has offered no admissible evidence demonstrating that she lost opportunities to sell or showcase her work due to the Listing.  Fifth, the conduct and attitude of the parties weighs in favor of a modest award of statutory damages.  Litigation in this case has been contentious and protracted, particularly due to repeated and unnecessary discovery disputes.  Although courts should and do afford certain indulgences to <u>pro se</u> plaintiffs, the Court finds that EAI has been cooperative and compliant with the difficulties inherent in this litigation.

The final factor directs the Court to consider the deterrent effect of the award of statutory damages.  Again, this factor weighs in favor of a modest award.  Deterrence is an important consideration within the statutory framework of VARA.  "If potential infringers believe that they can violate VARA at will and escape liability because [artists] are not able to provide a financial valuation for their works, VARA will have no teeth."  <u>Cohen</u>, 320 F. Supp. 3d at 446.  Still, the goals of general deterrence manifest more strongly in cases involving willful violations of VARA or otherwise egregious conduct.  <u>See, e.g.</u>, <u>id.</u>  Neither circumstance is present here.  As to the goal of individual deterrence, the Court finds that a modest judgment against EAI — which, even at the lowest end of the statutory range ($750), will constitute over

four times the profit EAI could possibly have made from the sale of the Painting — should

sufficiently deter Defendants from similar infringements.

Therefore, the Court finds that a modest award of statutory damages is

appropriate given the relevant considerations.  The Court awards Ms. Trombetta statutory

damages against EAI in the amount of $1,000.

*Individual Liability*

The record establishes that, among the EAI Defendants, only Norb Novocin and

Estate Auctions, Inc., participated in conduct that violated Plaintiff's VARA rights.  EAI admits

that Norb Novocin, as an individual defendant, was responsible for creating the eBay post and

for ascribing the Painting to Annamarie Trombetta.  (EAI 56.1 ¶ 10.)  EAI further admits that the

Corporate Defendant Estate Auctions, Inc., sold the Painting with the misattribution regarding

the artist, on December 1, 2012.  (Id. ¶ 8.)  These actions confer liability on both the corporate

entity and Norb Novocin in his individual capacity.  Powe v. Miles, 407 F.2d 73, 82 (2d Cir.

1968) ("An agent is normally liable for his own torts[.]"); Fletcher v. Atex, Inc., 861 F. Supp.

242, 247 (S.D.N.Y. 1994) (finding that corporate "principals are liable for the tortious acts of

their agents").  However, EAI proffers that Marie Novocin "did not have any involvement with

sourcing or selling the Painting."  (EAI 56.1 ¶ 9.)  Plaintiff has identified no action Marie

Novocin took to violate her VARA rights, and therefore the Court can find no basis to impute

individual liability on Marie Novocin for the violation of Plaintiff's VARA rights.  Judgment will

be entered on this claim for Trombetta and against only Estate Auctions, Inc. and Norb Novocin.

Marie Novocin is entitled to summary judgment dismissing the individual liability claim against

her under VARA.

2. *Direct Copyright Infringement*

To prevail on her claim for direct copyright infringement, Plaintiff must establish that she owned "a valid copyright" and that EAI copied the "constituent elements of the work that are original." Feist Pubs., Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991). Unlike her VARA claim, Plaintiff's copyright claims under both Section 501 and the DMCA are premised on the alleged misuse of Plaintiff's copyrighted biography in the eBay sale. (Pl. MSJ at 10, 24.) Plaintiff has proffered evidence that she authored and published the text of her website, trombettaart.com, on September 30, 2003. (See docket entry no. 488-6 at 12-13.) Although the copyright was not effectively registered until 2018, for the purposes of establishing infringement, Trombetta owned a valid copyright from the date of the publication. See 17 U.S.C. §§ 102(a)(1), 104(b). EAI does not dispute that Norb Novocin used the copyrighted text of Plaintiff's biography when he created the Painting's eBay post around December 1, 2012. (EAI 56.1 ¶ 15.) These elements establish Trombetta's prima facie case of direct copyright infringement.

EAI asserts that they are not liable for infringement because the claim is time-barred and because the use of the biography was protected under the Fair Use exception of 17 U.S.C. section 107. As discussed above, Trombetta's claim is timely because she initiated this action against EAI within three years of her discovery of the infringement. Pshioyos, 748 F.3d at 125. For the following reasons, the Court also finds that EAI's use of the biography was not protected by the Fair Use doctrine.

"In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include — (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the

nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation

to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or

value of the copyrighted work."  17 U.S.C.A. § 107 (Westlaw through P.L. 118-30).  These

factors require a "case-by-case" determination, and no single factor is determinative.  Bill

Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 608 (2d Cir. 2006).  "The ultimate

test of fair use . . . is whether the copyright law's goal of promoting the Progress of Science and

useful Arts would be better served by allowing the use than by preventing it."  Castle Rock Ent.,

Inc. v. Carol Publ'g Grp., 150 F.3d 132, 141 (2d Cir. 1998) (internal citations and quotation

marks omitted).  First, the purpose of the copyright infringement was commercial in nature.  EAI

utilized the biography to facilitate the for-profit sale of the Painting by generating interest in the

alleged painter.  This was not — contrary to EAI's argument — the sort of "transformative use"

of work intended to infuse new meaning to a work, "further public discourse and [facilitate] the

free exchange of ideas."  (See Def. Mem. at 13 (quoting Marano v. Metro. Museum of Art, 472 F.

Supp. 3d 76, 83 (S.D.N.Y. 2020)).)  This finding cuts against a finding that the use was

permissible under the doctrine, but it is not dispositive.  Campbell v. Acuff-Rose Music, Inc., 510

U.S. 569, 584-85 (1994).

        Second, EAI argues that the nature of the biography was not expressive or

creative because it comprised biographic facts about Trombetta's life.  (Def. Mem. at 14.)  The

Court disagrees.  Trombetta's biography was a protracted portion of her website, containing over

1,300 words which described not only biographic facts but also Trombetta's reflections on her

travels, the world, and art generally.  (See docket entry no. 488-6 at Ex. 39 (the "Website").)

The Court finds that Trombetta's biography had expressive value similar to a journal entry or a

memoir, which again weighs against a finding of fair use.  See, e.g., Harper & Row Publishers,

Inc. v. Nation Enters., 471 U.S. 539, 563-64 (1985); Wright v. Warner Books, Inc., 953 F.2d 731, 737 (2d Cir. 1991).

The third factor considers the amount and substantiality of the portion of the work used in relation to the purpose of the copying.  17 U.S.C. § 107; Acuff-Rose, 510 U.S. at 586.  EAI argues that the biography constituted only a fraction of the total text of the Website that Trombetta copyrighted.  (Def. Mem. at 14.)  Plaintiff's copyright encompassed the entire text of her website (Copyright Registration), and she represents that the deposit copy she submitted to the Copyright Office contained nine total pages of text, one of which was her biography.  (EAI 56.1 ¶¶ 48-50.)  The use of even substantial portions of a work may be permissible for artistic or transformative purposes such as "in a review of a published work or a news account of a speech."  Harper & Row, 471 U.S. at 564.  However, where the excerpts themselves contain substantial expressive value, id. at 548, or where the purpose of the copying is commercial and non-transformative, TCA Television Corp. v. McCollum, 839 F.3d 168, 185 (2d Cir. 2016), even less substantial copying may counsel against a finding of fair use.  Here, the Court finds that, due to the commercial purpose of EAI's infringement, the expressive nature of the work, and the significant length of the biography excerpted, this factor cuts against a finding of fair use.

Finally, EAI argues that the use of the biography did not have an ill effect on the potential market for or value of the copyrighted work.  (Def. Mem. at 14-15.)  This factor is difficult to apply given the peculiar characteristics of Trombetta's claim.  But for the mistaken attribution of the Painting, EAI's use of the biography might have had no ill effect on the value of the copyrighted work and could have, in fact, served the same goals as Trombetta's publication of the biography – to educate people about her portfolio and generate interest in the future sale of her art.  However, EAI's mistaken attribution demonstrates Trombetta's valid

interest in protecting the dissemination of her biography to entice customers to visit her website and to ensure she conveyed accurate information about her career and her artwork. EAI argues that the infringement could not have had an ill effect on the potential market of the original work because, in addition to the factors discussed above, it was only available on eBay for ten days. (EAI Mem. at 15.) EAI's argument is unpersuasive. While the eBay post was only available for a short period of time, the proliferation of the information to third party websites such as WorthPoint shows that the effect of the infringement went well beyond those ten days. Therefore, this factor also cuts against a finding of fair use. Considering the factors altogether, the Court finds as a matter of law that EAI cannot avail itself of the fair use exception in this instance.

For the foregoing reasons, the Court finds no triable issue of fact regarding EAI's fair use defense, and Trombetta is entitled to summary judgment dismissing that defense. See Bill Graham, 448 F.3d at 608 ("Although the issue of fair use is a mixed question of law and fact, the court may resolve issues of fair use at the summary judgment stage where there are no genuine issues of material fact as to such issues." (citing Warner Books, 953 F.2d at 735)).

*Remedies*

Because Plaintiff's copyright registration was not effective until June 18, 2018, almost six years after the alleged infringement, her available remedies are limited by statute. (See Copyright Registration.) Under the Copyright Act, "no award of statutory damages . . . shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration." 17 U.S.C.A. § 412 (Westlaw through P.L. 118-30); see also Jose Luis Pelaez, 399 F. Supp. 3d at 131 ("Under 17 U.S.C. § 412, to be eligible for an award of statutory damages, a copyright owner must have registered his work

prior to the date on which infringement commenced.").  Because Plaintiff is barred from

recovering statutory damages and, as discussed previously, is unable to prove actual damages,

EAI is entitled to summary judgment dismissing Plaintiff's claim to the extent it seeks monetary

damages.  17 U.S.C. § 504(a); see also Espire Ads LLC v. TAPP Influencers Corp., 655 F. Supp.

3d 223, 258 (S.D.N.Y. 2023); Innovative Fabrication Sch., Inc. v. Am. Fabrication Acad., Inc.,

No. 22-CV-0180-MWF, 2023 WL 6787808, *8 (C.D. Cal. June 7, 2023).

    Plaintiff also seems to request injunctive relief, which is a potential remedy under

the Copyright Act.  17 U.S.C. § 502.  Section 502 authorizes the Court to grant "temporary and

final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a

copyright."  17 U.S.C.A. § 502 (Westlaw through P.L. 118-30).  However, such relief would be

inappropriate in this case.  The alleged infringement occurred over ten years ago during a single

ten-day period.  Plaintiff does not allege that EAI reused or reposted Plaintiff's biography after

2012, and nothing in the record suggests that EAI would use the biography again in the future.

(EAI 56.1 ¶¶ 8, 23.)  To the extent that Plaintiff seeks injunctive relief to remove *any* saved data

of the now-removed eBay post and WorthPoint Listing that may be in the possession of *any* third

party on the entire internet (Pl. MSJ at 38), she has provided no basis from which the Court can

find that such relief is remotely within EAI's power to fulfill.  Nor has Plaintiff shown that,

without an injunction, she will suffer any injury, let alone "irreparable injury" that is incapable of

compensation through monetary damages.  See eBay Inc. v. MercExchange, L.L.C., 547 U.S.

388, 391 (2006).

    Therefore, the Court finds that Plaintiff is entitled only to nominal damages in the

amount of $1.00 on her copyright infringement claim.  See Uzuegbunam v. Preczewski, 141 S.

Ct. 792, 799-800 (2021) ("[T]he prevailing rule, 'well established' at common law, was "that a

party whose rights are invaded can always recover nominal damages without furnishing any evidence of actual damage."); see also Branch v. Ogilvy & Mather, Inc., 772 F. Supp. 1359, 1363 (S.D.N.Y. 1991) (affirming a jury's award of nominal damages in a copyright infringement action).  Judgment will be entered against Estate Auctions, Inc., and Norb Novocin on Plaintiff's direct copyright infringement claim.  Because, as discussed above, there is no evidence that Marie Novocin participated in the infringing conduct, judgment will be entered for Marie Novocin on this claim.

3.   *DMCA*

The Digital Millennium Copyright Act makes it unlawful "to knowingly, and with the intent to 'induce, enable, facilitate, or conceal infringement,' . . . 'provide' or 'distribute' . . . false 'copyright management information' or 'CMI.'"  Aaberg v. Francesca's Collections, Inc., No. 17-CV-0115-AJN, 2018 WL 1583037, at *6 (S.D.N.Y. Mar. 27, 2018) (quoting 17 U.S.C. § 1202(a)).  Courts generally take a broad view of what constitutes CMI, including "the name of, and other identifying information about, the author of a work" and "the name of . . . the copyright owner of the work."  17 U.S.C.A. § 1202(c) (Westlaw though P.L. 118-30); Aaberg, 2018 WL 1583037, at *7.  Because the DMCA separately authorizes an award of statutory damages pursuant to 17 U.S.C. section 1203(c), Trombetta is not necessarily barred from seeking such damages under 17 U.S.C. section 412.  See Glob. Refin. Grp., Inc. v. PMD Analysis, Inc., No. 21-CV-0532-JLR-BCM, 2023 WL 5733968, *15, n.14 (S.D.N.Y. Aug. 15, 2023) report & recommendation adopted, 2023 WL 8893989 (S.D.N.Y. Dec. 26, 2023).  Plaintiff's two claims under the Act are, however, unavailing.

First, to prevail on her claim under section 1202(a), Trombetta must establish that EAI provided false CMI, "knew that the CMI was false, and provided or distributed the false

CMI with the intent to induce, enable, facilitate, or conceal infringement." Aaberg, 2018 WL 1583037, at *6 (citing Ward v. Nat'l Geographic Soc'y, 208 F. Supp. 2d 429, 449 (S.D.N.Y. 2002)).  Plaintiff alleges that the WorthPoint Listing violated this section by including the statement, "copyrighted work licensed by WorthPoint."  (Pl. MSJ at 27-29.)  However, Plaintiff does not provide any evidence that EAI was involved in this alleged infringement, and EAI is not associated with or a part of WorthPoint's business.  Thus, EAI is entitled to summary judgment on Plaintiff's section 1202(a) claim.

Second, a claim under section 1202(b) requires Trombetta to establish: (1) the existence of CMI on the products at issue; (2) removal and/or alteration of that information; and (3) that the removal and/or alteration was done intentionally." Aaberg, 2018 WL 1583037, at *6.  Although Trombetta has not proffered photographic evidence of the copyright management information on her website prior to the eBay post, she testified that her "website always had a copyright notice and statement[,] 'All work on this site are [sic.] © Annamarie Trombetta.  All rights reserved." (See docket entry no. 447 ¶ 8.)  However, Trombetta has not provided any admissible evidence to establish that any alteration or removal of the alleged CMI was done intentionally.  Mr. Novocin testified that he was unaware of any CMI associated with Plaintiff's biography, that he copied the information from askArt.com,[4] that he believed he was authorized

---

[4]    Plaintiff argues that Mr. Novocin could not have found her biography on askArt.com in December of 2012 because — Plaintiff asserts — her profile on askArt was first created in 2015.  (Pl. Mem. at 22-23.)  Plaintiff purports to substantiate her allegations with a computer screenshot, taken through Wayback Machine, which shows that her askArt profile was viewable in 2015.  (Docket entry no. 488-1 at Ex. 18.)  Plaintiff seems to misunderstand her own evidence.  The existence of Trombetta's askArt profile in 2015 only shows that the webpage existed, and its data was cached, by 2015 at the latest.  It does not disprove EAI's assertion that the page existed in 2012 and earlier.  Because Plaintiff provides no evidence to contradict Mr. Novocin's testimony, the Court cannot find a genuine issue of fact regarding whether Mr. Novocin found the biography on askArt.

to do so and attempted to provide credit to the appropriate source, and that he was unaware of any issues with or alterations to the biography.  (Norb Novocin Dep. at 59-60.)  Therefore, Plaintiff has also failed to satisfy her burden to provide any admissible evidence creating a genuine issue of fact to the scienter element of her claim.  Accordingly, EAI is entitled to summary judgment dismissing Plaintiff's DMCA claims.

<u>C</u><small>ONCLUSION</small>

For the foregoing reasons, WorthPoint's motion for summary judgment is granted in its entirety, EAI's motion for summary judgment is granted in part and denied in part, Plaintiff's motion for summary judgment as against WorthPoint is denied in its entirety, and Plaintiff's motion for summary judgment against EAI is granted in part and denied in part. This Memorandum Order and Opinion resolves docket entry nos. 400, 403, 408, 418, 423, 432, 437, 439, and 443.

The Clerk of Court is respectfully requested to enter judgment as follows and close this case: On Plaintiff's VARA claim, judgment will be entered for Ms. Trombetta and against Estate Auctions, Inc. and Norb Novocin, jointly and severally in the amount of $1,000. On Plaintiff's direct copyright infringement claim, judgment will be entered for Ms. Trombetta and against Estate Auctions, Inc., and Norb Novocin in the amount of $1.00. Judgment will be entered in favor of Estate Auctions, Inc. and Norb Novocin with respect to all remaining claims. Judgment will also be entered in favor of Marie Novocin and WorthPoint on all claims. The Clerk of Court is respectfully directed to mail a copy of this order to Annamarie Trombetta, 175 East 96th Street, Apt 12R, New York, New York 10128.

SO ORDERED.

Dated: New York, New York
       February 20, 2024

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge