**M Gmail**   ~~EXHIBIT #2~~   Annamarie Trombetta <artofannamarie@gmail.com>

## Annamarie Trombetta

**Annamarie Trombetta** <artofannamarie@gmail.com>                    Wed, Nov 23, 2022 at 1:15 PM
To: scelsa/joseph <jvscelsa@italianamericanmuseum.org>

Hello Dr. Scelsa,

I wanted to wish you a Happy Thanksgiving . I also wanted to touch base
with you about my case.

 At the end of the Conference Call today I mentioned a Settlement Conference to the Judge and both Defendants declined
any offers.

I also stated to the Judge that the Expert witness reports which are due on December 12, 2022 but that with the Holiday
Season this may not be possible.
I have to make an application to the Court for an extension.

When you can please call me to discuss the production of the report.
With Appreciation,
Annamarie Trombetta
Tel (212) 427-5990

EXHIBIT #3

NOVEMBER 23, 2022

SOURCE  INFORMATION

EMAIL

EXHIBIT

Gmail - Email

 Gmail

#3 A

Annamarie Trombetta <atrombettaart@gmail.com>

---

## Email

---

**Bialek, Adam** <Adam.Bialek@wilsonelser.com>                                Wed, Nov 23, 2022 at 11:33 AM
To: Annamarie Trombetta <annamarietrombettalegal@outlook.com>, Annamarie Trombetta <atrombettaart@gmail.com>,
"ajd@hoganduff.com" <ajd@hoganduff.com>, "ajd@andersonjduff.com" <ajd@andersonjduff.com>
Cc: "Farmer, Jana S." <Jana.Farmer@wilsonelser.com>, "Haimson, Nicole" <Nicole.Haimson@wilsonelser.com>


Here is the Source Information from the email that I was able to capture.  Being sent as a courtesy.


<html><head>

</head><body><div dir="ltr"><br><div class="gmail_quote">---------- Forwarded message ----------<br>From:
<b class="gmail_sendername">eBay</b> <span dir="ltr">&lt;<a href="mailto:ebay@ebay.com">eb
ay@ebay.com</a>&gt;</span><br>Date: Sat, Dec 1, 2012 at 9:54 PM<br>Subject: Your eBay item sold!
1972 Original Oil Painting Man With Red Umbrella Signed Annamarie Trombetta yqz (330833102936)
<br>To: <a href="mailto:ebay@novocin.com">ebay@novocin.com</a><br><br><br><div><div id="m_
3729392004584666707Header"><div><table border="0" cellpadding="0" cellspacing="0" width="100%">
<tbody><tr><td width="100%" style="word-wrap:break-word"><table cellpadding="2" cellspacing="3"
border="0" width="100%"><tbody><tr><td width="1%" nowrap=""><img src="http://q.ebaystatic.com/
aw/pics/logos/ebay_95x39.gif" height="39" width="95" alt="eBay"></td><td align="left" valign="bottom">
<span style="font-weight:bold;font-size:xx-small;font-family:verdana,sans-serif;color:#666"><b>eBay sent
this message to Norb &amp; Marie Novocin (estateauctionsinc).</b><br></span><span style="font-size:xx-
small;font-family:verdana,sans-serif;color:#666">Your registered name is included to show this message
originated from eBay. <a href="http://pages.ebay.com/help/confidence/name-userid-emails.html"
target="_blank">Learn more</a>.</span></td></tr></tbody></table></td></tr></tbody></table></div></div>
<div id="m_3729392004584666707Title"><div><table style="background-color:#ffe680" border="0"
cellpadding="0" cellspacing="0" width="100%"><tbody><tr><td width="8" valign="top"><img
src="http://q.ebaystatic.com/aw/pics/globalAssets/ltCurve.gif" height="8" width="8"></td><td valign="bottom"
width="100%"><span style="font-weight:bold;font-size:14pt;font-family:arial,sans-serif;color:#000;margin:
2px 0 2px 0">Congratulations, your item sold!</span></td><td width="8" valign="top" align="right"><img
src="http://p.ebaystatic.com/aw/pics/globalAssets/rtCurve.gif" height="8" width="8"></td></tr><tr><td
style="background-color:#fc0" colspan="3" height="4"></td></tr></tbody></table></div></div><div id="m_
3729392004584666707SingleItemCTA"><div><table border="0" cellpadding="2" cellspacing="3"
width="100%"><tbody><tr><td><font style="font-size:10pt;font-family:arial,sans-serif;color:#000">Dear
estateauctionsinc,<table border="0" cellpadding="0" cellspacing="0" width="100%"><tbody><tr><td><img
src="http://q.ebaystatic.com/aw/pics/s.gif" height="10" alt=" "></td></tr></tbody></table>You did it! Your
item sold. Please ship this item to the buyer after your buyer pays. As soon as your buyer pays, print your
eBay shipping label.<table border="0" cellpadding="0" cellspacing="0" width="100%"><tbody><tr><td><img
src="http://q.ebaystatic.com/aw/pics/s.gif" height="10" alt=" "></td></tr></tbody></table>Complete one
of the following:<br><ul style="list-style-type:disc;margin:10px 10 10 14px"><li><a
href="http://rover.ebay.com/rover/0/e12011.m354.l1337/7?euid=45d0df16f2ea40759d3656f834970b
06&amp;loc=http%3A%2F%2Fpayments.ebay.com%2Fws%2FeBayISAPI.dll%3FPrintPostage%
26transactionid%3D0%26itemid%3D330833102936%26ssPageName%
3DADME%3AL%3AEOISSA%3AUS%3A1337" target="_blank">Print a shipping label</a> Avoid a trip to
the post office, print and pay for your label at home. Printing shipping labels on eBay also offers you
reduced pricing on some shipping services, and when you print shipping labels on eBay, your tracking
information is uploaded automatically.</li><li><a href="http://rover.ebay.com/rover/0/e12011.m354.l1663/7?
euid=45d0df16f2ea40759d3656f834970b06&amp;loc=http%3A%2F%2Fpayments.ebay.com%2Fws%
2FeBayISAPI.dll%3FAddTrackingNumber2%26flow%3Dmyebay%26LineID%
3D330833102936_0%26ssPageName%3DADME%3AL%3AEOISSA%3AUS%3A1663"
target="_blank">Provide shipping and tracking information</a>. When you upload tracking information to
eBay, we'll send it to your buyer and let them know the item is on its way. This will save you time, and may
result in fewer questions from buyers and higher detailed seller ratings.</li><li><a

Plaintiff000826

EXHIBIT #3B

Gmail - Email

href="http://rover.ebay.com/rover/0/e12011.m354.l1662/7?euid=45d0df16f2ea40759d3656f834970b
06&amp;loc=http%3A%2F%2Fmy.ebay.com%2Fws%2FeBayISAPI.dll%3FMyEbayBeta%26CurrentPage%
3DMyeBayNextSold%26ssPageName%3DADME%3AL%3AEOISSA%3AUS%3A1662"
target="_blank">Mark your item as shipped in My eBay</a>. Do this, and we'll let your buyer know the item
is on its way. This will save you time, and may result in fewer questions from buyers and higher detailed
seller ratings.</li></ul>You should always <a href="http://rover.ebay.com/rover/0/e12011.m354.l1332/7?
euid=45d0df16f2ea40759d3656f834970b06&amp;loc=http%3A%2F%2Ffeedback.ebay.com%2Fws%
2FeBayISAPI.dll%3FLeaveFeedback2%26show_as%3Dsold%26ssPageName%3DADME%
3AL%3AEOISSA%3AUS%3A1332" target="_blank">leave feedback</a> for your buyer to encourage them
to buy from you again.<br><br></div></font><div><table width="100%" cellpadding="0" cellspacing="3"
border="0"><tbody><tr><td valign="top" align="center" width="100" nowrap=""><a
href="http://rover.ebay.com/rover/0/e12011.m43.l1123/7?euid=45d0df16f2ea40759d3656f834970b
06&amp;loc=http%3A%2F%2Fcgi.ebay.com%2Fws%2FeBayISAPI.dll%3FViewItem%26item%
3D330833102936%26ssPageName%3DADME%3AL%3AEOISSA%3AUS%3A1123" target="_blank"><img
src="http://thumbs.ebaystatic.com/pict/330833102936.jpg" alt="1972 Original Oil Painting Man With Red
Umbrella Signed Annamarie Trombetta yqz" border="0"></a></td><td colspan="2" valign="top"><table
width="100%" cellpadding="0" cellspacing="0" border="0"><tbody><tr><td style="font-size:10pt;font-
family:arial,sans-serif;color:#000" colspan="2"><a href="http://rover.ebay.com/rover/0/e12011.m43.l1123/7?
euid=45d0df16f2ea40759d3656f834970b06&amp;loc=http%3A%2F%2Fcgi.
ebay.com%2Fws%2FeBayISAPI.dll%3FViewItem%26item%3D330833102936%26ssPageName%
3DADME%3AL%3AEOISSA%3AUS%3A1123" target="_blank">1972 Original Oil Painting Man With Red
Umbrella Signed Annamarie Trombetta yqz</a></td></tr><tr><td style="font-size:10pt;font-family:arial,sans-
serif;color:#000" width="15%" nowrap="" valign="top"><font style="font-weight:bold;font-size:10pt;font-
family:arial,sans-serif;color:#000">Sale price:</font></td><td style="font-size:10pt;font-family:arial,sans-
serif;color:#000" valign="top"><font style="font-weight:bold;font-size:10pt;font-family:arial,sans-
serif;color:#000">$181.50</font></td></tr><tr><td style="font-size:10pt;font-family:arial,sans-serif;color:
#000" width="15%" nowrap="" valign="top">Quantity sold:</td><td style="font-size:10pt;font-
family:arial,sans-serif;color:#000" valign="top">1</td></tr><tr><td style="font-size:10pt;font-
family:arial,sans-serif;color:#000" width="15%" nowrap="" valign="top">Sale date:</td><td style="font-
size:10pt;font-family:arial,sans-serif;color:#000" valign="top">Dec-01-12 18:54:01 PST</td></tr><tr><td
style="font-size:10pt;font-family:arial,sans-serif;color:#000" width="15%" nowrap="" valign="top">Buyer:
</td><td style="font-size:10pt;font-family:arial,sans-serif;color:#000" valign="top">nina correia</td></tr><tr>
<td style="font-size:10pt;font-family:arial,sans-serif;color:#000" width="15%" nowrap="" valign="top"></td>
<td style="font-size:10pt;font-family:arial,sans-serif;color:#000" valign="top"><div><table border="0"
cellpadding="0" cellspacing="0"><tbody><tr><td style="font-size:10pt;font-family:arial,sans-serif;color:#000"
valign="top" class="m_3729392004584666707noWrap"><font style="font-size:10pt;font-family:arial,sans-
serif;color:#000">9naclock (<a href="mailto:ninascorreia@aol.com" target="_blank">ninascorreia@
aol.com</a>) [<a href="http://contact.ebay.com/ws/eBayISAPI.dll?ReturnUserEmail&amp;requested=
9naclock&amp;redirect=0&amp;iid=330833102936" target="_blank">contact buyer</a>]</font></td></tr></
tbody></table></div></td></tr><tr><td style="font-size:10pt;font-family:arial,sans-serif;color:#000"
width="15%" nowrap="" valign="top">Buyer's shipping address:</td><td style="font-size:10pt;font-
family:arial,sans-serif;color:#000" valign="top"><div><table border="0" cellpadding="0" cellspacing="0">
<tbody><tr><td style="font-size:10pt;font-family:arial,sans-serif;color:#000" valign="top" class="m_
3729392004584666707noWrap" nowrap="">nina correia</td></tr><tr><td style="font-size:10pt;font-
family:arial,sans-serif;color:#000" valign="top" class="m_3729392004584666707noWrap" nowrap="">14215
prairie flower ct</td></tr><tr><td style="font-size:10pt;font-family:arial,sans-serif;color:#000" valign="top"
class="m_3729392004584666707noWrap" nowrap="">reno, NV 89511-6710 United States</td></tr>
</tbody></table></div></td></tr><tr><td colspan="2"><font style="font-size:10pt;font-family:arial,sans-
serif;color:#000"><a href="http://rover.ebay.com/rover/0/e12011.m43.l1151/7?euid=
45d0df16f2ea40759d3656f834970b06&amp;loc=http%3A%2F%2Fcgi5.
ebay.com%2Fws%2FeBayISAPI.dll%3FSellHub3%26ssPageName%3DADME%3AL%3AEOISSA%3AUS%
3A1151" target="_blank">Sell another Item</a> | <a href="http://rover.ebay.com/
rover/0/e12011.m43.l1156/7?euid=45d0df16f2ea40759d3656f834970b06&amp;loc=http%3A%2F%
2Fpayments.ebay.com%2Fws%2FeBayISAPI.dll%3FUnifiedCheckoutSellerUpdateDetails%26itemId%
3D330833102936%26transId%3D0%26buyerid%3D0%26ssPageName%
3DADME%3AL%3AEOISSA%3AUS%3A1156" target="_blank">Send invoice to buyer</a></font></td></tr>
</tbody></table></td></tr></tbody></table></div></td valign="top" width="185"><div><span
style="font-weight:bold;font-size:10pt;font-family:arial,sans-serif;color:#000"><strong>Provide shipping
information</strong></span><table border="0" cellpadding="0" cellspacing="0" width="100%"><tbody><tr>
<td><img src="http://q.ebaystatic.com/aw/pics/s.gif" height="4" alt=" "></td></tr></tbody></table><a
href="http://rover.ebay.com/rover/0/e12011.m44.l1121/7?euid=45d0df16f2ea40759d3656f834970b

EXHIBIT #3

Gmail - Email

06&amp;loc=http%3A%2F%2Fmy.ebay.com%2Fws%2FeBayISAPI.dll%3FMyeBay%26CurrentPage%
3DMyeBaySold%26ssPageName%3DADME%3AL%3AEOISSA%3AUS%3A1121"
title="http://rover.ebay.com/rover/0/e12011.m44.l1121/7?euid=45d0df16f2ea40759d3656f834970b
06&amp;loc=http%3A%2F%2Fmy.ebay.com%2Fws%2FeBayISAPI.dll%3FMyeBay%26CurrentPage%
3DMyeBaySold%26ssPageName%3DADME%3AL%3AEOISSA%3AUS%3A1121" target="_blank"><img
src="http://p.ebaystatic.com/aw/pics/buttons/btnGotoMyeBay.gif" border="0" height="32" width="120"></a>
<br><span style="font-style:italic;font-size:8pt;font-family:arial,sans-serif;color:#000"></span></div></td>
</tr></tbody></table><br></div><div id="m_3729392004584666707OneClickDigestOrUnsubscribe">
<div><div class="m_3729392004584666707cub-cwrp"><h3 class="m_3729392004584666707cub-chd">
Select your email preferences</h3><div class="m_3729392004584666707cub-ccnt"><ul class="m_
3729392004584666707cub-ulst"><li><span class="m_3729392004584666707cub-ltxt"><span>Want to
reduce your inbox email volume? <a href="http://my.ebay.com/ws/eBayISAPI.dll?DigestEmail&amp;
emailType=12011" target="_blank">Receive this email as a daily digest</a>.</span><br><span>For other
email digest options, go to <a href="http://my.ebay.com/ws/eBayISAPI.dll?MyEbayBeta&amp;CurrentPage=
MyeBayNextNotificationPreferences" target="_blank">Notification Preferences</a> in My eBay.</span><br>
</span></li><li><span class="m_3729392004584666707cub-ltxt"><span>Don't want to receive this email?
<a href="http://my.ebay.com/ws/eBayISAPI.dll?EmailUnsubscribe&amp;emailType=12011"
target="_blank">Unsubscribe from this email</a>.</span><br></span></li></ul></div></div></div></div>
<div id="m_3729392004584666707MarketPlaceSafetyTip"></div><div id="m_
3729392004584666707Footer"><div><hr style="HEIGHT:1px"><table border="0" cellpadding="0"
cellspacing="0" width="100%"><tbody><tr><td width="100%"><font style="font-size:10pt;font-
family:arial,sans-serif;color:#000"><b>Email reference id: [#<wbr>45d0df16f2ea40759d3656f834970b
<wbr>06#]</b><br>Please don't remove this number. eBay customer support may ask you for this number,
if you should need assistance.</font></td></tr></tbody></table><br></div><hr style="HEIGHT:1px"><table
border="0" cellpadding="0" cellspacing="0" width="100%"><tbody><tr><td width="100%"><font style="font-
size:xx-small;font-family:verdana;color:#666"><a href="http://pages.ebay.com/education/spooftutorial/index.
html" target="_blank">Learn More</a> to protect yourself from spoof (fake) emails.<br><br>eBay sent this
email to you at <a href="mailto:ebay@novocin.com" target="_blank">ebay@novocin.com</a> about your
account registered on <a href="http://www.ebay.com" target="_blank">www.ebay.com</a>.<br><br>eBay
sends these emails based on the preferences you set for your account. To unsubscribe from this email,
change your <a href="http://my.ebay.com/ws/eBayISAPI.dll?MyEbayBeta&amp;CurrentPage=
MyeBayNextNotificationPreferences" target="_blank">communication preferences</a>. Please note that it
may take up to 10 days to process your request. Visit our <a href="http://pages.ebay.com/
help/policies/privacy-policy.html" target="_blank">Privacy Policy</a> and <a href="http://pages.ebay.com/
help/policies/user-agreement.html" target="_blank">User Agreement</a> if you have any questions.<br>
<br>Copyright © 2012 eBay Inc. All Rights Reserved. Designated trademarks and brands are the property
of their respective owners. eBay and the eBay logo are trademarks of eBay Inc. eBay Inc. is located at 2145
Hamilton Avenue, San Jose, CA 95125. </font></td></tr></tbody></table><img src="http://rover.ebay.com/
roveropen/0/e12011/7?euid=45d0df16f2ea40759d3656f834970b06" height="1" width="1"></div></div>
</div><br></div></body></html>

Adam Bialek
Attorney at Law
Wilson Elser Moskowitz Edelman & Dicker LLP
150 E 42nd Street
New York, NY 10017
212.915.5143 (Direct)
917.538.0616 (Cell)
212.490.3000 (Main)
212.490.3038 (Fax)
adam.bialek@wilsonelser.com

**From:** Bialek, Adam
**Sent:** Thursday, November 17, 2022 1:33 PM
**To:** Annamarie Trombetta <annamarietrombettalegal@outlook.com>; Annamarie Trombetta
<atrombettaart@gmail.com>; ajd@hoganduff.com; ajd@andersonjduff.com

Plaintiff000828

**Cc:** Farmer, Jana S. <Jana.Farmer@wilsonelser.com>; Haimson, Nicole <Nicole.Haimson@wilsonelser.com>

**Subject:** FW: Email

I note that as of late there has been quite a few emails floating about looking for the complete document regarding the sale of the painting. I just came across this which was exchanged during the deposition of the Novicins. Hopefully, this issue is now resolved and we can start reducing the issues that need to be raised on the call with the Court next week. I suggest that we put together an agenda of items to be addressed with the Court next week and see if we can meet and confer on a resolution of as many as we can.

[Quoted text hidden]
[Quoted text hidden]

EXHIBIT
#30

Plaintiff000829

EXHIBIT # 4

NOVEMBER 23, 2022

ELECTRONIC    ORIGINAL
MESSAGE EMAIL PRINT OUT

SOURCE  INFORMATION

EMAIL

Original Message

# Original Message

| | |
|---|---|
| Message ID | <21BC38C09AD4514693C6FCF2B58A34CE0294D6A097@WILEXCSRVPD10.WEMED.com> |
| Created at: | Wed, Nov 23, 2022 at 11:33 AM (Delivered after 6 seconds) |
| From: | "Bialek, Adam" <Adam.Bialek@wilsonelser.com> |
| To: | Annamarie Trombetta <annamarietrombettalegal@outlook.com>, Annamarie Trombetta <atrombettaart@gmail.com>, "ajd@hoganduff.com" <ajd@hoganduff.com>, "ajd@andersonjduff.com" <ajd@andersonjduff.com> |
| Subject: | RE: Email |
| SPF: | PASS with IP 216.71.146.94  Learn more |
| DKIM: | 'PASS' with domain wilsonelser.com  Learn more |
| DMARC: | 'PASS'  Learn more |

Download Original                                    Copy to clipboard

Delivered-To: atrombettaart@gmail.com
Received: by 2002:a05:6a11:e044:b0:35c:5884:6311 with SMTP id
dl4csp3749182pxc;
        Wed, 23 Nov 2022 08:33:38 -0800 (PST)
X-Google-Smtp-Source:
AA0mqf5n+Rhg2CQVBT6pk6449pe7/5jOUn9SRMtK1NO0inwYLGX28NHPLlEJu6yKSB8n
bu3+mXy/
X-Received: by 2002:a17:906:34d0:b0:78d:c16e:dfc9 with SMTP id h16-
20020a17090634d000b0078dc16edfc9mr24785827ejb.327.1669221218185;
        Wed, 23 Nov 2022 08:33:38 -0800 (PST)
ARC-Seal: i=1; a=rsa-sha256; t=1669221218; cv=none;
        d=google.com; s=arc-20160816;
        b=KLD9wphe9GsIyTpugwEe9zWQfcBcWWT+9DjwuZkkXygWVyj8jhiQKVxR3mnLeJvk1b

        A3gThXTFFh7Zlq3omrWDSX1wuLSgm0obs6gtpA785NBMRr42EkYXIbUYCA3bF768LMwn

        /8jMzLgKXga9jW4ttaKnuZ0Ea1isl8wZGmHDSbou/KqYkMmbMHvOQqeVZjFN6mM/ybJk

        J0qKrMiC59dmt+asQTnlr1B2mLHKeYdSIvpcR23hSIAZUZLOdDhK3j/LKzRjNq05Fyip

        EyIy7UXKZTQ7fePaGvENeV0ctZWgsXmJqE9T+T5NAMvZY105b58uoc/KX1NSKOHDR97b
        wRBQ==
ARC-Message-Signature: i=1; a=rsa-sha256; c=relaxed/relaxed;
d=google.com; s=arc-20160816;

Original Message

```
          h=mime-version:imanage.sendandfile.filinglocations:content-
language
           :accept-language:in-reply-to:references:message-
id:date:thread-index
           :thread-topic:subject:cc:to:from:dkim-signature;
        bh=ZUO94FbhInj1iyKCs1K79ZRkbKJ2XvuwbAkW2TX55M0=;

b=OO+FAbelVHnKmaUltfA2pdKKYUkddkIRLsExWdBIS5WgEheSd+uNXFroClA4aGKb+8

c6vZmSAVvfF0rEcRAv0no7zqXr1Exu9HM+s+Is5OMAoqr9/AcBXKRS3V4P/xq54IxgRy

AT/CI5Ssd+SB3zOijuIdfDGtM2SkefHbhqSqjlssYIJqdvBhpdmcTM1MB+W+GEmrIhEq

kglQxflw5hBXkxclwLS9c9y4j0OS2np4zWTOJiBLmMB0H5w3uN/yh5WwZhpUNb6JeOOz

oBlhg/WioZYLl6/RoFA8jnmlJX5zDrMtBQTX1vxgnRh2y1cGJvCEDswlFn6Ed1bnBDSl
        rR+w==
ARC-Authentication-Results: i=1; mx.google.com;
       dkim=pass header.i=@wilsonelser.com header.s=mailkey
header.b=oqZVhQr+;
       spf=pass (google.com: domain of adam.bialek@wilsonelser.com
designates 216.71.146.94 as permitted sender)
smtp.mailfrom=Adam.Bialek@wilsonelser.com
       dmarc=pass (p=NONE sp=NONE dis=NONE)
header.from=wilsonelser.com
Return-Path: <Adam.Bialek@wilsonelser.com>
Received: from esa4.wilsonelser.iphmx.com
(esa4.wilsonelser.iphmx.com. [216.71.146.94])
        by mx.google.com with ESMTPS id qf39-
20020a1709077f2700b0078d9c0e8971si17348277ejc.752.2022.11.23.08.33.3
7
        for <atrombettaart@gmail.com>
        (version=TLS1_2 cipher=ECDHE-ECDSA-AES128-GCM-SHA256
bits=128/128);
        Wed, 23 Nov 2022 08:33:38 -0800 (PST)
Received-SPF: pass (google.com: domain of
adam.bialek@wilsonelser.com designates 216.71.146.94 as permitted
sender) client-ip=216.71.146.94;
Authentication-Results: mx.google.com;
       dkim=pass header.i=@wilsonelser.com header.s=mailkey
header.b=oqZVhQr+;
       spf=pass (google.com: domain of adam.bialek@wilsonelser.com
designates 216.71.146.94 as permitted sender)
smtp.mailfrom=Adam.Bialek@wilsonelser.com;
       dmarc=pass (p=NONE sp=NONE dis=NONE)
header.from=wilsonelser.com
DKIM-Signature: v=1; a=rsa-sha256; c=simple/simple;
  d=wilsonelser.com; i=@wilsonelser.com; q=dns/txt;
  s=mailkey; t=1669221217; x=1700757217;
  h=from:to:cc:subject:date:message-id:references:
   in-reply-to:mime-version;
  bh=UGGwTP3Yv2h17sk2o1PkArPP/kkPBi4LSSKB+XONth8=;
  b=oqZVhQr+EYGbANSqSMuwW5eV0RbUCPcUhALaD9Icg1cpb0k//eGl01RW
   ZlnTeOwue+XfrJXgdIv2QwMhL63WO0BI810/12b4Z7Q5xhrAd2F+YGHrA
   SlLZrABNGjOBw8rF0HpoIoWrR9HggXawBz87NiyU6dsXC2kho5UpIRcRH
   4=;
Authentication-Results: esa4.wilsonelser.iphmx.com; dkim=none
(message not signed) header.i=none
X-IronPort-AV: E=Sophos;i="5.96,187,1665460800";
   d="scan'208,217";a="10393528"
Received: from mail1.wilsonelser.com (HELO mymail.wilsonelser.com)
([64.125.236.41])
  by esa4.wilsonelser.iphmx.com with ESMTP/TLS/ECDHE-RSA-AES256-
SHA384; 23 Nov 2022 11:33:34 -0500
Received: from WILEXCSRVPD10.WEMED.com ([10.254.5.251]) by WE-
EXCCAS-03.WEMED.com ([10.254.5.132]) with mapi id 14.03.0513.000;
```

Original Message

```
Wed, 23 Nov 2022 11:33:33 -0500
From: "Bialek, Adam" <Adam.Bialek@wilsonelser.com>
To: "'Annamarie Trombetta'" <annamarietrombettalegal@outlook.com>,
  "'Annamarie Trombetta'" <atrombettaart@gmail.com>,
  "'ajd@hoganduff.com'" <ajd@hoganduff.com>, "'ajd@andersonjduff.com'"
  <ajd@andersonjduff.com>
CC: "Farmer, Jana S." <Jana.Farmer@wilsonelser.com>, "Haimson,
Nicole" <Nicole.Haimson@wilsonelser.com>
Subject: RE: Email
Thread-Topic: Email
Thread-Index: AQHYzdMEL0BVNzcYGkKMc/yBNnulBq5DyZRggAlNAQA=
Date: Wed, 23 Nov 2022 16:33:32 +0000
Message-ID:
<21BC38C09AD4514693C6FCF2B58A34CE0294D6A097@WILEXCSRVPD10.WEMED.com>
References:
<BYAPR06MB4277A3A18295214CF5F27E60AB4F9@BYAPR06MB4277.namprd06.prod.
outlook.com>
<21BC38C09AD4514693C6FCF2B58A34CE0294D3C682@WILEXCSRVPD10.WEMED.com>
In-Reply-To:
<21BC38C09AD4514693C6FCF2B58A34CE0294D3C682@WILEXCSRVPD10.WEMED.com>
Accept-Language: en-US
Content-Language: en-US
X-MS-Has-Attach:
X-MS-TNEF-Correlator:
x-wsguid: IMAN-d4a4709ffd0146a6aee3300e1403962f
imanage.sendandfile.filinglocations: Active!7285068
x-originating-ip: [10.254.5.50]
Content-Type: multipart/alternative;
boundary="_000_21BC38C09AD4514693C6FCF2B58A34CE0294D6A097WILEXCSRVPD
10_"
MIME-Version: 1.0


--_000_21BC38C09AD4514693C6FCF2B58A34CE0294D6A097WILEXCSRVPD10_
Content-Type: text/plain; charset="us-ascii"
Content-Transfer-Encoding: quoted-printable

Here is the Source Information from the email that I was able to
capture.
Being sent as a courtesy.

<html><head>
</head><body><div dir=3D"ltr"><br><div class=3D"gmail_quote">-------
--- For=
warded message ----------<br>From: <b
class=3D"gmail_sendername">eBay</b> <=
span dir=3D"ltr">&lt;<a
href=3D"mailto:ebay@ebay.com">ebay@ebay.com</a>&gt;=
</span><br>Date: Sat, Dec 1, 2012 at 9:54 PM<br>Subject: Your eBay
item sol=
d! 1972 Original Oil Painting Man With Red Umbrella Signed Annamarie
Trombe=
tta yqz (330833102936)<br>To: <a
href=3D"mailto:ebay@novocin.com">ebay@novo=
cin.com</a><br><br><br><div><div id=3D"m_3729392004584666707Header">
<div><t=
able border=3D"0" cellpadding=3D"0" cellspacing=3D"0"
width=3D"100%"><tbody>
><tr><td width=3D"100%" style=3D"word-wrap:break-word"><table
cellpadding=
=3D"2" cellspacing=3D"3" border=3D"0" width=3D"100%"><tbody><tr><td
width=
=3D"1%" nowrap=3D""><img
src=3D"http://q.ebaystatic.com/aw/pics/logos/ebay_=
95x39.gif" height=3D"39" width=3D"95" alt=3D"eBay"></td><td
align=3D"left" =
valign=3D"bottom"><span style=3D"font-weight:bold;font-size:xx-
```

Original Message

```
small;font-f=
amily:verdana,sans-serif;color:#666"><b>eBay sent this message to
Norb &amp=
; Marie Novocin (estateauctionsinc).</b><br></span><span
style=3D"font-size=
:xx-small;font-family:verdana,sans-serif;color:#666">Your registered
name i=
s included to show this message originated from eBay. <a
href=3D"http://pag=
es.ebay.com/help/confidence/name-userid-emails.html"
target=3D"_blank">Lear=
n more</a>.</span></td></tr></tbody></table></td></tr></tbody>
</table></div=
></div><div id=3D"m_3729392004584666707Title"><div><table
style=3D"backgrou=
nd-color:#ffe680" border=3D"0" cellpadding=3D"0" cellspacing=3D"0"
width=3D=
"100%"><tbody><tr><td width=3D"8" valign=3D"top"><img
src=3D"http://q.ebays=
tatic.com/aw/pics/globalAssets/ltCurve.gif" height=3D"8"
width=3D"8"></td><=
td valign=3D"bottom" width=3D"100%"><span style=3D"font-
weight:bold;font-si=
ze:14pt;font-family:arial,sans-serif;color:#000;margin:2px 0 2px
0">Congrat=
ulations, your item sold!</span></td><td width=3D"8" valign=3D"top"
align=
=3D"right"><img
src=3D"http://p.ebaystatic.com/aw/pics/globalAssets/rtCurve=
.gif" height=3D"8" width=3D"8"></td></tr><tr><td
style=3D"background-color:=
#fc0" colspan=3D"3" height=3D"4"></td></tr></tbody></table></div>
</div><div=
 id=3D"m_3729392004584666707SingleItemCTA"><div><table border=3D"0"
cellpad=
ding=3D"2" cellspacing=3D"3" width=3D"100%"><tbody><tr><td><font
style=3D"f=
ont-size:10pt;font-family:arial,sans-serif;color:#000">Dear
estateauctionsi=
nc,<table border=3D"0" cellpadding=3D"0" cellspacing=3D"0"
width=3D"100%"><=
tbody><tr><td><img src=3D"http://q.ebaystatic.com/aw/pics/s.gif"
height=3D"=
10" alt=3D" "></td></tr></tbody></table>You did it! Your item sold.
Please =
ship this item to the buyer after your buyer pays. As soon as your
buyer pa=
ys, print your eBay shipping label.<table border=3D"0"
cellpadding=3D"0" ce=
llspacing=3D"0" width=3D"100%"><tbody><tr><td><img
src=3D"http://q.ebaystat=
ic.com/aw/pics/s.gif" height=3D"10" alt=3D" "></td></tr></tbody>
</table><di=
v>Complete one of the following:<br><ul style=3D"list-style-
type:disc;margi=
n:10px 10 10 14px"><li><a
href=3D"http://rover.ebay.com/rover/0/e12011.m354=
.l1337/7?
euid=3D45d0df16f2ea40759d3656f834970b06&amp;loc=3Dhttp%3A%2F%2Fpay=
ments.ebay.com%2Fws%2FeBayISAPI.dll%3FPrintPostage%26transactionid%3
D0%26it=
emid%3D330833102936%26ssPageName%3DADME%3AL%3AEOISSA%3AUS%3A1337"
target=3D=
"_blank">Print a shipping label</a> Avoid a trip to the post office,
print =
and pay for your label at home. Printing shipping labels on eBay
```

Original Message

```
also offer=
s you reduced pricing on some shipping services, and when you print
shippin=
g labels on eBay, your tracking information is uploaded
automatically.</li>=
<li><a href=3D"http://rover.ebay.com/rover/0/e12011.m354.l1663/7?
euid=3D45d=
0df16f2ea40759d3656f834970b06&amp;loc=3Dhttp%3A%2F%2Fpayments.ebay.c
om%2Fws=
%2FeBayISAPI.dll%3FAddTrackingNumber2%26flow%3Dmyebay%26LineID%3D330
8331029=
36_0%26ssPageName%3DADME%3AL%3AEOISSA%3AUS%3A1663"
target=3D"_blank">Provid=
e shipping and tracking information</a>. When you upload tracking
informati=
on to eBay, we'll send it to your buyer and let them know the item
is on it=
s way. This will save you time, and may result in fewer questions
from buye=
rs and higher detailed seller ratings.</li><li><a
href=3D"http://rover.ebay=
.com/rover/0/e12011.m354.l1662/7?
euid=3D45d0df16f2ea40759d3656f834970b06&am=
p;loc=3Dhttp%3A%2F%2Fmy.ebay.com%2Fws%2FeBayISAPI.dll%3FMyEbayBeta%2
6Curren=
tPage%3DMyeBayNextSold%26ssPageName%3DADME%3AL%3AEOISSA%3AUS%3A1662"
target=
=3D"_blank">Mark your item as shipped in My eBay</a>. Do this, and
we'll le=
t your buyer know the item is on its way. This will save you time,
and may =
result in fewer questions from buyers and higher detailed seller
ratings.</=
li></ul>You should always <a
href=3D"http://rover.ebay.com/rover/0/e12011.m=
354.l1332/7?
euid=3D45d0df16f2ea40759d3656f834970b06&amp;loc=3Dhttp%3A%2F%2F=
feedback.ebay.com%2Fws%2FeBayISAPI.dll%3FLeaveFeedback2%26show_as%3D
sold%26=
ssPageName%3DADME%3AL%3AEOISSA%3AUS%3A1332" target=3D"_blank">leave
feedbac=
k</a> for your buyer to encourage them to buy from you again.<br>
<br></div>=
</font></div><table width=3D"100%" cellpadding=3D"0"
cellspacing=3D"3" borde=
r=3D"0"><tbody><tr><td valign=3D"top" align=3D"center" width=3D"100"
nowrap=
=3D""><a href=3D"http://rover.ebay.com/rover/0/e12011.m43.l1123/7?
euid=3D45=
d0df16f2ea40759d3656f834970b06&amp;loc=3Dhttp%3A%2F%2Fcgi.ebay.com%2
Fws%2Fe=
BayISAPI.dll%3FViewItem%26item%3D330833102936%26ssPageName%3DADME%3A
L%3AEOI=
SSA%3AUS%3A1123" target=3D"_blank"><img
src=3D"http://thumbs.ebaystatic.com=
/pict/330833102936.jpg" alt=3D"1972 Original Oil Painting Man With
Red Umbr=
ella Signed Annamarie Trombetta yqz" border=3D"0"></a></td><td
colspan=3D"2=
" valign=3D"top"><table width=3D"100%" cellpadding=3D"0"
cellspacing=3D"0" =
border=3D"0"><tbody><tr><td style=3D"font-size:10pt;font-
family:arial,sans-=
serif;color:#000" colspan=3D"2"><a
href=3D"http://rover.ebay.com/rover/0/e1=
2011.m43.l1123/7?
```

EXHIBIT # 6

NOVEMBER 23, 2022

TRANSCRIPT
CONFERENCE CALL

PAGES 4 thru 21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:                                    :
                                             Docket #18cv993
TROMBETTA,                                : 1:18-cv-00993-RA-SLC

                    Plaintiff,            :

  - against -                             :

NOVOCIN, et al.,                          : New York, New York
                                            November 23, 2022
                    Defendants.           :

----------------------------------- : REMOTE CONFERENCE

PROCEEDINGS BEFORE
THE HONORABLE SARAH L. CAVE,
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          ANNAMARIE TROMBETTA, PRO SE
                        175 East 96th Street, Apartment 12R
                        New York, New York 10128

For Defendant -         WILSON ELSER MOSKOWITZ EDELMAN &
WorthPoint Corporation: DICKER, LLP
                        BY:  ADAM BIALEK, ESQ.
                             NICOLE HAIMSON, ESQ.
                        150 East 42nd Street
                        New York, New York 10017

Transcription Service:  Carole Ludwig, *Transcription Services*
                        155 East Fourth Street #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Email:  Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

```
 1                                                        4
 2             HONORABLE SARAH L. CAVE (THE COURT):  Good
 3  morning, this is Magistrate Judge Cave, we're here for
 4  a conference in Trombetta versus Novocin --
 5             MS. ANNAMARIE TROMBETTA (THE PLAINTIFF):  Good
 6  morning.
 7             THE COURT:  (continuing) -- case number
 8  18cv993. Good morning, Ms. Trombetta?
 9             THE PLAINTIFF:  Yes, good morning.
10             THE COURT:  All right, good morning. And for
11  defendants, let's start with the Novocin.
12             MR. ANDERSON DUFF: Your Honor, this is
13  Anderson Duff appearing on behalf of defendants Estate
14  Auctions and Norb and Marie Novocin, thank you.
15             THE COURT:  Great, good morning.  And for
16  WorthPoint?
17             MS. NICOLE HAIMSON:  Nicole Haimson with my
18  colleague, Adam Bialek from Wilson Elser on behalf of
19  WorthPoint Corporation.
20             THE COURT:  Okay, good morning, and apologies
21  for the delay, my prior conference was trying to fit a
22  lot in before the holiday so I had a lot of issues
23  with the other parties so thank you all for being
24  flexible about the time that we're getting started
25  today.
```

1 |                                                           5

2 |          Okay, so, you know, I have a few letters from

3 | the parties and I've been trying very hard to sort of

4 | discern what remains. I did get a couple of additional

5 | letters from the parties last night and so it seems to

6 | me, Ms. Trombetta, that one of the big issues that you

7 | were focused on in terms of the productions from the

8 | defendants was the complete sales receipt from the

9 | eBay auction of the 1972 original oil painting. It

10 | seemed like from Mr. Bialek's letter that that

11 | complete receipt has now been provided to you, is that

12 | the case, Ms. Trombetta?

13 |          THE PLAINTIFF:  It has, I did state that in

14 | the November 16th letter that you had requested of me,

15 | however, I think it's important as I put in my letter

16 | on Monday that the original message or the wrong

17 | message, which is the coding for that email, be

18 | produced and the reason for my request is that usually

19 | with all eBay receipts there is an icon of a square,

20 | it almost looks like an old fashioned slide, and the

21 | receipts from 2012 from EAI or eBay is absent of that

22 | particular icon.

23 |          THE COURT:  Okay, so --

24 |          THE PLAINTIFF:  So why reason for the raw data

25 | or the original email, which will have the content in

```
 1                                                    6
 2   that receipt as well as the coding for it, and it will
 3   just validate that the receipt transference was done.
 4   I have --
 5            THE COURT:  What you have now is just like a
 6   PDF version of that receipt?
 7            THE PLAINTIFF:  That is correct, Your Honor --
 8   (interposing) --
 9            THE COURT:  Hold on, everybody will have a
10   chance to talk, please wait until I call on you.  Go
11   ahead, Ms. Trombetta.
12            THE PLAINTIFF:  Yeah, thank you.  So the
13   defendants, WorthPoint, in particular, requested of me
14   several of those type of printouts. So not only did I
15   print out the PDF, you know, the content, text
16   content, but I also printed out the raw message or the
17   original message which gives you all the text within
18   the tracking and the coding of that email.
19            THE COURT:  Okay, are you concerned about,
20   that the PDF is somehow not authentic?
21            THE PLAINTIFF:  The production of the original
22   message will validate and verify that conclusively. I
23   am just, I just noticed that in all of my eBay
24   documents there's the icon of the gray square where
25   the image should be and it usually says, you know,
```

```
 1                                                        7
 2    click on to view image.  But I did not see that in the
 3    PDF.  And, again, since that was asked of me and I
 4    understand why, then I just would like --
 5           THE COURT:  There's no dispute that the eBay
 6    sale took place, right, that's not disputed?
 7           THE PLAINTIFF:  Again, the verification of the
 8    original or the raw coding and email will conclusively
 9    validate that.  All I can tell you with most certainty
10    is that I did not paint this image, I have produced my
11    signature --
12           THE COURT:  I know.
13           THE PLAINTIFF:  And I've also cooperated to an
14    extended amount. I had nothing to do with this.
15           THE COURT:  I know, and that goes to the
16    merits of this case, so let me hear from --
17           MS. HAIMSON:  Your Honor, may I clarify quick,
18    (indiscernible) was requested in terms of the actual
19    email. So I think plaintiff just explained to the
20    Court that counsel for WorthPoint had requested
21    printouts of emails and that she was seeking basically
22    the equivalent. That's actually inaccurate, what we
23    have requested was essentially the native electronic
24    format of that email which was exactly what we just
25    sent her.  We sent her the native electronic format of
```

8

that sales receipt. So she has exactly what we are

requesting from her and I don't know what she's

talking about when she's saying coding, but we have

given her the native electronic format of that email.

So I don't think there's really anything else to give.

THE COURT:  Okay. All right, so, Ms.

Trombetta, do you have -- Mr. Duff?

MR. DUFF:  Yes, Your Honor, I just wanted to

address this very briefly since this was our

production, my client's production.  The email that

she's talking about, we originally produced in April,

April 26th, and it was converted into a PDF and

stamped. During the deposition of my clients,

WorthPoint's counsel correctly pointed out that there

were a few digits that were cut off when it was

converted to a PDF on the right-hand side.  So while

the deposition was happening, I forwarded the raw

email, the .eml file, which contains all the metadata,

is unstamped, has everything that Ms. Trombetta could

want, that was on September 21st.  So she's had it

since September 21st and she's continued to file these

letters with the Court saying that she doesn't have

it. And I know that everybody got the email because

Adam Bialek recently, as counsel just stated,

```
 1
 2   recirculated that file. Ms. Trombetta's had this since
 3   the raw file, since September 21st, and just to address
 4   Ms. Trombetta's concerns I went ahead and reproduced
 5   it, restamped it as a PDF that does not cut off an of
 6   the information on the right-hand side.  So Ms.
 7   Trombetta's had this since April.
 8            THE COURT:  Okay. All right, Ms. Trombetta, do
 9   you now have the emails?
10            THE PLAINTIFF:  In my letter that I wrote
11   yesterday or maybe the day before, I gave and produced
12   -- no, it was yesterday, examples of what it was that
13   I was looking for.  And I had also stated that in the
14   email that was sent from Adam Bialek, when I clicked
15   onto the attachment, the attachment activated my
16   mailbox on the computer, and a drop down menu came up
17   where you have to select either Gmail, Yahoo,
18   whatever. I don't have that system operating. If Mr.
19   Duff sends me the coding of the PDF I would appreciate
20   it if he'd send it to the outlook.com. I cannot open
21   what it is that he, that Mr. Bialek sent.
22            Now I have been asking repeatedly for the full
23   uncut version of the PDF on numerous occasions --
24            THE COURT:  He said he sent it to you on
25   September 21st, Ms. Trombetta.
```

```
 1                                                          10
 2              THE PLAINTIFF:  Yes, but on October 31st I
 3   sent Mr., well I put this in my letter, on the 29th I
 4   sent, which was a Saturday, I sent a sample of the
 5   April version of the PDF which was slightly truncated.
 6   Then I also sent the deposition pages 74 to 79 of my
 7   Mr. Novocin which states that he keeps all his emails.
 8   Another thing that I'm requesting is the transaction
 9   of the payment.  Third, any type of receipt from the
10   buyer which is still missing.  This is just basic --
11              THE COURT:  Okay, well it seems to me, Ms.
12   Trombetta, that the defendants have produced to you in
13   several different formats a copy of the receipt that
14   you're asking for and I'm not going to require them to
15   produce anything --
16              THE PLAINTIFF:  Your Honor, I have to
17   disagree.  They produced in April the cut, truncated
18   PDF, it's just the printout of the email --
19              THE COURT:  And then he --
20              THE PLAINTIFF:  What I'm requesting physically
21   is the, I have received the full PDF but not the
22   original and raw message of that particular email.
23              THE COURT:  He just said --
24              THE PLAINTIFF:  Secondly, there is no --
25              THE COURT:  Ms. Trombetta, you have to listen
```

11

2   to me.   He sent it on September 21st.

3           THE PLAINTIFF:  That's what they are saying

4   and I'm telling you that the email that they sent the

5   other day I could not open it. I will send it to

6   another person, I plan on doing that over the weekend,

7   to see if they can open it, but I, personally, cannot

8   open it.

9           THE COURT:  Okay --

10          THE PLAINTIFF:  They can actually print out

11  all the data, that entire raw message, and scan it and

12  send it to me.

13          MR. BIALEK:  Your Honor, if I can, this is

14  Adam Bialek, I just want, I just want to say I sent I

15  to two different email addresses for Ms. Trombetta, I

16  sent it to the annatrombettalegal@outlook.com and then

17  I also sent it to atrombettaart@gmail.com.  So it

18  would have gone to two different servers.

19          THE COURT:  And that was attaching the native

20  document, correct?

21          MR. BIALEK:  That attached the email that I

22  had gotten from Mr. Duff which was, it looks like a

23  January 10, 2017, mail form eBay@novocin.com to Norb

24  Novocin and Marie Novocin that it forwards the

25  December 1, 2012, at 9:54 p.m. email from eBay at

eBay.com to eBay@novocin.com, and that has, that's the

original email that they have which has all of the

sales price and the buyer's name, buyer's shipping

address, et cetera.

        THE PLAINTIFF:  The buyer has not produced any

receipts of the transaction of payment, nor have they

indicated was it paid by check, PayPal, cash, credit

card, that hasn't been produced nor the sales receipt.

There's only one document that's been produced and,

again, I am asking you, Judge Cave, to have the

defendants print out the data and send it to me that

way.

        THE COURT:  What data?

        THE PLAINTIFF:  That's what I did in my --

        THE COURT:  Ms. Trombetta --

        THE PLAINTIFF:  (continuing) -- responses, I

printed out, I was requested to print out the February

20, 2016, email. I printed out the text, the actual

email, then I went to the raw message and print out

most of the coding. And then after the October 28th

meet and confer I figured out a way to export the raw

message into a PDF file and I forwarded that to both

defendants as requested. I'm just asking for the same

type of consideration as I am extending to the

13

 1

 2    defendants.

 3            THE COURT:  Is that your exhibit 4 to your

 4    letter yesterday, is that the type of raw data that

 5    you're talking about?

 6            THE PLAINTIFF:  Correct, thank you, Your

 7    Honor, that's precisely what it is that I'm looking

 8    for. I printed out an example of the hard copy which

 9    is basically any time you open up an email you get the

10    text or the, you know, the look of the email.

11            THE COURT:  Why do you need the data for this

12    email?

13            THE PLAINTIFF:  As stated earlier, first and

14    foremost there should be on the PDF an icon of the

15    image in gray where it's highlighted on blue and it

16    says click onto the image.  It doesn't have that.

17    Secondly, it's as requested of me as proof this is

18    another verification that the sale took place.  The

19    whole case is hinged upon the importance of the proof

20    of the sale because that's how WorthPoint became

21    involved.

22            THE COURT:  All right, stop talking for a

23    minute please so I can ask the defendants a question.

24    Ms. Haimson or, well actually let me ask Mr. Duff

25    because I think this is your email --

14

1

2        MR. DUFF:  Yes, Your Honor.

3        THE COURT:  Are you able to ascertain the data

4   for the email comparable to what appears in exhibit 4

5   to Ms. Trombetta's letter yesterday?

6        MR. DUFF:  Your Honor, just to be frank, I

7   have no idea what she means when she says raw data.  To

8   the extent she is talking about the email headers

9   which is what you can derive from the raw file which

10  she's had, again, since September 21st, I'm happy to I

11  guess convert to a PDF the email headers which she

12  could do and has been able to do since September. But

13  I'm happy to do that and circulate it.  I just want to

14  quickly address the --

15       THE COURT:  I think it's something different,

16  Mr. Duff, to be candid, I think -- I think what she's

17  talking about is the metadata for the email and I

18  realize that as a layperson, and I don't know the

19  first thing about this either, but do you have someone

20  in your office who could extract the metadata for the

21  email and then produce it basically like in a PDF?

22       MR. DUFF:  Your Honor, I'm not, I guess I'm

23  not sure what that, what that means, but to the extent

24  that I can I'm happy to do that. I mean we sent her

25  the raw file that contains all of that --

```
 1                                                    15
 2            THE COURT:  I know.
 3            MR. DUFF:  So if she knows how to do it, she
 4    should be able to do it.
 5            THE COURT:  She's not able to open the raw
 6    email --
 7            MR. DUFF:  Well, Your Honor --
 8            THE COURT:  Go ahead.
 9            MR. DUFF:  I'm sorry, Your Honor, go ahead.
10            THE COURT:  It's all right, go ahead.
11            MR. DUFF:  Well with respect, she did say that
12    when she tried to open the raw file the mail program
13    started opening, well that's how you open the file,
14    that indicates that she can open the file because it
15    is a mail app file. So if the mail app started opening
16    she can open the file.  But because, just that she
17    doesn't know how to do it doesn't mean she can't.
18            THE COURT:  Right.
19            MR. DUFF:  But to the extent that she will, if
20    she can explain to me the steps I need to take to turn
21    a PDF, give her a PDF that will resolve this issue for
22    her, I'm happy to do that, even --
23            THE COURT:  What I'd like you to do, so,
24    obviously there is going to be, all I'm, the reason to
25    make a big deal about this is this is obviously a
```

16

seminal document in this case and the authenticity of

the sales receipt is going to be something that, you

know, maybe you're going to be able to agree, but

maybe not. And so the authenticity of the document is

important.

      MR. DUFF:  Sure.

      THE COURT:  And what I'm interpreting Ms.

Trombetta to be saying is she wants to confirm that

the PDF and the raw email that was sent to her are, in

fact, the actual authentic documents.  And so if you

look at exhibit 4 to her letter yesterday, which is

ECF number 317, it's a bunch of garbled characters

that make no sense to me but I am sure to an IT person

they'll say, yes, this is the metadata for an email.

And so --

      MR. DUFF:  Your Honor, this is the -- and I'm

sorry.  I'm sorry, go ahead, I did not mean to

interrupt.

      THE COURT:  Sorry, what I'm just trying to get

at is that for the raw email that you provided to her,

to extract the metadata for that email and produce

that to her as a, like a PDF similar to exhibit 4 to

her letter --

      MR. DUFF:  Yes.  So, Your Honor, I'm looking

```
 1                                                          17
 2  at exhibit 4 right now, that is -- that is the email
 3  headers, that's what I was talking about earlier.
 4            THE COURT:  Okay.
 5            MR. DUFF:  So that I know how to produce, I'm
 6  happy to do that, I can do that from the
 7  (indiscernible) EML file that we've already given her,
 8  I can do that immediately after this conference and I
 9  will do that and then hopefully we can put that to
10  bed.
11            I would like to address one more point that
12  Ms. Trombetta (indiscernible), plaintiff said that we
13  have not produced documents, the sales receipts that
14  the buyer has.  Well why would, we don't have
15  documents that the buyer has and we can't produce
16  things, we told her many, many times that we cannot
17  produce documents that either do not exist or that are
18  not within our possession, custody or control, those
19  documents are not within our possession, custody and
20  control, and we would have been able to explain that
21  to her, at least try to explain that, had Ms.
22  Trombetta met and conferred with us which she has
23  consistently refused to do. In fact, last Thursday
24  WorthPoint's counsel asked Ms. Trombetta if she would
25  meet and confer with us on Monday of this week to try
```

18

```
 1 |
 2 | to resolve some of these issues so that we wouldn't be
 3 | wasting so much of the Court's time. Well, Ms.
 4 | Trombetta responded and said that she couldn't
 5 | possibly meet any time on Monday but then Monday
 6 | morning she filed a two page, single spaced letter
 7 | with the Court, so obviously she had time, she just
 8 | wasn't willing to meet and confer. And that's just the
 9 | most recent and one example, one tiny example of the
10 | continued bad faith with which Ms. Trombetta is
11 | proceeding in this case. And that's all I have to say
12 | about that, but I'll happy produce a PDF of the email
13 | header for this crucial email.  Thank you.
14 |           THE COURT:  Thank you, okay.
15 |           MR. BIALEK:  Your Honor, if I may --
16 |           THE COURT:  Let me just say I read all of your
17 | letters. I understand that there is a depth of
18 | loathing between the parties here that is almost
19 | immeasurable, and I understand that the parties are
20 | equally frustrated with where we are in the case. All
21 | I care about is getting you to the end of discovery.
22 | I'm not, I don't care about who shot John, I don't
23 | care about who behaved worse, if and when there is an
24 | appropriate time for the defendants' attorneys to be
25 | seeking sanctions or (indiscernible), we will address
```

```
 1                                                      19
 2   that. In the meantime, it's not necessary and it is a
 3   waste of my time for the parties to be belying each
 4   other in writing and letters to me and during
 5   conferences with the Court.  Today we are talking
 6   about what, if there are any remaining categories of
 7   documents that either party thinks the other party has
 8   and needs to be produced, that's what we're talking
 9   about today.
10         So, Ms. --
11         MR. DUFF:  My apologies, Your Honor, thank
12   you.
13         THE COURT:  It's not necessary to apologize, I
14   just needed to level set the conversation.
15         MR. BIALEK:  Your Honor, may I --
16         THE COURT:  Go ahead.
17         MR. BIALEK:  Sorry. I just wanted to say that
18   I just am sending over to everybody the header
19   information or the source information that was pulled
20   from the email. But to avoid having to come back for
21   another conference, I just want to point out the email
22   that Mr. Duff had sent to us was actually forwarding
23   the original email. So the email that he sent was from
24   2017 and it came from the Novocin's eBay@novocin.com,
25   they had kind of forwarded the email that
```

20

eBay@eBay.com had sent to them.

So while I just forwarded the source
information that she's looking, that Ms. Trombetta is
looking for, it's not going to have the source
information from that December 1, 2012, email, it
would only have it from 2017. So I just want to make
sure that everybody is aware of that so we don't have
to have another fight over it.

THE COURT: Okay. All right, thank you for
that clarification. All right, so one way or another,
Ms. Trombetta, whether it's from Mr. Bialek
momentarily, or from Mr. Duff after this call, you are
going to get the information about the eBay sales
receipt email that we were just discussing.

THE PLAINTIFF: Okay, Your Honor, if I may
just say three things. First and foremost, my letter
on Monday was filed on Friday evening. Any letters
that I wrote that were filed yesterday were written
over the weekend. I did, as stated, had appointments,
it's a holiday week, I had a lot of things to do.

That said, I will go to my Gmail account and
if you go, if the email was sent from Gmail you go to
the arrow, there's a circle with three dots and it
says reply, forward, filter message, you click on show

21

original and when you click on that what you get is message ID created at, which gives you the date, from/to/subject.  Underneath that you get the text of the email and all the coding that goes with it depending on how long the email is.

If it's a Yahoo account, then you go to the email, you go to more, you drop down the window and it says raw message. Now when WorthPoint asked me for the metadata, I didn't know how to produce it. But then I went to file, drop down window export PDF, and lo' and behold, it did it, it brought it to my desktop. This is what I put in my filing yesterday. Again, it's a printout of the original email which is what I have from Estate Auctions Inc. in full.

Again, in the spring of April it was truncated, on September 21st it was brought to the Novocins' attention, if Mr. Duff did, in fact, include the original or the raw message, it depends on the email platform.  Each email platform, Gmail, Outlook, they all have a different system but they all are consistent with being able to reveal and either print out or export to a desktop the original message with the coding and the text of the message.  Thank you.

THE COURT:  Okay.  Are there any other

United States District Court
Southern District of New York

_____

Annamarie Trombetta

Plaintiff
vs.

Norb Novocin, Marie Novocin
and   Estate Auctions Inc.
and

William Seippel & WorthPoint Corporation
5 Concourse Parkway NE, Suite 2850
Atlanta, Georgia 30328

Defendants

_____

Case No. 18-cv-0993-RA-HBP

**PLAINTIFF 'S  MOTION  FOR  LEAVE  TO  FILE
A  PROPOSED  AMENDED  COMPLAINT FOR
FRAUD,  EMOTIONAL DISTRESS, TORT  AND
PERMANENT  INJUNCTIVE  RELIEF  AGAINST
EAI  AND  NORB  AND  MARIE NOVICIN  AND
WORTH POINT  CORPORATION  DUE  TO THE
WILLFUL  CONCEALMENT AND FALSIFICATION
OF  FACTS  AND  FALSE  ADVERTISING**

## TO  FILE  A  PROPOSED  AMENDED  COMPLAINT  TO  INCLUDE  FRAUD, FALSE  ADVERTISING  EMOTIONAL DISTRESS AND  A  REQUST   FOR DECLARATORY, PERMANENT  INJUNCTION  AND OTHER  EQUITABLE   RELIEF

## SECOND  DEFENDANTS ONLY :  WORTHPOINT  CORPORATION  PROPOSED   AMENDED  COMPLAINT

Pursuant to Rule 15,  Rule 15 (a) (2),  Rule 15 (c) (1) (a), Rule 15 (d) and Rule  26.01  of  the  Federal Rules of Civil Procedure  and this  Court,  Plaintiff  hereby respectfully submits this Memorandum in  Support of  Plaintiff's Motion for Leave to  File  a Proposed  Amended Complaint to add Fed. Rule of Civil  Procedure  Fraud 9 (b) and for the Plaintiff's Request  for  Permanent Injunction and Other Equitable Relief ("Amended Complaint").  Rule 15(c)(1)  indicates that an amendment to a complaint will relate back to the date of the original pleading if certain conditions are satisfied.  First, the law that provides the applicable statute of limitations must allow the relation back. Fed. R. Civ. P. 15(c)(1)(A).

## INTRODUCTION

Based  on  past  events,  new additional facts and  information on behalf of  both Defendants' own filings, and  discovery responses,  which  exhibit  "bad faith," to the extent of fraud,  Plaintiff

seek's Leave to File a Proposed Amended Complaint against EAI and Norb and Marie Novocin and WorthPoint Corporation. Plaintiff's claim for Fraud, also substantiates Plaintiff's initial Request for Declaratory Relief, as I am not the artist who created or signed the 1972 oil painting, and to add Permanent Injunction Relief to Plaintiff's Proposed Amended Complaint. Plaintiff's Leave to Amend is in tandem with Judge Cave's most recent Order in Doc. 308. The language of Rule 15 (a)(2) states the amendment should be freely allowed "when justice so requires." My complaint intends to illustrate fraudulent conduct within my filing. Further, Rule 26.01 states that an amendment may be allowed "at any stage of an action and may permit parties to seek to amend their pleadings just before trial. Also, Rule 26 .01 gives the court's permission if the amendments are substantive— and support laws that creates or defines rights, duties, obligations, and causes of action that can be enforced by law. Additionally "under New York law" a claim for Intentional Infliction of Emotional Distress ( IIED) requires a showing of: '(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress.'" Rich v. Fox News Network, LLC, 939 F.3d 112 (2d Cir. 2019) (quoting Howell v. N.Y. Post Co., Inc., 596 N.Y.S.2d 350, 353 (N.Y. 1993)). As the Second Circuit has explained: Under New York law, although the standard of outrageous conduct is strict, rigorous and difficult to satisfy, that is not the case when there is a deliberate and malicious campaign of harassment or intimidation. Granting the Proposed Amendment Complaint would not be futile because the SAC, just like the First Amended Complaint ("FAC"), contains detailed factual allegations supporting each of Plaintiff's claims. Each claim has a correlating exhibit of evidence in support to verify the Plaintiff's claim.

Plaintiff's Proposed Amended Complaint harkens back to WorthPoint's written fraudulent statements, willful concealment, misinformation, captured in phone recordings and in writing. In 2015 and 2016, Plaintiff endured months of falsehoods and lies told by the WorthPoint's employees who concealed that WorthPoint's website was the source of the fraudulent link associated with Plaintiff's name and was responsible for it's removal of the false 1972 attribution of the oil painting that was advertised on WorthPoint 's website. The more time elapsed the more

WorthPoint added more of it's unrelated pages to Plaintiff's name and credentials. Any website designer or webmaster can attest that adding or removing links on and off a website can be done **instantaneously**, however the owner of any website maintains the control of it's content. The facts regarding website ownership, the concealment of evidence, the lack of evidence and overt fraudulent excuses confirm fraudulent misrepresentations by WorthPoint Corp. to the Plaintiff, spans over seven and half years. One of the main elements of fraud is that there is no basis for believing that the information is factual. Despite Plaintiff's production of my 1972 signature in print and script, and the production of over seven hundred pages of evidence, the Defendants are unyielding and rejected settlement talks on Nov. 23,2022 . Concurrently and ironically, WorthPoint 's Defendants, on August 30, 2022 improperly and willfully served Plaintiff an unsigned summons and a complaint with false incorrect facts and dates, generated from the state of Georgia, after I had a nine hour deposition. WorthPoint's owners are claiming that they are suffering from IIED, Plaintiff has always affirmed, I am not the artist who painted the 1972 oil painting and therefore could not have a licensing with WorthPoint Corp. Aside from this Plaintiff has never been to Georgia. Plaintiff has been falsely and repeatedly interrogated while constantly producing irrefutable proof. I am being bombarded with timed legal responsibilities, compounded by an addition countersuit, n a State I never entered, two years after I served WorthPoint, all endured because I was FORCED to protect my name, brand and to prevent further illegal and unethical usage of my name. For these defined reasons within my submission, I seeks warranted and justified claims for IIED. The repeated complicated problems and delays Plaintiff endured all this due to a simple request to remove a false internet post satisfies the elements of IIED. In 2015, what I had hoped to be an honest or simple mistake, has revealed to a willful attempt to conceal a fraudulent signature along with circulating false copyright management information on the internet. The difficulties I endured to remove the false post reveal a willful pattern to abscond Plaintiff's identity and falsely associate the 1972 oil painting with my name possibly" to increase the value of a damaged oil painting and piggyback" off my name. Concurrently, and from 2015, I am being falsely associated to Estate Auctions Inc, WorthPoint Corporation, and eBay,

which are all known for selling low quality items. I have the burden of litigation, the burden of proving my claims, all due to a signed counterfeit painting that in 2017 I informed Norb Novocin that I did not paint or sign this oil. WorthPoint never issued a statement of error nor an apology, thus this constitutes willful fraud.

Granting the Proposed Amendment Complaint would not be futile because the Second Amended Complaint ("SAC"), just like the First Amended Complaint ("FAC"), contains detailed factual allegations supporting each of Plaintiff's claims. Each claim has a correlating exhibit of evidence in support to verify the Plaintiff's claim. There will be no futility resulting in examining the Plaintiffs' new claims, as these claims arise from the Defendants' willful intent to misrepresent Plaintiff' integrity and to willfully intend to misrepresent, to the Plaintiff. evidence, conduct and practices that Defendants have admittedly engaged. Based on the simple, plain reading of the evidence, all will assists in facilitating Plaintiff's claims confirmed by truthful facts substantiated in and by evidence produced to the Defendants and by the Defendants.

# JURISDICTION AND VENUE

The Court has subject matter jurisdiction pursuant to Rule 15 of the Federal Rules of Civil Procedure. FRCV Rule 15 provides that " a party may amend its pleading [with] the court's leave" and that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). This Court has supplemental jurisdiction over the New York State law claims pursuant to 28 U.S.C. § 1367.

## Legal Standards of F.R.C.R Fraud 9 (b) To Amend Plaintiff's Complaint

Plaintiff's moves the Court to include fraud against each Defendant due to the constant, willful, conscious misbehavior with the knowledge that Defendants have purported false and misleading information to the Plaintiff, about the Plaintiff and in reference to the "1972 Original Oil Painting Ad Man With Red Umbrella", to the general public at large and at present, to the Court in the public filings of this case. All the Defendants, EAI and WorthPoint Corp. demonstrated by

concealment of evidence and by submitted false evidence that all parties exemplify an intent "to manipulate, deceive and/or defraud." the Plaintiff and the Court. The Southern District Court of New York, also known as the Second Circuit has held that Rule 9(b) requires fraud complaints to allege facts that lead to a "strong inference" that the defendant has the requisite state of mind.

Plaintiff's Motion for Leave for my Proposed Amended Complaint harkens back to the Court's Scienter, notation by Judge Abrams in her Order and Decision filed in Doc, 187 on 12/21/21 on page 19 of 26. Judge Abrams wrote ~ " *Trombetta also states that the use of her biography was unauthorized and that she contacted WorthPoint to inform the company of the "false posting" Id at 6. In other words, her biography was not "licensed by WorthPoint" as the webpage claimed. At this stage Trombetta's allegations with respect to the falsity of the CIM are sufficient to state a claim. They are sufficient to allege scienter as well.*" Prior to Judge Abrams December 21, 2021 conclusion, Judge Caves' March 19, 2020 Order and Decision, Doc. 40 on page 10 of 14 stated " *With respect to the scienter element of both the § 1202(a) and § 1202(b) claims, the "Second Circuit has stated that courts should be lenient in allowing scienter issues to survive motions to dismiss." Aaberg, 2018 WL 15803037, at \*9 (citing In re DDAVP Direct PurchaserAntitrust Litig., 585 F.3d 677, 693 (2d Cir. 2009))*" . ~ *Ms. Trombetta alleges that she contacted Mr. Novocin, Worthpoint.com employees, and Mr. Seippel on more than one occasion to complain about the misinformation in the internet posts about the Painting and request their removal. She alleges that, as to EAI, Mr. Novocin deliberately disregarded her requests and told her, "Go For It and Hire an Attorney," and as to Worthpoint.com, Mr. Seippel instructed that the posts be removed, but they were later reposted.*" The degree of the scienter element is typically and presumably determined throughout the Discovery process. Scienter can be proven by the presentation of evidence to show the perpetrator's state of mind, one of the key elements in F.R.C.P 9 (b) and must be plead with particularity**.** The evidence must typically show that the perpetrator acted knowingly, willfully, intentionally or in reckless disregard of the law. Plaintiff has detailed statements and facts below.

Pleading Rule 9(b) of the Federal Rules of Civil Procedure permits allegations of malice, intent, knowledge, and other conditions of the mind to be alleged "generally". To plead such

allegations sufficiently, one must offer sufficient facts to render the condition-of-the-mind allegation plausible. "In order to properly plead fraud with particularity, the complaint must allege the time, and content of the fraudulent representation such that a defendant can prepare an adequate response to the allegations." The Second Circuit standard goes beyond general statements when alleging intent. Plaintiff will meet this standard by "(1) alleging facts to show that Defendants had both motive and opportunity to commit fraud, or by (2) alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.

" *PetEdge, Inc. v. Garg*, 564088, at *9 (S.D.N.Y. Feb. 10, 2017).

The elements of fraud are as follows:

- **1** -A lie or falsehood is made.
- **2**- By the defendant with scienter, and the statement is false, or that there is no basis for believing that the information is factual.
- **3**- The defendant intends to cause the plaintiff to do or not do some particular act based upon their falsehood or lie.
- **4**- The plaintiff is justified in relying on the falsehoods or lies told by the defendant.
- **5**- Harm results from the plaintiff's reliance on the defendant's statements Causation loss is "the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff.

## STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

Please see attached Proposed Second Amended Complaint Court Application for the full Statement of facts that correlate to Second Defendant WorthPoint Corporation.

## Statutes of Limitation for Fraud in New York ~ Six Years GENERAL or Two Years From the Time of the Confirmed Fraud.

Under New York law, an action based upon fraud must be commenced within six years of the date the cause of action accrued, or within two years of the time, the Plaintiff discovered or could have discovered the fraud with reasonable diligence, whichever is greater. The cause of action accrues when "every element of the claim, including injury, can truthfully be alleged" "even though the injured party may be ignorant of the existence of the wrong or injury. Mere suspicion will not constitute a sufficient substitute" for knowledge of the fraud. Thus, while it is true that New York

courts will not grant a motion to dismiss a fraud claim where the plaintiff's knowledge is disputed,

courts will dismiss a fraud claim when the alleged facts establish that a duty of inquiry existed and

that an inquiry was not pursued.

Plaintiff will detail below the unending misrepresentation by WorthPoint Corp and eBay

spanning a period from August 2015 through to 2017. Plaintiff did not conclusively confirm in

Dec/Jan 2015 and 2016) that the eBay sale occurred . The eBay rep deemed it "Undefined" This

duly recording in **Plaintiff 's eBay. m4a Evidence 000328 (phone recording).** In 2017, Plaintiff

could not understand why the internet link that was supposed to be permanently removed by

WorthPoint, was under my name, again. On Jan. 4, 2017 I sent an email to WorthPoint Corp and

did not receive any response. I then reached out to EAI to try find out if EAI uploaded the 1972

eBay sale and posted it on the internet. On Jan. 10, 2017, Plaintiff called (302) 628- 9120, the

telephone number associated with EAI. I spoke with Marie Novocin to find out if they were the

sellers of the painting and if they had any information as to why their 2012 eBay sale was on the

internet. coming up under my name. I also asked if they knew who had the painting. Shortly after,

my phone call to Marie Novocin, Defendant , Norb Novocin phoned Plaintiff at my home number

on Jan. 10, 2017 at 7 ;10 **Plaintiff 's Norb Novocin m4a Evidence 000330 (phone recording)**.

This phone call affirms Plaintiff's questions and Mr. Novocin's affirmative responses that he was

indeed the seller of the painting. Mr. Novocin said he phoned me to tell me *" he has a wealth of*

*no knowledge"* pertaining to the computer data. etc. Plaintiff documented with the Court Mr.

Novociin quote to " Go For It and Hire an Attorney" professing that we did nothing wroing.

Months later exhibited in **EAI 000001 to Evidence EAI 000003** is Plaintiff's attorneys' letter dated

August 28, 2017 sent to Mr. & Mrs. Norbert and Marie Novocin Estate Auctions Inc. Upon a lack

of response from EAI Defendants Plaintiff filed this lawsuit within months of EAI ignoring the letter

sent by my attorney on Feb. 5, 2018 I filed a lawsuit against EAI and Norb and Marie Novocin.

in addition to Norb Novocin, Marie Novocin and Estate Auction Inc. and attorney Anderson Duff

clearly pointed out and wrote in an e-mail dated March 1, 2019 *" We now understand that at least one*

*third-party internet site scraped information about the December 1, 2012 eBay sale that contained the*

*mis-attribution naming Ms. Trombetta and reposted the same on its website at least twice. Because*

*Estate Auctions has no control over this third party, Ms. Trombetta had difficulty removing this*

*information from the website.* A settlement conference in the spring of 2019 before Judge Abrams was

unsuccessful with an offer of one hundred dollars, Upon Judge Abrams ruling, Plaintiff was permitted to

Amend my initial complaint to include WorthPoint Corporation. In April 2022, EAI produced evidence

in EAI000011 thru to EAI00019 which was a signature in red pencil which has a different spelling than

the Plaintiff. Additionally Plaintiff produced my signature and print on or around the year 1972. In

reviewing the initial Discovery responses from both Defendants Plaintiff Motion to file to include Fraud

on May 18, 2022 Plaintiff filed a Motion to Amend my Complaint to Include Fraud and request

Permanent Injunctive Relief in Doc.224. Judge Cave's Order denied without prejudice Plaintiff's Motion.

## PLAINTIFF'S PROPOSED AMENDED COMPLAINT
## TO INCLUDE FRAUD BY WORTHPOINT CORP.

The Plaintiff inclination to include Fraud 9 (b) harkens back to Document 29 filed on

December 3, 2019 Plaintiff brings to the Court's attention Page 2 and 3 of 16, in Plaintiff's

December 3, 2019 filing. **EXHIBIT #1** Doc. 29 page2 and **EXHIBIT # 2** and **EXHIBIT #3**

Doc. 33 filed on January 17, 2020 Page 14 - Relief #4 Identity Theft on a Public Platform. The

Identity Theft and The Assumption Deterrence Act as each separate law or claim applies to one or

both Defendants and is within the statues of limitations. The Photo of the signature"A. Trombetta"

that is not of the hand of the Plaintiff, had "copyrighted work licensed  by worthpoint.com.   It is a

fact that the Plaintiff never signs in oil just the first  letter of Plaintiff's   first name. This  constitutes
"Identity Theft" -**Definition:**

I·den·ti·ty theft  noun: **identity theft**; plural noun: **identity thefts**

1. the fraudulent acquisition and use of a person's private identifying information, usually for
   financial gain.
2. **Identity theft** and **identity fraud** are terms used to refer to all **types of crime** in which
   someone wrongfully obtains and uses another person's personal data in some way that
   involves **fraud** or deception, typically for economic gain.

1. 18 U.S. Code §1028. Fraud and related activity in connection with identification documents,

authentication features, and information (a) Whoever, in a circumstance described in subsection (c)

of this section  1) knowingly and without lawful authority produces an identification document, or a

false identification document;   (2)knowingly transfers   an identification document,

authentication feature, or a false identification document knowing that such document or feature was

stolen or produced without  lawful authority;

2.  Under the Identity Theft and Assumption Deterrence Act, it is a federal crime when a person

"knowingly transfers or uses,  without lawful authority, a means of identification of another person

with the intent to commit, or to aid or abet, any unlawful activity that constitutes a violation of

Federal law, or that constitutes a felony under any applicable State or local law."

    Plaintiffs  seeks a  Motion for Leave to  Propose  Plaintiff 's Amended  Complaint, to

streamline this action when the Plaintiff  pleads factual content that allows the court to draw

the reasonable  inference that  all the  Defendants  are liable for the consistent and willful

fraudulent  misconduct  alleged in this filing.  Granting  Plaintiff's Motion to  Amend  Plaintiff's

Complaint, allows the  Plaintiff to submit  new evidence verifying  the  fraudulent  offenses described

below,  while demonstrating   the justification for the Plaintiff's  need to warrant  legal action against

both Defendants. All Defendants, prior to litigation have willfully contributed to displaying and purporting on the internet, absurd ( 4 ft painting at age 9), facts altering information adversing effecting Plaintiff's income producing ability and reputation. and creating falsities to include 1) a photo of false signature misattributed to Plaintiff 2) misrepresentation of my biographical history 3) visual circulation on the internet of false copyright and licensing claims by WorthPoint Corp. 4) false, misleading claims and association of the Plaintiff's name and biography with EAI, eBay and WorthPoint Corporation and 5) a damaged 1972 painting too large to paint at age nine. The seven Counts of Fraud described below begin chronologically and end in the order of importance.

## 1) FRAUD ~ COUNT I ~ FIRST FALSE WRITTEN MISREPRESENTATION

The germination of this legal action against WorthPoint Corp. began in August 2015. At that time due to contradictory, willful denial from WorthPoint Corp, Plaintiff was consistently and verbally instructed to contact eBay , to find the buyer or seller in order for eBay, not WorthPoint Corp., to remove of the fake 1972 oil painting ad from the internet. Countless calls to WorthPoint's employee Ms. Brooks ended in her claim that WorthPoint does not have the seller information. Her direction was to *"contact eBay"* at all times. In a state of reliance, Plaintiff requested WorthPoint's employee , Ms. Brooks to state in writing that removal of the 1972 misattribution oil painting was eBays responsibility. Ms. Anita Brooks produced a written affirmation on Nov. 16, 2015 which is a true misrepresentation-BELOW . The surviving excerpt by Ms. Brooks below was extracted and emailed to eBay on Thu, Nov 26, 2015 at 10:07 AM. Ms. Brooks repeatedly stated in every phone call to pursue eBay. Ms. Brooks stated that eBay had the user and seller information for the1972 link on eBay's website EBay claimed the active link to eBay website on WorthPoint's website featuring the false 1972 oil painting ad with a signature A. Trombetta, was only on WorthPoint's website. Plaintiff ask the Court to note, since August 2015, when Plaintiff phoned eBay, I suggested to eBay looking up Estate Auctions Inc. 2012 eBay sales records, however eBay claimed they did not have old sales records from 2012.

**NOV 16, 2015** | 08:35AM EST
**Anita B.** replied:

Hello,
We do not buy or sell anything on the site. Rather, **we buy sales records** from various
auction houses and sites and compile them into a price guide to **help users determine the
value** of antiques and collectibles.
**If this particular item sold on EBay. I recommend trying to contact EBay, as they may
be able to provide you with the additional information you are seeking.**
**Kind Regards,**
**The WorthPoint Team**
**www.WorthPoint.com**
**(877) 481-5750**
**Regards,**
Customer Support Team
WorthPoint, Inc

When Plaintiff contacted eBays' reps, all saw when the eBay logo on WorthPoint 's website

was clicked, eBay's website appeared due to the link. All my efforts focused on removing the

false 1972 Oil Painting post, listed publicly on the internet. Plaintiff 's email to eBay with

WorthPoint's statement has been produced to both Defendants in Discovery in Plaintiff 's

Evidence 000016. The statement by Ms. Brooks below is a prime example of an element to claim

fraud in **#1** - *A lie or falsehood is made . and in the fraud element #2 The defendant intends to*

*cause the plaintiff to do or not do some particular act based upon their falsehood or lie.* From

Nov. 2016 to Jan. 2016 Plaintiff kept contacting eBay by phone after sending an email in Nov,.

2016. to remove the false post. EBay claimed the post was a spoof or a fake listing yet also

confirmed they could not remove it. Plaintiff lost s great deal of time. From November 2015 into

January 2016, Plaintiff saw more of WorthPoint webpage listings linked to the 1972 oil painting

such as Titanic Lithograph and Thomas Kincade were appearing as separate links on the internet.

listed under Plaintiff' s name and profession. This is in **Plaintiff's Evidence 000046** and has

been produce to both Defendants. The new posts were WorthPoint's website. As a consequence

of Ms. Brooks false information, Plaintiff called eBay numerous times. At one point Plaintiff

recorded a 40 minute phone conversation with four separate eBay employees, All eBay reps

went to WorthPoint's website to see the 1972 oil painting Man With Red Umbrella signed

Annamarie Trombetta webpage and clicked onto the eBay icon which brought them to eBay's

website. An Ebay's senior rep affirmed to me the 1972 oil painting eBay 2012 sale was

**UNDEFINED. In short the 2012 sale was not in eBay record in 2015.** The same senior eBay

rep affirmed eBay did not have the 1972 oil listing on eBay's website, it was on WorthPoint website and that EBay does not have the right to remove the 1972 webpage from WorthPoint's website. My intent to record the eBay phone call was to have proof for WorthPoint that the 1972 oil painting link was indeed on WorthPoint's website. The documented eBay phone recording. was produced by Plaintiff to all Defendants in April 2022 and bate stamped **Plaintiff evidence 000328**.

Following eBay's direction, in Jan. 2016, Plaintiff called WorthPoint and left messages. On Jan.22, 2016 Plaintiff spoke with Anita Brooks, sent emails to WorthPoint on the same day and WorthPoint did not respond. Plaintiff left more phone messages. Two weeks later on Feb. 1, 2016 I called again. I spoke with Ms. Brooks on the same subject and referenced the fact that I did not paint the 1972 oil painting advertised on worthPoint's website under my name on the internet. recorded in **Plaintiff evidence 000331**. I reference my call to her on Jan. 22, 2016 and informed her that no one from WorthPoint contacted me. Defendants and the WorthPoint staff knew of the false posting by my verbal and written communication. Their non response and conditions of the mind then, supports my present claim of fraud and contributes to the "condition of mind" allege the time, and content of the fraudulent representation. In Discovery, Plaintiff produced one recording with the two call to Anita Brooks on Jan. 22, 2016 and on Feb. 1, 2016 (two weeks later) to Defendants bate stamped by WorthPoint as **Plaintiff evidence 000331.** Plaintiff also produced the Jan. 22, 2016 emails I was instructed to send to WorthPoint by Ms. Brooks ' direction. In Discovery, I produced the Jan. 22nd emails in asPlaintiff's Evidence #000022 / Plaintiff's Evidence #000023.

I also produce it in Plaintiff's Deposition response 000351, 000352, 000362 and 000363 . From August 2015 to 2017,WorthPoint Corp. and their employee made many false verbal and the false written representation. This existing material facts is susceptible of being known to be false and misleading. This caused Plaintiff to lose time, diverted from my professional and personal life, to pursue eBay in order to remove the false 1972 that was coming up under my name. Defendants , WorthPoint Corp. and their employees did so either knowing the representation was false, or without knowing or caring if it was true or false. The email excerpt by Ms. Brooks in Nov. 2015 and her actions in Jan. 2016 is an example of defendants intent to cause the plaintiff to do or not

do some particular act based upon their falsehood or lie." by pursuing eBay. Duly document in the Jan,22 and Feb. 1 2016 is Ms. Brooks affirmation that eBay was WorthPoint's information source for the 1972 oil painting. /Defendant intended to induce the plaintiff to act in reliance on that representation. As a consequence, from August 2015 to Feb. 2016 Plaintiff went around in circles trying to discern the source and which website was responsible for the 1972 internet posting More important , which party do I request a permanent removal for this fake information, publicly listed under my name. As a consequence of the extended amount of time Plaintiff 's lost to remove the false 1972 internet posting, Plaintiff suffered a causal lost a sale of artwork valued at $8500 to a prominent art collector. Plaintiff inability to remove the false posting determined the buyer's decision not to complete the purchase.

## 2) FRAUD ~ COUNT II ~ SECOND FALSE WRITTEN MISREPRESENTATION

On Feb. 20, 2016 in a dated email response by Mr. Seippel to Plaintiff's first email, I encountered his ambiguous, contradictory statements such as " *__We unfortunately do not take the data from eBay you are asking for.__* *__I do not think that data actually exists anywhere at this point as we are the only persons that have saved this to my knowledge.__* Conversely and duly documented in Ms.Anita Brooks written statement above and also in phone on January 22, 2016 is her statement that eBay is WorthPoint source to of information. On Feb. 2, 2016, Mr. Watkins stated that the source of WorthPoint's information (and the 1972 oil painting) was from Terapeak. Mr. Seippel's Feb. 20, 2016 response email to Plaintiff states his company did *"NOT take the the data from eBay "*. On Feb. 20, 2016 Mr. Seippel never stated the source that gave his company the "1972 oil painting allegedly sold on eBay on Dec. 1, 2012 by EAI. The lack of confirmation or named source led to future problems for the Plaintiff. Mr. Seippel's Feb. 20, 2016 response email is a prime element of fraud in concert with his June 29, 2022 Declaration. This is Mr. Seippel's company Elemen # *3-The* defendant intended to cause the plaintiff to do or not do some particular act based upon their *falsehood or lie.* That act was to confuse or conceal the source of posted oil painting information Fraude Element #*4- The plaintiff is justified in relying on the falsehoods or lies told by the defendant.* Since Plaintiff did not create this painting nor have I ever done business with

WorthPoint, I was reliant on WorthPoint it's information they purported to permanently remove the false link from the internet. In Feb, 2016 Plaintiff, due to Mr. Seippel's written affirmation I did not contact EAI to validate if a painting existed or if the eBay sale in 2012 occurred. As aforementioned the eBay senior rep informed Plaintiff that the sale of the 1972 oil painting was "UNDEFINED". At that time my only care was to get the fake post off the internet. Defendants produced Mr. Seppel's Feb. 20, 2016 email response to Plaintiff RE 1972 Oil in WP00062 and Evidence. WP00096. Plaintiff produced Seppel's Feb. 20,2016 email in Plaintiff's Evidence #000034 and Plaintiff's Evidence #000039 and #040. The harm and causal loss to Plaintiff and that I suffered was due to Mr. Seippel's misrepresentation. I was left state of unanswered questions and a great loss of time taken away from earning a living and pursuing my artistic endeavors.

## 3) FRAUD ~ COUNT III ~ THIRD FALSE WRITTEN MISREPRESENTATION

Filed on June 29, 2020 in Doc. 61-1 is Mr.Seippel's Declaration, signed on June 24, 2020, Plaintiff produced this in Discovery , bate stamped as Plaintiff's Evidence #000214, #000215, #000216. - Written in Seippel's 6/24/20 Declaration . Mr. Seippel declared in his filed Declaration in Doc. 61-1 . He alleges in **No.** 5. " *In or around January 2016, I became aware that Plaintiff Annamarie Trombetta contacted WorthPoint regarding an auction listing to the Worthopedia that the alleged infringed her copyrights (hereinafter, the "Allegedly Infringing Auction Listing"). And. on or around February 4, 2016, I caused the Allegedly Infringing Auction Listing, which was displayed at http://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-4892417, to be permanently deleted from WorthPoint's website. Once delete, the Allegedly Infringing Auction Listing was never reposted to Worthopedia."* . Mr. Seippel failed to realize the Plaintiff's Feb. 20, 2016 email had three attachments. Plaintiff's three attachment are seen in WorthPoint's evidence

WP000074.   The Google print out attachment  is dated Feb. 17, 2016 . The same date of Feb. 17th

is listed  under the Marilyn Monroe WorthPoint link which was also linked to the 1972 oil painting.

is the written in statement  blue is "Last visited on Feb. 17, 2016.  Plaintiff's produced the Feb. 20,

2016  email  referencing the Feb.  2016 Google print out in  Plaintiff's evidence 00038.  The actual

Google print out with the  statement  *" You visited this page many times. Last visited  Feb. 17, 2016 "*

was produced to both  Defendants  in Plaintiff's evidence 00033, Plaintiff's evidence 000035B

000075A  and is in  Plaintiff's Deposition Evidence  000370  with an expanded view of the date in

000371. This Google  print out with the Feb. 17,  2016 date refutes  and contradicts' Mr. Seippel's

No. 5 Declaration statement, in which Mr. Seippel claims the false post was removed on Feb. 4,

2016. Plaintiff on Feb. 17, 2016 first visited the 1972 oil painting page and also visited the 1972 oil

webpage  site linked to the Marilyn Monroe 1988 WorthPoint webpage.  In  Mr. Seippel's

Declaration statement  # 6.   Seippel  wrote  *"On February 20, 2016 I received an  email from*

*Plaintiff Trombetta which  stated that a reference to the title of the Allegedly Infringing Auction*

*Listing remained visible when  she conducted a "google search for the painting  "1972 Original Oil*

*Painting Man with Red  Umbrella signed Annamarie Trombetta." Shortly thereafter, on  March 1,*

*2016 I responded t Plaintiff  Trombetta's February 20, 2016 email and informed he that  "we have*

*taken down any pages that you  have asked to have taken down as a courtesy to you" and*

*that any reference to the Allegedly  Infringing Auction Listing in her Google search reflected the*

*past"  and was the result "of that  search engine memory."* In  Plaintiff's Feb. 20, 2016 email was an

active link for the  the fake 1972 internet ad and  included this active, live link in my Feb. email.

Further in WorthPoint's evidence WP000134 there is proof that the false link was on the internet

in 2017.  On Jan. 4, 2017, Plaintiff sent an email to Will Seippel. Mr. Seippel failed to respond to me.

  http://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-4892417,

It is evident Seippel's 2020 Declaration contradicts the evidence produced by his own attorneys in WP00062 and Evidence. WP00096 which is Mr. Seippel's Feb. 20, 2016 response to Plaintiff first email to Mr. Seippel also dated Feb. 20, 2016 . Mr. Seippel's Declaration filed with the Court in Doc. 61-1 the three elements of fraud **1** -A lie or falsehood is made. **2-** By the defendant with scienter, and the statement is false, or that there is no basis for believing that the information is factual.**3-** The defendant intends to cause the plaintiff to do or not do some particular act based upon their falsehood and lies..Will Seippel's Declaration was filed in support of Seippel's Motion to Dismiss Plaintiff's claims.

This caused the Plaintiff to address and filing a response with the Court to confront (ie to do some particular act based upon their falsehood or lie.) and to maintain the claims in my case. As a consequence of Mr. Seippel's false misrepresentation os the facts, Plaintiff's efforts and time were diverted to file responses to Seippel false Declarion, in order to prevent the dismissal of my case. Plaintiff's evidence in this filing reveals Mr. Seppel's Declaration is not factually correct .

**4) FRAUD ~ COUNT IV ~ FOURTH FALSE WRITTEN MISREPRESENTATION**

Plaintiff's fourth claim of fraud and false written misrepresentation is regarding the visual copyright



symbol vector © along with WorthPoints' statement © Copyrighted work licensed by WorthPoint" that is depicted to the left.

In general the definition and use of a "C" with a circle around the letter, or use the word "copyright," by any party, indicates to all and is notice to the public that the work is copyrighted and that the party/parties using the © is/ are the owner of the work. This false use a copyright symbol with my name and biography harmed me and absconded my exclusive copyrights while concurrently and falsely associating me with eBay, WorthPoint and Estate Auctions Inc., companies selling low quality goods. In Discovery, I addressed my concerns.

Plaintiff begins with my <u>first</u> set of interrogatory questions WorthPoint's produced

responses on April 8, 2022 to illustrate my questions with Defendants answers.

<u>Plaintiff's Interrogatory #10.</u> Present and specifically identify what the WorthPoint Corporation's has copyrighted by the statement "Copyrighted work licensed by WorthPoint" with the copyright symbol vector © that was in added to the 1972 Original Oil Painting Man With Red Umbrella " that was misattributed to the Plaintiff Annamarie Trombetta. Ex. What in particular is being copyrighted by WorthPoint Corporation?

***WORTHPOINT"S RESPONSE:*** *WorthPoint objects to this Interrogatory on the grounds that it includes multiple requests under the guise of one. WorthPoint objects to this Interrogatory on the grounds that it incorrectly implies that WorthPoint misattributed the subject painting to plaintiff, which is expressly denied. WorthPoint furthermore objects to this request to the extent that it seeks a legal conclusion.* ***Moreover, WorthPoint is not sure what the Plaintiff is seeking in this interrogatory as use of a copyright symbol is not the act of copyrighting a work.***

On July 1, 2022 WorthPoint attorneys responded to Plaintiff 's <u>second</u> Requests and wrote the

following statement regarding the "© vector symbol and the phrase "Copyrighted work licensed

by WorthPoint" which clarified what the © copyright vector was intended to convey,-BELOW

*WorthPoint 's attorneys wrote on July 1, 2022 :*

*"you appear to be under the impression that WorthPoint is claiming copyright in the subject artwork, which Estate Auctions sold. WorthPoint is not claiming any copyright in the artwork or the listing. The notation "© Copyrighted work licensed by WorthPoint" means that it is somebody else's copyrighted work and that WorthPoint licensed the right to reproduce it. As you can see from the confidential licensing agreement produced to you, WorthPoint has a contract with eBay's authorized distributor to download and publish certain information about past eBay listings. The subject listing was one of such eBay sales results that were mass-downloaded and posted as per WorthPoint's licensing agreement. "© Copyrighted work licensed by WorthPoint" is automatically placed by the computers on all such downloaded licensed listings.*

Plaintiff is the "somebody else " whose copyrighted works were NOT authorized by to license.

For the record Plaintiff has never licensed my self authored biography at any time to another

party. WorthPoint's explanation and description does not justify the use of my name, the use

biography next to the Copyright symbol with WorthPoint's licensing claim.

The next issue Plaintiff brings to the Courts attention is the subject of the source of the eBay

sales information . As noted aforementioned, Plaintiff, on Feb. 3, 2016 spoke with Greg

Watkins, WorthPoint's official webmaster. Mr. Watkins stated that WorthPoint's "middleman"

for obtaining information was Terapeak. Moreover, on April 8, 2022 WorthPoint's attorneys

produced bate stamped evidence  titled WorthPoint Evidence  titled "Confidential- trombetta-**terapeak**- extract  as WP000038, WP000039, WP000040.  WorthPoint used the Terapeak name in their  Confidential documents  that contain Plaintiff's  full biographical text. WorthPoint  has no right to be labeled  my biography as Confidential. WorthPoint  has absconded my copyrighted information  without my CMI  and is using my full biography  as evidence in this case.   The EAI  ad  s on WorthPoint's website was duly noted by the Plaintiff  to the Court as being truncated mid sentence.  The ad and the bate stamped evidence using the name Terapeak differ in size and content from  actual content in the  ad that was  on WorthPoint website .  WorthPoint explanation is that they did not modify the text taken from  Terapeak . My attempt to clarify was who likened my biography met a generic reply. On July 1,  2022  WorthPoint's attorneys responded to Plaintiff's No. 5 Interrogatory  Plaintiff's Request No. 5  Submit name of the Terapeak department contact source for the "1972 Original Oil PaintingMan With Red Umbrella" that was bought by WorthPoint Corporation.

**RESPONSE: WorthPoint has no responsive information. Again, licensed listings are mass-downloaded and not individually licensed. WorthPoint does not have information as to which department at Terapeak, if any, was in charge of licensing any particular listing.**

On August 15, 2022 Plaintiff addressed the issue of  WorthPoint's licensing rights again .

Plaintiff's Interrogatory No. 6
What is the basis for WorthPoint Corporation's claim for licensing rights for mass downloading?

**WORTHPOINT'S ANSWER: WorthPoint objects to this request on the grounds that it exceeds the scope of a permissible Interrogatory under the Local Rules of the Southern District of New York. Subject to, and without waiving the foregoing objections, WorthPoint states that it licensed the right to republish certain eBay data from its licensing partner identified in WorthPoint's Production,WP000001-000035, which documents also set forth the terms under which WorthPoint may download and use the subject "eBay data".**

On Feb. 20, 2016  in a  dated email  response from Mr. Seippel  to Plaintiff's  Seippel said " _**We unfortunately do not take the data from eBay you are asking for.     I  do not think that  data actually exists anywhere  at  this point as we are the only persons that have saved this to my knowledge.**_     Plaintiff notes to the Court, my interrogatory did not mention  or ask about "eBay"

rather the Defendants set forth " the subject eBay data. WorthPoint's attorneys' response in 2022

contradicts Mr. Seippel CEO and owner of WorthPoint, statement in 2016.


Plaintiff's Interrogatory regarding WorthPoint's licensing agreement on August 15, 2022 was
attempted once again in the following question.

Plaintiff's Request No. 6:
Produce all documents of or relating to the " 1972 Original Oil Painting Man With Red
Umbrella that were mass downloaded per WorthPoint's licensing agreement.

**RESPONSE: WorthPoint objects to the characterizations employed by this to the extent that it
implies that a single listing may be mass-downloaded.   Subject to and without waiving the
foregoing objections, WorthPoint refers plaintiff to its document production, Bates Stamps**

**WP000038-WP000040. WorthPoint is not in possession of any further responsive documents.**

 Once again,    WorthPoint's WP000038-WP000040  response refers to Plaintiff's complete text

of my biography that WorthPoint unethically  obtained and are now using as  Confidential

evidenced deemed to be WorthPoints.  The emotional harm and stress that is inflicted by

Defendants continued attempts to dominant and gain possession of my self authored  copyrighted

biography is yet another violation and infringement.   WorthPoint's responses  are based in

WorhtPoint's falsehood and assumptions that are not legally valid and are  devoid of copyright

laws and licensing standards in legitimate  agreements .  WorthPoints claims are undefined  for

their own personal gain and conceal their infringements against valid copyright owners.

In Plaintiff'sEvidence 000406  is a Declaration by Will Seippel in another case  filed 03/02/15 Page 3

of 4 Page ID #:74 for Case 2:15-cv-00112-MWF-E Document 21-1.  In March 2015 Will Seippel

claims to have a contractual agreement with Terapeak  which is the company named in 2016 by

the WorthPoint Webmaster Greg Watkins.  Plaintifff, during Discovery was in pursuit a the Terapeak

licensing agreement . Plaintiff was reliant on the information of the WorthPoint employee Greg

Watkins and the legally documented WorthPoint Terapeak agreement duly documented in the

Declaration of Will Seippel in 2015.  Allegedly the eBay sale took place in 2012 and I spoke

with Mr.Watkins and asked who was the "source" or middleman for the 1972 oil ad in 2016.

Below is an excerpt from  Plaintiff'sEvidence 000406  is 2015  Declaration by Will Seippel

*7. Much of the data in the Worthopedia was obtained pursuant to a contractual agreement between WorthPoint and the Canadian Company Terapeak, line. ("Terapeak"). WorthPoint's contract with Terapeak was not executed in California and does not rely on California law.*

2- The explanations above by WorthPoint Defendants have no no basis in reality and in believing that the WorthPoint's information is factual. The attorneys keep referencing my copyrighted work as their bate stamped confidential evidence. This exemplifies into the another element of fraud . WorthPoint 's false presentation of Plaintiff infers that I authorized use to them which is not true particularly since I did not create oil painting sales records . Nothing is authentic and exemplifies WorthPoint 's falsehood claims with the intent to cause harm. Both Defendants have absconded my rights and diminished the value of my copyrighted work, unethically used. I owned the copyright and my biography should be only viewed on my personal website or to those I gave written permission. The adherence of a copyright symbol falsely implies WorthPoint has the copyright to use my biography which is a false misrepresentation. This willful and caviler intent to take over other peoples' rights by circulating a false copyright management information "liberally by general false claims is a prime reason why Plaintiff is requesting Permanent Injunctive Relief.

## 5) FRAUD ~ COUNT V ~ TANGIBLE CONVERSION (BIOGRAPHY IN CATOLOG) TAKING AND MISAPPROPRIATION PLAINTIFF BIOGRAPHY

**A)** A party has a cause of action for conversion when (1) the plaintiff has an exclusive right of possession, (2) into which the defendant, (3) intentionally, (4) interferes with that right. In general, conversion fraud deals with tangible goods. The Plaintiff 's claim for tangible conversion fraud is founded on my exclusive right of possession to my original, self authored biography. It is is a "literary work" written in prose, is an individual artistic expression and exists in a tangible form as my self published catalog . My self authored biography is also "fixed " and exists in a digital form on my professional and personal website. A fraud conversion claim is applicable to

intellectual property rights if it is merged in the physical form and in this instance it is. My infringed biography exists in two personal tangible forms. Violations occur when a person without authority or permission intentionally takes the personal property of another or deprives the Plaintiff of the possession of my exclusive rights to my self authored biography in my personal catalog. Plaintiff produced to both Defendants in Plaintiff's Evidence 000086 to 000107 my catalog that has my same personal biography that was infringed by Defendants. WorthPoint Evidence titled "Confidential-trombetta-terapeak-extract WP000038, WP000039, WP000040 contain the statement *"All of the imagery in this catalog was either created en plein air or from the subject directly.".* My statement referencing my catalog is in every version to include the Defendants EAI and WorthPoint's and their Confidential evidence. using my biography Both Defendants included and reference my catalog in the false ad for the 1972 oil painting and both Defendant s partook in the improper and unauthorized relocation of personal property.

**B)** There are two "improper" connotations and uses by the Defendants regarding my biography. First and foremost, I did not paint the 1972 Original Oil Man With Red Umbrella nor did I sign the painting. This is a proven fact. Plaintiff produced my childhood signature . It is in Plaintiff's evidence 000260, 000316 also in script and print number 000495. The EAI signature in red produce in Discovery by EAI, in April 2022 , misspells Plaintiff's first name and adds a space between ANNA and MARIA. The use of my personal self authored biography is "Improper" as it is wrongfully applied , I am not the artist who created. the 1972 oil. This conversion as aforementioned is unauthorized in every way. The EAI use of Plaintiff's biography was for commercial and selling purposes for a damaged 1972 oil painting. In like fashion, WorthPoint's website's chief purpose is to report the " commercial sales records" of items sold on eBay. WorthPoint has a membership charge in order to view the sales price. It is not free to see the selling price. Both Defendants have used my biography for commercial gain, ergo it is not fair use, rather both Defendants perceive my name and biography as "fair game and falsely claim " fair use . Plaintiff's l self expression in my biography is original was never authorized to be used by

Defendants as such . As a consequence of the unauthorized use of Plaintiff 's biography  by both Defendants,   WorthPoint  Corp. in particular,  lost a sale of artwork to a prominent collector who most likely would donate her collection to a public museum. The financial and professional   adverse effect that the infringement had on  Plaintiff  ( copyright owner) ability  to earn income resulted in sustained inequitable financial  and professional losses.

**C)**      To make a claim for conversion, a plaintiff must show "(1) the appropriation of another's property to  one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights." (internal citation and quotation omitted) .  Defendants have produced as "Confidential "  WorthPoint evidence as WP00038,  WP00039  and WP00040 which contains the Plaintiff's   complete biography as it is in my catalog  and on my website.   Defendants titled this document  "Confidential-trombetta-terapeak-extract.   Plaintiff brings  to the Court attention the reason why I  was  requesting   the WorthPoint  Defendants  to produce the "Terapeak " licensing  agreement for two reasons.   First Defendants' evidence labeled my biography as Terapeak extract.  Second, on or around Feb. 3,  2016 Greg Watkins is duly recorded as stating that  eBay gives date to s  the middleman "Terapeak"   or source for WorthPoint's information.   Plaintiff  throughout this  seven  year ordeal has heard  multiple answers to the very simple questions. In some cases there are multiple responses to one   question or request. th "habit" or "technique"  of multiple , differing answers is now collectively presented to the Court in each count of Plaintiff's claims for  fraud .

**D)**      Defendants and their attorneys  present yet another contradiction to the Court  regarding the Plaintiff's biography and it's length.  Despite the visual documentation  within the  WorthPoint webpage  for the 1972 oil painting  that reveals the last sentence was cut off and ends in  four numerous dots,  both Defendants  are now claiming  that Plaintiff's biography was fully used in the original ad. For the sake of brevity, I will leave this claim to the Defendants to explain in detail.   On the WorthPoint  website webpage duly documented   and in all of the Plaintiff's  emails to Will Seippel and Greg Watkins,  the last visible sentence  of my biography on the WorhtPoint website  for the 1972  damaged  oil painting  webpage ad   was   "***Viewing so many different cities and cultures in a concentrated period of  time ….***    The second half of my sentence was truncated and  which is

*helped me to see the similarities as well as the differences of each quite clearly"*. The rest of my biography was not visible. Plaintiff notes to the Court that WorthPoint's Confidential "Terapeak Extract" contains my entire biography. The last ending biographical sentence in WorthPoint's evidence and also now deemed WorthPoint's" Confidential" evidence is

~ *" These individuals include Everett Raymond Kinstler, Raymond Steiner, Harvey Dinnerstein, Burton Silverman, the artist's in The Painting Group particularly Aaron Shikler, David Levine, Danny Schwartz, IreneHecht. I thank them for their help and guidance in my life. <br>* ~

On my website 's biography page. this last sentence has my copyright statement **"*All work on this site are ©Annamarie Trombetta. All rights reserved"*.** WorthPoint' self designated labeling of my copyrighted property should not be considered " the confidentiality designation 'Confidential' that is proprietary to WorthPoint. " WorthPoint's documents are devoid of any indication of any designated legitimate source. WorthPoint took the very first to the very last word of my copyrighted biography on my website and left out my statement "All work on this site are©Annamarie Trombetta. All rights reserved." which is my CMI. The content of WorthPoint's falsified Discovery documents is in fact the text of the Plaintiff 's copyrighted biography and therefore, it is the Plaintiff's copyrighted property. WorthPoint's alleged evidence that is deemed "Confidential" contains 1354 words from the Plaintiff's full biography. To prove conversion that claim out, a plaintiff must allege: "**(1)** the property subject to conversion is a specific identifiable thing; Plaintiff gives a personal, detailed description of my life experiences, from childhood ( Regina Pacis Church) to my formal training in high school at the Brooklyn Museum and ending with the names of my personal esteemed colleagues in the art world. **(2)** plaintiff had ownership, possession or control over the property before its conversion; and Plaintiff's catalog and website were printed created in 2003. The EAI ad for the damaged 1972 oil painting (albeit incorrect) was allegedly sold in 2012, which was nine years after my website biography and catalog were created. **(3)** defendant exercised an unauthorized dominion over the [property], to the alteration of its condition or to the exclusion of the plaintiff's rights." Moses v. Martin, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004) (citation and internal quotation marks omitted). The "conversion " and addition of the EAI introduction and the

description that precede the Plaintiff true biography of the damaged 1972 oil painting (albeit incorrect) is roughly 230 words was allegedly created to sell a painting in the year 2012. Plaintiff's biography on WorthPoint's website was roughly 420 words. The word count for my entire biography is roughly 1360 words. Moreover, WorthPoint Corp website and webpage added a copyright vector " ©Copyrighted work licensed by WorthPoint" which had the WorthPoint logo. The copyright vector and statement infers that WorthPoint and Plaintiff have a business agreement which misrepresents the Plaintiff and is a is false association. It is precisely this unauthorized and incorrect conversion that constitutes fraud.

## 6) *COUNT VI FRAUD ~ CONTRADICTORY WRITTEN DISCOVERY RESPONSES MISREPRESENTATIONS TO PLAINTIFF CONSTITUTING FRAUDULENT CONDUCT*

Throughout this case Plaintiff has repeatedly requested WorthPoint's attorneys to produce simple requests in writing or in documented evidence. On many occasions WorthtPoint's attorneys set forth "Boiler Plate" responses to Plaintiff's legitimate questions. One subject in particular pertains to the the date, year and essentially the time frame indicating when WorthPoint "ingested " as Ms. Farmer wrote, the internet posting on WorthPoint's website for the "1972 Original Oil Painting Man With Red Umbrella eBay sale by EAI.

Plaintiff requests throughout the Discovery period began in Feb.2022. I set forth my dated Interrogatories and Production of Doc. requests before the Court. My request for the day, month and year for the false link and when it was added to Defendants website has been consistent. The significance to the length of time Defendant's circulated " false" copyright management information with my name is relevant to the extent of liability and is contingent upon the length of time that the false post was on the WorthPoint website. Knowing the date when it was posted may potential increases Plaintiff's damages pertaining to the circulation of false information and false copyright information. Below are Plaintiff's direct requests for the time, month year, when the 1972 listing was posted on WorthPoint;s webste to Defendants' attorney.

PLAINTIFF"S FIRST RESPONSES FROM DEFENDANTS **ON APRIL 8, 2022 FOR** DATE OF 1972 OIL PAINTING POST ING ON WORTHPOINT"S WEBSITE

On **April 8, 2022**  Plaintiff'  first set of Interrogatory requested  the times months, and years :

Plaintiff's Interrogatory 4. List and describe WorthPoint Corporation's historical meta data from 2011 to  2018 to include the times, months and years when the WorthPoint ad for the "1972 Original Oil Painting Man With Red Umbrella " was added to the www. worthpoint.com website and internet. Include the dates and written proof ,meta data-for the ad.

***WORTHPOINT'S RESPONSE:*** *WorthPoint objects to this Interrogatory on the grounds that it is vague, ambiguous and incomprehensible in its entirety. WorthPoint objects to this request on the grounds that it is,i n part, a request for production and not an Interrogatory. WorthPoint objects to this Interrogatory on the grounds that it incorrectly implies that the subject listing was an advertisement as opposed to a record of a past sale.* ***Subject to and without waiving the foregoing objections, WorthPoint is not in possession of any information as to any metadata related to the subject listing.***

Also on  **April 8, 2022**  which is the first set of Interrogatory in Plaintiff' requested

Plaintiff's Interrogatory # 5. Identify, list and provide proof in writing detailing the month , year andlength / DURATION of time that WorthPoint Corporation listed the misattributed "1972 Original Oil Painting Man With Red Umbrella " Oil Painting .

***WORTHPOINT"S RESPONSE:*** *WorthPoint objects to this request on the grounds that it is, in part, a request for production and not an Interrogatory. WorthPoint objects to this Interrogatory on the grounds that it incorrectly implies that WorthPoint misattributed the subject painting to plaintiff, which is expressly denied. Subject to and without waiving the foregoing objections, at present* ***WorthPoint cannot respond with certainty as to the date the subject listing was posted to WorthPoint'swebsite.*** *It was removed on February 4, 2016.*

PLAINTIFF"S  SECOND  RESPONSES FROM DEFENDANTS  ON **JULY 1, 2022**  FOR DATE OF 1972 OIL PAINTING POSTING   ON  WORTHPOINT'S WEBSITE

On **July 1, 2022**  Plaintiff's  second set of Request for Production was

Plaintiff's Request No. 1:
Produce and/or Identify in writing the month and year when the "1972 Original Oil Painting Man With Red Umbrella WorthPoint Ad " was uploaded to the internet.

***WORHTPOINT' S RESPONSE:*** *WorthPoint is not in possession of any responsive documents or information.*

On **August 15, 2022**  Plaintiff  received Defendants Response to my Production of Documents

Plaintiff's Request No. 1:
Produce and/or Identify in writing the month and year when the "1972 Original Oil Painting Man With Red Umbrella WorthPoint Ad " was uploaded to the WorthPoint website. If you claim that part of any response is privileged or otherwise immune from discovery; (a) identify the grounds for your claim of privilege or immunity (b) identify the privileged

documents or Photographs (c) provide all information which responds to this request and does not fall within your claim of privilege or other immunity.

**_WORHTPOINT'S RESPONSE:_     _WorthPoint is_ not _in possession of any responsive documents or information._**

Plaintiff  brings to the Courts attention  this subject of the date and year when WorthPoint posted  the 1972 Original Oil Painting  on  WorthPoint's website with relative reason. On August 23, 2022 in Doc. 267 Jana Farmer filed a letter with the Court. On Page 1 in bold type is written

" **_No information as to how long the  listing was_ "on the Internet":**  _Ms. Farmer wrote  " Plaintiff also noted that defendants did not state how long information about the sale of the subject painting was on the Internet. WorthPoint responded that it does not control the Internet, and WorthPoint does not know what other parties may have posted on their websites. Thus, WorthPoint could only respond approximately when the subject data about the eBay listing was ingested into WorthPoint's systems and when it was removed."_

I note to the Court, Plaintiff  responded to Ms. Farmer's letter to the Court  and   filed letters addressing the dates   in Doc. 270 filed on August 25, 2022 and in Doc.274 filed on August 29, 2022 and documented my  request for this date. It  has been met with the  same response by WorthPoint's attorneys  once again claim :

_"WorthPoint is not in possession of any responsive documents  or information._

First I  remind the  Court that WorthPoint's attorneys consist of  three   separate people, Adam Bialek. Jana Farmer and Nicole Haimson.   The date that  Plaintiff  sought and the responses were given by all three of  WorthPoint's attorneys. I regret to inform the Court that  upon viewing evidence there is a definite designated  date for WorthPoint  posted the 1972 oil painting ad.    Plaintiff  sets forth the  day, month  and year to be  March 5, 2013,  as the  time when  the 1972  Original Oil Painting Man With Red Umbrella was posted on WorthPoint's website.

If  WorthPoint had just one attorney, and the one attorney overlooked this date, one might surmise this was a simple mistake. To reiterate, I asked the same question at three different times and all of three of WorthPoint's attorneys denied knowing the exact date when the 1972 listing was posted to WorthPoint's website.  Plaintiff  now adds a  willful denial, omission and or a  knowledge of  a falsity in which  caused the Plaintiff  is reliant upon  the Defendants for pertinent information that effects the degree of  damages in my  case.  The request of  this significant   information has

been a  constant by  the Plaintiff. The absence of a non defining period of time  minimizes the liability for the infringement  caused by the Defendants. Collectively, with the  other counts of fraud preceding this  finding, Plaintiff is inclined to  infer  negligence, recklessness  conduct that is also unprofessional and unethical.  Plaintiff  feels at this point,  any alleged evidence  produced by the Defendants is suspect to be   questioned.   To deny not knowing  the date after a letter was filed with the Court on this subject, is a direct  false accusation by WorthPoints attorneys that jeopardized the integrity and  character of the Plaintiff in the eyes of the Court and in the public filings.  Aside from this Plaintiff was forced to respond and find the time to write letters to the Court to assuage the Defendants accusations against the Plaintiff.  Given the numerous times I have requested  the day-month year  WorthPoint;s website  posted the 1972 oil painting eBay sale,  I  assert that Defendants  either willfully concealed this information or were negligent in viewing this information. Each plausibility, has harmed the Plaintiff .  I will leave it for the Court to judge this misrepresentation.    Plaintiff' was reliant upon the Defendant  _not_ to receive such direct and misleading  contradictory responses.   To date the multiplicity of contradictory responses  by both Defendants contributes  to  Plaintiff's  emotional and physical  distress that has delayed filing my Proposed Amended Complaint.  I have been suffering profusely from emotional distress   since I was abruptly and improperly served an additional summons and complaint on August 30, 2022  from WorthPoint; a complaint riddled with incorrect statements and filed in a state I have never entered.

## 7)  *COUNT  VII  FRAUD  ~  WORTHPOINT'S  FRAUDULENT CONDUCT   BY OMISSION  OF 2017  EMAIL  RESPONSE FROM  WILL SEIPPEL OR  JASON PACKER*

The next issue Plaintiff presents to the Court has to do with WorthPoint's omission of a response to Plaintiff's  Jan. 4, 2017  mail sent to  Will Seippel  to inform him  the false 1972 internet link was on the internet again ( Defendnats'  Evidence  WP000132 WP000133) .   Despite my email outreach to Will Seippel  on Jan. 4, 2017 regarding the reposting of the 1972 Original Oil Painting,  Plaintiff never received  any response from anyone at WorthPoint  Corp.  In April 2022, WorthPoint's attorneys  produced Plaintiff's  Jan. 4, 2017 email.  I saw  written

communication between Will Seippel and Jason Packer on Jan. 4 and 5 2017, confirming the internet post for the 1972 oil painting yet no one responded to my email in 2017. On Defendants' evidence in WP000134 there is verified proof of Plaintiff's claim that the 1972 Oil Painting internet post was reposed and seen publicly on the internet. The failure by Will Seippel and WorthPoint Corp. to contact or respond to the Plaintiff and failure of r, to permanently remove the reported false 1972 Oil Painting has contributed to my assertions that Mr. Seippel did not respond. He did not inform me there was a technical problem or that WortthPoint was working on this issue. The willful silence by WorthPoint was alarming. Plaintiff reminds the Court of Mr. Seippel Declaration in Doc. 61-1 filed on June 29, 2020, Seippel alleges in **No.** 5. " *In or around January 2016, I became aware that Plaintiff Annamarie Trombetta contacted WorthPoint regarding an auction listing to the Worthopedia that the alleged infringed her copyrights (hereinafter, the "Allegedly Infringing Auction Listing"). And. on or around February 4, 2016, I caused the Allegedly Infringing Auction Listing, which was displayed at*

*http://www.worthpoint.com/worthopedia/1972-original-oil-painting-man-red-4892417, to be*

***permanently deleted from WorthPoint's website. Once delete, the Allegedly Infringing Auction Listing was never reposted to Worthopedia."*** . WorthPoint's evidence in WP000134 affirm that Mr. Seippel Declaraion claim that WorthPoint "PERMANENTLY DELETED" false 1972 oil painting post is indeed yer another false misrepresentation to the Court and the Plaintiff.

It is now evident that in 2017, the lack of an email response by WorthPoint, was willful and deliberately done to avoid or conceal the fact that WorthPoint looked up and knew the 1972 Oil Painting link was on the internet again. WorthPoint never admitted to any mistakes or issued any apology at any time. If this was done, Plaintiff would not assert willful concealments and omission . It is in litigation and in reading the Discovery that Plaintiff saw the Jan. 4 and 5th 2017 communication between Mr. Seippel and Mr. Packer. As a result Plaintiff has endured a

plethora of problems.  I  suffered personal, emotional,  professional and  financial  losses  beyond

Plaintiff ends the subject of  Fraud and Misrepresentation  by noting to the Court that all of the

Defendants evidence is has been  deficient  or missing a significant component that  prohibit the

Defendants evidence from being verified. Evidence such as the Jan. 4th and Jan. 5, 2017 email

between Will Seippel and Jason Packer was not known to the Plaintiff until it was produced in

2022.  Additionally, the denial by all three of WorthPoints' trio team of attorneys regarding the

day, month and year posting of the false link on WorthPoint's website was indeed brought to

their attention and that of the Court numerous time.  All Plaintiff's inquires did not prompt any of

the attorneys to review any evidence to find  the  day, month  and year to be  March 5, 2013,

when  the 1972   Oil Painting Man With Red Umbrella was posted on WorthPoint's website.

## A.  FIVE   ELEMENTS  OF  FRAUD RELATED TO WORHTPOINT CORP .

**1. Misrepresentation**—   WorthPoint's false references to the Plaintiff as the artist of the 1972 oil painting—ie fraudulent  copyright management information (CMI) on the WorthPoint website,  This is  one of the root causes of this lawsuit. To  remove the fake ad, Plaintiff  followed  the instructions from  Defendants staff to report and remove fraudulent content from the WorthPoint website and the internet to no avail.  WorthPoint deceived the Plaintiff  into believing that the WorthPoint  website technical support services and their staff  would assist in  immediately and permanently removing the fraudulent listing from the internet which was  repeatedly requested  by Plaintiff.  WorthPoint's present  inability to produce their  own records, receipts and computer data that the Plaintiff submitted is proof that their information and directions misrepresented  to the Plaintiff ways to permanently  remove  the  fraudulent  1972 oil painting links.  WorthPoints' denial of the date, month and year when WorthPoint's website posted the ad for the 1972 eBay sale is a direct false misrepresentation to the Plaintiff who is reliant upon Defenadants  for said information

**2)  Knowledge of the material falsity -** Since August  2015 Plaintiff has consistently pursued both Defendants, particularly WorthPoint by reporting and requesting to remove the fraudulent internet listing  of  1972 oil painting and  to find out and confirm  who was the eBay seller. Defendants admit they  never had  photos of the painting.  As a registered DMCA agents, WorthPoint is responsible for adding and removing the CMI to any content.  The use of the  WPC logos and using the copyright vector  with the term *" copyrighted work licensed by WorthPoint"* without any photos or verified proof  to the artist signature   is an example of  willful recklessness misrepresentation.  Registered DMCA agent are required to know the rules for copyright and licensing claims and to immediately cease and desist and remove reported false infringements. Plaintiff's continually contacted WorthPoint from August till Nov. 2015.  On Jan. 22, 2016 I directly informed Ms. Brooks and followed her instructions and sent emails by WorthPoint's website.No one contacted me despite leaving phone messages and emails .On Feb 1, a direct phone call led to the start of the removal which still took weeks.  Removing items from a website should not produce complications, waste so much time or surface on the internet after if the

item was properly removed.  Defendants within this lawsuit are implementing a delay and deny tactic, same as  that experienced by the Plaintiff back in 2015 to 2017. WorthPoint's failure of to produce their own take down tickets and emails  dated on and after Jan. 22, 2016 that I sent using their website address reveals a pattern to conceal the material evidence and the falsity of WorthPoint's  knowledge that WorthPoint removed  Plaintiff's false listing on Feb. 4, 2016.

3)  **Inducing the other party to rely upon it.** In  2015 and 2016, the defendants misrepresented  and  misdirecting  Plaintiff to 1) contact eBay 2) submit removal/ take down tickets and emails  to WorthPoint website3) speak withWebmaster GregWatkins who  then informed Plaintiff to email to CEO Will  Seippel.  Plaintiff never  failed to investigate the truth of the defendant's statements.  Plaintiff was reliant upon the  website webmaster/IT tech  and  staff at WorthPoint to inform Plaintiff  that WorthPoint would  removed the fake ad.  Plaintiff  followed through on written and verbal agreements consistently to no avail.  Plaintiff was reliant  upon the Defendants documented communication via the WPC website. Plaintiff is still reliant on WorthPoint to set forth known evidence that should be in WPC possession.  The Defendants absence of evidence  and verified proof constitutes an  intentional and willful  motive to deceive.

4)  **Justifiable reliance of the other party**  The Defendants long term failure to permanently remove the fraudulent 1972 ad and links from the internet  determined  the course of Plaintiff's actions in commencing  this lawsuit.  The Defendants as DMCA registrants to the US Copyright Office are responsible to uphold the DMCA rules.  Defendant Will Seippel Declaration  willfully intended  to declare fraudulent statements and claim  the removal date for the false infringements as Feb. 4, 2016. The Court is reliant upon the Declaration by Will Seippel to determine this case. Defendants documented distortion of Plaintiff's CMI created confusion and  duly circulated on the internet for almost 2 years false information. Plaintiff reliant upon WorthPoint to remove false CMI that WorthPoint created.

5)  **Injuries  and Damages.**  The Defendants False CMI clam under a  signature A. Trombetta  is  a significant causation for this  lawsuit.  The causation of  Plaintiff's losses are  numerous. In  2015, at a time of great expansion and artistic  opportunities , commissions, articles and sales— and fully immersed in advancing my career, Plaintiff was forced to deal with a destructive and fake internet  post.  In 2015,  Plaintiff  lost the sale of an $8500 oil painting, the opportunity for  gallery representation due to the false posting and association with eBay,  Estate  Auctions 's 99 cents auctions and WorthPoint  Corporation.   Plaintiff has lost seven  years of her life to fight  false claims which  are  still ongoing.   Plaintiff is requesting  Permanent Injunctive  Relief to prohibit the Defendants from  using  the Plaintiff's name and exhibits filed and submitted  for the  purposes of this  lawsuit or any other images or  texts that are circulating on the internet .The  Plaintiff's causation of loss generated by this  litigation , repeats the same  harmful patterns and makes the Plaintiff  a consistent  victim  to the  Defendants' fraudulent  claims  in order to satisfy the Defendants  deceptive fraudulent assertions.  The loss my time, and all and any related  of sales of artwork, the loss of my professional credibility and the time dedicated to this lawsuit is beyond profession and emotional  measure and beyond  rehabilitation.

# Elements of Intentional Infliction of Emotional Distress

The tort of intentional infliction of emotional distress has four elements: (1) the defendant must act intentionally or recklessly; (2) the defendant's conduct must be extreme and outrageous; and (3) the conduct must be the cause (4) of severe emotional distress.

On August 30, 2022 served the Plaintiff WorthPoint Owner and CEO, Will Seippel

with a Summons and Complaint for Intentional Infliction of Emotional Distrss. The way in which I was served was not in a typical way. Below is a summary of the servers actions and abrupt way that

I was served a summons and complaint from another state that has no persona jurisdiction.

1)On Tuesday, August 30, 2022, on or around 9 :00 a.m. I, was scheduled to be deposed as a party witness in a deposition called for by defendant WorthPoint Corporation and conducted by the attorneys at Wilson, Elser, and Moskowitz, the law firm representing WorthPoint Corporation in the above identified litigation. The deposition took place at Wilson, Elser offices, located at 150 East 42nd street in NewYork, New York 10017. The deposition was nine hours long.

2)Prior to leaving the lobby at Wilson, Elser, Moskowitz at 150 East 42nd street New York, I reached into my satchel strapped across my shoulder, unzipping the front compartment to obtain my transit metro card. At that time I was about to leave the lobby and began to walk outdoors. While speaking on the phone, I walked outside along Third avenue and 42nd street to proceed home. I had one hand on my cell phone while speaking and had my metro card in the other hand.

3)As I reached the corner of 42nd street, the traffic light turned red which prohibited me and amass of people from crossing the street. While still speaking on the cell phone with one hand and holding my metro card in the other, I suddenly felt someone tugging at my satchel that was strapped across my shoulder. That sudden movement startled me and I became immediately frightened of being the victim of a pickpocket. I turned around and saw no one in the crowd yet saw pages of papers on the pavement. My thought was these came from the opened compartment of my satchel and picked them up, believing they were papers I had prepared from my nine hour deposition and stuffed them back into the unzipped compartment of my satchel. I was quite shaken by this encounter.

4)Moments later I inspected the papers and realized they were not from my satchel. Someone had dropped these papers near me on the sidewalk or even tried to put them on or in my satchel and the papers fell to the ground. This was perhaps a way to get me to pick up these papers.

5)Upon full inspection at home, I saw that the papers were a complaint of a law suit filed against me in Georgia by WorthPoint Corporation, the party in my New York federal copyright litigation. In addition, it named the owners of WorthPoint Corporation, Will and Shari Seippel whom I have never spoken to or met at any time. I did not see a date of entry or a signature on the bottom of the summons yet know that the absence of a date of entry for service is crucial to the timed response

6) I waited two week to see if a mailing of the summons and complaint from Plaintiffs, Will and Shari Seippel or WorthPoint Corporation would arrive at my home address at 175 East 96th Street (12 R) New York, New York. To date, I heard nothing from anyone in Georgia nor did I receive any mail by regular or certified mail that would be a copy of the summons and complaint from Will and Shari Seippel or WorthPoint Corporation.

7)Concerned of what would happen if the Georgia legal matter would proceed in this matter in which I believed I was completely improperly served, I contacted the Fulton County Superior Court in order to find out if an entry of an affidavit of service was ever filed. One source in particular called me back. Upon hearing that I was improperly served as a courtesy the employee in the civil rights unit at the Fulton County Superior Court, Mr. E Brian Watkins, emailed me the Affidavit of Service Index No, 2022CV 366175. See attached here to

8)When I perused the Affidavit of Service, I read what the process server had documented
on Tuesday August 30, 2022 at 7:45. The process server stated: "I asked the DEFENDANT whether
he/she was in the military service of the United States Government, or of theState of New York. and
received a negative reply". I was shocked to read that, because of course at notime had anybody ever
spoken to me on August 30, 2022 at 7:45 or before or any time after. The process server also wrote: "
Upon information and belief based upon the conversation and observation as aforementioned that the
DEFENDANT is not in the military. This cleary was not true. I was conversing with a friend of mine
on my cell [phone call began at 7:40 from inside the lobby before and after I left the building where
I was deposed. At no time did anyone speak with me, other than the party on the phone.

     The WorthPoint Defendants intentionally served me an unsigned summons with incorrect

facts in the complaint that render the listed  statements false and incorrect.all  due to the lawsuit in

The Southern District of  of New York for Copyright Infringement VARA and the DMCA violations

which were ruled on in Dec. 21, 2021.  The Defendants did this on a day that I just had a nine hour

deposition.  As a consequence of this sudden and abrupt lawsuit which was time on the day that I was

deposed. Plaintiff has experienced a loss of sleep, a sever loss of  concentration which is adversely

affecting my ability to keep up with the time sensitive filings for my case in New York.  Moreover

Plaintiff has never been o the state of Georgia, nor has ever conducted any business there. Depite

this, and upon losing much time and energy away from my caseand the deposition in New York,

Plaintiff  even though improperly served, was obligated to respond, or risk the Defendants tactic to

Motion for Summary Judgement.   On October  28, 2022 Plaintiff held a Meet and Confer and

several items were demanded of the Plaintiff which I produced immediately.  On October 31,2022

Fact Discovery for this case was scheduled to end.  Defendants wrote a letter to the Court stating

and as a result the Court extended the Discovery dates.  On the same day of October 31, 2022,

WorthPoint's attorneys inGeorgia filed a Motion for Summary Judgement . Similar to the overt

factual mistakes in the first complaint, the summary judgement  stated that I filed a late response on

November 5, 2022. which is vitally impossible and clearly incorrect as the date of filing by the

attorney in Georgia was on October 31, 2022.

     Plaintiff reminds the Court that I have no legal training nor did I ever take any courses in

law or legal procedures.  I say this because with each filing and with an additional lawsuit in

another state of Georgia, Plaintiff has been burdened with the challenge of figuring out how to

respond to the laws applicable in Georgia.  These deliberate lawsuits were imposed upon me to

derail of exhaust me from my attention toward my case in New York.  Regrettably,  I  am feeling

the effects and have been told by friends and family that I keep repeating my statements and that

I look so fatigued and disheartened  with what has happened to me.  I simply did not sign or

paint this image.  I have a right to have my name disassociated with a damaged painting that is not

mine yet bares a similar name.   My friends and family can see the difference and note that

I am stressed from the tactics and demonds from this case

 I HAVE HAD TO ENDURE UTTER TORTURE  ALL BECAUSE  I  CHOSE TAKE  A

STAND  AND  PROTECT  MY   OWN  NAME  AND THE FACT OF MY OWN LIFE  SO THAT

COMPLETE STRANGERS WHO HAVE  DEMONSTRATED  RECKLESS  BEHAVIOR  AND

DO NOT HONOR OR ACT WITH INTEGRITY   CAN CONTINUE TO INCORRECTLY USE

AND EXPLOIT MY NAME  FOR THEIR OWN  GAINS. IT IS INDEED  PUZZLING AND

PAINFUL TO THE POINT OF STATING  THIS TRAUMA HAS INFLICTED  PAIN  IN

MY  PAIN  TING   CAREER THAT IS IRREPARABLE.

 Plaintiff due to the unnecessary sudden and litigious imbalances  was unable to file

my Proposed Amended Complaint  due to illness on it's original due date.

## TORT  CLAIM  FIRST COUNT   NEGLIGENCE

Negligence is a civil tort which occurs when a person breaches his duty of care which he owed

to another due to which that other person suffers some hard or undergoes some legal injury.

Negligence can be explained as the failure of discharge or the omission to do something due to

careless behavior.

First Count of Tort   Negligence  According to CPLR 213(2) the statutes of limitation in  New

York for  civil tort  is six years in writing or an oral contract. Plaintiff on Jan. 4, 2017 contacted

in writing Will Seippel regarding the re posting and re ingesting the false internet  listing  for the

1972 Original Oil Painting that was under the Plaintiff's name again.   Despite a written

documentation of my sent email there was no response from Will Seippel.

WorthPoint's Discovery documents reveal and confirm as duly documented   written  communication

between Will Seippel  and Jason Packer  on  Jan. 4th and 5th  2017, confirming  the internet post for

the 1972 oil  painting yet no one responded to my email in 2017.   In Defendants'  evidence in

WP000134  this verified proof  of Plaintiff's  claim that the 1972 Oil Painting  internet post was

reposed  and  seen publicly on the  internet.  The failure to properly and permanently remove the

false  internet post for the 1972 oil  painting and the failure to respond or communicate to Plaintiff

constitutes .

## TORT  CLAIM  SECOND  COUNT   NEGLIGENCE

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged."

On Feb. 1, 2022  at the request of WorthPoint's attorneys Plaintiff was requested to write a settlement

letter. Attorney Anderson Duff duly communicated that his clients were in held up in Bankruptcy

Court due to this litigation. Despite being advised  to engaged  or discuss settlement  offers prior to

litigation by friends and retired attorneys, Plaintiff did agree to writing a letter.  As is Plaintiff;s way

I responsibly found out what needed to be included in the Settlement letter.  I gave a recap of all my

actions to both Defendants .  I found cases related to my claims and listed all the damages and rules

pertaining to my claims.  The letter was quite long as this has been going on for over seven years.

Plaintiff  wrote out in words the amount Plaintiff was seeking for my settlement offer.  Plaintiff did

not hear from a any of the attorneys.  At the same time Plaintiff was experiencing for the first time

ever Vertigo.   At the same time due to the stress of interviewing lawyers for possible representation,

Plaintiff in addition to the recent Vertigo developed a sty and swollen eye,  As a result of the  stress

from litigation, and the sudden onset of Vertigo, Plaintiff fell and fractured a rib due to this lawsuit

and all the unexpected sudden demands that were imposed upon me.  I ask the Court to consider

the time Plaintiff has  lost just to avoid litigation and to have the false listing permanently removed

from the internet. Secondly, I simply did not do this painting and followed the advise of my legal colleague to declare I am not the artist for future documentation and records. Third the major denials of any wrongdoing and infringements in concert with the  minor  settlement offers by EAI have prompted the Plaintiff to be vigilent  in protecting my name and my rights. Plaintiff did not cause these infringement, nor did I immediately file a lawsuit.

**EXHIBIT #1  Doctor appointment with Benjamin Tweel for Vertigo**
**EXHIBIT #2  Emergency Eye Infirmary Visit Sunday Feb. 20, 2022**
**EXHIBIT #3  Doctor 's Letter and  Visit with  Benjamin Zaremski  Vertigo and fractured rub**

As a result this sudden intense bombardment of demands despite honoring my agreement by responsibly writing a letter, none of the Defendants attorneys contacted me regarding my letter. Instead, the attorneys wrote a letter to the Court and falsely stated that Plaintiff did not state a monetary amount, when in truth, Plaintiff most certainly did.   The reliance Plaintiff had on the Defendants to be responsive and communicative with the Pro Se Plaintiff was not experienced. Plaintiff did conduct a Meet and Confer as well as emailed the Defendant regarding my eye condition. I did communicate my sudden medical limitations to all the attorneys. The actions of the attorneys  falsely conveyed to the Court that I was disrespectful to the laws and  rules that I had agreed to producing. Plaintiff notes that this is an assault on my character and that  misleading and misinforming the Court was intentional.  This problem could have been avoided  through simple communication from the Defendants.  As aforementioned Plaintiff was experiencing  sudden health issues that needed immediate attention.  Plaintiff was then order to write another .  Settlement letter and was indeed concerned  due to threat of sanctions,  When your intentions are honorable and responsible, when they are perceived as anything less, injury occurred for the Plaintiff.

Despite failed settlement attempts on Plaintiff during the most recent  Nov. 23, 2022 Conference Call, Plaintiff brought up the subject of settlement discussion. bot Adam Bialek and  Attorney Anderson Duff immediately rejected any possibilities for any discussions to take place. Immediately, following the Conference  Call Attorney Adam Bialeck  emailed Plaintiff with the Subject matter regarding on Dec, 2, 2022 citing the copyright Act 505. for attorneys Fees.

reminds the Court that the sum of both of EAI's settlement offers combined equal an amount to be less than three numbers. The willful refusal of the EAI Defendants and their attorney to deny any settlement discussions while concurrently sending emails to the Plaintiff taunting and informing me that they are seeking an award for attorneys fees constitutes emotional distress. I am not the artist who painted the 1972 oil nor should my biography been used to sell this painting.

**EXHIBIT #4 Dec. 2, 2022 Email Subject Attorney's Fees from Adam Bialek**
**EXHIBIT #5 Summons of Complaint in Georgia WITHOUT SIGNATURE**
**EXHIBIT #6 Complaint in Georgia page 3 of 7 Wrong Dates and Facts for 18-Cv-0993 NYC**
**EXHIBIT #7 January 11,2021 Certified Mail Will Seippel**
**EXHIBIT # 8 Affidavit From Server Freddit Simon**
**EXHIBIT #9 Summary Judgement in Georgia Filed October 31, 2022**

## SUMMARY OF ARGUMENT

Plaintiff seven Counts of Fraud are detailed while defining the circumstances and false misrepresentation and the causal losses and harm all of the Defendants fraudulently actions have had on the Plaintiff. The countless mistakes by WorthPoint , can be literally be "counted" as multiple Counts of Fraud defined in Plaintiff's Proposed Amended Complaint. The unending problems, delays demonstrated and implemented by WorthPoint Corp. have been a burden for many years. Plaintiff has been a victim to WorthPoint's bumbling business practices. In litigation of I have been a victim to WorthPoint's chicanery and attempts to inflict both emotional distress and to inflict the financial debt for WorthPoint's legal fees upon the Plaintiff.

## CLAIM FOR RELIEF

1. Plaintiff consistently informed all WorthPoint Corp. employees and owner that I did not paint the 1972 Original Oil Painting Man With Red Umbrellas that falsely attributed my biography and signature to be falsely attributed to the aforementioned oil painting.

2. Plaintiff consistently informed all WorthPoint Corp. employees and owner that I was nine

years old , did not paint in oils then and  I too small to paint an oil  four feet in height.

3.     The Defendant's communication to the Plaintiff  to contact eBay to remove this false post
       was a fraudulent communication that the Defendant's used to exploit the Plaintiff reliance
       on the Defendants while concurrently posting other WorthPoint links
        Marilyn Monroe under Plaintiff's name on the internet.

3. As stated above , there was  never any  employer-employee relationship and or licensing
    agreement  between the Plaintiff and the Defendants.

4.   At no time did Plaintiff verbally of  ever signed or authorize WorthPoint or WorthPoint's
     Licensee, undefined to be eBay, Terapeak or AERS that any entity could license my
     biography.

5.   Defendants willfully extracted  in the guise of evidence   allegedly from Terapeak  to
     include my entire biography  that allegedly in  the 1972 oi  painting  Man With Red
     Umbrella

6    Hence, the Defendants willfully and intentionally violated the Plaintiff's exclusive
     copyright to my self-authored artistically  expressed biography.
     a pattern of  repeated activity to willfully repost the false 1972 ad on the internet under
     Plaintiff's name that is the proximate cause of the individual's harm.

7 .  In summary no one has the right to alter, change or expose to the public, a false  signature
     or  rewrite the chronological facts of my life. No other source can  falsely claim  a copyright
     or falsely claim  a licensing agreement when no proof of documents of proof to verify such
     claims exist.  This is the root cause for commencing this lawsuit.

8.   My case validates the inequitable and  adverse effect that one  false attribution during an
     artist's lifetime ccan  "BLOCK and  IMPEDE"  an artist's  professional progress and hinder
     one's status.

10,    The  Discovery evidence  and  the lack of  evidence  has  continued consume the Plaintiff
       life, while  imposing unending demands upon someone who has been victimized and
       embarrassed by public identity thert.  The misuse my name  with  malicious intent by the
       Defendants to burden an artist, who is not a lawyer  is overwhelming, particularly since
       Plaintiff did not paint the 1972 oil painting and produce my 1972  childhood signature.

 This  lawsuit brings attention to the realization that any  "source"  can write, state or claim a

false attribution or use an artist's name on a work of art— ( or what is ascribing to be art). A great deal of time and many opportunities were lost to refute the false 1972 misattribution, a causal loss that has harmed my integrity, caused me to lose my time, earn a living and blocked my ability to create my own new works of art.

 The Discovery evidence and the lack of evidence has continued consume the Plaintiff life, while violating the Plaintiff. The misuse my name with malicious intent by the Defendants to burden an artist, who is not a lawyer with two lawsuits in different states was overwhelming to any lawyer. The timing forsuch legal obligations and deadlines was deliberately orchestrate to overwhelm the Plaintff. The voluminous demands and request by the Defendant s for Discovery to invade Plaintiff's personal life, persona, facts and personal and professional contacts warrants the Plaintiff's Request to include Fraud and Permanent Injunctive Relief against Norb and Marie Novicin, EAI and WorthPoint Corporation.

    As a Pro Se Litigant, Plaintiff asks the Court to grant my Proposed Amended Complaint to includes applicable request to include FRCP Fraud 9(b), and IIED.

     Defendants will not suffer undue prejudice from the filing of Plaintiff's Proposed Amended Complaint because **1)** the fraudulent allegations asserted in the Proposed Amended Complaint are more specific and conclusive than that asserted in the Original or Operative Amended Complaints **2)** both Defendants alleged harm to the Plaintiff from the Original and Amended Complaint has **increased** with the new evidence **3)** the more-specific fraudulent definition is being asserted before the close of the Discovery and within the time frame to amend pleadings set out in the modified Scheduling Order   **4)** Both Defendants' discovery has only been through admissions, production of documents and interrogatories and

depositions **5)** the newly- alleged facts and evidence in Plaintiff's Motion of my Proposed
Amended Complaint are already well-known to the Defendants and in their possession.
For these reasons, Plaintiffs respectfully ask that the Court grant Plaintiff's Motion for
Leave to File the Proposed Amended Complaint to Include for Permanent Injunction and
Other Equitable Relief.

WHEREFORE, Plaintiff, on behalf of herself and others artists who have been victimized
by WorthPoint Corporation, respectfully request that this Court grant Plaintiff's Proposed
Amended Complaint to proceed forward to include Fraud, Intentional Infliction of Emotional
Distress and Permanent Injunctive Relief and grant Plaintiffs such further relief as this Court
deems just and proper

Dated: December 19, 2022                                 Respectfully Submitted,


Annamarie Trombetta                              ——Electronic  Signature——
175 East 96th Street
New York, New York 10128                         */s/ Annamarie Trombetta*

                                               _____

 Pro Se Litigant                                       Annamarie Trombetta